UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DARRYL BOYD,

                        Plaintiff,                    **Case No. 1:22-cv-00519**

v.

THE CITY OF BUFFALO, et al.,

                        Defendants.

_____

JOHN WALKER, JR.,

                        Plaintiff,                    **Case No. 1:22-cv-00520**

v.

THE CITY OF BUFFALO, et al.,

                        Defendants.

_____

**REPLY MEMORANDUM OF LAW ON BEHALF OF COUNTY OF ERIE IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND IN RESPONSE TO PLAINTIFFS' CONSOLIDATED MEMORANDUM IN OPPOSITION**

**LIPPES MATHIAS LLP**
Jennifer C. Persico
Brian C. Mahoney
Kirstie A. Means
*Attorneys for Defendant, County of Erie*
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
(716) 853-5100
jpersico@lippes.com
bmahoney@lippes.com
kmeans@lippes.com

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................... ii

PRELIMINARY STATEMENT .................................................................1

ARGUMENT .........................................................................................2

POINT I: PLAINTIFFS HAVE FAILED TO ESTABLISH  ANY OFFICIAL POLICY OR
   CUSTOM  TO SUSTAIN A MONELL CLAIM ........................................................2

   A.   Plaintiffs Have Failed to Establish a Municipal Policy to Violate Constitutional
        Disclosure Obligations or Deliver Improper Summations. ...........................................3

   1.   Plaintiffs' Reference to Russo is a Red Herring, and They Have Failed to Demonstrate
        a Widespread Practice to Commit Brady Violations.  ...................................................3

   2.   Plaintiffs Have Failed to Raise a Question of Fact to Suggest the County Had a
        Widespread Practice to Deliver Improper Summations. ................................................5

   B.   Plaintiffs' Claim that the County is Liable Pursuant to a Policy of Deliberate
        Indifference to Plaintiffs' Fair Trial Rights Fails to Raise a Question of Fact..............7

   C.   Plaintiffs' Purported Standalone Claim for Failure to Train Relative to Brady
        Obligations Lacks Merit. .....................................................................11

POINT II: PLAINTIFFS' STATE LAW CLAIM FAILS AS A MATTER OF LAW ...............12

POINT III: PLAINTIFFS' RULE 56(a) SUBMISSION IS IMMATERIAL AND IMPROPER .13

CONCLUSION.....................................................................................16

WORD COUNT CERTIFICATION ........................................................17

i

## TABLE OF AUTHORITIES

**Cases**

*Allen v. Koenigsmann*,
   No. 23-CV-5651 (LAP), 2024 WL 403113 (S.D.N.Y. Feb. 2, 2024).................................15, 16

*Alvarez v. City of New York*,
   2024 WL 1140659 (S.D.N.Y. March 15, 2024) ...................................................................10

*Batista v. Rodriguez*,
   702 F. Supp. 2d 393 (2d Cir. 1983).....................................................................................10

*Bertuglia v. City of New York*,
   133 F. Supp. 3d 608 (S.D.N.Y. 2015),
   *affd sub nom. Bertuglia v. Schaffler*, 672 Fed. Appx. 96 (2d Cir. 2016) ...............................12

*Brady v. Maryland*,
   373 U.S. 83 (1963) ..............................................................................................................passim

*Brown v. Jones*,
   No. 615CV06108EAWMJP, 2021 WL 5988417 (W.D.N.Y. Dec. 16, 2021)..........................14

*Carovski v. Jordan*,
   No. 06-CV-716S, 2011 WL 1362624 (W.D.N.Y. Apr. 11, 2011)...........................................15

*Cash v. County of Erie*,
   654 F.3d 324 (2d Cir. 2011) ..................................................................................................9

*Connick v. Thompson*,
   563 U.S. 51(2011) ...............................................................................................................11

*Disorbo v. Hoy*,
   74 F. App'x 101 (2d Cir. 2003) ............................................................................................10

*Douglas v. City of Peekskill*,
   2023 WL 2632217 (S.D.N.Y. March 24, 2023) ...................................................... 4, 8, 10, 11

*Emanuel v. Gap, Inc.*,
   No. 19-CV-03617 (PMH), 2022 WL 3084317 (S.D.N.Y. Aug. 3, 2022)...............................15

*Equal Emp. Opportunity Comm'n v. Green Lantern Inn, Inc.*,
   No. 19-CV-06704-FPG-MJP, 2022 WL 1507944 (W.D.N.Y. Mar. 8, 2022),
   *report and recommendation adopted,* No. 19-CV-6704-FPG, 2022 WL 1501555 (W.D.N.Y.
   May 12, 2022)......................................................................................................................14

*Fappiano v. City of New York*,
   640 Fed. Appx. 115 (2d Cir. 2016) .........................................................................................7

*Gentile v. County of Suffolk*,
  926 F.2d 142 (2d Cir. 1991) ............................................................................9

*Goenaga v. March of Dimes Birth Defects Foundation*,
  51 F.3d 14 (2d Cir. 1995) ...............................................................................1

*Hayes v. New York City Dept. of Corrections*,
  84 F.3d 614 (2d Cir. 1996) .............................................................................1

*Ifudu v. City of New York*,
  No. 16-CV-2957 (MKB), 2018 WL 4568799 (E.D.N.Y. Sept. 24, 2018) .............................14

*Jones v. Town of East Haven*,
  691 F 3d 72, 82 (2d Cir. 2012).......................................................................10

*Lilly v. Hall*,
  16-CV-242, 2019 WL 275799 (W.D.N.Y. Jan. 22, 2019) .......................................2

*Long v. Cnty. of Orleans*,
  540 F. Supp. 3d 344 (W.D.N.Y. 2021) .............................................................1

*Lucente v. County of Suffolk*,
  980 F.3d 284 (2d Cir. 2020) ......................................................................4, 6

*Matusick v. Erie Cnty. Water Auth.*,
  757 F.3d 31 (2d Cir. 2014) ............................................................................3

*McCants v. City of Newburgh*,
  No. 14-CV-556, 2014 WL 6645987 (S.D.N.Y. Nov. 21, 2014)..............................9

*Miller v. County of Monroe*,
  2024 WL 2804435 (W.D.N.Y. May 31, 2024).................................................9, 13

*New York State Teamsters Conf. Pension & Ret. Fund v. Express Servs., Inc.*,
  426 F.3d 640 (2d Cir. 2005) ........................................................................17

*Oklahoma City v. Tuttle*,
  471 U.S. 808 (1985)....................................................................................14

*Parker v. Sony Pictures Ent., Inc.*,
  260 F.3d 100 (2d Cir. 2001) ..........................................................................1

*Rodriguez v. The County of Los Angeles*,
  891 F.3d 776 (9th Cir. 2018) .......................................................................10

*Russo v. City of Bridgeport*,
  479 F.3d 196 (2d Cir. 2007) ......................................................................3, 4

*Smith v. City of Fontana*,

818 F.2d 1411 (9th Cir.1987) ................................................................................................10

*Swinton v. Livingston County,*
2023 WL 2317838 (2d Cir. Mar. 2, 2023) ..........................................................................2, 4

*The Estate of Roman v. The City of Newark,*
914 F.3d 789 (3d Cir. 2019) ...............................................................................................10

*Tieman v. City of Newburgh,*
2015 WL 1379652 (S.D.N.Y. 2015) ......................................................................................8

*U.S. ex rel. Haynes v. McKendrick,*
481 F.2d 152 (2d Cir. 1973) .................................................................................................7

*Vann v. City of New York,*
72 F.3d 1040 (2d Cir. 1983) .................................................................................................9

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC,*
127 F. Supp. 3d 156 (S.D.N.Y. 2015) ..................................................................................8

**Rules**
Fed. R. Civ. P. 12(b)(6) .........................................................................................................8

Fed. R. Civ. P.  56 ...............................................................................................................13

Fed. R. Civ. P.  56(a) .............................................................................................13, 14, 16

Fed. R. Civ. P.  56(a)(2) .......................................................................................13, 14, 16

Fed. R. Civ. P.  56.1 ....................................................................................................15, 16

Fed. R. Civ. P.  56.1(b) .......................................................................................................15

## PRELIMINARY STATEMENT

This memorandum of law is submitted in further support of the County of Erie's ("County") motion for summary judgment and in reply to the consolidated opposition of Plaintiffs Darryl Boyd ("Mr. Boyd") and John Walker, Jr. ("Mr. Walker") (collectively, "Plaintiffs"). The resolution of Plaintiffs' claims are questions of law, not fact. Despite Plaintiffs' voluminous submission and efforts to conflate the law and the facts, the County has demonstrated its entitlement to summary judgment dismissing Counts VII and X in Plaintiffs' Complaints.

More specifically, upon the County's *prima facie* showing, Plaintiffs were required to come forward with evidence sufficient to raise a question of material fact to avoid summary judgment. *See Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995). Speculative arguments and conclusory statements are not "genuine issues for trial." *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996) (internal citation and quotation marks omitted).

Here, the County satisfied its "burden on summary judgment by pointing out that there is no evidence that the actions of which Plaintiff complains were taken pursuant to an official municipal policy or custom." *See Long v. Cnty. of Orleans*, 540 F. Supp. 3d 344, 351 (W.D.N.Y. 2021) (citing *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) ("A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial."). For the reasons that follow, Plaintiffs have failed to rebut that showing, and the County is thus entitled to summary judgment.

1

## ARGUMENT

## POINT I: PLAINTIFFS HAVE FAILED TO ESTABLISH ANY OFFICIAL POLICY OR CUSTOM

Plaintiffs' opposition focuses significantly on the actions of ADAs Drury and Henry during their underlying criminal prosecutions. While the County disputes that either Drury or Henry violated Plaintiffs' constitutional rights, that determination is not relevant to the instant motion as Plaintiffs only make claims against the County pursuant to *Monell*.

As noted in the County's initial moving papers, "mere allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details." *Lilly v. Hall*, 16-CV-242, 2019 WL 275799, at *4 (W.D.N.Y. Jan. 22, 2019) (quoting *Triano*, 895 F. Supp. 2d at 535).

Since Plaintiffs have never identified a municipal policy, they must establish either (1) a widespread practice or (2) constructive acquiescence by policy-making officials to manifest misconduct of subordinate employees. *Swinton v. Livingston County*, 2023 WL 2317838*1 (2d Cir. Mar. 2, 2023).

Plaintiffs' opposition contends their *Monell* claim should nevertheless survive under three distinct theories: "(i) the prosecutorial misconduct resulted from ECDA policy and widespread practice; (ii) the prosecutorial misconduct resulted from the ECDA's policy of deliberate indifference to the fair-trial rights of criminal defendants and the 'anything-goes' attitude that likely engendered; and (iii) the *Brady* violations resulted from inadequate training."[1] Each alleged theory is refuted below.

---

[1] *See* Pls. MOL at p. 61.

A.    Plaintiffs Have Failed to Establish a Municipal Policy to Violate Constitutional Disclosure Obligations or Deliver Improper Summations.

Plaintiffs' opposition argues a question of fact exists relevant to a "widespread practice of suppressing evidence favorable to the accused, both at preliminary hearings and at trials, and of engaging in summation misconduct." *See* Pls. MOL at p. 50.  Although this theory was delineated as dual categories in their respective Complaints, namely: (i) alleged Brady violations and (ii) alleged improper summations, their opposition implicitly suggests the first category included a subcategory relative to (iii) alleged *Russo* violations.  Plaintiffs' effort falls short.

### 1.  *Plaintiffs' Reference to Russo is a Red Herring, and They Have Failed to Demonstrate a Widespread Practice to Commit Brady Violations.*

Preliminarily, Plaintiffs' assertion that the County conceded *Monell* liability "for summary judgment purposes" because it failed to address a previously unidentified and unclaimed *Russo v. City of Bridgeport*, 479 F.3d 196 (2d Cir. 2007) violation (*see* Pls. MOL at p. 62), is disingenuous at best.  Regardless, no credible argument exists to suggest *Russo* has any bearing on Plaintiffs' claims of prosecutorial misconduct occurring approximately 30 years prior to that decision, and Plaintiffs' passing reference to *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 61 (2d Cir. 2014) in a footnote (*see* Pls. MOL at p. 36, n.3) does not suggest otherwise.[2]

Notwithstanding the foregoing, Plaintiffs' claims amount to an allegation that the ECDAO maintained a policy to commit *Brady* violations, and assuming *arguendo*, an argument could be made to suggest *Russo* has any relevance to these lawsuits, the County is nevertheless entitled to

---

[2] To the contrary, that case makes clear the law "must nonetheless be well enough settled—capable of making a reasonable person aware of whether an act violates a constitutional right—so that in fairness and pursuant to the purpose of qualified immunity to protect public officials acting in good faith, the defendant can be held to account for a violation." *Id.*  *Matusick* did not purport to address the decade-ranging time travel analysis suggested by Plaintiffs, and Plaintiffs' reliance to this case in an effort to make this argument is consequently misplaced at best.

summary judgment since Plaintiffs have never identified an express rule, regulation or policy of the ECDAO to commit *Brady* (or *Russo*) violations or other prosecutorial misconduct.

As detailed in the County's initial moving brief, the County can only be liable under §1983 if the Plaintiff establishes a direct causal link between the policy or custom and the constitutional deprivation. *See Douglas v. City of Peekskill,* 2023 WL 2632217*6 (S.D.N.Y. March 24, 2023). To satisfy this requirement, Plaintiffs must identify:[3] (1) a practice that was so persistent or widespread as to carry the force of law, or (2) misconduct of subordinate employees that was so manifest as to imply the constructive acquiescence of senior policy-making officials. *Swinton v. Livingston County*, 2023 WL 2317838*1 (2d Cir. Mar. 2, 2023).

Plaintiffs' opposition confirms they have abandoned their theory that there was "a practice that was so persistent or widespread as to carry the force of law"[4], and they instead rely on the theory that the "misconduct of subordinate employees [] was so manifest as to imply the constructive acquiescence of senior policy-making officials." *See id.*

Plaintiffs' reliance on *Lucente v. County of Suffolk,* 980 F.3d 284 (2d Cir. 2020) to support this theory is misplaced. In *Lucente*, the evidence of the *municipal employee's* "widespread pattern of sexual assaults and sexual harassment of female inmates, …constructively supported the inference that policymakers, at the very least, had a custom or practice of acquiescing to Foti's sexual misconduct." *Id.* at 287. By contrast, here, Plaintiffs have put forth no evidence that either ADA Drury or Henry engaged in any widespread pattern of misconduct, and thus Plaintiffs cannot

---

[3] Plaintiffs' opposition makes clear that they cannot establish an express rule, regulation or policy. Thus, there is no need to address that requirement.

[4] *See* Pls. MOL at p. 61 "Plaintiffs can meet this standard and establish the existence of an unlawful practice through testimony admitting or establishing that a given unlawful act was consistent with municipal practice. Such testimony makes unnecessary relying on {sic} the alternative method of proof the County argues is lacking in this case: an overwhelming number of demonstrably prior similar acts proving the existence of a practice."

credibly argue, let alone establish by proof in admissible form, their actions "constructively support[] the inference that policymakers, at the very least, had a custom or practice of acquiescing to" their misconduct. *Id* at 287.

Accordingly, Plaintiffs have failed to establish a policy, custom or practice of *Brady* violations, and no *Monell* claim can stand pursuant to this theory as a matter of law.

### 2. Plaintiffs Have Failed to Raise a Question of Fact to Suggest the County Had a Widespread Practice to Deliver Improper Summations.

It is worth reminding that Mr. Boyd previously challenged, among other things, the issue of ADA Drury's summation in 1977, 1981, 1984, and 1986,[5] and each attempt was uniformly denied.[6]  Mr. Walker does not appear to have previously taken issue with the contents of ADA Henry's summation but challenged his conviction on various other grounds in 1986, 1989 and 2012.[7]  Despite the many prior judicial determinations based upon the same facts, and despite the County's *prima facie* showing, Plaintiffs nevertheless argue a question of fact exists as to the propriety of the ADA's summations in their underlying trials and whether a policy to encourage improper summations existed generally.

In attempting to suggest a question of fact exists, Plaintiffs rely on "14 cases decided between 1966 and 1985 – 7 of which were decided before Plaintiffs' criminal trials" and included instances where the Appellate Division took issue with a summation,[8] and the fact the County's representative testified he was unable to recall an instance 50 years ago where an ADA was disciplined for summation misconduct."[9]  Neither contention has merit.

---

[5] *See* County's Rule 56(a) Statement at ¶¶ 84-93 (Dkt. 166-1).
[6] *See id.* at ¶¶ 85-104.
[7] *See id.* at ¶¶ 90-104.
[8] *See* Pls. MOL at p. 67.
[9]  *See id.*

Tellingly, Plaintiffs fail to cite any authority to suggest this sampling of isolated instances of dissimilar conduct over a period of two decades raises a question of fact and make no effort to distinguish the cases cited in the County's initial moving brief on this point.[10]  The County thus relies on the ample evidence and argument in its initial moving papers,[11] and maintains Plaintiffs' conclusory and speculative reliance on these cases is insufficient to raise a question of fact.

Beyond that, the fact the County's representative was unable to recall in 2023, after almost 50 years, an instance in and around the 1970s, where an ADA was disciplined for summation misconduct falls far short of raising a question of fact.  Here, again, Plaintiffs attempt to rely on *Lucente*, 980 F.3d at 306.[12]  As above, *Lucente* remains inapposite and misplaced in the context of this case, particularly since that case specifically holds that "even if a policy can be inferred from omissions of a municipality, such as where it acquiesces in a pattern of illegal conduct, such a policy cannot be inferred from the failure of those in charge to discipline a single police officer for a single incident of illegality; instead, there must be more evidence of supervisory indifference, such as acquiescence in a prior pattern of conduct."  *See id.* (internal citations and quotation marks omitted).  *Lucente* has no relevance to Plaintiffs' claims, or "a prior pattern of conduct."

As previously noted, the County continues to contest either summation violated Plaintiffs' constitutional rights, as opined by the County's expert, Kevin T. Gagan.[13]  Although Court need not engage in further analysis on this issue to rule in its favor, certain contentions raised by Plaintiffs warrant a brief response.  First, Plaintiffs' reliance on their expert's opinion to suggest a

---

[10] *Compare* Pls. MOL at p. 67 *with* County's Moving MOL at pp. 13-15.
[11] *See* County's Moving MOL at p. 13.
[12] *See* Pls. MOL at p. 67.
[13] *See* Dkt. 164-1 (Expert Opinion Report of Kevin T. Gagan).

rule of law[14] is unavailing.  Second, Plaintiffs otherwise rely on a single case, *U.S. ex rel. Haynes v. McKendrick*, 481 F.2d 152 (2d Cir. 1973), which is easily distinguishable, and beyond merely citing it, Plaintiffs make no effort to suggest "racial prejudice was a major factor in the fiber of the trial[s]."  *See U. S. ex rel. Haynes v. McKendrick*, 481 F.2d 152, 157 (2d Cir. 1973).

In sum, there is no support for Plaintiffs' contention that an official policy or custom encouraging improper or inflammatory summations existed, nor that such policy or custom was the cause of any violation of their civil rights.  As a result, to the extent Plaintiffs' *Monell* claim is premised upon pure suggestion to the contrary, it fails to raise a question of fact.

B.  <u>Plaintiffs' Claim that the County is Liable Pursuant to a Policy of Deliberate Indifference to Plaintiffs' Fair Trial Rights Fails to Raise a Question of Fact.</u>

Plaintiffs argue for the first time in their opposition, that the County is liable pursuant to a policy of deliberate indifference to Plaintiffs' "fair trial" rights.  The Second Circuit has defined this "theory of liability [as] essentially a civil claim seeking damages for a *Brady* violation*" (see Fappiano v. City of New York*, 640 Fed. Appx. 115, 118 (2d Cir. 2016).  As a result, and despite Plaintiffs attempt to portray this as a distinct theory, it is simply duplicative of their claim for alleged *Brady* violations and fails for the same reasons set forth above.

To the extent Plaintiffs argue the County is liable for an alleged failure to supervise and/or discipline, that claim fails as well.  To establish liability under this theory, a plaintiff must establish: (1) a pattern of allegations of or complaints about, or a pattern of actual, similar unconstitutional activity, <u>and</u> (2) the municipality consistently failed to investigate those allegations. *Miller v. County of Monroe,* 2024 WL 2804435 (W.D.N.Y. May 31, 2024); *see also Douglas v. City of Peekskill,* 2023 WL 2632217 (S.D.N.Y. March 24, 2023).

---

[14] *See* Pls. MOL at p. 56 (citing to Pls. Counterstatement of Facts at ¶458, which cites to Pls. expert's report).

On this point, Plaintiffs reference 19 cases reviewed by the Appellate Division during a 15-year period from 1966 to 1981.[15]  Critically, none involved *Brady* violations, 11 involved summations, but not all were found to be improper, 5 involved improper cross examination, 1 involved calling an improper witness, 1 involved an opening statement issue, and 1 involved judicial misconduct. Given this wide-ranging behavior over such an extended period of time, these cases fail to establish the critical prerequisite of a "pattern of actual, similar unconstitutional activity", and thus cannot support County liability for failure to supervise or discipline.  No further analysis is required because the failure to meet that threshold requirement mandates dismissal of Plaintiffs' claim as a matter of law. [16]

Moreover, the requisite deliberate indifference necessary to sustain this claim requires Plaintiffs to establish that the "need for more or better supervision to protect against constitutional violations was obvious." *See Douglas, supra* at 13.  The wide-ranging activity noted above, ranging over a 15-year period, as well as the varying Appellate Court reactions, militate against any such finding.

Even assuming, *arguendo*, that the cases cited each involved "actual, similar unconstitutional activity, Plaintiffs' theory would still fail to establish *Monell* liability because 19 cases over a 15-year period is insufficient to establish a pattern.  Cases finding failures to discipline have required much more.  *See, e.g., Tieman v. City of Newburgh*, 2015 WL 1379652 at *19– 21 (S.D.N.Y. 2015) (plaintiff listed and detailed nine other complaints raising similar allegations against the same defendants); *McCants v. City of Newburgh*, No. 14-CV-556, 2014 WL 6645987,

---

[15] *See* Pls. Counterstatement of Facts at ¶¶ 832, 836(a)-(h), (o)-(r), (w), (x) and (z).
[16] Plaintiffs cite to newspaper articles to support their claims, but such evidence is only relevant in the context of a 12(b)(6) motion.  *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (finding that pursuant to Rule 201, courts have considered newspaper articles attached to a complaint when deciding a Rule 12(b)(6) motion).

at *4–5 (S.D.N.Y. Nov. 21, 2014) (plaintiff detailed 17 other complaints over a 7-year period raising similar allegations against the same defendants).

Plaintiffs further argue, without any credible support, that "the unpunished behavior need not be identical or even similar to cause the spread of an anything goes attitude" "and "that a policy maker's toleration of misconduct occurring after a plaintiff's trial may give rise to an inference that he had a similarly indifferent attitude or policy at the time of his trial which led to the misconduct."[17]   Plaintiffs cross-reference a number of cases addressed elsewhere in their opposition brief, which fail to support this contention.

*Cash v. County of Erie,* 654 F.3d 324 (2d Cir. 2011) fails to support Plaintiffs' sweeping pronouncement that "the unpunished behavior need not be identical or even similar to cause the spread of an anything goes attitude".   In fact, there, the court went out of its way to highlight the distinction in *Cash:* "To explain, we begin by noting that the pattern ordinarily necessary to prove deliberate indifference in the context of a failure-to-train claim does not neatly transfer to this case." *Id* at 336.   Thus, Plaintiffs interpretation of *Cash* is demonstrably incorrect.

Plaintiffs' reliance on *Gentile v. County of Suffolk*, 926 F.2d 142 (2d Cir. 1991) is likewise misplaced.   In *Gentile*, an independent report finding that high-ranking County officials twice ratified the misconduct of individual police officers, thereby corroborating that the individual police misconduct was the result of an established practice or policy. *Id*. at 151.   No similar allegation or showing has been made in this case. *Vann v. City of New York,* 72 F.3d 1040 (2d Cir. 1983) is similarly unavailing in the context of this case. There, the individual officer involved in violating plaintiffs right had a history of the same type of violence, had a significant number of prior civilian complaints for the same behavior, was placed on restricted duty, and despite

---

[17] *See* Pls. MOL at p. 71.

continued exhibition of psychological problems was returned to full duty and assaulted plaintiff a few months later.  *Batista v. Rodriguez*, 702 F. Supp. 2d 393 (2d Cir. 1983) involved police misconduct and was dismissed, and is thus similarly unhelpful to Plaintiffs.

To support their contention that "a policy maker's toleration of misconduct occurring after a plaintiff's trial may give rise to an inference that he had a similarly indifferent attitude or policy at the time of his trial which led to the misconduct"[18], Plaintiffs continue to cite to a number of inapposite cases, none of which involved prosecutorial misconduct.[19]  Moreover, Plaintiffs' conclusory allegation of a "noxious anything goes culture" is insufficient to sustain a *Monell* claim. *See Alvarez v. City of New York,* 2024 WL 1140659 *9 (S.D.N.Y. March 15, 2024) (speculation about the internal operations of the district attorneys office and it's alleged practice to encourage prosecutors to win at any cost is insufficient to sustain a *Monell* claim).

In their attempt to argue an ECDAO policy of failing to discipline, Plaintiffs rely almost exclusively on the fact that one ADA, Albert Ranni, was criticized by the Appellate Division for improper conduct and yet was never disciplined and retained his senior position, which has been previously deemed insufficient to establish *Monell* liability. *See Douglas, supra* at 14 (deeming the promotion of the ADA involved in plaintiffs alleged constitutional violations insufficient to establish municipal policy of failing to discipline.)

That the ECDAO was unable to produce disciplinary records is similarly insufficient to

---

[18] *See Id.*

[19] *Disorbo v. Hoy,* 74 F. App'x 101 (2d Cir. 2003) is inapposite because the plaintiff in that case was subjected to significant beating by police officers who were subsequently promoted. *The Estate of Roman v. The City of Newark*, 914 F.3d 789 3d Cir. 2019), *Rodriguez v. The County of Los Angeles*, 891 F.3d 776 (9th Cir. 2018), and *Smith v. City of Fontana*, 818 F.2d 1411 (9th Cir.1987) are each out of circuit decisions, and thus not controlling.  In *Jones v. Town of East Haven*, 691 F 3d 72, 82 (2d Cir. 2012), the Second Circuit found plaintiffs proof of deliberate indifference on the part of supervisory personnel insufficient.

establish a policy or custom of failing to investigate instances of alleged prosecutorial misconduct. *See Miller, supra* at 9. Similarly, Plaintiffs' reliance on the ECDAO's purported failure to produce policies and/or procedures governing *Brady* and *Rosario* compliance, statutory discovery or summations is likewise misplaced. *See Douglas, supra* at n.2. Additionally, the fact that witnesses could not specifically recall investigation or discipline of an ADA for misconduct during a criminal trial[20] is likewise insufficient to establish liability. *See Miller, supra* at 9.

For all the foregoing reasons, Plaintiffs have failed to raise a question of fact to suggest the existence of a policy of deliberate indifference to Plaintiffs' "fair trial" rights, and thus to the extent their *Monell* claim is premised on this theory, it necessarily fails.

C.      Plaintiffs' Purported Standalone Claim for Failure to Train Relative to Brady Obligations Lacks Merit.

Plaintiffs alleged "standalone" claim for failure to train relative to *Brady* obligations is duplicative of the analysis above and otherwise lacks merit and fails to raise a question of fact. As set forth in the County's initial moving brief, the Supreme Court has held that "a municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61, (2011) (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 822–8 (1985). To hold a municipality liable on a failure to train claim requires the plaintiff to establish the "functional equivalent of a decision by the [County] itself to violate the Constitution" *Id.* at 62 (explaining "[a] less stringent standard of fault for a failure-to-train claim "would result in *de facto respondeat superior* liability on municipalities"). The alleged failure "must amount to *deliberate indifference* to the rights of citizens." *Id*. (cleaned up).

To prove deliberate indifference, a plaintiff must prove the municipality failed to take

---

[20] *See* Pls. MOL at p. 68.

11

corrective measures despite having "actual or constructive notice that" a deficiency in its "training [or supervising] program" was "causing city employees to violate citizens' constitutional rights." *Id.* at 61.  This generally requires a plaintiff to prove that the constitutional violation underlying his claim was preceded by "[a] pattern of similar constitutional violations."  *Id.* at 62.

When, as here, the claimed violation concerns the nondisclosure of evidence, the plaintiff must point to a pattern of prior violations concerning nondisclosure of the same sort of evidence.  *See id.* at 62-64 (noting that a claim based on a municipality's alleged "[f]ailure to train [or supervise] prosecutors in their [disclosure] obligations does not fall within the narrow range of . . . hypothesized single-incident liability [claims]"). As detailed above, Plaintiffs have not and cannot make this showing.

Plaintiffs otherwise criticize the ECDAO because "[p]rosecutors learned on the job and experienced prosecutors would instruct newer prosecutors and the First Assistant was available to field questions."[21]  However, in *Bertuglia v. City of New York*, 133 F. Supp. 3d 608, 653 (S.D.N.Y. 2015), *affd sub nom. Bertuglia v. Schaffler*, 672 Fed. Appx. 96 (2d Cir. 2016), the Second Circuit affirmed rejecting a similar critique, finding the plaintiffs failed to raise a triable issue that the City was deliberately indifferent to potential constitutional violations because there were informal disciplinary procedures [including guidance by the Appeals Bureau and at the supervisory level] to ensure that the assistant district attorneys followed the law.  The same result is warranted here.

In light of the foregoing, Plaintiffs failure to train theory likewise fails as a matter of law.

## POINT II: PLAINTIFFS' STATE LAW CLAIM FAILS AS A MATTER OF LAW

Plaintiffs' opposition relative to Count X is limited to a single paragraph that notes merely that the County has not stipulated this "its prosecutors acted at all relevant times in the scope of

---

[21] *See* Pls. MOL at p. 73.

their employment."[22]  Plaintiffs fail to cite a single case to support whatever argument they are attempting to make on this point, but as Plaintiffs' counsel well knows, there is no *respondeat superior* liability to the County for individual acts of Assistant District Attorneys.  Thus Plaintiffs' opposition to dismissal of this claim is baseless.  As a result, the County maintains summary judgment is warranted on this claim.

**POINT III**: **PLAINTIFFS' RULE 56(a) SUBMISSION IS IMMATERIAL AND IMPROPER**

As a final point, Plaintiffs submitted with their opposition a 330-page document (*see* Dkt. 176-128), which purports to: (i) respond to the City's Rule 56(a) Statement (*see id.* at pp. 5-83 ¶¶ 1-177); (ii) respond to the County's Rule 56(a) Statement (*see id.* at pp. 84-156 ¶¶ 1-153); and (iii) make a "Counterstatement of Additional Material Facts", consisting of 892 additional paragraphs (*see id.* at pp. 157-329) ("Plaintiffs' Rule 56(a) Submission").

Plaintiffs' Rule 56(a) Submission violates the letter and spirit of Local Rule 56(a) and is generally improper.

First, Plaintiffs' responses to the County's Rule 56(a) Statement generally base their "disputes" on their opinion that the paragraph "omits a material fact", contests record deposition testimony, or otherwise responds in a non-responsive and/or argumentative manner.  As a result, the County respectfully argues that the Court disregard Plaintiffs' objections insofar as they "fail to meet the requirements of Local Rule 56" whether because they include "legal argument"[23], "conclusory statements"[24], "quibble with phraseology"[25], "speak past asserted facts,"[26] or are

---

[22] *See* Pls. MOL at p. 78.

otherwise "immaterial." *See Equal Emp. Opportunity Comm'n v. Green Lantern Inn, Inc.*, No. 19-CV-06704-FPG-MJP, 2022 WL 1507944, at *2 (W.D.N.Y. Mar. 8, 2022), *report and recommendation adopted,* No. 19-CV-6704-FPG, 2022 WL 1501555 (W.D.N.Y. May 12, 2022) (cleaned up); *see also Brown v. Jones*, No. 615CV06108EAWMJP, 2021 WL 5988417, at *3 (W.D.N.Y. Dec. 16, 2021) ("It is within a district court's discretion to deem facts admitted for failure to comply with its local rules regarding summary judgment."); *Ifudu v. City of New York*, No. 16-CV-2957 (MKB), 2018 WL 4568799, at *4 (E.D.N.Y. Sept. 24, 2018) ("The Court will also disregard responses containing legal argument or nonresponsive narrative.").

Second, Plaintiffs do not identify which of the **892 paragraphs** in their Counterstatement are material or relevant to the County's motion.  Moreover, the size and content of the submission violates Local Rule 56(a), which provides for "**short** and **concise** statement of additional **material facts** as to which it is contended there exists a genuine issue to be tried."  *See* Local Rule 56(a)(2) (emphasis in original).

The Second Circuit has confirmed "district courts have the authority to institute local rules governing summary judgment submissions" and "[r]ules governing summary judgment practice are essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of 'hunt[ing] through voluminous records without guidance from the parties.'"  *New York State Teamsters Conf. Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648–49 (2d Cir. 2005) (internal citations omitted); *see also Carovski v. Jordan*, No. 06-CV-716S, 2011 WL 1362624, at *3 (W.D.N.Y. Apr. 11, 2011) ("Local Rules are law—to the extent they are not inconsistent with the Federal Rules of Civil Procedure—and are promulgated to further effectuate the purposes and spirit underlying the federal rules.  As such, they are not "precatory meanderings to be adhered to or not as the parties so choose.").

14

In reviewing a counterstatement that the defendants argued "improperly includes argumentative language, and burdens Defendants with a numerosity of facts beyond what is permitted by Local Rule 56.1", the Southern District of New York made several observations applicable here:

> Local Rule 56.1 does not . . . provide for a responsive 56.1 Statement to include additional facts that are not in dispute but that a party opposing summary judgment simply thinks are important. Any additional facts included in a counterstatement filed pursuant to Local Rule 56.1(b) should be confined to material facts in dispute. Further, parties' 56.1 statements are not argument, should contain factual assertions with citation to the record, and "should not contain conclusions.

*See Allen v. Koenigsmann*, No. 23-CV-5651 (LAP), 2024 WL 403113, at *2–3 (S.D.N.Y. Feb. 2, 2024) (internal citations, ellipses and quotation marks omitted and cleaned up). The *Allen* Court further recognized "courts in [the Second] Circuit "frequently deny motions to strike paragraphs in Rule 56.1 statements, and [instead] simply disregard any improper assertions." *See id.* The Southern District of New York's decision in *Emanuel v. Gap, Inc.*, No. 19-CV-03617 (PMH), 2022 WL 3084317, at *4 (S.D.N.Y. Aug. 3, 2022) further denounces the approach employed by Plaintiffs, and is again instructive here:

> The Local Rule does not contemplate a free-for-all of adding irrelevant facts and facts unnecessary to the proper adjudication of a summary judgment motion. Nor does it contemplate creating more or less than an admission or a denial of the truth of the allegation for the purposes of the motion. The Local Rule contemplates the factual statement deemed admitted unless specifically controverted and supported by evidence which would be admissible at trial.

*Id*.

In sum, and while Local Rule 56(a) does not specifically provide for a response to an opposing party's statement, in an abundance of caution, the County raises and preserves its

objection to Plaintiffs' Rule 56 Submission on the grounds it cannot credibly be argued to constitute "a **short** and **concise** statement of additional **material facts** as to which it is contended there exists a genuine issue to be tried" (*see* Local Rule 56(a)(2) (emphasis in original), and thus can and should be disregard by this Court. *Cf. Allen v. Koenigsmann*, No. 23-CV-5651 (LAP), 2024 WL 403113, at *2–3 (S.D.N.Y. Feb. 2, 2024) (recognizing "courts in [the Second] Circuit 'frequently deny motions to strike paragraphs in Rule 56.1 statements, and [instead] simply disregard any improper assertions.'") (internal citation omitted).

## <u>CONCLUSION</u>

Based on the foregoing, this Court should grant summary judgment to the County dismissing Plaintiffs' Complaints against the County, in their entirety, and with prejudice.

Dated: July 8, 2024
      Buffalo, New York

                **LIPPES MATHIAS LLP**

                <u>s/Jennifer C. Persico</u>
                Jennifer C. Persico, Esq.
                Brian C. Mahoney, Esq.
                Kirstie A. Means, Esq.
                *Attorneys for Defendant, County of Erie*
                50 Fountain Plaza, Suite 1700
                Buffalo, New York 14202
                Telephone: (716) 853-5100
                Email: jpersico@lippes.com
                         bmahoney@lippes.com
                         kmeans@lippes.com

## <u>WORD COUNT CERTIFICATION</u>

I hereby certify pursuant Uniform Rule 202.8-b that the foregoing memorandum of law was prepared on a computer using Microsoft Word.

Type. A proportionally spaced typeface was used, as follows:
Name of typeface: Times New Roman
Point size: 12
Line spacing: Double
Word Count. The total number of words in this memorandum of law, inclusive of point headings and this statement is 4,891.

DATED:          Buffalo, New York
                July 8, 2024

                          **LIPPES MATHIAS LLP**

                          *s/Jennifer C. Persico*
                          Jennifer C. Persico, Esq.