UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DARRYL BOYD,

                 Plaintiff,

v.

THE CITY OF BUFFALO, THE COUNTY
OF ERIE, MICHAEL G. GUADAGNO,
JOHN MONTONDO, LINDA J. FIAL AS
EXECUTOR FOR THE ESTATE OF ROBERT
GRABOWSKI, MARTIN BULLOCK AS
EXECUTOR FOR THE ESTATE OF JAMES E.
HUNTER, JENNIFER FLANNERY AS
ADMINISTRATOR FOR THE ESTATE OF
ROBERT F. ARNET, JENNIFER FLANNERY
AS ADMINISTRATOR FOR THE ESTATE OF
FRANK C. DEUBELL, JENNIFER FLANNERY AS
ADMINISTRATOR FOR THE ESTATE OF LEO J.
DONOVAN, JENNIFER FLANNERY AS
ADMINISTRATOR FOR THE ESTATE OF
FRANCIS M. MANISTA, AND DAWN
M. DIRIENZO AS EXECUTOR FOR THE
ESTATE OF PAUL R. DELANO,

                 Defendants.

_____

**DECISION AND ORDER**

22-cv-00519-MAV

JOHN WALKER, JR.,

                 Plaintiff,

v.

THE CITY OF BUFFALO, THE COUNTY
OF ERIE, MICHAEL G. GUADAGNO,
JOHN MONTONDO, LINDA J. FIAL AS
EXECUTOR FOR THE ESTATE OF ROBERT
GRABOWSKI, MARTIN BULLOCK AS
EXECUTOR FOR THE ESTATE OF JAMES E.
HUNTER, JENNIFER FLANNERY AS
ADMINISTRATOR FOR THE ESTATE OF

**DECISION AND ORDER**

22-cv-00520-MAV

ROBERT F. ARNET, JENNIFER FLANNERY AS
ADMINISTRATOR FOR THE ESTATE OF FRANK
C. DEUBELL, JENNIFER G. FLANNERY AS
ADMINISTRATOR FOR THE ESTATE OF LEO J.
DONOVAN, JENNIFER FLANNERY AS
ADMINISTRATOR FOR THE ESTATE OF
FRANCIS M. MANISTA, AND DAWN
M. DIRIENZO AS EXECUTOR FOR THE
ESTATE OF PAUL R. DELANO,

            Defendants.

## INTRODUCTION

Plaintiffs Darryl Boyd and John Walker, Jr. each spent over twenty years in prison for the 1976 murder of William Crawford. In August 2021, the New York Supreme Court in Erie County vacated the convictions of both men. Plaintiffs then sued the County of Erie (the "County"), the City of Buffalo, and the individual Buffalo Police Department ("BPD") detectives involved in the investigation of Crawford's murder (collectively, the "City Defendants"), alleging multiple violations of their civil rights under federal law, and multiple violations of New York state law. Plaintiffs and the City Defendants reached a settlement agreement that involved dismissal with prejudice of all of Plaintiffs' claims against the City Defendants. Therefore, the only remaining claims in Plaintiffs' complaints are against the County.[1]

On December 13, 2024, the Court granted the County's motion for summary judgment with respect to Count X of each Plaintiff's Amended Complaint—a state-

---

[1] Plaintiffs previously dismissed their claims voluntarily against the individual prosecutors. ECF No. 160; *see Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (describing prosecutorial immunity for claims brought pursuant to 42 U.S.C. § 1983).

law claim for negligent hiring, discipline, and supervision. ECF No. 206.[2] However, the Court denied the County's motion for summary judgment with respect to each Plaintiff's Count VII—a federal *Monell* claim seeking to hold the County liable for its widespread policies, practices, and customs that caused the prosecutors in Plaintiffs' cases to violate Boyd's and Walker's constitutional rights. *Id.* The Court issued a written order explaining the bases for its ruling on the County's motion for summary judgment on January 14, 2025. ECF No. 219. Beyond Plaintiffs' *Monell* claims against the County, the only other pending claims in this pair of complex cases are the County's crossclaim against the City Defendants.[3] The County's crossclaim purports to raise indemnification and/or contribution against the City Defendants (the "Crossclaim"). *See* ECF No. 83 at 72.

Before the Court are the County's Cross-Motion to Amend/Correct its Answer to Plaintiffs' Amended Complaints (the "Cross-Motion to Amend"), ECF No. 208, and

---

[2] For the sake of ease, unless otherwise noted, the ECF entries referenced by the Court are from the *Boyd* docket though they also appear on the *Walker* docket with slightly different numbering.

[3] The County raises a single crossclaim against the City Defendants in each of Boyd's and Walker's cases. *See Boyd* ECF No. 83; *Walker* ECF No. 82. The crossclaims are identical, and in briefing the motions at issue in this Decision and Order, no party raised arguments that apply to only one of Plaintiffs' cases. For purposes of this Decision and Order, the Court will refer to the County's "Crossclaim," in the singular, but this Decision and Order applies equally to each of the County's single, identical, crossclaims in the Boyd and Walker cases.

    The City Defendants had asserted crossclaims for indemnification and contribution against the County. The Court finds those crossclaims are moot because the City Defendants no longer face potential liability on Plaintiffs' claims by virtue of their settlement. *See* ECF Nos. 204-1, 215; *Getz Photography, Inc. v. Cosms. Plus N.Y., Ltd.*, No. 97 CIV. 4609 (JSM), 1998 WL 345413, at *1 (S.D.N.Y. 1998); *Trisura Specialty Ins. Co. v. Robinson*, No. 22CV3216KAMMMH, 2023 WL 4539843, at *3 (E.D.N.Y. July 14, 2023), *report and recommendation adopted*, No. 22CV3216KAMMMH, 2023 WL 4940170 (E.D.N.Y. Aug. 1, 2023) ("A claim is 'derivative of' another when a defendant alleges that another is secondarily liable to it as a contributor. . . . The traditional 'derivative' claims are indemnification, contribution and subrogation." (quotation omitted)).

the City Defendants' Motion for Judgment on the Pleadings, or in the alternative for Summary Judgment, on the County's Crossclaim (the "Rule 12(c) Motion"), ECF No. 213. For the reasons discussed below, the County's Cross-Motion to Amend is granted in part and denied in part, and the City Defendants' Rule 12(c) Motion as to the County's Crossclaim is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed their Amended Complaints on March 13, 2023. ECF No. 78. As described, the only claims remaining therein are Count VII against the County. These counts are each entitled "42 U.S.C. § 1983 and *Monell* Municipal Liability Against the County of Erie for the Misconduct of Prosecutors." *Id.* at 66 (bolding omitted). Count VII seeks to hold the County liable for its municipal policies that are alleged to have caused prosecutors in the Erie County District Attorney's Office ("DA's Office") to violate Plaintiffs' constitutional rights. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The County answered on March 30, 2023, raising twenty-seven affirmative defenses and raising its Crossclaim against the City Defendants. ECF No. 83. The complete recitation of the Crossclaim is as follows:

> Although the County is not aware of any culpable conduct on the part of the codefendants, any injuries or damages sustained by the Plaintiff as alleged in the Complaint, if not caused by reason of the negligence, carelessness, illegal, reckless, and/or other culpable conduct of the Plaintiff, were caused or contributed to by the negligence, wrongful, carelessness and/or other culpable conduct of the [City Defendants].
>
> Therefore, the County will be entitled to indemnification by and judgment against the above referenced co-defendants.

*Id.* ¶¶ 28–29. Although the language of the Crossclaim references only indemnification, the County's prayer for relief in its answers seek, *inter alia*, a judgment, "[a]warding contribution and/or indemnification to the County from co-defendants." *Id.* at 72.

The City Defendants answered Plaintiffs' Amended Complaints shortly thereafter and raised crossclaims of indemnification and contribution against the County. ECF No. 86. All but one of Plaintiffs' claims alleged in the Amended Complaints have since been dismissed, either due to voluntary dismissal (Counts IV and V), settlement with the City Defendants (Counts I-VI, VIII, and IX), or summary judgment (Count X). ECF Nos. 160, 206, 210.

Upon learning, in November 2024, that Plaintiffs had reached a tentative settlement agreement with the City Defendants, the County raised several concerns about how such a settlement would affect its defenses against Plaintiffs' claims and its Crossclaim. Plaintiffs had filed a stipulation of dismissal, to which the County was not a party and to which the County, in essence, objected. ECF No. 201. After hearing from the parties on these issues at a status conference on December 10, 2024, the Court directed Plaintiffs to file a motion to dismiss its claims against the City Defendants and set an expedited briefing schedule. *See* Fed. R. Civ. P. 41(a); ECF No. 203. In response to Plaintiffs' motion to dismiss, the County filed the Cross-Motion to Amend that is presently before the Court. ECF No. 208. In it, the County argues that it should be granted leave to amend its answers to include the following affirmative

defenses: (1) "Set-off"; (2) "N.Y. Gen. Oblig. Law § 15–108"; (3) "Apportionment of Liability"; and "N.Y. C.P.L.R. § 1601." *Id.* at 3–10.

The Court set another briefing schedule on the County's Cross-Motion to Amend and, disagreeing with the County's position that its Cross-Motion must be decided before Plaintiffs' claims against the City Defendants could be dismissed, issued an Order granting Plaintiffs' motion to dismiss its remaining claims against the City Defendants with prejudice. ECF Nos. 210–11. The Plaintiffs and the City Defendants each filed briefs in response to the County's Cross-Motion to Amend. ECF Nos. 209, 215–16. The County filed a reply on January 10, 2024. ECF No. 217.

Meanwhile, in keeping with the parties' discussion at the December 10 status conference, the City Defendants filed a motion for judgment on the pleadings on the County's Crossclaim against them under Rule 12(c) of the Federal Rules of Civil Procedure, or in the alternative a motion for summary judgment under Rule 56 (the Rule 12(c) Motion). ECF No. 213. The County filed a response on January 17, 2025, stating that it "does not oppose the City Defendants' motion" and contending that their motion to amend maintains the "status quo" as far as liability and exposure "initially contemplated" in its Crossclaim against the City Defendants. ECF No. 221 at 1. The City Defendants filed a reply on January 21, 2025, reiterating that the Court's disposition of its Rule 12(c) Motion is a separate question from whether the County should be granted leave to amend. ECF No. 222 at 3, 6.

## LEGAL STANDARDS

### I.    Motions for Judgment on the Pleadings

The City Defendants filed a motion for judgment on the pleadings or, in the alternative, summary judgment, seeking to dismiss the Crossclaim. Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a Rule 12(c) motion, the Court applies the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint (here, the Crossclaim) as true and drawing all reasonable inferences in favor of the non-moving party. *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004). A court analyzes whether the crossclaim has pleaded "'enough facts to state a claim to relief that is plausible on its face.'" *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

The court must limit itself to the pleadings and matters of which judicial notice may be taken when evaluating a motion under Rule 12(c). *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d. Cir. 1991). It is within a district court's discretion to convert a motion to dismiss or a motion for judgment on the pleadings to a motion for summary judgment when the parties have presented matters outside the pleadings, provided that the parties are given reasonable notice and an opportunity to present pertinent material before such a motion is converted. *Charles v. Cnty. of Nassau*, 116 F. Supp. 3d 107, 117–18 (E.D.N.Y. 2015); *see Best v. Bellevue Hosp. New York, NY*, 115

Fed. App'x. 459, 461 (2d Cir. 2004) (discussing conversion of motions pursuant to Rule 12(b)(6) and 12(c)).

## II.    Motions to Amend Pleadings

Rule 15 of the Federal Rules of Civil Procedure governs motions to amend. At this stage of the proceedings, a party may only amend a pleading with the opposing party's written consent or leave of court. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* "'[I]t is within the sound discretion of the district court to grant or deny leave to amend.'" *Pall Corp. v. Enters, Inc.*, No. 05CV5894JFBWDW, 2007 WL 9709768, at *1 (E.D.N.Y. 2007) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). Absent "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also McCarthy*, 482 F.3d at 200 ("A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.").

Upon a motion to amend its answer, a defendant need not prove that it would ultimately prevail at trial; however, amendment is futile where the proposed affirmative defense could not survive on its face. *See Pall Corp.*, 2007 WL 9709768, at *1 (citing *Godard v. Ala. Pilot, Inc.*, No. 06-CV-0267 (WS), 2007 U.S. Dist. LEXIS 933, at *6 (D. Ala. 2007) ("a finding of futility is, in effect, a legal conclusion that the

proposed defense would necessarily fail"); *Massie v. Bd. of Trs., Haywood Cmty. Coll.*, 357 F. Supp. 2d 878, 884 (W.D.N.C. 2005) (motion to amend answer to state new affirmative defense in FLSA case should be denied as futile only if amendment is "clearly insufficient or frivolous on its face")); *cf. Posadas de Mexico, S.A. de C.V. v. Dukes*, 757 F. Supp. 297, 302 (S.D.N.Y. 1991) ("[B]ecause there is no colorable merit to defendant['s] . . . proposed affirmative defense . . . , amendment of the answer to include that defense would constitute a futile endeavor."). "[A]ffirmative defenses, like claims, must comply with the requirement that such defense plausibly plead a legally valid defense." *New York v. Grand River Enters. Six Nations, Ltd.*, No. 14-CV-910A(F), 2020 WL 13252320, at *6 (W.D.N.Y. 2020) (citing *GEOMC Co., Ltd. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98 (2d Cir. 2019) (requiring affirmative defenses to comply with plausibility test established by *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## DISCUSSION

### I.    City Defendants' Rule 12(c) Motion as to the County's Crossclaim

The Court finds there is no need to look beyond the operative pleadings to resolve the City Defendants' motion as to the County's Crossclaim. Therefore, the Court analyzes said motion as a motion for judgment on the pleadings, and not as one for summary judgment (the Rule 12(c) Motion). *See* Fed. R. Civ. P. 12(c).

Turning to the merits thereof,[4] the Court construes the County's Crossclaim to, on its face, assert claims of indemnification and contribution against the City

---

[4] The County's response states it "does not oppose the City Defendants' Motion" to dismiss its Crossclaim. ECF No. 221 at 1. However, the Court elects to address the merits of the City Defendants'

Defendants. These causes of action are both considered "derivative" claims, meaning that a defendant alleges another is secondarily liable to it for harm the defendant is deemed to have caused the plaintiff. *See Trisura Specialty Ins. Co. v. Robinson*, No. 22CV3216KAMMMH, 2023 WL 4539843, at *3 (E.D.N.Y. 2023), *report and recommendation adopted*, No. 22CV3216KAMMMH, 2023 WL 4940170 (E.D.N.Y. 2023) ("The traditional 'derivative' claims are indemnification, contribution and subrogation." (quotation omitted)). Derivative claims such as contribution and indemnification thus operate only on liability the pleading defendant faces. *See, e.g.*, *Wyatt v. City of Lackawanna*, No. 1:17-CV-446-WKS, 2021 WL 848932, at *2 (W.D.N.Y. 2021) ("[B]ecause the Plaintiff's Section 1983 claims against the [defendants] have been dismissed, there is no basis for liability. The cross-claims based upon Section 1983 liability are therefore dismissed without prejudice." (citation omitted)). Therefore, at this stage of Plaintiffs' cases, the County's Crossclaim, if viable, would operate on the remaining potential liability that the County faces on Plaintiffs' *Monell* claims (Count VII).

A United States Supreme Court decision that has come to be known simply as "*Monell*" ruled that municipalities may be held liable as "persons" under 42 U.S.C. § 1983 when a plaintiff establishes that a municipal custom, policy, practice or usage of the municipality caused their injury. *Monell*, 436 U.S. at 690–91; *see Connick v. Thompson*, 563 U.S. 51, 60–61 (2011) (municipalities can be held liable under § 1983

---

Rule 12(c) Motion. *See Thakoopersaud v. Nat'l City Bank*, No. 12CV3096CBAVMS, 2013 WL 12358477, at *2 (E.D.N.Y. 2013) ("[T]he Second Circuit has held that an unopposed motion for judgment on the pleadings should be decided on its merits." (citing *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000))).

for "practices so persistent and widespread as to practically have the force of law");
42 U.S.C. § 1983 (providing that "person[s]" acting under the color of state law shall
be liable for depriving another of their constitutional rights). *Monell*, in other words,
created a means by which a municipality can be subject to liability under § 1983. *See
Monell*, 436 U.S. at 690–91; *cf. Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir.
2006) ("*Monell* does not provide a separate cause of action for the failure by the
government to train its employees; it *extends* liability to a municipal organization
where that organization's failure to train, or the policies or customs that it has
sanctioned, led to an independent constitutional violation.").

To establish *Monell* liability, a plaintiff cannot merely establish that the
municipality employed a tortfeasor; the plaintiff must establish that the
municipality's own acts or inaction caused its employees to violate plaintiff's
constitutional rights. *See Monell*, 436 U.S. at 691–93 (interpreting § 1983 to "impose[]
liability on a government that, under color of some official policy, 'causes' an employee
to violate another's constitutional rights" and expressly ruling that § 1983 does not
impose *respondeat superior* liability).

Although there is no binding precedent on this issue, district "courts in this
Circuit have widely held that there is no right to indemnification or contribution
under Section 1983." *Wyatt*, 2021 WL 848932, at *2 (dismissing crossclaims seeking
"indemnity and/or contribution" and collecting cases); *see, e.g., Castro v. Cnty. of
Nassau*, 739 F. Supp. 2d 153, 184 (E.D.N.Y. 2010) ("To the extent the County seeks
indemnification and contribution on plaintiff's § 1983 claims, they cannot do so as a

matter of law. No right to contribution exists under § 1983. Nor is there a federal right of indemnification under the statute."). As several district courts have echoed, "the '[p]rinciples of contribution and indemnity are not of assistance to federal civil rights plaintiffs in pursuing their claims, and may inject issues into the litigation which could interfere with the prompt and orderly trial of such cases. [C]ommon law or statutory indemnity and contribution principles serve different interests than the constitutional values sought to be vindicated in a § 1983 action.'" *Thomas v. City of Troy*, 293 F. Supp. 3d 282, 302 (N.D.N.Y. 2018), *on reconsideration sub nom.*, *Thomas v. Mason*, No. 1:17-CV-626 (DJS), 2019 WL 6111572 (N.D.N.Y. 2019) (quoting *Koch v. Mirza*, 869 F. Supp. 1031, 1041 (W.D.N.Y. 1994) (alterations in original and citation omitted) (collecting cases)).

    In addition, and as the next section contemplates further, if Plaintiffs' cases proceed to trial and the County is found liable on Plaintiffs' *Monell* claims, the County would be liable for its own actions, not those of the City Defendants. *See Thomas*, 293 F. Supp. 3d at 302; *cf. City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("*Monell*'s rejection of *respondeat superior*, and its insistence that local governments could be held liable only for the results of unconstitutional governmental 'policies,' arose from the language and history of § 1983."). Therefore, the County's Crossclaim for contribution and indemnification from the City Defendants is dismissed on the pleadings. *See* Fed. R. Civ. P. 12(b)(6), 12(c); *Ziemba*, 366 F.3d at 163.

## II.    County's Cross-Motion to Amend its Answers

Because the County now faces potential liability on only *Monell* claims, the Court analyzes the viability of its proposed amended affirmative defenses in the context of 42 U.S.C. § 1983. The County seeks to assert four additional affirmative defenses to its answers filed in March 2023, arguing that they are now needed as a consequence of the Plaintiffs' settlement with the City Defendants at the end of 2024. ECF No. 208-1 at 5, 10–11.

First, the County sets forth a theory of "setoff," alleging that it "is entitled to a setoff of money damages awarded to the Plaintiff against it, if any, by the Plaintiff's settlement agreement with the City Defendants." ECF No. 208-3 ¶ 36; *see* ECF Nos. 208-1 at 5–6, 208-3 ¶¶ 28–36. Second, the County contends that N.Y. Gen. Oblig. Law § 15–108 applies to "confirm the County's rights to setoff" and "limit[]" Plaintiffs' damages by the amount of their settlement with the City Defendants. ECF Nos. 208-1 at 7, 208-3 ¶ 40. The County also contends that N.Y. C.P.L.R. § 1601 is a "natural corollary" to its other proposed affirmative defenses and operates to "limit" its liability to Plaintiffs. ECF Nos. 208-1 at 9–10, 208-3 ¶ 42. Finally, the County seeks to add an affirmative defense for "apportionment of liability," alleging that "[a]s a consequence of [Plaintiffs'] Settlement Agreement, [it] is entitled to apportionment of fault and liability, if any, between it and any other tortfeasor." ECF Nos. 208-1 at 8–9, 208-3 ¶ 38.

Before turning to the merits of these proposed amendments, the Court addresses Plaintiffs' threshold position that the Court should deny leave to add these

affirmative defenses because the County has failed to "show good cause for its delay in moving to amend." ECF No. 216 at 5. The Court agrees, at least in part, with Plaintiffs that their settlements with the City Defendants did not trigger the availability to plead all the proposed theories regarding allocations of fault or limitations damages that the County only recently sought to add. *Cf.* ECF Nos. 208-1 at 10–11 (County arguing otherwise); ECF No. 221 at 1, 3–4 (County's response to City Defendants' Rule 12(c) Motion arguing it should be granted leave to amend to "maintain the status quo" of limiting its "exposure" as was initially contemplated by its Crossclaim). That said, assertion of such concepts should not come as a surprise, and it is plain from the operative Amended Complaints that parsing out the actions and responsibility of the City Defendants and the County was thoroughly contemplated in these actions. Moreover, while discovery did close over seven months ago, and we are past summary judgment on Plaintiffs' claims, there was no motion practice pertaining to any crossclaims in these cases until the instant Rule 12(c) Motion, filed on December 20, 2024, and the pretrial orders in Plaintiffs' cases were issued less than a week ago. ECF Nos. 213, 220.

In light of these circumstances, the Court does not find that the County's delay in seeking amendment of its answers is "undue." *Pall Corp.*, 2007 WL 9709768, at *1; *see Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 97 (S.D.N.Y. 2010) ("[U]nder the liberal standard of Rule 15(a), leave to amend may be appropriate at any stage of litigation."); 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1488 at 652–57 (2d ed. 1990) (noting that courts have granted

14

leave to amend "following discovery; after a pretrial conference; at a hearing on a motion to dismiss or for summary judgment; after a motion to dismiss has been granted but before the order of dismissal has been entered; when the case is on the trial calendar and has been set for a hearing by the district court; at the beginning, during, and at the close of trial; after a judgment has been entered; and even on remand following an appeal"); *cf. Smith v. City of New York*, 611 F. Supp. 1080, 1093 (S.D.N.Y. 1985) (where a party seeks amendments "literally on the eve of trial . . . [it] bears a heavy burden of persuasion to explain and justify the delay"). Notably, Plaintiffs did not argue that they are unduly prejudiced by this late amendment. *See Pall Corp.*, 2007 WL 9709768, at \*1; ECF No. 216.

On the merits, the Court finds that only the concept of "apportionment of fault or responsibility" has a legally sufficient basis to warrant amendment of the County's answers. The County's other proposed affirmative defenses, as pleaded, otherwise fail to state colorable, legally cognizable defenses and, therefore, amendment to assert them is futile.

The Second Circuit's opinion in *Restivo v. Hessemann* directs the Court's assessment of the County's proposed affirmative defenses. 846 F.3d 547 (2017). One of the several issues addressed in *Restivo* was the defendant's argument that the damages he owed to plaintiffs should be set off by the amount the plaintiffs received in a settlement with a former co-defendant. *See id.* at 582–83. Three rulings are of particular relevance here: (1) federal law does not provide a sufficient basis on which to prescribe the "effect of a settlement on the damage award against a non-settling

defendant in a Section 1983 case," thus necessitating review of state law, *id.* at 582; (2) N.Y. Gen. Oblig. Law § 15–108, providing "for either a pro tanto (dollar for dollar) setoff or a setoff of the settling tortfeasor's equitable share of damages, whichever is greater, is inconsistent with federal policy underlying Section 1983," and thus is not a legally cognizable basis for setoff, *id.* at 585; and (3) federal common law establishes that a tortfeasor's damages owed in a § 1983 action may be reduced by "a settling tortfeasor's proportionate fault," *id.* at 586.

### A. N.Y. Gen. Oblig. Law § 15–108

As an initial matter, *Restivo* is clear that N.Y. Gen. Oblig. Law § 15–108 cannot, as a matter of law, serve as the legal basis for reducing a defendant's damages obligation by the amount of a settlement with a former co-defendant in a § 1983 action. *See id.* at 584–86. This is because N.Y. Gen. Oblig. Law § 15–108 is "inconsistent with the deterrent goal of Section 1983, as it allows nonsettling tortfeasors to bear less than the full cost of the harm they inflicted if settling tortfeasors settle for more than their proportional share of liability." *Id.* at 586. The Second Circuit went on to note, "[a] rule that removes the burden of damages from the wrongdoer certainly conflicts with the policy of deterrence." *Id.* (quotation omitted). Contrary to the County's arguments, this holding was made irrespective of the particular facts of the *Restivo* matter and applies here as well.[5] *Id.* (ruling that a pro tanto setoff of a co-defendant's settlement is inconsistent with § 1983, and then

---

[5] In support of its proposed amendments regarding N.Y. Gen. Oblig. Law § 15–108 and "setoff," the County cites district court case law predating *Restivo* that applied N.Y. Gen. Oblig. Law § 15–108 in § 1983 cases. ECF Nos. 208-1 at 5–7, 211 at 5–6. Nevertheless, *Restivo*, a 2017 case, clarified the Second Circuit's view on this issue and is controlling on the Court.

turning to whether the individual detective-defendant was "entitled to a proportionate reduction" of plaintiffs' damages award against him); *see* ECF No. 211 at 5–6 (County's reply brief). Consequently, the County's proposed amendment to add an affirmative defense to Plaintiffs' *Monell* claims asserting N.Y. Gen. Oblig. Law § 15–108 is denied as futile.

### B. "Setoff" for Plaintiffs' Settlement with City Defendants

Though the County's motion papers are less precise as to what type of "setoff" it argues it is entitled to, the County's proposed amended answers specifically allege that its right to "setoff" is based on a purported entitlement "to a setoff of money damages awarded to the Plaintiff against it, if any, *by the Plaintiff's settlement agreement with the City Defendants.*" ECF No. 208-3 ¶ 36 (emphasis added); *see* ECF Nos. 208-1 at 5–6, 208-3 ¶¶ 28–36 (alleging facts limited to Plaintiffs' settlement with City Defendants); *cf.* ECF No. 221 at 3 ("The County's proposed amendments merely seek to offset its liability relative to the settlement between the City Defendants and Plaintiffs.").

While *Restivo* authorizes setting off a defendant's damages owed by other responsible parties' proportional share of fault, as analyzed further below, it clearly holds that there is no lawful basis entitling a defendant in a § 1983 action to a dollar-for-dollar setoff of the amount of a settling defendant's settlement agreement. *See Restivo*, 846 F.3d at 582–86 (holding federal law is deficient on the topic and, as discussed, N.Y. Gen. Oblig. Law § 15–108 cannot, as a matter of law, provide the basis for such a setoff because it is "inconsistent with the deterrent goal of Section 1983").

The County cites no other legal basis to support its entitlement to a "setoff" for the amount of Plaintiffs' settlement with the City Defendants, and, as pleaded, the County only contemplates the value of each Plaintiff's $4.35 million settlement as the amount by which a damages award should be setoff. *See* ECF Nos. 208-1 at 7, 208-3 ¶¶ 28–36 (proposed amended affirmative defense of "setoff", invoking only Plaintiffs' settlement agreements as the amount for setoff); *see also* ECF No. 208-3 ¶ 40 (contending that N.Y. Gen. Oblig. Law § 15–108 applies to "confirm the County's rights to setoff" and "limit" Plaintiffs' damages by the amount of their settlement with the City Defendants). Thus, as pleaded, the County's proposed affirmative defense for "setoff" is denied as futile.

### C. Apportionment of Fault

Although a reduction of a non-settling defendant's damages owed to a plaintiff *by the amount of a co-defendant's settlement* is not a legally cognizable defense to a claim pursuant to § 1983, the Second Circuit's decision in *Restivo* does support that a defendant in a § 1983 action should be financially responsible for its fault, and only its fault, in causing a plaintiff's injuries.

This distinction is warranted because the amount of a settlement may not reflect at all, let alone be necessarily tied to, the settling defendant's "fault" in causing a plaintiff's injuries. *See Restivo*, 846 F.3d at 582–86 (holding N.Y. Gen. Oblig. Law § 15–108 is inconsistent with the policy behind § 1983 because "it allows nonsettling tortfeasors to bear less than the full cost of the harm they inflicted if settling tortfeasors settle for more than their proportional share of liability"). In an opinion

18

that was repeatedly and favorably cited by the Second Circuit in *Restivo*, the Fifth

Circuit Court of Appeals observed:

> The philosophy of settlements does not encompass, save in infrequent
> cases, elements of logic or fairness. The dollar figure is not a precise
> mathematically derived figure; rather it represents a melange of factors
> including the parties' estimates of damages, the probability of recovery,
> costs of litigation, and preferences of the parties for avoiding
> uncertainty."

*Dobson v. Camden*, 705 F.2d 759, 768 (5th Cir. 1983), *on reh'g*, 725 F.2d 1003 (5th

Cir. 1984). Moreover, as is the case in Plaintiffs' actions here, a plaintiff's settlement

often provides that the settling defendant is not admitting to liability.[6] ECF No. 213-

2 at 2. In short, the amount of a former co-defendant's settlement is not

interchangeable with proving proportional fault for a plaintiff's damages at trial.

Contrary to Plaintiffs' arguments in response to the County's Cross-Motion to

Amend, *Restivo* reinforces that proportional fault is available to a non-settling

defendant in § 1983 cases assuming the non-settling defendant satisfies its burden to

prove such at trial. *Restivo*, 846 F.3d at 583–87; *see Red Tree Invs., LLC v. Petroleos*

*de Venezuela, S.A.*, 82 F.4th 161, 171 (2d Cir. 2023) ("The burden of proof to establish

an affirmative defense . . . falls on the defendant."); *Dobson*, 705 F.2d at 770 ("[W]e

would have no problem in holding that the party desiring a reduction in judgment on

account of a settlement has the burden of proving its entitlement to that reduction by

showing another party shares responsibility for the injuries and submitting jury

issues on relative fault/causation.").

---

[6] Additionally, Plaintiffs settled with the "City Defendants" as a group here, and their settlement
agreements do not specify any particular actions or omissions by any individual parties. *See* ECF No.
213-2 at 1–6.

A further clarifying look at *Restivo* is warranted. In *Restivo*, two plaintiffs, who each spent eighteen years in prison on rape and murder convictions that were later vacated, sued a detective and a hair-evidence technician, under § 1983 and for malicious prosecution, on the basis of two shared theories—that the detective suppressed exculpatory evidence and/or that the detective, independently or with the assistance of the technician, planted hairs found in one of the plaintiff's cars. *Restivo*, 846 F.3d at 558. The jury found that only the detective was liable under § 1983 and for malicious prosecution. *Id.* A special verdict was not requested. *Id.* After a separate damages trial, the jury awarded each plaintiff $18 million in damages pursuant to the detective's liability under § 1983. *Id.* The detective-defendant argued on appeal that, *inter alia*, the district court erred in denying his post-damages-trial request to offset the plaintiffs' damages awards against him by the plaintiffs' pretrial settlement with the State of New York on related state law claims. *Id.* at 581–82.

After holding that (1) "federal statutory law is silent on the question of the effect of a settlement on the damage award against a non-settling defendant in a Section 1983 case, and because federal common law is not clear on this point," and (2) that application of N.Y. Gen. Oblig. Law § 15–108 to § 1983 actions is inconsistent with federal policy underlying § 1983, the Second Circuit proceeded to assess "whether the district court was correct in applying a policy of proportional reduction based on the nonsettling party's proportionate share of liability." *Id.* at 586.

In *Restivo*, the Second Circuit reasoned — not that the concept of proportioning fault amongst tortfeasors was precluded as a matter of law in § 1983 cases — but that

there was no practical way to reduce the detective's damages by the purported
"proportionate fault" of the State of New York in that case for two reasons relevant
to this analysis.[7] *See id.* at 586–87. First, the detective-defendant introduced no
evidence of the State of New York's fault, thus the jury had no occasion to determine
additional parties' relative responsibility for "plaintiffs' incarcerations." *Id.* Second,
"once the jury had found at the liability phase that only [the detective] was liable to
[plaintiffs] then, at the damages phase, all that the jury considered was the amount
of damages that [the detective], *as an individual,* owed [plaintiffs] as a result of their
eighteen-year incarceration," and "[t]here [was] no known full amount of loss [t]here."
*Id.* at 583–84, 586–87.

In objecting to the County's Cross-Motion to Amend, Plaintiffs here argue that
the Second Circuit, in *Restivo* or otherwise, has not explicitly addressed whether
liability under § 1983 is joint and several, and they cite to district court cases from
this district, predating *Restivo,* and case law from the Sixth, Seventh, and Eleventh
Circuit Courts of Appeals that hold defendants are jointly and severally liable under
§ 1983 and that apportionment of damages was reversible error. ECF No. 216 at 8–9
(citing *Weeks v. Chaboudy,* 984 185, 188 (6th Cir. 1993); *Finch v. City of Vernon,* 877
F.2d 1497, 1502–03 (11th Cir. 1989); *Watts v. Laurent,* 774 F.2d 168, 179 (7th Cir.
1985)). Despite the holdings of these other Circuits, the Court concludes that the
Second Circuit's decision in *Restivo,* though falling short of explicitly mentioning

---

[7] The third reason provided by the Second Circuit that, practically speaking, frustrated the application of proportional fault in that case was that the State of New York is not a viable defendant in a § 1983 action. *Restivo,* 846 F.3d at 583.

"joint and several liability," runs counter to the application of joint and several liability to Plaintiffs' *Monell* claims.

The Second Circuit held that "a nonsettling party *is entitled to* a setoff only of a settling tortfeasor's proportionate fault," noting that "'[e]lemental notions of fairness dictate that one who causes a loss should bear the loss.'" *Restivo*, 846 F.3d at 586 (emphasis added) (quoting *Owen v. City of Independence*, 445 U.S. 622, 654 (1980)); *see also Dobson*, 705 F.2d at 769 ("The fairness of a tortfeasor paying an injured party rests not solely on the fact that the injured party deserves compensation, but also on the fact that the tortfeasor deserves to pay."). The Second Circuit then contemplated under what circumstances apportioning damages could have been feasible – a moot analysis if such apportionment was barred as a matter of law in § 1983 cases due to defendants' joint and several liability. *See Restivo*, 846 F.3d at 586–87 (explaining that defendant's evidence and the jury's decisions in the separate liability and damages trials could not, as a practical matter, facilitate apportioning damages attributable to a settling co-defendant's fault). *Restivo*, entitling defendants in a §1983 action to a proportional reduction in total damages owed based on others' proven fault, is binding authority on this Court.

Moreover, the Fifth Circuit, as favorably relied upon by the Second Circuit in *Restivo*, squarely and comprehensively addressed the applicability of joint and several liability in § 1983 actions. The Fifth Circuit stated, "joint and several liability does not mesh well with section 1983's goals of fairness and deterrence. Under both fairness and deterrence theories we found that fault or causation should be

apportioned among the parties and each party should be responsible for a proportional share of the damages." *Dobson*, 705 F.2d at 767–78. The Fifth Circuit reasoned that "[t]he key principle in deterrence is the economic idea of internalizing the costs of an action to the party that made the decision to act. . . . It further follows that each party should internalize the costs to the extent that that party caused them," and that "[t]he fairness rationale places financial responsibility on a tortfeasor out of a moral feeling that the tortfeasor should pay for the damage he, she, or it caused. Accordingly, if a tortfeasor was only a partial cause of an injury, that tortfeasor should pay for only a part of the damage." *Id.* The Court finds the reasoning of *Dobson* persuasive and consistent with Second Circuit case law.

In sum, the Court grants the County's Cross-Motion to Amend to the extent it seeks to add the affirmative defense of "Apportionment of Fault/Responsibility for Plaintiff's Damages."

### D. N.Y. C.P.L.R. § 1601

The Court now turns to the County's last proposed amendment. Whether N.Y. C.P.L.R. § 1601 provides a legally cognizable basis on which to limit a defendant's damages in a § 1983 action appears to be an issue of first impression. N.Y. C.P.L.R. § 1601(1) provides:

> Notwithstanding any other provision of law, when a verdict or decision in an action or claim for personal injury is determined in favor of a claimant in an action involving two or more tortfeasors jointly liable or in a claim against the state and the liability of a defendant is found to be fifty percent or less of the total liability assigned to all persons liable, the liability of such defendant to the claimant for non-economic loss shall not exceed that defendant's equitable share determined in accordance with the relative culpability of each person causing or

contributing to the total liability for non-economic loss; provided, however that the culpable conduct of any person not a party to the action shall not be considered in determining any equitable share herein if the claimant proves that with due diligence he or she was unable to obtain jurisdiction over such person in said action (or in a claim against the state, in a court of this state); and further provided that the culpable conduct of any person shall not be considered in determining any equitable share herein to the extent that action against such person is barred because the claimant has not sustained a "grave injury" as defined in section eleven of the workers' compensation law.

N.Y. C.P.L.R. § 1601(1).

However, *Restivo* provides the framework by which the Court must analyze this issue — an analysis in which the County does not engage in support of its Cross-Motion to Amend. Pursuant to 42 U.S.C. § 1988(a), which outlines jurisdiction over § 1983 claims, state law is only applicable to the extent there are gaps in federal law, and the state law is not inconsistent with federal law. *Restivo*, 846 F.3d at 582; *see* 42 U.S.C. § 1988(a); *Valley Disposal Inc. v. Cent. Vt. Solid Waste Mgmt. Dist.*, 113 F.3d 357, 362 (2d Cir. 1997) ("Section 1983 . . . provides that where there are gaps in federal law with respect to suitable remedies for civil rights violations, the court should look to state law insofar as it is not inconsistent with federal law.").

The County argues that N.Y. C.P.L.R. § 1601 "is a natural corollary to the inclusion of apportionment of liability" and would provide that "[s]hould a jury apportion less than 50% of liability to the County, the County would be required to pay only its proportionate share of Plaintiffs' noneconomic damages." ECF No. 208-1 at 9–10 (further arguing that N.Y. C.P.L.R. § 1601 "would merely reinforce the proportionate share rule that the Second Circuit has declared applicable in § 1983 actions"). As discussed, federal law that is controlling on this Court is clear that the

County, as a defendant in a § 1983 action, is entitled to limit total-loss damages owed to Plaintiffs by the proportionate fault of other tortfeasors, as determined at trial. *See, e.g., Restivo*, 846 F.3d at 586. Such proportioning is not limited to economic damages. *See id.* Therefore, there is no basis to look to state law, and invocation of New York state law to establish a basis for proportional fault as to non-economic damages is not appropriate. *See id.* at 582; 42 U.S.C. § 1988(a); *Valley Disposal Inc.*, 113 F.3d at 362. Amending the County's answers to include an affirmative defense of N.Y. C.P.L.R. § 1601 is, thus, denied as futile.

## ORDER

For the foregoing reasons,

IT IS HEREBY ORDERED that the City Defendants' Rule 12(c) Motion as to the County's Crossclaim is GRANTED [ECF No. 213]; and it is further

ORDERED that the County's Cross-Motion to Amend its Answer [ECF No. 208] is GRANTED to the extent it seeks to add the affirmative defense of "Apportionment of Fault/Responsibility for Plaintiff's Damages" based upon federal common law as discussed above, and is otherwise DENIED; and it is further

ORDERED that, given the fast-approaching trial dates, the County's Amended Answers, asserting the additional affirmative defense of Appointment of Fault/Responsibility for Plaintiff's Damages and removing its Crossclaim, shall be filed and served on Plaintiffs on or before January 27, 2025; and it is further

ORDERED that the Clerk's Office shall terminate the City Defendants as parties in these two cases, leaving the County as the only active defendant.

SO ORDERED.

Dated:      January 22, 2025
            Rochester, New York

HON. MEREDITH A. VACCA
UNITED STATES DISTRICT JUDGE