# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DARRYL BOYD, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | **Case No. 1:22-cv-519** |
| | ) | |
| - against - | ) | |
| | ) | |
| THE CITY OF BUFFALO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| JOHN WALKER, JR., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | **Case No. 1:22-cv-520** |
| | ) | |
| - against - | ) | |
| | ) | |
| THE CITY OF BUFFALO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' PROPOSED JURY INSTRUCTIONS

Pursuant to this Court's January 16, 2025 Order (Dkt. Nos. 220 and 214), Plaintiffs Darryl Boyd and John Walker, Jr., propose the following jury instructions. Proposed Jury Instruction Nos. 1-6 are preliminary instructions to be given at the beginning of trial, while Proposed Jury Instruction Nos. 7-16 would be given at the close of evidence.

Plaintiffs submit these proposed instructions before the Court's rulings on, among other things, motions *in limine*, deposition designations, and evidentiary objections, and without knowing precisely which witnesses will be called at trial. By submitting these proposed instructions, Plaintiffs do not waive any of their objections or arguments. Plaintiffs reserve the right to request additional or modified jury instructions as may become necessary based on the presentation of the evidence and/or the proposed jury instructions submitted by Defendant County of Erie (the "County").

*Beginning of Trial*

### PROPOSED JURY INSTRUCTION NO. 1[1]

### Opening Instructions

We are about to begin the trial of the case you heard about during the jury selection.  Before the trial begins, I am going to give you instructions that will help you to understand what will be presented to you and how you should conduct yourself during the trial.

During the trial you will hear me use a few terms that you may not have heard before.  Let me briefly explain some of the most common to you.  The party who sues is called a plaintiff.  In this action, the plaintiff is [*Mr. Darryl Boyd/Mr. John Walker, Jr.*].  The party being sued is called the defendant.  The defendant in this action is the County of Erie, which stands in the shoes of the Erie County District Attorney's Office.

You will sometimes hear me refer to "counsel."  "Counsel" is another way of saying "lawyer" or "attorney."  I will sometimes refer to myself as the "Court."

When I "sustain" an objection, I am excluding that evidence from this trial for a good reason.  When you hear that I have "overruled" an objection, I am permitting that evidence to be admitted.

When I say "admitted into evidence" or "received into evidence," I mean that this particular statement or the particular exhibit may be considered by you in making the decisions you must make at the end of the case.

---

[1]  Pursuant to this Court's Order (Dkt. Nos. 220; 214), authority for each Proposed Instruction follows each instruction.  However, for ease of the Court's review, where certain instructions require more specific authority, that authority is inserted in a footnote following the proposed proposition.

By your verdict, you will decide disputed issues of fact. I will decide all questions of law that arise during the trial. Before you begin your deliberation at the close of the case, I will instruct you in more detail on the law that you must follow and apply.

Because you will be asked to decide the facts of this case, you should give careful attention to the testimony and evidence presented. Keep in mind that I will instruct you at the end of the trial about determining the credibility or "believability" of the witnesses. During the trial you should keep an open mind and should not form or express any opinion about the case until you have heard all of the testimony and evidence, the lawyers' closing arguments, and my instructions to you on the law.

While the trial is in progress, you must not discuss the case in any manner among yourselves or with anyone else. In addition, you should not permit anyone to discuss the case in your presence.

From time-to-time during the trial, I may make rulings on objections or motions made by the lawyers. It is a lawyer's duty to object when the other side offers testimony or other evidence the lawyer believes is not admissible. You should not be biased or partial against a lawyer or the lawyer's client because the lawyer has made objections. If I sustain or uphold an objection to a question that goes unanswered by the witness, you should not draw any inferences or conclusions from the question. You should not infer or conclude from any ruling or other comment I may make that I have any opinions on the merits of the case favoring one side or the other. I do not favor one side or the other.

The lawyers are not allowed to speak with you during this case. When you see the lawyers at a recess or pass them in the halls and they do not speak to you, they are not being rude or unfriendly; they are simply following the law.

During the trial, it may be necessary for me to talk with the lawyers out of your hearing about questions of law or procedure.  Sometimes, you may be excused from the courtroom during these discussions.  I will try to limit these interruptions as much as possible, but you should remember the importance of the matter you are here to determine and should be patient even though the case may seem to go slowly.

**Authority**:    O'Malley, Grenig & Lee, 3 *Federal Jury Practice and Instructions* § 103:01 (6th ed.) (hereinafter *Federal Jury Practice and Instructions*) (modified).

**PROPOSED JURY INSTRUCTION NO. 2**

**Order of the Trial**

The case will proceed as follows:

First, the lawyers for each side may make opening statements.  What is said in the opening statements is not evidence but is simply an outline or summary to help you understand what each party expects the evidence to show.  A party is not required to make an opening statement.

After the opening statements, [*Mr. Boyd/Mr. Walker, Jr.*] will present evidence in support of his claims and the County's lawyers may cross-examine the witnesses.  At the conclusion of [*Mr. Boyd's/Mr. Walker's*] case, the defendant may introduce evidence and [*Mr. Boyd's/Mr. Walker's*] lawyers may cross-examine the witnesses.  The defendant is not required to introduce any evidence or to call any witnesses.  If a defendant introduces evidence, the plaintiff may then present rebuttal evidence.

After the evidence is presented, the parties' lawyers make closing arguments explaining what they believe the evidence has shown.  What is said in the closing arguments is not evidence.

Finally, I will instruct you on the law that you are to apply in reaching your verdict.  You will then decide the case.

**Authority**:    *Federal Jury Practice and Instructions* § 101.02.

## PROPOSED JURY INSTRUCTION NO. 3

### Claims and Defenses

[*Darryl Boyd/John Walker, Jr.*] brings this case against the County of Erie. [*Mr. Boyd/Mr. Walker*] was convicted of murder at a trial in Buffalo, New York, held in April 1977. He spent many years thereafter in prison and on parole, until his conviction was vacated and the charges against him were dismissed. He claims that he was convicted due to misconduct by one or more prosecutors in the Erie County District Attorney's Office, which denied him his constitutional right to a fair trial. He seeks to hold the County of Erie responsible because its policies, customs, and practices are what caused the prosecutor or prosecutors to violate his rights. He seeks money damages for his loss of liberty, mental and emotional trauma, and other injuries that he contends he suffered as a result of the prosecutor's misconduct.

You are going to hear many legal terms and principles during this trial. At the end of the trial, I will give you my legal charge or instructions for you to apply in deciding whether [*Mr. Boyd/Mr. Walker*] has proven his case and, if so, the amount of damages he should recover. Right now, I will explain enough so that the evidence you are about to hear from the witnesses will make sense to you.

Under the United States Constitution, and under the laws of New York State and all the states in our Union, it is the government that brings criminal charges against individual defendants. The government bears the burden of proving those charges. It must do so, in a criminal case, beyond a reasonable doubt. A criminal defendant is presumed innocent, need not testify, and need introduce no evidence. The burden is entirely on the government to prove his or her guilt. A conviction can only occur if the jurors—12 of them—are unanimous. If even one juror has a reasonable doubt, the jury may not convict.

Back in 1963, the United States Supreme Court handed down a famous decision called *Brady v. Maryland.*  In that decision, the Supreme Court made it the law of the land that in any criminal case, the prosecution must disclose to the defense all evidence that is favorable to the defendant.  The *Brady* rule is based on the constitutional requirement of due process and it exists to ensure that criminal defendants are not deprived of a fair trial.[2]  "Favorable evidence" includes (1) evidence tending to establish that the defendant did not commit the crime—evidence that is also known as "exculpatory" evidence;[3] (2) evidence that could be used by the defendant to undermine a prosecution witness's credibility;[4] and (3) evidence indicating that someone else may have committed the crime.[5]  Favorable evidence is "material" if there is a reasonable probability that, had the evidence been provided to the criminal defendant, the result of his criminal trial would

---

[2]  *See, e.g.*, *United States v. Bagley*, 473 U.S. 667, 675 (1985) ("The *Brady* rule is based on the requirement of due process.  Its purpose is … to ensure that a miscarriage of justice does not occur.  Thus, the prosecutor is … required to … disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial …").

[3]  *E.g.*, *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (evidence which, if made available, "would tend to exculpate" a criminal defendant must be turned over).

[4]  *Giglio v. United States*, 405 U.S. 150, 154 (1972) ("When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within [the *Brady*] rule." (internal quotation marks omitted)); *see also, e.g.*, *Smith v. Cain*, 132 S. Ct. 627, 630 (2012) (statements contradicting testimony of the only witness linking the criminal defendant to the crime are favorable under *Brady*); *United States v. Mahaffy*, 693 F.3d 113, 131 (2d Cir. 2012) ("*Brady* applies to material that would be an effective tool in disciplining witnesses during cross-examination." (internal quotation marks omitted)).

[5]  *See, e.g.*, Hearing Transcript at 30:11-13, *Bozella v. County of Dutchess*, No. 10-cv-4917 (S.D.N.Y. Sept. 23, 2014), ECF No. 289("The cases are legion that the existence of an alternative suspect is favorable to defendant and has to be disclosed." (citing cases)); *Boyette v. LeFevre*, 246 F.3d 76, 91 (2d Cir. 2001) (evidence was "classic Brady material" because it "could have helped the defense suggest an alternative perpetrator").

be different.[6]  A prosecutor's failure to produce material evidence favorable to the criminal defendant violates the Constitution, irrespective of whether the prosecutor acted in good faith or bad faith.[7]

The importance of the *Brady* rule stems from the U.S. Supreme Court's recognition that prosecutors play more than one role in our criminal justice system—prosecutors are not only advocates for the government, but also agents of the government.  As agents of the government, prosecutors have an obligation to help ensure that criminal defendants receive a fair trial.  Though disclosing evidence favorable to the accused necessarily weakens a prosecutor's case, the Supreme Court explained that "[s]ociety wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly …. [The government] wins its point whenever justice is done its citizens in the courts."[8]

***Claims of [Darryl Boyd/John Walker, Jr.]***

In this case, [*Mr. Boyd/Mr. Walker*] contends that the Erie County District Attorney's office violated his constitutional right to a fair trial by failing to disclose to his lawyer favorable evidence under the rule of *Brady*: evidence tending to show that he was innocent or that a third party committed the crime, and evidence tending to show that the prosecution's witnesses were

---

[6] *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) ("*Bagley*'s touchstone of materiality is a 'reasonable probability' of a different result, and the adjective is important.  The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.  A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression undermines confidence in the outcome of the trial." (internal quotation marks omitted)).

[7] *E.g.*, *Brady*, 373 U.S. at 87 ("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

[8] *Id.* at 87–88 (internal quotation marks omitted).

not credible or reliable. He contends that these failures to disclose favorable evidence were a substantial cause of his conviction and imprisonment.

Further, [*Mr. Boyd/Mr. Walker*] contends that the Erie County District Attorney's office also violated his constitutional right to a fair trial by engaging in misconduct in its closing argument to the jury, what we commonly call summation. There are rules governing what a lawyer, including a prosecutor, may and may not do in summation. I will explain them to you at the end of the case in my legal instructions. Your job will be to determine whether, under those rules, the prosecutor's summation was so unfair that it is likely to have caused [*Mr. Boyd/Mr. Walker*] to be convicted. In making this determination, you must consider the cumulative impact of any summation misconduct you find to have occurred, and any violations of the *Brady* rule you find to have occurred.

[*Mr. Boyd's/Mr. Walker's*] claim is against Erie County. Therefore, he must prove that a policy, custom, or practice of Erie County was a substantial factor in causing the violation or violations of his constitutional rights. The chief official who makes policy for Erie County related to the prosecution of criminal cases is the Erie County District Attorney. So what you really will be judging is whether the policies, customs, or practices of the Erie County District Attorney's Office caused the prosecutor in [*Mr. Boyd's/Mr. Walker's*] criminal trial to violate his constitutional rights.

There is one further claim that [*Mr. Boyd/Mr. Walker*] has related to his prosecution, in addition to the *Brady* and summation-misconduct claims I already described. He also claims the County is liable because of the way the District Attorney's Office handled his case at the beginning. After he was arrested on January 12, 1976, [*Mr. Boyd/Mr. Walker*] had a right to what is known as a preliminary hearing. This is a proceeding at which a judge must decide whether

there is probable cause to continue the prosecution and to continue to hold a defendant in custody. At the preliminary hearing, a single witness testified against [*Mr. Boyd/Mr. Walker*]. [*Mr. Boyd/Mr. Walker*] contends that his prosecutor was aware, at the time of the preliminary hearing, of police evidence (1) strongly discrediting that witness, (2) tending to prove that someone else committed the crime, and (3) tending to show that [*Mr. Boyd/Mr. Walker*] was innocent. However, [*Mr. Boyd/Mr. Walker*] contends, in violation of his right to due process of law under the Constitution, the prosecutor failed to disclose that evidence. [*Mr. Boyd/Mr. Walker*] contends that had this evidence been disclosed, the case likely would have been dismissed at the very beginning or that he would have been released on bail. Further, he contends that the failure to disclose this evidence resulted from the policy, custom or practice of the Erie County District Attorney's Office not to do so.

### *Defenses of Erie County*

The defense disputes [*Mr. Boyd's/Mr. Walker's*] contentions. That is why we will be having a trial, so that you can decide. You will be called to decide, at the end of the case, whether [*Mr. Boyd/Mr. Walker*] has proven his claims by what we call a preponderance of the evidence.

### *Damages*

If you decide for [*Mr. Boyd/Mr. Walker*] on any of his claims, it will be up to you then to decide the appropriate compensation he should receive for his damages. [*Mr. Boyd/Mr. Walker*] must prove he is entitled to damages by a preponderance of the evidence.

**Authority**:    *Federal Jury Practice and Instructions* § 101:03 (modified). *Bagley*, 473 U.S. at 675; *Kyles*, 514 U.S. at 434; *Brady*, 373 U.S. at 87; *Giglio*, 405 U.S. at 154; Hearing Transcript at 30:11-13, *Bozella*, No. 10-cv-4917.

## PROPOSED JURY INSTRUCTION NO. 4

### Presumption of Innocence

This is not a criminal case.  But you will hear evidence related to

[*Mr. Boyd's/Mr. Walker's*] prior criminal trial and his conviction for the murder of William

Crawford.  Every person charged with a crime is presumed innocent.[9]  The person can be

convicted of the charged crime only if he pleads guilty or the prosecution proves his guilt beyond

a reasonable doubt.  [*Mr. Boyd/Mr. Walker*] did not plead guilty to the Crawford murder, he was

convicted after a jury trial, his conviction has been overturned, and the charges against him have

been dismissed.  There are no outstanding criminal charges against [*Mr. Boyd/Mr. Walker*] for

the murder of William Crawford.


**Authority**:     Adapted from Ninth Circuit, *Manual of Model Criminal Jury Instructions* § 1.2
(2010) (hereinafter "Ninth Circuit Jury Instructions"); *see Coffin v. United States*, 156 U.S. 432,
453 (1895).

---

[9] *Coffin v. United States*, 156 U.S. 432, 453 (1895) ("The principle that there is a
presumption of innocence in favor of the accused is the undoubted law, axiomatic and
elementary, and its enforcement lies at the foundation of the administration of our criminal
law.").

## PROPOSED JURY INSTRUCTION NO. 5

### Jury Conduct

To ensure fairness, you must obey the following rules:

Do not talk to each other about this case or about anyone involved with this case until the end of the trial when you go to the jury room to decide on your verdict.

Do not talk with anyone else about this case or about anyone involved with this case until the trial has ended and you have been discharged as jurors.  "Anyone else" includes members of your family and your friends.  You may tell people you are a juror, but do not tell them anything else about the case.

Outside the courtroom, do not let anyone tell you anything about the case, or about anyone involved with it, until the trial has ended.  If someone should try to talk to you about the case during the trial, please report it to me immediately.

During the trial you should not speak to any of the parties, lawyers or witnesses involved in this case—you should not even pass the time of day with any of them.  It is important not only that you do justice in this case, but that you also give the appearance of doing justice.

Do not read any news stories or articles about the case, or about anyone involved with it, or listen to any radio or television reports about the case or about anyone involved with it.

Do not do any research, such as checking dictionaries, or make any investigation about the case on your own.

Do not make up your mind during the trial about what the verdict should be.  Keep an open mind until after you and the other jurors have gone to the jury room to decide the case and have discussed all the evidence.

If you need to tell me something, simply give a signed note to the [*marshal*] [*bailiff*] [*clerk*] to give to me.

**Authority**:    *Federal Jury Practice and Instructions* § 101:11.

## PROPOSED JURY INSTRUCTION NO. 6

### Juror Use of Electronic Technology

You, as jurors, must decide this case based solely on the evidence presented here within the four walls of this courtroom. This means that during the trial you must not conduct any independent research about this case, the matters in the case, and the individuals or government entities involved in the case. In other words, you should not consult dictionaries or reference materials, search the Internet, websites, blogs, or use any other electronic tools to obtain information about this case or to help you decide the case. Please do not try to find out information from any source outside the confines of this courtroom.

Until you retire to deliberate, you may not discuss this case with anyone, even your fellow jurors. After you retire to deliberate, you may begin discussing the case with your fellow jurors, but you cannot discuss the case with anyone else until you have returned a verdict and the case is at an end.

I know that many of you use cell phones, the Internet and other tools of technology. You also must not talk to anyone at any time about this case or use these tools to communicate electronically with anyone about the case. This includes your family and friends. You may not communicate with anyone about the case on your cell phone, through e-mail, iMessage, or text messaging, or otherwise through any blog, website, or app (including Facebook, LinkedIn, YouTube, or any other similar technology of social media, even if I have not specifically mentioned it here). I expect you will inform me as soon as you become aware of another juror's violation of these instructions.

**Authority**:    *Federal Jury Practice and Instructions* §§ 101:13, 101.14 (modified to apply to all phases of trial).

*At the close of evidence*

## PROPOSED JURY INSTRUCTION NO 7

### Expert Testimony

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions. There is an exception to this rule for "expert witnesses." An expert witness is a person who by education and experience has become expert in some art, science, profession, or calling. Expert witnesses give their opinions as to matters in which they profess to be expert, and they may also state their reasons for their opinions. You should weigh and evaluate the testimony of expert witnesses precisely as you weigh the testimony of any other witness.

In this case, [*Mr. Boyd/Mr. Walker*] presented expert testimony from Alan Hirsch, Steven Zeidman, and Sanford Drob; the defendant presented the expert testimony from Kevin Gagan. They were allowed to express opinions, and the reasons for those opinions.

You may give this expert testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, permit an expert's testimony to be a substitute for your own reason, judgment, or common sense. You may reject the testimony of an expert in whole or in part, if you conclude that the reasons given in support of an opinion are unsound or if, for other reasons, you do not believe the expert witness. The determination of the facts in this case rests solely with you.

**Authority**:    *Federal Jury Practice and Instructions* § 104:40 (modified); *see also Modern Federal Jury Instructions*, 76-10 (modified).

## PROPOSED JURY INSTRUCTION NO. 8

### Law Enforcement/Judicial Witnesses

You have heard the testimony of people who work or have worked in law enforcement and in the courts, including former prosecutors [*and former judges*].[10]  The testimony of a person who has been in law enforcement, including as a prosecutor, [*or who has been a judge*] should be considered by you just as any other evidence in this case, and in evaluating their credibility you should use the same guidelines which you apply to the testimony of any witness.  You should not give either more or less weight to the testimony of a witness merely because he or she is a law enforcement officer [*or has been a judge*].

**Authority**:    *United States v. Lawes*, 292 F.3d 123, 131 (2d Cir. 2002); Michael Avery, David Rudovsky & Karen Blum, *Police Misconduct: Law and Litigation* § 12:8 (updated Nov. 2020) (hereinafter *Police Misconduct: Law and Litigation*).

---

[10]  Mr. Boyd and Mr. Walker have moved *in limine* (Dkt. Nos. 230-13; 235-13) to preclude any party from eliciting testimony that a witness is a former judge.  If the Court denies that motion, Mr. Boyd and Mr. Walker respectfully request that the Court include a reference to former judges in this instruction.

## PROPOSED JURY INSTRUCTION NO. 9

### Essential Elements of a Section 1983 Claim

[*Mr. Boyd/Mr. Walker*] brings his claim under a federal civil rights law:

42 U.S.C. § 1983.  That law provides that any person or persons who, under color of state law,

deprives another of any rights, privileges, or immunities secured by the Constitution or laws of

the United States, shall be liable to the injured party.

As I explained to you at the beginning of the trial, federal civil rights law protects

individuals from being harmed by State or local officials who violate their constitutional rights.

This Section 1983 claim against the County is also called a "*Monell* claim."  To establish

liability for his *Monell* claim, [*Mr. Boyd/Mr. Walker*] must establish, by a preponderance of the

evidence, each of the following elements:

*First*, that an official or officials of Erie County acted under color of state law;

*Second*, that such official or officials' conduct deprived [*Mr. Boyd/Mr. Walker*] of a right

secured by the Constitution; and

*Third,* that such official or officials' conduct was caused by a policy, custom or practice of

Erie County.

I shall now explain each of these elements in greater detail.

**Authority**:    42 U.S.C. § 1983; Ninth Circuit Jury Instructions § 9.1; *Eagleston v. Guido*, 41 F.3d 865, 875-876 (2d Cir. 1994); *Police Misconduct: Law and Litigation* § 12:3; *Third Circuit Model Civil Jury Instructions* § 4.3 (modified).

## PROPOSED JURY INSTRUCTION NO. 10

### Acting Under Color of State Law

The first element of [*Mr. Boyd's/Mr. Walker's*] *Monell* claim is that employees of Defendant County of Erie acted under color of state law.  Here, I instruct you that the District Attorney of Erie County, his executives and supervisors, and the assistant district attorneys he employed on behalf of Erie County, acted at all times in their official capacity as employees of the County of Erie.  They therefore acted under color of state law.  You do not need to consider this element; it has been met.

**Authority**:    *Modern Federal Jury Instructions*, 87-70 (modified); *West v. Atkins*, 487 U.S. 42, 50 (1988).

## PROPOSED JURY INSTRUCTION NO. 11

### Deprivation of a Federal Right – General

The second element of [*Mr. Boyd's/Mr. Walker's*] claim is that employees of the Erie County District Attorney's Office violated a right that he had under the United States Constitution. The Constitution guarantees every person accused of a crime the right to be free from prosecution or detention without probable cause, the right to reasonable bail, the right to a fair trial, and the right to due process of law.  [*Mr. Boyd/Mr. Walker*] contends that the Defendant Erie County, through its employees, deprived him of his constitutional rights in three separate ways.

*First*, [*Mr. Boyd/Mr. Walker*] contends that the Erie County District Attorney's Office unlawfully withheld evidence that was favorable to him, depriving him of his rights to due process of law and a fair trial under the United States Constitution.

*Second*, [*Mr. Boyd/Mr. Walker*] contends that the prosecutor at his trial gave an improper summation, depriving him of his rights to due process of law and a fair trial under the United States Constitution

*Third*, [*Mr. Boyd/Mr. Walker*] contends that the Erie County District Attorney's Office unlawfully failed to disclose favorable evidence at his preliminary hearing that was so compelling in his favor that it would have shown there was no probable cause to continue prosecuting him and likely would have led to the dismissal of charges, or would have shown that the evidence against him was so weak that the court likely would have released him from custody.  This conduct, he contends, violated his constitutional right to due process of law in the determination of such issues by a state court judge.

[*Mr. Boyd/Mr. Walker*] need only establish one of these three theories of constitutional violations in order to satisfy this second prong of his *Monell* claim (although you may find that he has satisfied more than one).  Let's discuss each of these three theories in greater detail.

- 19 -

**Authority**:    *Modern Federal Jury Instructions*, 87-74 (modified); *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 154 (1972); *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007); *People v. Rosario*, 9. N.Y.2d 286 (1961).

**PROPOSED JURY INSTRUCTION NO. 12**

**Deprivation of a Federal Right – Brady Claim**

The first of the three constitutional violations that [*Mr. Boyd/Mr. Walker*] asserts is what I will refer to as his *Brady* claim: that the Erie County District Attorney's Office violated his constitutional right to due process and a fair trial by withholding evidence that was favorable to him with respect to his 1977 trial. Before doing so, I will discuss the principles and procedures that apply at criminal trials, to help you understand the *Brady* rule and how to apply it.

The *Brady* rule requires prosecutors to disclose several kinds of favorable evidence:

One kind of favorable evidence is "exculpatory" evidence, which is evidence tending to establish the accused's innocence of the crime.[11]

Favorable evidence also includes impeachment evidence, which is evidence used to undermine a witness's credibility—such as evidence showing that a witness has not told the truth or is not worthy of belief. For example, evidence that contradicts the testimony of the prosecution's key witnesses is favorable evidence.[12] So is evidence that a prosecution witness has a reason to lie.

---

[11] *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

[12] *See, e.g.*, *Smith v. Cain*, 132 S. Ct. 627, 630 (2012) (statements contradicting testimony of the only witness linking the criminal defendant to the crime are favorable under *Brady*); *Giglio v. United States*, 405 U.S. 150, 154 (1972) ("When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within [the] general rule [of *Brady*].") (internal quotation marks omitted)); *United States v. Mahaffy*, 693 F.3d 113, 131 (2d Cir. 2012) ("*Brady* applies to material that would be an effective tool in disciplining witnesses during cross-examination." (internal quotation marks omitted)).

Favorable evidence also includes evidence indicating that someone else may have committed the crime.[13]

[*Mr. Boyd/Mr. Walker*] contends that the Erie County District Attorney's Office failed to disclose numerous items of favorable documents and information to his defense attorney, in violation of these rules. The favorable evidence, according to [*Mr. Boyd/Mr. Walker*], consisted of information tending to establish the responsibility of other individuals, specifically Larry Watson and Jerome Boyd, for the crime that [*Mr. Boyd/Mr. Walker*] was accused of, as well as impeachment evidence that [*Mr. Boyd/Mr. Walker*] contends impeached the credibility of the prosecution's key witnesses. The impeachment evidence [*Mr. Boyd/Mr. Walker*] asserts was not disclosed includes documents and other information showing that:

- Mr. Woodruff had gone home in a taxicab with another one of the alleged assailants, John Walker, before the crime occurred and thus, contrary to his testimony, was not present and did not see the crime;

- Police, knowing Mr. Woodruff had denied knowledge of the crime and been threatened with arrest and imprisonment for it, offered him the benefit of complete immunity from prosecution before he changed his story;

- Police prepared reports to explain Woodruff's change of story that were false;

- One of these reports, if true, showed Woodruff was coerced to change his story and contained a statement that contradicted his trial testimony;

---

[13] *See, e.g.*, Hearing Transcript at 30:11-13, *Bozella v. County of Dutchess*, No. 10-cv-4917 (S.D.N.Y. Sept. 23, 2014), ECF No. 289("The cases are legion that the existence of an alternative suspect is favorable to defendant and has to be disclosed." (citing cases)); *Boyette*, 246 F.3d at 91 (evidence was "classic Brady material" because it "could have helped the defense suggest an alternative perpetrator").

- A second witness against [*Mr. Boyd/Mr. Walker*], a 15-year-old boy named Andre Hough, after being pressured to change his story and implicate Mr. Boyd, refused to take a lie detector test;

- Simpson's Store employees contradicted Mr. Hough's claim that Mr. Boyd, the day after the homicide, displayed a large amount of cash in the store;

- Just before testifying in the grand jury, Mr. Hough recanted his statement and then was pressured, including by being threatened with prosecution for perjury, to retract his recantation and come up with additional allegations;

- On the same day, police improperly told Mr. Woodruff about Mr. Hough's new story and caused him to further change his story and conform it to Mr. Hough's; and

- Mr. Woodruff signed a statement that day which contradicted his trial testimony about whether Mr. Boyd went inside the Golden Nugget Bar to look for a victim to rob.

[*Mr. Boyd/Mr. Walker*] must prove three elements to show a violation of his right to disclosure at his criminal trial of evidence favorable to him under the *Brady* rule. If [*Mr. Boyd/Mr. Walker*] proves all three elements as to even a single item of evidence, then he has met his burden of establishing a violation of his constitutional rights under the *Brady* rule (although he, of course, can prove all three elements are met as to more than one of these items of evidence). The three elements are: (1) the evidence was favorable to him, (2) the evidence was withheld by the prosecution, and (3) the evidence was material to the outcome of his trial. I will now discuss each of these elements.

First, as I just explained, evidence is favorable to a person accused of a crime if it is exculpatory, that is, if it tends to prove that the person is innocent of the crime, or if it is impeaching of a prosecution witness. Evidence is impeaching if its use at trial would tend to diminish the

credibility or the reliability of a witness for the prosecution.  Just because a prosecutor may not believe the evidence to be true does not excuse his obligation to disclose it, since ultimately it is up to a jury to decide whether to believe it.  [I instruct you, as a matter of law, that the evidence [*Mr. Boyd/Mr. Walker*] claims was not disclosed to his attorney was favorable to him.  You therefore need not deliberate upon this element.  It is established.][14]

Second, as to whether the evidence was withheld, the Erie County District Attorney's office had an obligation to disclose all *Brady* material not only in its possession, custody or control, but also in the possession, custody, or control of the police department that investigated the case.  It could not close its eyes to the possibility that police detectives possessed such material but had to make affirmative efforts to obtain it if it existed.[15]

I instruct you that a criminal defense attorney is entitled to rely upon the completeness and the accuracy of the prosecution's disclosures of evidence under *Brady,* because the prosecution's obligation to disclose it is absolute.[16]  A defendant's lawyer is not required to take affirmative steps to seek out and uncover favorable evidence that the prosecution has an obligation to disclose and of which the defense lawyer is unaware.[17]  It is not a defense for the County that

---

[14]  Mr. Boyd and Mr. Walker have filed motions *in limine* [Dkt. Nos. 235-6; 230-6] seeking the bracketed portion of this instruction.

[15]  *Bellamy v. City of New York*, 914 F.3d 727, 751 (2d Cir. 2019) ("When police officers withhold exculpatory or impeaching evidence from prosecutors, they may be held liable under § 1983 for violating the disclosure requirements of *Brady v. Maryland* …").

[16]  *Shih Wei Su v. Filion*, 335 F.3d 119, 128 (2d Cir. 2003) ("[C]onscientious counsel *can* rely on prosecutors to live up to their obligations" (emphasis in original)).

[17]  *Banks v. Dretke*, 540 U.S. 668, 695 (2004) (noting that counsel need not "scavenge for hints of undisclosed *Brady* material when the prosecution represents that all such material has been disclosed").

[*Mr. Boyd's/Mr. Walker's*] defense attorney could have taken additional steps which might have revealed the evidence that the County had in its possession or control and failed to disclose. A defense attorney may assume that if *Brady* material exists, the prosecutor will disclose it, and that if the prosecutor did not disclose it, it does not exist.[18]  It is also not an excuse for the County to withhold evidence on the basis that it discounts the reliability of the evidence—determining the reliability of the evidence is a task for the jury, not the prosecution.[19]

Third, evidence is "material" when there is a reasonable probability that the result of the criminal trial would have been more favorable to the defendant if the evidence had been disclosed and the defense had an opportunity to investigate and use it. Put differently, evidence is material if, had it been disclosed to and used by the defense before and during the trial, it would have put the case in so different a light as to undermine your confidence in the verdict reached by the jury.[20]

---

[18]  *Fraser v. City of New York*, 2023 WL 144448, at *3 (S.D.N.Y. Jan. 10, 2023) ("whether defense counsel did or did not live up to his duty to provide competent representation is irrelevant; the officers had their own independent duty and the issue for the jury is whether or not they fulfilled it"); *Nnodimele v. Derienzo*, No. 13-CV-3461, 2016 WL 3561708, at *12–13 (E.D.N.Y. June 27, 2016) (rejecting any defense to *Brady* claim that the ineffectiveness of defense counsel was an alternative cause of conviction).

[19]  *DiSimone v. Phillips*, 461 F.3d 181, 195 (2d Cir. 2006) ("if there [are] questions about the reliability of [] exculpatory information, it [is] the prerogative of the defendant and his counsel—and not of the prosecution—to exercise judgment in determining whether the defendant should make use of it"); *Mendez v. Artuz*, 2000 WL 722613, at *14 (S.D.N.Y. June 6, 2000) ("If the evidence is favorable to the accused…then it must be disclosed, even if the prosecution believes the evidence is not thoroughly reliable."*); People v. Baxley*, 84 N.Y.2d 208, 213 (1994) ("nondisclosure cannot be excused merely because the prosecutor genuinely disbelieved [a witness's] recantation"); *People v. Geaslen*, 54 N.Y.2d 510, 515 (1981) (though "[i]t might well be that on further interrogation and clarification [two witnesses' differing testimony] would be reconciled… because [one witness's] testimony on its face is inconsistent with that adduced by the prosecution at the suppression hearing, its nondisclosure was fundamentally unfair to defendant" (emphasis added)).

[20]  *Cone v. Bell*, 556 U.S. 449, 452 (2009) (stating that the test for materiality was "whether there is a reasonable probability that the withheld evidence would have altered *at least one juror's assessment* of the appropriate penalty" (emphasis added)).

As I have explained to you, in a criminal case, the prosecution must convince all 12 jurors of the defendant's guilt beyond a reasonable doubt.  If even one juror out of 12 entertains a reasonable doubt about the defendant's guilt, the jury may not convict him.  So, either an acquittal, which requires the vote of all 12 jurors, or a hung jury, where at least one of the jurors votes for acquittal, qualifies as an outcome of the trial that is more favorable to the defendant than a conviction.

The test for materiality under *Brady* is cumulative.[21]  In other words, in determining whether a *Brady* violation is material, you must view the combined favorable effect of all withheld evidence, not the individual effect of each piece of evidence viewed "item by item."

Even if no single piece of withheld evidence, on its own, supports a finding of materiality, you may find the materiality element satisfied if multiple pieces of evidence, taken together, support a finding that there is a reasonable probability that the result of the trial would have been better for [*Mr. Boyd/Mr. Walker*] if such multiple categories of evidence had been provided to [*Mr. Boyd/Mr. Walker*]. In this analysis, you may consider, among other aspects of the trial record, the manner in which the prosecutor's conduct in his summation may have aggravated the effect of the nondisclosure.  One final note.  Whether or not [*Mr. Boyd/Mr. Walker*] is innocent of the murder of William Crawford has absolutely no bearing on the question before you of whether his right to a fair trial was violated.  Everyone in our country, whether innocent or guilty, has a constitutional right to a fair trial.  Innocence is simply not an element of a *Brady* or a fair trial claim.  And, as I noted at the beginning of this case, [*Mr. Boyd/Mr. Walker*] is not convicted of the murder of Mr. Crawford and therefore is presumed innocent.   I allowed you to hear

_____

[21]  *Kyles v. Whitley*, 514 U.S. 419, 436 (1995) (holding that the materiality of withheld evidence must be "considered collectively, not item by item").

[*Mr. Boyd's/Mr. Walker's*] testimony and other evidence supporting and refuting his claim of

innocence so that you may consider it, should you find the County liable, on the issue of damages.


**Authority:**     *Strickler v. Greene*, 527 U.S. 263, 281–182, 290–291 (1999); *Fraser*, 2021 WL 1338795, at *5–9 (S.D.N.Y. Apr. 9, 2021); *Cone*, 556 U.S. at 452; *Banks*, 540 U.S. at 695; *Kyles*, 514 U.S. at 436; *Bellamy*, 914 F.3d at 751; *Shih Wei Su*, 335 F.3d at 128; *DiSimone*, 461 F.3d at 195; *Mendez*, 2000 WL 722613, at *14; *Baxley*, 84 N.Y.2d at 213; *Geaslen*, 54 N.Y.2d at 515; *Nnodimele*, 2016 WL 3561708, at *12–13; *Brady*, 373 U.S. at 87; *Smith*, 132 S. Ct. at 630; *Giglio*, 405 U.S. at 154; *Mahaffy*, 693 F.3d at 131; Hearing Transcript at 30:11-13, *Bozella*, No. 10-cv-4917; *Boyette*, 246 F.3d at 91.

## PROPOSED JURY INSTRUCTION NO. 13

### Deprivation of a Federal Right – Summation Misconduct

I mentioned that [*Mr. Boyd/Mr. Walker*] asserts three categories of violations of his constitutional rights by the County.  The first was Brady, which I just instructed you on.  The second is that [*Mr. Boyd/Mr. Walker*] contends that he was denied his constitutional right to a fair trial by misconduct by the Erie County District Attorney's Office during the prosecutor's closing argument (which is also referred to as a summation).

Misconduct by a prosecutor in summation violates a criminal defendant's constitutional rights if such misconduct so infects the trial with unfairness that it results in a conviction that it is likely otherwise would not have occurred.  Criminal trial judges instruct juries that the comments of lawyers are not evidence, but the prosecutor goes last in state court, and his comments, on behalf of a District Attorney's Office, usually carry great weight.  The weaker the evidence of guilt, the more likely it is that summation misconduct will unfairly cause a conviction that otherwise would not have occurred.

A prosecutor may not do any of the following:

- Make false or misleading arguments, including taking advantage of having wrongfully withheld evidence under *Brady*;

- Vouch for the prosecution's case or for the credibility of an individual witness;

- State personal opinions about the case or a witness's credibility;

- Unfairly denigrate the defendant or a witness;

- Appeal to emotion, racial stereotypes, or prejudice;

- Shift to the defense the burden of proof, such as suggesting that the defendant has any obligation to present evidence or to prove that he is innocent.

[*Mr. Boyd/Mr. Walker*], in support of this claim, cites various statements by Mr. Drury in his summation [*that I instruct you were improper*]:[22]

- Statement that ADA Drury "would absolutely reject" that "the police or our office or myself had anything to do with changing Tyrone's testimony or making it fit in any pattern";

- Statement that "the suggestion that there is any conspiracy here to make the testimony fit the facts" is "absolutely ridiculous";

- Statement that "You got what you have.  The police turned over everything to you."

- Calling Mr. Woodruff a "ghetto kid";

- Calling where Mr. Woodruff lived "a junkyard";

- Calling Mr. Woodruff a "blithering idiot";

- Calling Mr. Woodruff a "snook";

- Calling Mr. Woodruff an "idiot";

- Calling Mr. Woodruff a "nitwit";

- Calling Mr. Woodruff "hapless, stupid";

- Calling Mr. Woodruff "as bad as the rest of them";

- Saying of Mr. Boyd, "The poor kid is confused, the poor kid is only 16.  He is in there without his mommy and daddy";

- Saying of Ms. Joyce Washington, "I also hope you don't believe that kid of a minute";

- Calling Dorothea Luster "the mother, precious thing";

- Calling the testimony of Allison Zachery, "worthless";

---

[22]  Mr. Boyd and Mr. Walker have filed motions in limine [Dkt. Nos. 635-5; 630-6] seeking the bracketed portion of this instruction.

If you find that one or more of these statements was or were so unfair that they likely caused a conviction that otherwise would not have occurred, you must find that [*Mr. Boyd's and/or Mr. Walker's*] right to a fair trial was violated.[23]

As with *Brady*, your consideration of summation misconduct must be cumulative.[24]  In other words, in determining whether summation misconduct resulted in a conviction that it is likely otherwise would not have occurred, you must view the combined effect of all summation misconduct collectively, not the individual effect of each instance of any misconduct that you find viewed "item by item."

In addition, in determining whether the prosecution deprived [*Mr. Boyd/Mr. Walker*] of his constitutional right to a fair trial, you must view the combined effect of all summation misconduct alongside the combined effect of all *Brady* violations.  The Erie County District Attorney's office violated [*Mr. Boyd's/Mr. Walker's*] constitutional rights if *Brady* misconduct and summation misconduct, taken together, support a finding that the result of the trial likely would have been better for [*Mr. Boyd/Mr. Walker*] if such combined misconduct had not occurred.

**Authority:**    *Bellamy v. City of New York*, 914 F.3d 727, 762 (2d Cir. 2019); *United States v. Certified Env't Servs., Inc.*, 753 F.3d 72, 95-97 (2d Cir. 2014); *Jenkins v. Artuz*, 294 F.3d 284, 295-96 (2d Cir. 2002); *United States v. Al-Moayad*, 545 F.3d 139, 178 (2d Cir. 2008).

---

[23]  *United States v. Al-Moayad*, 545 F.3d 139, 178 (2d Cir. 2008) (collecting cases holding that a right to due process may be violated when multiple errors cumulate to deprive an individual of a fair trial).

[24]  *United States v. Certified Env't Servs., Inc.*, 753 F.3d 72, 95–97 (2d Cir. 2014) (analyzing cumulative impact of evidentiary rulings and prosecutorial misconduct in opening, questioning of witnesses, and summation); *Jenkins v. Artuz*, 294 F.3d 284, 295–296 (2d Cir. 2002) (analyzing cumulative effect of misleading testimony and prosecutor's summation).

## PROPOSED JURY INSTRUCTION NO. 14

### Deprivation of a Federal Right – Preliminary Hearing

I mentioned that [*Mr. Boyd/Mr. Walker*] asserts three categories of violations of his constitutional rights by the County. The first was *Brady* and the second is summation misconduct, both of which I just instructed you on. The third is that a criminal defendant has a constitutional right, at the time a criminal proceeding commences against him, to the disclosure of evidence that is so likely to result in his release from custody that it is shocking to the conscience for the prosecutor not to disclose it.

A preliminary hearing is a proceeding at the beginning of a criminal case where the prosecution has the burden of establishing, through testimony and other evidence, probable cause to believe the defendant is guilty. If the court finds that probable cause has not been proven, it must dismiss the charges. If it finds that probable cause has been established but evaluates the evidence of guilt as weak, it may consider that fact in determining whether to release the defendant from custody, either on his own recognizance or on a reasonable bail.

[*Mr. Boyd/Mr. Walker*] contends that, at his preliminary hearing, prosecutors employed by the Erie County District Attorney's Office improperly failed to disclose to the court and to his attorney evidence showing that Mr. Woodruff's testimony was false or misleading and failed to correct such testimony. [*Mr. Boyd/Mr. Walker*] maintains that the prosecution violated his due process rights by failing to disclose evidence tending to show that Mr. Woodruff had gone home in a taxicab at the time of the murder and did not see the crime at all, as well as evidence tending to show that the crime was committed by other suspects known to the police, not by [*Mr. Boyd/Mr. Walker*]. [*Mr. Boyd/Mr. Walker*] contends that, if any of this evidence had been disclosed, it is likely he would have been released from custody, either because the court would

have found no probable cause and dismissed the case, or because the court would have considered the evidence of guilt so weak that it would have released [*Mr. Boyd/Mr. Walker*] from custody.

To find for [*Mr. Boyd/Mr. Walker*] on this claim, you must find each of the following elements proven by a preponderance of the evidence: (1) that a prosecutor knowingly failed to disclose some or all of the evidence in question or failed to correct Mr. Woodruff's false or misleading testimony; (2) that the prosecutor did so even though his failure to disclose the evidence was so likely to make the proceeding unfair that his non-disclosure is shocking to the conscience; and (3) that had a prosecutor disclosed the evidence, it is likely that the court would have dismissed the charges for lack of probable cause or would have released [*Mr. Boyd/Mr. Walker*] from custody on reasonable bail.

**Authority**:    *Police Misconduct: Law and Litigation* § 12:26; *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007); *People v. Rosario*, 9 N.Y.2d 286 (1961); *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Napue v. Illinois*, 360 U.S. 264, 269 (1959).

## PROPOSED JURY INSTRUCTION NO. 15

### Deprivation of a Federal Right – Monell Claim

As I mentioned, [*Mr. Boyd/Mr. Walker*] needs to prove three elements of a *Monell* claim. I have already instructed you on the first two: (1) an official or officials of Erie County acted under color of state law; and (2) such official or officials violated one or more constitutional rights of [*Mr. Boyd/Mr. Walker*].

The third and final element that [*Mr. Boyd/Mr. Walker*] must prove is that a policy, custom or practice of Erie County was a substantial factor in causing the violation or violations of his constitutional rights.

To establish a claim against the County based on an unconstitutional policy, custom or practice, [*Mr. Boyd/Mr. Walker*] must show that the County adopted such a policy through the deliberate choice or acquiescence of a policymaker on behalf of the municipality.[25]  A policymaker is an official or a body to whom the County has given final policymaking authority.  The actions of that official or that body represent a decision by the County itself, and the County is responsible for them.

I instruct you that the Erie County District Attorney is a policymaker for the Defendant County of Erie.[26]  I instruct you further that the District Attorney has the authority to delegate his responsibility to establish policy in a particular area or areas to subordinates, such as a chief assistant or a bureau chief.

---

[25]  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.").

[26]  *Domenech v. City of New York*, 919 F. Supp. 702, 710 & n.1 (S.D.N.Y. 1996).

A policy need not be in writing or be labeled a "policy."[27]  There need not be a formal statement of policy.  A policy may be inferred from the informal acts or omissions of the District Attorney or his designees.[28]  This includes a situation where the District Attorney knew about the improper actions or failures to act by other prosecutors in the Erie County District Attorney's office by virtue of his position and allowed them to continue.[29]

A "custom" is a persistent and widespread pattern of conduct.[30]  You may infer that a custom existed in the Erie County District Attorney's Office even if Erie County did not formally approve such custom, so long as you conclude that the District Attorney knew of acts of misconduct and did not act to prevent them from continuing.  This includes a situation where the District Attorney must have known about the actions or failures to act by other prosecutors in the District Attorney's office by virtue of his position and allowed them to continue.

---

[27] *Cash v. Cnty. of Erie*, 654 F.3d 324, 331 (2d Cir. 2011) (approving of jury charge explaining that "a policy, practice, or custom [does] not have to be in writing or formally adopted"); *see id.* at 334 ("A municipal policy may be pronounced or tacit and reflected in either action or inaction."); *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992) ("The policy or custom used to anchor liability need not be contained in an explicitly adopted rule or regulation.").

[28] *See Cash*, 654 F.3d at 334 ("[W]here a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983." (internal quotation marks omitted)).

[29] *See Matusick v. Erie County Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (even isolated acts by non-policymaking municipal employees which are "sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisors must have been aware" may constitute a policy (internal citations omitted)).

[30] *Sorlucco*, 971 F.2d at 870–871 ("So long as the [unconstitutional] practices of city officials are persistent and widespread, they could be so permanent and well settled as to constitute a 'custom or usage' with the force of law, and thereby generate municipal liability." (internal quotation marks omitted)).

If an office practice is so persistent and widespread that it practically has the force of law, you can find that a policymaker adopted that practice as policy even without proof that such an individual was actually put on notice of it.

In this case, [*Mr. Boyd/Mr. Walker*] contends that, as a matter of unlawful County policy, custom or practice, Erie County did not require its prosecutors to disclose any evidence to the defense at a preliminary hearing; did not require them to disclose impeachment evidence for use by the defense at trial because the County only recognized the *Brady* rule to apply to exculpatory evidence; did not require disclosure of *Brady* material unless the prosecutor personally believed it to be true; did not require disclosure of *Brady* material unless the defense had made a specific request for it, and tolerated unlawful and improper summation arguments by prosecutors which denied criminal defendants their constitutional right to a fair trial.

If you find the existence of any of these unlawful policies, customs or practices, then you should go on to consider whether any was a substantial factor in causing [*Mr. Boyd's/Mr. Walker's*] injuries. Although you may find that multiple policies, customs, or practices were substantial factors in causing [*Mr. Boyd's/Mr. Walker's*] injuries, you need only find one in order to find for [*Mr. Boyd/Mr. Walker*] and go on to assess his damages.

Alternatively, [*Mr. Boyd/Mr. Walker*] may establish County liability by showing that, through its policymaking officials, it had a policy of deliberate indifference to the commission of such constitutional violations by its employees. Deliberate indifference is more than negligence. It is a conscious disregard on the part of the County for the known or obvious consequences of its actions. Here, [*Mr. Boyd/Mr. Walker*] contends that the Erie County District Attorney and his executives were deliberately indifferent to constitutional requirements for prosecutors to disclose evidence favorable to criminal defendants and to refrain from improper summation comments. He

argues that such deliberate indifference is shown by the District Attorney's failure to have any official or formal disciplinary system, to investigate or discipline prosecutors for known specific instances of misconduct identified by the courts or for which he received credible complaints, to supervise prosecutors to ensure compliance with constitutional requirements, to issue written policies or procedures in such areas, and to adequately train prosecutors in such areas. [*Mr. Boyd/Mr. Walker*] contends that indifference to the types of constitutional violations that occurred in this case created an atmosphere where prosecutors believed that winning was more important to the office than safeguarding the constitutional rights of criminal defendants and that this was a substantial factor in causing the violations that occurred in this case.

If you find either that an unconstitutional policy, custom or practice with regard to disclosure of favorable evidence or summation misconduct was a substantial factor in causing [*Mr. Boyd's/Mr. Walker's*] constitutional rights to be violated, or that such violations occurred as a result of a policy of deliberate indifference to such violations, then you must find the County liable for such violations and go on to consider an appropriate damage award.

**Authority**:    *Third Circuit Model Civil Jury Instructions* §§ 4.6.3, 4.6.5, 4.6.7 (modified); *Modern Federal Jury Instructions*, 87-81, 83 (modified); *Walker v. City of New York*, 974 F.2d 293, 297-298 (2d Cir. 1992); *Pembaur*, 475 U.S. at 483; *Domenech*, 919 F. Supp. at 710 & n.1; *Sorlucco*, 971 F.2d at 870–71. *Matusick.*, 757 F.3d at 62; *Cash*, 654 F.3d at 331, 334.

## PROPOSED JURY INSTRUCTION NO. 16

### Compensatory Damages

If you find that [*Mr. Boyd/Mr. Walker*] has proved all the elements of any one of his constitutional claims, then you must award him a sum of money that you believe will fairly and justly compensate him for all of his damages.  These damages are called compensatory damages.  The purpose of compensatory damages is to make [*Mr. Boyd/Mr. Walke*r] whole—that is, to compensate him for damages he suffered which he has proven, by a preponderance of the evidence, resulted, in whole or in part, from the unlawful conduct of the County.  Compensatory damages can take many forms.

First, [*Mr. Boyd/Mr. Walker*] would be entitled to damages to compensate him for his loss of liberty.  Such damages would include compensation for [*Mr. Boyd's/Mr. Walker's*] loss of liberty for the years he spent confined in jail or prison as a result of the actions of the Defendant County and its employees.  They also would include compensation for loss of liberty for the years spent under conditions of parole.

Second, [*Mr. Boyd/Mr. Walker*] would be entitled to compensatory damages for the physical and psychological injury, pain and suffering, mental anguish, shock, loss of family relationships, humiliation, indignities, embarrassment, degradation, and permanent loss of natural psychological development that he has suffered as the result of his conviction and imprisonment.[31]

In connection with your consideration of [*Mr. Boyd's and/or Mr. Walker's*] damages, you may take into account evidence that he is innocent of the crime for which he was convicted.  You

---

[31]  Adapted from Martin A. Schwartz and George C. Pratt, *Section 1983 Litigation Jury Instructions* § 18.01[B]; Fifth Circuit District Judges Association, Committee on Pattern Jury Instructions, Pattern Jury Instructions (Civil Cases) § 15.2 at 5 (2014), http://www.lb5.uscourts.gov/juryinstructions/fifth/2014civil.pdf.

may give that evidence whatever importance you believe it deserves when considering the extent of his suffering for his conviction and the punishment he received for it.

Compensatory damages must be based on the evidence at trial. But no evidence of the dollar value of physical harm, emotional pain and suffering, loss of a normal life, or loss of liberty has been or needs to be introduced. There is no exact standard for setting the damages to be awarded concerning these categories. You are to determine an amount that will fairly and reasonably compensate [*Mr. Boyd/Mr. Walker*] for the injuries that he has sustained.

**Authority**: *Modern Federal Jury Instructions*, 87-87 (modified); *Third Circuit Model Civil Jury Instruction* § 4.8.1 (modified); Martin A. Schwartz and George C. Pratt, *Section 1983 Litigation Jury Instructions* § 18.01[B] (modified); Pattern Jury Instructions § 15.2 at 5; *Kerman v. City of New York*, 374 F.3d 93, 125-126 (2d Cir. 2004); *see also Parish v. City of Elkhart*, 702 F.3d 997, 999 (7th Cir. 2012); *see also Ayers v. City of Cleveland*, 773 F.3d 161, 169 (6th Cir. 2014).