UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOHN WALKER, JR.,

                       Plaintiff,

      v.

THE CITY OF BUFFALO, THE COUNTY
OF ERIE, MICHAEL G. GUADAGNO,
JOHN MONTONDO, LINDA J. FIAL AS
EXECUTOR FOR THE ESTATE OF ROBERT
GRABOWSKI, MARTIN BULLOCK AS
EXECUTOR FOR THE ESTATE OF JAMES E.
HUNTER, JENNIFER FLANNERY AS
ADMINISTRATOR FOR THE ESTATE OF
ROBERT F. ARNET, JENNIFER FLANNERY
AS ADMINISTRATOR FOR THE ESTATE OF
FRANK C. DEUBELL, JENNIFER FLANNERY AS
ADMINISTRATOR FOR THE ESTATE OF LEO J.
DONOVAN, JENNIFER FLANNERY AS
ADMINISTRATOR FOR THE ESTATE OF
FRANCIS M. MANISTA, AND DAWN
M. DIRIENZO AS EXECUTOR FOR THE
ESTATE OF PAUL R. DELANO,

                       Defendants.

**DECISION & ORDER**

22-cv-00520-MAV

---

## INTRODUCTION

Plaintiff John Walker, Jr. commenced the instant action on July 6, 2022. ECF No. 1. The only claim presently before the Court from Plaintiff's Amended Complaint, which is the operative pleading, is a *Monell* claim against Defendant County of Erie based on policies of the Erie County District Attorney's Office ("ECDA" or the "DA's Office"). ECF No. 78. Currently pending before the Court are 24 motions *in limine* related to the jury trial originally scheduled to commence on March 24, 2025, and

subsequently advanced to March 18, 2025. ECF Nos. 221, 222, 223, 226, 227, 228, 229, 230 (Plaintiff's omnibus motion seeking relief on 15 issues), 232, 239, 297.

## BACKGROUND

The factual background of this matter is set forth in detail in the Court's Decision and Order dated January 14, 2025, ECF No. 213, familiarity with which is assumed for purposes of the instant Decision and Order. To briefly summarize, Plaintiff John Walker, Jr. and co-Plaintiff Darryl Boyd, each spent over twenty years in prison for the 1976 murder of William Crawford. In August 2021, the New York Supreme Court in Erie County vacated the convictions of both men. Walker and Boyd commenced the instant action in July 2022 against the City of Buffalo and several individual Buffalo Police Department ("BPD") detectives allegedly involved in the investigation of Crawford's murder (collectively, the "City Defendants"), and the County of Erie (the "County"), alleging multiple violations of their civil rights under federal law, and multiple violations of New York state law. ECF Nos. 1, 78.

Plaintiffs and the City Defendants reached a settlement that involved dismissal with prejudice of all of Plaintiffs' claims against the City Defendants. ECF No. 204. Additionally, the Court granted the County's motion for summary judgment on Plaintiffs' state law claim for negligent failure to properly hire, train, supervise, and discipline its prosecutors. ECF Nos. 200, 213. Therefore, only Plaintiffs' claims against the County under 42 U.S.C. § 1983 and *Monell v. Dep't of Soc. Srvcs. of City of New York*, 436 U.S. 658 (1978), for the misconduct of its prosecutors, remain to proceed to trial. ECF No. 200, 204, 213.

Plaintiff Boyd passed away in late February 2025. *Boyd*, Case No. 22-CV-0519, ECF No. 299. At the final pretrial conference on March 3, 2025, the Court heard the parties' arguments on the Boyd substitution matter, reserved judgment thereon, and heard argument on the parties' motions *in limine* making rulings where appropriate. ECF No. 288. Plaintiffs Boyd and Walker largely filed their pretrial motions and opposition papers jointly, and the County's papers were likewise targeted at both cases. However, because the Court has since ruled that the proper party has not yet been substituted in Boyd's place pursuant to Rule 25 of the Federal Rules of Civil Procedure in the Boyd matter, *Boyd*, Case No. 22-CV-0519, ECF No. 299, this Decision and Order memorializes and makes further rulings on the pending motions *in limine* with respect to Plaintiff Walker's case only.

## LEGAL STANDARD

As the Supreme Court has noted, "[a]lthough the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Indeed, "[t]he purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996).

When granted, motions *in limine* operate to exclude inadmissible or prejudicial evidence before it is actually offered at trial. *Griffith v. Goodyear Dunlop Tires N. Am.*

*Ltd.*, No. 11-CV-761S, 2018 WL 4658721, at *1 (W.D.N.Y. Sept. 28, 2018). The Court "should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *White v. CSX Transportation, Inc.*, No. 19-CV-500SR, 2024 WL 3228158, at *1 (W.D.N.Y. June 28, 2024) (citing *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164 (S.D.N.Y. 2006)). Thus, "courts considering a motion *in limine* may reserve judgment until trial, so that the motion is placed in the appropriate factual context." *United States v. Van Putten*, No. 04 CR. 803 (PKL), 2005 WL 612723, at *3 (S.D.N.Y. Mar. 15, 2005). Either way, "the ruling is subject to change when the case unfolds . . . . [E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Luce*, 469 U.S. at 41–42.

## DISCUSSION

The purpose of *in limine* motions is to enable the Court to rule on disputes of the admissibility of discrete items of evidence. *United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, No. 19-CV-4355 (VM), 2023 WL 8111865, at *1 (S.D.N.Y. Nov. 22, 2023). However, the Court notes that several of the 24 *in limine* motions filed involve large swaths of generalized evidence.

Denials of motions are without prejudice. All rulings acknowledge that circumstances may evolve during trial, particularly given the abstract targets of many of the motions. This Decision and Order also specifically reserves certain issues to be handled as they come up at trial and, at times, provides some guiding principles to the parties in the meantime.

I.    **Reconsidering Summary Judgment Order or, Alternatively, Excluding Evidence of Third Theory of Underlying Constitutional Violation (ECF No. 227)**

The County moves the Court to partially reconsider its Decision and Order denying summary judgment to the County as to Walker's *Monell* claim on the grounds that the Order did not address the viability of Walker's third alleged constitutional violation—pertaining to his 1976 preliminary hearing. ECF Nos. 213, 227-1 at 2–7. The motion for partial reconsideration is **DENIED** for the following reasons.

Walker's Amended Complaint pleaded a single *Monell* count. ECF No. 78 at 65–97. The threshold element of a *Monell* claim is that an underlying violation of federal law occurred. *See Oliver v. City of New York*, 540 F. Supp. 3d 434, 436 (S.D.N.Y. 2021); *Carrasquillo v. City of New York*, 324 F. Supp. 2d 428, 438 (S.D.N.Y. 2004) ("Section 1983 only makes officials liable for personal involvement in the deprivation of rights secured by the constitution or other federal laws."). Walker pleaded three distinct underlying constitutional violations in support of his *Monell* claim against the County—a violation at the preliminary hearing stage of Walker's criminal prosecution and two violations of his right to a fair trial, namely *Brady* violations and summation misconduct. ECF No. 78 at 65–97. The jury need only find that one of these three constitutional violations occurred to get past *Monell's* threshold inquiry.

The County did not challenge this pleading style of using not only multiple theories of an underlying violation, but also several theories of causal ECDA polices

to constitute a single count on *Monell* liability. Because there is only one *Monell* count against the County, the Court did not need to address every underlying violation and every alleged causal municipal policy to resolve the County's motion for summary judgment; and acknowledging additional theories would not have changed the outcome of the Court's decision to deny summary judgment as to Walker's *Monell* claim. ECF No. 213 at 11–12 (Court's Decision and Order discussing *Ortiz v. Stambach*, 657 F. Supp. 3d 243, 257 (W.D.N.Y. 2023), which states, *inter alia*, "in assessing a summary judgment motion, a court need not analyze or articulate every legal or factual theory on which the plaintiff could potentially prevail at trial." (brackets omitted)).

The County's alternative motion *in limine* to preclude evidence of an underlying violation at the preliminary hearing stage is also **DENIED**. The County's arguments that evidence of a preliminary-hearing-based constitutional violation is irrelevant and will confuse the issues under the Federal Rules of Evidence are misplaced.

The Court concludes that Walker is entitled to argue to the jury that his <u>Fourth Amendment right</u> was violated at the preliminary hearing stage, as distinct from the two alleged violations of his due process right to a fair trial of Walker's criminal prosecution. *See e.g.*, *Fappiano v. City of New York*, 640 F. App'x 115, 118 (2d Cir. 2016) (*Brady* violations implicate a defendant's substantive due process right to a fair trial under Fourteenth Amendment).

Walker has repeatedly, albeit inconsistently, grounded his third alleged

underlying violation in the Second Circuit's 2007 decision *Russo v. City of Bridgeport*, which explicitly holds that the right implicated by Walker's preliminary hearing theory properly resides under the Fourth Amendment. 479 F.3d 196, 205 (2d Cir. 2007) ("[W]e clarify that this type of claim, which has in the past been treated as one based on substantive due process, should be examined under the Fourth Amendment instead."). Walker's factual description of this theory in his proposed jury instructions implicates the Fourth Amendment as does his Amended Complaint. ECF No. 241 at 19, 31–32; *see, e.g.*, ECF No. 78, ¶ 524 ("[T]he above misconduct deprived Mr. Walker of his constitutional rights to due process and a fair trial and to be free from unreasonable seizure and was a substantial cause of Mr. Walker's constitutional injuries."); *see also* U.S. Const., amend. IV; *Gerstein v. Pugh*, 420 U.S. 103, 118–26, (1975) (discussing application of the Fourth Amendment, including determinations of probable cause and prolonged detention, to preliminary hearings); *cf. Thompson v. Clark*, 596 U.S. 36, 43 (2022) (holding that malicious prosecution, a tort addressing the wrongful initiation of charges without probable cause, is most analogous to a Fourth Amendment unreasonable-seizure claim.).

Despite repeatedly labelling his third alleged underlying violation as his "*Russo* theory," Walker's proposed jury instructions classify the right allegedly violated at the preliminary hearing as one of due process.[1] ECF No. 241 at 19, 31–32. Walker's proposed jury instructions initially articulate his theory with respect to the

---

[1] The Court notes its review and consideration of the County's objections to the referenced proposed instructions. ECF No. 276 at 23, 39.

preliminary hearing as follows:

> Mr. Walker contends that the Erie County District Attorney's Office unlawfully failed to disclose favorable evidence at his preliminary hearing that was so compelling in his favor that it would have shown there was no probable cause to continue prosecuting him and likely would have led to the dismissal of charges, or would have shown that the evidence against him was so weak that the court likely would have released him from custody. This conduct, he contends, violated his constitutional right to due process of law in the determination of such issues by a state court judge.

ECF No. 241 at 19. His proposed instructions that delve deeper into the alleged

preliminary hearing violation articulate:

> Mr. Walker contends that, at his preliminary hearing, prosecutors employed by the Erie County District Attorney's Office improperly failed to disclose to the court and to his attorney evidence showing that Mr. Woodruff's testimony was false or misleading and failed to correct such testimony. Mr. Walker maintains that the prosecution violated his due process rights by failing to disclose evidence tending to show that Mr. Woodruff had gone home in a taxicab at the time of the murder and did not see the crime at all, as well as evidence tending to show that the crime was committed by other suspects known to the police, not by Mr. Walker. Mr. Walker contends that, if any of this evidence had been disclosed, it is likely he would have been released from custody, either because the court would have found no probable cause and dismissed the case, or because the court would have considered the evidence of guilt so weak that it would have released Mr. Walker from custody.
> To find for Mr. Walker on this claim, you must find each of the following elements proven by a preponderance of the evidence: (1) that a prosecutor knowingly failed to disclose some or all of the evidence in question or failed to correct Mr. Woodruff's false or misleading testimony; (2) that the prosecutor did so even though his failure to disclose the evidence was so likely to make the proceeding unfair that his non-disclosure is shocking to the conscience; and (3) that had a prosecutor disclosed the evidence, it is likely that the court would have dismissed the charges for lack of probable cause or would have released Mr. Walker from custody on reasonable bail.

*Id.* at 31–32. Walker cites the following in support of these proposed instructions:

Police Misconduct: Law and Litigation § 12:26; *Russo v. City of Bridgeport*, 479 F.3d

196, 211 (2d Cir. 2007); *People v. Rosario*, 9 N.Y.2d 286 (1961); *Brady v. Maryland*,

373 U.S. 83, 87 (1963); *Napue v. Illinois*, 360 U.S. 264, 269 (1959). *Id.* at 32.

    *People v. Rosario*, 9 N.Y.2d 286 (1961), cannot provide the basis for a section

1983 claim because it is a New York constitutional requirement, not a federal one.[2]

*See, e.g.*, *Carrasquillo*, 324 F. Supp. 2d at 438. As the Court will elaborate on in a

subsequent Decision and Order, the Court declines to instruct the jury on "*Rosario*"

requirements, Fed. R. Evid. 403, and *Rosario* has no place in providing legal support

for Walker's alleged preliminary hearing violation.

    Walker's legal citations showing that he had a substantive due process right

at his preliminary hearing that was violated amounts to *Brady v. Maryland* and

*Napue v. Illinois*, 360 U.S. 264, 269 (1959). ECF No. 241 at 32. At no point has Walker

argued that the protections provided by *Brady v. Maryland* apply at a preliminary

hearing, and the Court concludes they do not. The Second Circuit has not spoken on

this issue, but it has reiterated that there is no constitutional right to a preliminary

hearing, *see Sciortino v. Zampano*, 385 F.2d 132 (1967), which has been used as part

of the rationale by other courts to hold that *Brady* does not apply at that early stage.

As the Central District of California stated recently,

> [P]etitioner's claim of prosecutorial misconduct under *Brady v.*
> *Maryland*, 373 U.S. 83 (1963), is similarly meritless. With no
> elaboration, petitioner asserts that the prosecution withheld some
> unidentified police camcorder evidence and a "witness criminal record"
> before his preliminary hearing. (ECF 1 at 13). But no federal law
> requires the disclosure of *Brady* materials before a preliminary hearing.

---

[2] For this reason, the Court finds Walker's submission of supplemental authority of his "*Russo* theory"
largely unhelpful. *See* ECF No. 289.

> *See Jaffe v. Brown*, 473 F. App'x 557, 559 (9th Cir. 2012); *Lopes v. Campbell*, 408 F. App'x 13, 16 (9th Cir. 2010). . . . Moreover, "there is no fundamental [constitutional] right to a preliminary hearing." *Howard v. Cupp*, 747 F.2d 510, 510 (9th Cir. 1984) (per curiam) (citing *Austin v. United States*, 408 F.2d 808 (9th Cir. 1969)). It only follows, then, that any alleged *Brady* violation solely in connection with a preliminary hearing cannot give rise to an actionable federal law claim. *See generally Gerstein v. Pugh*, 420 U.S. 103, 119 (1975).

*Shaw v. Andes*, No. 5:22-CV-00669-FLA (SK), 2024 WL 5274598, at *5 (C.D. Cal. Oct. 7, 2024). The Court finds the reasoning of *Shaw* persuasive. Beyond the fact that *Brady* is inapplicable to Walker's preliminary hearing theory as a matter of law, because there is a distinct *Brady* violation alleged in Walker's case that the jury is intended to consider, the Court emphasizes that references to "*Brady* materials," "*Brady* violations," "*Brady* obligations," and the like are impermissible at trial to prove or defend against the alleged preliminary hearing violation. *See id.*; Fed. R. Evid. 403.

Lastly, *Napue*, as well as *Pyle v. Kansas*, 317 U.S. 213 (1942), and *Mooney v. Holohan*, 294 U.S. 103 (1935), as cited in Walker's opposition to the County's instant motion, all pertain to due process violations <u>at trial</u> caused by the prosecution's knowing use of false or misleading evidence. ECF No. 263 at 11. As the Court's conclusion about *Brady's* lack of applicability at a preliminary hearing exemplifies, there are many potential "reason[s] to suppose that the principle [of *Napue*, *Pyle*, and *Mooney*] would be . . . different in the pretrial context," *id.*, and the Court is not inclined to simply transpose legal authority applicable to due process rights at trial to an earlier stage in the prosecution.

## II.   Excluding References to Taxpayer Impact (ECF No. 230-14)

10

Walker's unopposed motion *in limine* to preclude the County from referencing the impact of any judgments on taxpayers is **GRANTED**. At the final pretrial conference, Walker further requested that no jury instructions related to this issue be given. The County had no objection. Therefore, the request to keep references to taxpayer impact out of the instructions to the jury is also **GRANTED**.

### III.    Excluding References to the "Central Park Five" (ECF No. 221)

The County's unopposed motion *in limine* to preclude references to the "Central Park Five" and "any other nationally publicized instance of alleged police and/or prosecutorial misconduct" is **GRANTED**. Walker's *Monell* claim necessarily involves evidence of other instances of prosecutorial misconduct, but evidence that does not involve the Erie County DA's Office or those who worked there does not have any tendency to make any fact more or less probable with respect to any claim or defense. Therefore, such evidence is irrelevant pursuant to Fed. R. Evid. 401. Any probative value of any factually disconnected evidence is substantially outweighed by a danger of unfair prejudice and a danger of confusing the jury. Therefore, such evidence is also inadmissible under Fed. R. Evid. 403.

### IV.    Excluding Testimony of Jerry Solomon (ECF No. 239)

The County disclosed Jerry Solomon, a former Erie County Assistant District Attorney ("ADA"), on its pretrial witness list, identifying that he is expected to testify "as to underlying proceedings." ECF No. 234 at 3. Walker argues that Solomon's deposition makes clear that he does not remember anything about the underlying criminal trial or his alleged interactions with one of the witnesses therefrom, Joseph

Tater, and his testimony is thus of no probative value and should be excluded. ECF No. 239-1 at 1. The County counters that Walker's argument goes to the credibility of Solomon's testimony, not its admissibility. ECF No. 262 at 1.

In its opposition to Walker's motion, the County, for the first time, identified that Solomon is also expected to testify to the policies and practices of the DA's Office around the time of Walker's criminal prosecution. *Id.* at 1–3. The Court heard from the parties on this notice issue at the final pretrial conference, and the County conceded that proper notice was not provided. The County argued, however, that there is no prejudice to Walker, noting that it was Plaintiff's counsel who discovered and noticed the deposition of Solomon, and conducted much of the questioning therein, including about Solomon's knowledge of the DA's Office's policies and procedures.

Solomon may testify about the underlying criminal proceedings. Assuming the County can establish a foundation for his lay testimony, Fed. R. Evid. 701, Walker will have the opportunity to cross-examine Solomon on issues of his credibility, but Walker's arguments do not render Solomon's testimony inadmissible. *See U.S. Bank Nat. Ass'n v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 135 (S.D.N.Y. 2015) (even in the context of expert testimony, issues of faulty memory or personal bias/interest are issues of credibility, not admissibility).

Beyond the official scope of Walker's motion is Solomon's potential testimony about the DA's Office's policies and practices around the time of Walker's criminal prosecution, which would, on its face, be relevant to Walker's *Monell* claim. Fed. R.

Evid. 401. Although the County conceded that improper notice of this expanded scope of Solomon's testimony was provided, the Court finds that any unfair prejudice to Walker is not substantially outweighed by the probative value of such testimony. Fed. R. Evid. 403. Walker has been aware of Solomon's testimony about ECDA policies and was himself the one to inquire into that topic during Solomon's deposition. Therefore, at this time, it is inappropriate to wholly exclude Solomon's testimony as originally noticed or under the expanded scope. Walker's motion is **DENIED**.

## V.    Instructing the Jury on Favorability & Impropriety (ECF No. 230-6)

Walker moved to have the Court issue instructions to the jury that (1) the *Brady* materials he alleges were not disclosed were "favorable" to him; and (2) certain statements ADA Henry made during summation at his underlying criminal trial were "improper." ECF No. 230-6 at 1. Each of these determinations would establish, as a matter of law, that Walker has met his burden to prove elements of his *Monell* claim against the County as to whether an underlying constitutional violation(s) occurred. *See Rodriguez v. City of New York*, 607 F. Supp. 3d 285, 297–98 (E.D.N.Y. 2022) (setting forth the elements to prove a *Brady* violation); *Bellamy v. City of New York*, 914 F.3d 727, 762 (2019) (setting forth the elements to prove prosecutorial misconduct based on improper remarks during summation).

The County counters that Walker has disguised an untimely motion for partial summary judgment as a motion *in limine*. ECF No. 278-1 at 1–3. Regardless of how the motion is classified, Walker's motion asks the Court "to rule, categorically, on swaths of evidence," *Collector's Coffee Inc.*, 2023 WL 8111865, at *1, that the motion

does not fully list ("withheld *Brady* material consists of <u>at least</u> the following") and where Walker's recitation of such is marred with imbedded factual determinations and characterizations — for example that the alleged *Brady* material was "undisclosed," that any of ADA Henry's statements during summation were "false," or that he "personally vouched" for witnesses. ECF No. 230-6 at 2, 6–8.

While case law under *Brady* establishes that prosecutors have an obligation to disclose evidence when there is any interpretation of the evidence that could be deemed favorable to the defense, *see, e.g., Rincon v. Burge*, No. 05 CIV. 0686 LTS MHD, 2010 WL 6789121, at *23 (S.D.N.Y. Sept. 8, 2010), *report and recommendation adopted*, No. 05 CIV. 686 LTS MHD, 2011 WL 2436799 (S.D.N.Y. June 16, 2011) ("Although the text could lend itself to the alternative—and arguably more plausible reading— . . . the exculpatory potential of this particular statement is sufficient to classify it as favorable for *Brady* purposes."), such requirement does not transform the issue of favorability to a question of law.

Furthermore, the Court finds that instructing the jury to consider certain evidence "favorable" as a matter of law runs the risk of the jury assuming that these "favorable" pieces of evidence in fact existed and were withheld—factual issues that, at this stage are still in dispute and are entwined with Walker's generalized motion. *See* Fed. R. Evid. 403.

Walker's arguments do not persuade the Court that it can take these inherently factual questions away from the jury at this stage. Therefore, this motion is **DENIED**. The Court notes that Walker's counsel specifically reserved the right to

revisit the propriety of these instructions after the close of evidence.

## VI.    Excluding Opinions of Underlying Guilt (ECF No. 230-9)

Walker contends that the County's witnesses should not be able to offer their opinions on whether Walker was in fact guilty of the Crawford murder. ECF No. 230-9 at 2–3. Walker argues that factual guilt or innocence is relevant to damages, but not to liability, and that defense witnesses, including the ADAs who prosecuted Walker and Boyd, do not have personal knowledge of Walker's factual guilt or innocence. *Id.*; *see* Fed. R. Evid. 701 (a lay witness may only offer an opinion that is, among other things, rationally based on their perception). The County responds that if Plaintiff-witnesses are permitted to testify about Walker being innocent, Defense witnesses should be permitted to counter that testimony with their opinions, if not specifically about factual "guilt," then about the strength of the evidence in Walker's underlying criminal trial. ECF No. 250 at 2–4.

Walker's motion is **GRANTED** with the following clarifications. With one exception described below, <u>no</u> witness, for Plaintiff or Defense, shall be permitted to offer an opinion on the guilt or innocence of any of the four co-defendants tried for the Crawford murder—Walker, Boyd, Martin, or Gibson.

Whether any of the four Crawford co-defendants were in fact guilty or innocent of the murder is wholly irrelevant to the County's potential liability under *Monell*. Fed. R. Evid. 401, 402. Comments on factual guilt also have a high probability of being confused for issues of "materiality" of withheld *Brady* materials and "substantial prejudice" from improper summation remarks, both of which are critical

issues in this case. *See* Fed. R. Evid. 403.

Materiality of the allegedly withheld *Brady* materials and prejudice from alleged summation misconduct does not implicate factual guilt or innocence, or anyone's opinion (lay or expert) on factual guilt or innocence. *See, e.g., Nnodimele v. Derienzo*, 2016 WL 3561708, at *10 (E.D.N.Y. June 27, 2016). With respect to *Brady*, the Second Circuit and Supreme Court have reiterated, "To establish prejudice, a plaintiff must show materiality[3]:

> A showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal (whether based on the presence of reasonable doubt or acceptance of an explanation for the crime that does not inculpate the defendant). The touchstone of materiality is a reasonable probability of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but *whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.*

*Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014) (en banc); *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). "While *Brady* ensures a fair trial, a defendant's right to . . . disclosure under *Brady* is not conditioned on his ability to demonstrate that he would or even probably would prevail at trial if the evidence were disclosed, much less that he is in fact innocent." *Poventud*, 750 F.3d at 133 (quotation omitted). In *Brady v. Maryland*, the Supreme Court held that Maryland violated the defendant's constitutional rights by withholding evidence relevant to his sentencing despite the fact that nothing in the suppressed confession could have reduced the

---

[3] Materiality presents a mixed question of law and fact. *United States v. Hunter*, 32 F.4th 22, 31 (2d Cir. 2022).

defendant's offense below murder in the first degree or was related to his guilt or innocence. 373 U.S. 83, 90 (1963).

Moreover, the Second Circuit "reaffirm[ed] the proposition that the presumption of innocence and the beyond-a-reasonable-doubt standard apply to all criminal defendants <u>without regard to their actual guilt or innocence</u>." *United States v. Doyle*, 130 F.3d 523, 538 (2d Cir. 1997). In *Doyle*, the Second Circuit reversed and remanded for a new jury trial because the trial court erroneously instructed the jury in a criminal case on the presumption of innocence and the beyond-a-reasonable-doubt standards, in a manner which, in part, "implie[d] that a person who is actually guilty, in the sense of 'what really happened,' as opposed to the sense of having been legally determined to be guilty, is not entitled to the presumption of innocence throughout trial and deliberations." *Id.* Guilt and innocence is even more attenuated to establishing liability under section 1983.

The one exception to this ruling pertains to Plaintiff Walker's expected testimony of his own subjective belief that he was innocent and the associated testimony of a damages expert whom his counsel proffered at the final pretrial conference was expected to testify about how someone who <u>believes</u> that they are innocent would "suffer[] differently from someone who acknowledges their own guilt." The Court finds that such testimony is relevant solely to the issue of damages and, at this stage, admissible with a limiting instruction. Fed. R. Evid. 401, 403.

"Compensatory damages in Section 1983 cases may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of

reputation and standing in the community, personal humiliation, and mental anguish and suffering.'" *Peacock v. City of Rochester*, 2016 WL 4150445, at *2 (W.D.N.Y. Aug. 5, 2016) (brackets omitted) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974)). Walker's subjective belief of his own innocence – independent of the factual truth underlying such belief – would at a minimum be relevant to his alleged mental anguish and suffering over the decades since his trial. The same is true for his damages expert who is expected to testify about how someone who <u>believes</u> that they are innocent would suffer differently from someone who acknowledges their own guilt. The Court finds that a limiting instruction which, at a minimum, would distinguish between issues of liability and damages, and issues of subjective belief and factual innocence, will cure any danger of unfair prejudice to the County. Fed. R. Evid. 403.

This one exception does <u>not</u> cover Walker's subjective belief that anyone else was innocent of the Crawford murder, or any deposition testimony of Boyd's about his own subjective belief that he, Walker, or their other co-defendants were innocent.

As this Decision and Order discusses *infra*, testimony about the perceived strength or weakness of the prosecution's case against Walker is distinct from prohibited testimony about guilt or innocence. Generally speaking, testimony on the former will be permissible though there are certain witnesses that will be precluded from offering opinions on the strength or weakness of 1977 evidence in addition to the preclusion on opinions of guilt or innocence.

Lastly, the Court cautions the parties to instruct their witnesses, and to

moderate their witness examinations, to respect the fine line of this ruling. Issues of materiality and substantial prejudice, as relevant to whether prosecutor(s) violated Walker's constitutional rights, are measured against the evidence that was actually admitted and argument actually made in Walker's criminal trial—not what anyone, including Walker, personally recalls from the day of the murder, the investigation, or prosecution. *See generally Rodriguez*, 607 F. Supp. 3d at 297–98; *Bellamy*, 914 F.3d at 762. There is a high risk of the case devolving into a trial within a trial should Plaintiff's, or the County's, witnesses start testifying about "what really happened" on January 2, 1976, or cross the line into opining on anyone's factual guilt or innocence. Fed. R. Evid. 403.

## VII.    Excluding Testimony of Franco Kroese (ECF No. 230-10)

Walker's motion *in limine* to preclude the testimony of Franco Kroese, a juror in Walker's co-defendant Floyd Martin's case, is **GRANTED IN PART AND DENIED IN PART.** Walker's motion is **DENIED** to the extent that Kroese may testify, and may only testify to, his recollection of the evidence that was and was not presented during the Martin trial. All other testimony by Kroese is barred, therefore, Walker's motion in **GRANTED** in all other respects.

This motion *in limine* is primarily premised on precluding Kroese's testimony, which if consistent with his deposition, will largely involve Kroese explaining why he, and other jurors, thought Martin was guilty despite his acquittal. ECF No. 230-10 at 1–2. Walker asserts that this testimony must be excluded under Fed. R. Evid. 606(b) and under Fed. R. Evid. 403 as it is unfairly prejudicial. *Id*. Additionally, Walker

argues that Kroese had virtually no memory of factual details from the Martin trial when he was deposed, and thus there is no probative value to his testimony. *Id.* at 2–3. The County responds that Rule 606(b) does not apply here and that Kroese is a key witness to rebut Plaintiff-witness James McLeod's expected testimony that McLeod's possession of two allegedly disclosed crime-scene photographs, which the other three co-defendants did not have, secured his client Martin's acquittal. ECF No. 251 at 1–3.

The Court's prior ruling barring any witness from opining on the factual guilt or innocence of any of the four Crawford co-defendants—Martin included—applies here, and Walker's motion to preclude Kroese's testimony in particular on those grounds is likewise **GRANTED**. *See* Fed. R. Evid. 402, 403. This includes any testimony about Kroese's own beliefs of Martin's guilt as well as his potential testimony about what other jurors said or may have believed. *See also* Fed. R. Evid. 802 (hearsay is inadmissible).

Furthermore, the Court finds that Fed. R. Evid. 606(b)(1) applies to preclude most of Kroese's anticipated testimony. Rule 606(b)(1) provides:

> During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

Fed. R. Evid. 606(b)(1). Although the primary inquiry involved in Walker's case necessarily delves into <u>Walker's</u> criminal prosecution and trial, and the associated policies of the ECDA, the Court finds that Kroese's testimony is largely intended to

inquire into the validity of the <u>Martin</u> verdict—namely that Martin should not have been acquitted, or at least that it was a close call. As the parties argued and the Court acknowledged at summary judgment, Martin's acquittal and what was disclosed to Martin's defense are relevant by comparison to what materials were disclosed to the other co-defendants given that unlike Martin, Walker, Boyd, and Gibson were all convicted of Crawford's murder. *See* Fed. R. Evid. 401; ECF No. 213.

The Court is unpersuaded by the County's argument that Rule 606(b)(1) cannot apply to the Martin verdict because this is not a case about vacating or setting aside Martin's criminal verdict. The plain language of the rule uses the phrase "a verdict," not "the verdict," and the Court finds that the well-established tenants protecting the process of jury deliberations are no less applicable when the questioned verdict rendered is not of central focus. *See United States v. Gigante*, 53 F. Supp. 2d 274, 276 (E.D.N.Y. 1999) ("Rule 606(b) embodies a strong policy to protect jurors against any attempt to interfere with their independence. The court has no more power than anyone else to interfere with the jurors' deliberations or to attempt to improperly influence them. Courts have recognized this principle since at least the time of 'Bushel's case' in 1670."); *see also United States v. Martinez*, 110 F.4th 160, 173 (2d Cir. 2024) ("Jury deliberations are, by design, a black box. Except in the rarest circumstances, a reviewing court has neither the authority nor the ability to peer inside the jury's deliberations.").

Additionally, the Court finds cases applying Rule 606(b)(1) to motions for a new trial under Fed. R. Civ. P. 59 to be analogous given that due process violations

in section 1983 cases implicate the potential for a new trial as well. *See, e.g., Sachs v. Musa*, No. 10 CIV. 1663 JPO, 2014 WL 1855615, at \*5 (S.D.N.Y. May 8, 2014), *aff'd sub nom. Sachs v. Cantwell*, 667 F. App'x 1 (2d Cir. 2016); *see also Poventud*, 750 F.3d at 133 ("[T]he remedy for a *Brady* violation is vacatur of the judgment of conviction and a new trial in which the defendant now has the *Brady* material available to her.").

Moreover, the Court is unpersuaded by the County's argument that Rule 606(b)(1) cannot apply because Kroese must be able to rebut any testimony of Martin's defense counsel, McLeod, explaining why he thinks Martin was acquitted. Setting aside that the Court's ruling below moots this issue, Rule 606(b) places special limitations on the testimony of jurors in particular, respecting well-established principles of protecting the confidentiality of juror deliberations and the dangers of attempting to peel back the curtain on why verdicts were issued. *See, e.g., Gigante*, 53 F. Supp. 2d at 276 (E.D.N.Y. 1999); *Martinez*, 110 F.4th at 173. The Court also notes that ADA Henry is a witness for the County, and, as the prosecutor in Martin's case, he will be in an arguably better position to rebut McLeod's testimony than Kroese is, subject to the Court's full ruling below.

The text of Rule 606(b)(1) is clear as to what Kroese—the only juror-witness in this case—cannot testify to, and the Court is confident that the parties will be diligent in adhering to the strict parameters of the rule and the Court's ruling. For clarity though, Kroese cannot testify to anything that happened as part of the Martin jury deliberations, anything that he or another juror thought about what the evidence in Martin's trial showed, or to any commentary on behalf of himself or other jurors on

the strength of the prosecution's case in trying Martin. Such testimony is plainly attempting to undermine confidence in the Martin acquittal and, thus fundamentally, is inquiring into the validity of the Martin verdict.

In the spirit of Rule 606(b)(1) and consistent with the above, the Court further rules that no other witness, particularly Plaintiff-witness McLeod (Martin's trial counsel), Defense-witness ADA Henry (the lead prosecutor in Martin's case), or the parties' experts, is permitted to speculate about why Martin was acquitted. *See Martinez*, 110 F.4th at 173 (2d Cir. 2024) (jury deliberations are a black box). The parties appeared to agree on this issue at the final pretrial conference at least as specifically discussed regarding McLeod and ADA Henry. Walker's attorneys also clarified that McLeod is expected to testify about his receipt of certain photographs, why he emphasized the photographs in his defense of Martin, and that Martin was ultimately acquitted. Such testimony would not run afoul of this ruling, and the Court acknowledges that ADA Henry and the parties' experts may offer similar testimony. However, as discussed in more detail below, no witness, including McLeod, is permitted to offer their opinion on a legal conclusion. *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992). As relevant to Walker's attorney's proffer of McLeod's expected testimony—McLeod cannot explicitly testify that the photographs, or any other allegedly withheld evidence, was or was not "favorable." This ruling does not preclude McLeod from testifying about how he used the photographs to advance Martin's defense—facts from which the jurors in this case could then use to themselves decide whether evidence was favorable.

23

Returning to Kroese directly, the Court finds that Kroese's proffered testimony is admissible only to the extent of his recollection of evidence introduced and not introduced during Martin's trial. This evidence is relevant primarily to the extent that Walker's case-in-chief presents evidence of *Brady* materials that were made available to Martin but not to Walker. The probative value of testimony from Kroese, as well as McLeod and ADA Henry, recalling what factually transpired during the Martin trial is enhanced given that there is no transcript of Martin's trial. Walker's arguments in support of excluding such factual testimony all go towards the weight of Kroese's testimony, not its admissibility. *See Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005) ("It is a well-recognized principle of our trial system that determining the weight and credibility of [a witness's] testimony .... belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men...." (quoting *Aetna Life Ins. Co. v. Ward*, 140 U.S. 76, 88, (1891)).

Therefore, Walker's motion is **DENIED** to the extent that Kroese may testify to, and only testify to, his recollection of what evidence and arguments were presented during Martin's trial and is **GRANTED** as described. Fed. R. Evid. 606(b)(1).

## VIII. Excluding BPD's Reinvestigation (ECF No. 230-15)

Walker's unopposed motion to preclude testimony from cold-case detectives regarding their reinvestigation of the Crawford homicide is **GRANTED**. The County confirmed at the final pretrial conference that it is not planning to call Mary Evans,

who was originally identified to testify on this topic. The County also confirmed that it does not plan to call John Paradowski to testify either, potentially subject to possible disclosure of a "photo disc" of Paradowski's reinvestigation file that the County and Walker's counsel "agreed to try and obtain." Plaintiff's counsel clarified that they merely agreed to obtain and view the disc, not that it would be admissible. Should the admissibility of the disc arise, the Court will address it then as noted during the final pretrial conference.

## IX. Excluding Deposition Transcripts of Three Defense Witnesses (ECF No. 230-12)

Walker initially moved to preclude the County from introducing deposition testimony of Michael Guadagno, John Paradowski, and John Regan under Fed. R. Civ. P. 32(a)(3). At the final pretrial conference, Plaintiff's counsel confirmed that it does not object to the admission of Guadagno's transcript pursuant to Fed. R. Civ. P 32(a)(4) because he is "unavailable," though they reserved their specific objections to portions of Guadagno's deposition transcript. Walker's motion is therefore **DENIED AS MOOT** as to Guadagno. The Court will address the substance of the parties' objections to deposition transcripts separately.

Although there was some confusion at the final pretrial conference, the County's papers clearly do not oppose Walker's motion as to Regan and Paradowski. Therefore, and because the Court agrees that case law cited in Walker's motion is clear that a "party" who has settled out of the case is not "party" for purposes of Fed. R. Civ. P. 32(a)(3), Walker's motion is **GRANTED** to preclude admission of Regan's

and Paradowski's deposition transcripts at trial. *See, e.g., Junger v. Singh*, 514 F. Supp. 3d 579, 604–05 (W.D.N.Y 2021) (Wolford, J.).

This ruling and the ruling above establish that, absent the "photo disc," Paradowski will not be testifying for the County, either live or via his deposition. At the final pretrial conference, the County said it does "not think" it planned to call Regan as a witness at that juncture. For clarity, if the County intends to rely on Regan or Paradowski in support of its defense, they will need to testify live during the trial. *See id.*; Fed. R. Civ. P. 32(a)(3).

## X.    Excluding City/BPD Polices (ECF No. 230-11)

Walker's motion to exclude evidence of City policies, practices, training, supervision, and discipline is **DENIED**. At a high level, this evidence, which as clarified at the final pretrial conference is really targeted at polices of the Buffalo Police Department, would be relevant to the County's affirmative defense of apportionment of fault/responsibility. Fed. R. Evid. 401. The motion alludes to a wide swath of potential evidence, that the Court cannot say, in the abstract is inadmissible. *See Collector's Coffee Inc.*, 2023 WL 8111865, at *1; *MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 566 (S.D.N.Y. 2017). Walker can, of course, raise specific objections at trial.

The Court notes that at the final pretrial conference, Plaintiff's counsel conceded that the County would be able to "introduce evidence that in the case of [Walker,] the City of Buffalo committed misconduct and [Walker] suffered from it." Walker's remaining objection to be addressed at trial is whether there is a "reason to

go beyond that to the broader question of what the Buffalo Police Department's policy, patterns, and practices were."

## XI.  Excluding References to ADA Drury's Subsequent Judicial Career (ECF No. 230-13)

Walker's motion to preclude any reference to Timothy Drury's judicial career is **GRANTED**. Given the alleged role that ADA Drury played in Walker's claim, the fact that his judicial career notably post-dates Walker's underlying criminal prosecution, and the fact that Drury is not being called as an expert witness, any reference to or implication of Drury's judicial career has minimal probative value, and which is substantially outweighed by a danger of unfair prejudice. That Drury is a retired judge may bear on his general credibility as a witness, but it otherwise has no relevance to any fact of consequence in this case.

There is a high risk of unfair prejudice, however, should the jury learn that Drury went on to become a judge, particularly as it may inform assessments of, for example, the accuracy of Drury's understanding of *Brady* requirements as an ADA with the ECDA. The case law cited in the County's objection dealt exclusively with an expert's qualifications, which the Court finds present a significant distinction from the circumstances here. Unlike, for example, the expert witness at issue in *In re HIV Antitrust Litigation*, 2023 WL 5670808 (N.D. Cal. Mar. 19, 2023), Drury's judicial career does not provide any "basis" for his testimony. Mr. Drury is not an expert witness who is being called <u>because</u> of his qualifications and experience, and references to his judicial career that post-dates the relevant time period and as his

central alleged role in causing Plaintiffs' harm makes such references inadmissible. Walker's motion is therefore granted pursuant to Fed. R. Evid. 403. As Walker anticipated in this motion, this ruling will likewise apply to the judicial careers of any other fact witness.

No one is to refer to Drury (or any other retired or sitting judge) as "Judge," or "Your Honor," or make any other reference that may reasonably imply the witness served or is serving as a judge, at any point during trial. Further, counsel for each party must advise each of their witnesses that they are precluded from referencing Drury's (or any other retired or sitting judge's) judicial career during their testimony. There are certainly ways for counsel to elicit information about their witnesses' background on direct that recognizes their courtroom and/or legal experience within the bounds of this ruling, and the Court will address specific objections as the evidence comes in during trial.

## XII.    Excluding Evidence of Already Litigated Issues (ECF No. 228)

At the final pretrial conference, the County stated it would rely on its papers in support of this motion. The County's motion *in limine* to "exclude evidence or testimony concerning materials and issues which were already litigated and are otherwise irrelevant" is **DENIED**. The County specifically seeks, as relevant to Walker's case,[4] to exclude evidence of alleged coercion of Tyrone Woodruff because

---

[4] The County's motion also specifically targeted Plaintiff Boyd's case to preclude the issue of summation misconduct by ADA Drury as a triable issue because Boyd unsuccessfully argued that issue in a post-conviction motion. Because that issue relates solely to Boyd's case, which as of the date of this Decision and Order, is still addressing implications of his death on the litigation, the Court declines to rule on that issue directly.

Walker unsuccessfully raised this issue in a 440 motion.

There are a number of cases that directly rebut the County's argument, including Chief Judge Wolford's decision in *Ortiz v. Wagstaff*, 523 F. Supp. 3d 347 (W.D.N.Y. 2021). Other such cases, as cited by Walker, include *Thagard v. Lauber*, 317 F. Supp. 3d 669 (W.D.N.Y. 2018), and *Dukes v. City of Albany*, 289 F. Supp. 3d 387 (N.D.N.Y. 2018). The Court agrees with these decisions that once a conviction has been vacated, decisions addressing post-conviction motions, as relevant here, have no preclusive effect.

As to the County's alternative argument, the evidence raised by its motion is clearly relevant to Walker's case and thus does not warrant exclusion under Fed. R. Evid. 402.

## XIII. Excluding References to Unsuccessful 440 Motions[5] (ECF Nos. 230-8, 297)

Walker moved *in limine* to preclude the County "from alluding to, or eliciting facts about, the claims raised and decisions rendered in the direct appeals and 440 motions" by which he and Plaintiff Boyd challenged their underlying criminal convictions. ECF No. 230-8. The crux of Walker's argument is that it would be unfairly prejudicial to have the County introduce evidence from his direct criminal appeal and the collateral attacks on his conviction about what arguments he made and how the state court judge ruled. There was much back and forth on this motion at the pretrial conference on March 3, and the Court asked the County to clarify what

---

[5] This is shorthand for a N.Y. C.P.L. § 440 motion, which allows a criminal defendant to seek post-conviction relief.

it would seek to admit through a further motion. In its motion, the County seeks to introduce affidavits and statements submitted in support of Plaintiff's post-conviction motions and appeals. ECF No. 297.

As discussed at the final pretrial conference, Walker's initial request was too broad and abstract. His motion to generally exclude references to unsuccessful 440 motions, ECF No. 230-8, is therefore **DENIED**. *See MF Glob. Holdings Ltd.*, 232 F. Supp. 3d at 566.

As to the County's follow-up motion on the matter, the County identifies 11 documents filed with Walker's 440 motions seeking to vacate his conviction. ECF No. 297. Two are affidavits of Walker, four are affidavits of "Plaintiff's counsel," and five are statements of witnesses submitted in support of Walker's 440 motions. Plaintiff consents to the admission of McLeod's 2020 affidavit (DX 595). ECF No. 302 at 7. He also consents to the admission of the 1985 examination of Woodruff (DX 545; PX 218) subject to a redaction on page 11 thereof. *Id.* Thus, the Court will admit that exhibit with the following statement redacted: "Q: And you're prepared to come into court, if necessary, to deal with a motion and/or hearing that might be necessitated in this matter, is that correct? A: Right."

Plaintiff seeks to exclude all of the remaining documents identified by the County. ECF No. 302. With respect to Plaintiff's argument that the Cohen affidavit (DX 594) supporting Plaintiff Boyd's 2012 440 motion, the Court agrees with Plaintiff that it is not a party admission under Fed. R. Evid. 801(d)(2) because Plaintiff Boyd is not a party to the instant trial, and therefore may be excluded as hearsay.

Similarly, the Court agrees with Plaintiff that the probative value of the documents related to George Newton (DX 515, 516) (witness who was unknown to parties at the time of Plaintiff's trial) are substantially outweighed by the danger of unfair prejudice and confusion of the jury. Fed. R. Evid. 403.

However, with respect to the remaining documents, the Court finds that they are party admissions under Fed. R. Evid. 801(d)(2)(A), (B), or (D). Fed. R. Evid. 801(d)(2)(A) provides that a statement offered against an opposing party, which was made by that party in an individual or representative capacity, is not hearsay. Accordingly, the Walker affidavits (DX 514 and 596) are admissible except for the references to George Newton in DX 514, which must be redacted. *See Barnes v. Long Island R.R.*, 205 F.3d 1321, 1321 (2d Cir. 2000) ("It is well-established that evidence of a party's prior litigation, including testimony and statements made in the course of a former case, may be admitted so long as it is relevant and probative of an issue in the present case-and particularly if the evidence is inconsistent with the party's current position.").

Further, Fed. R. Evid. 801(d)(2)(B) provides that a statement offered against an opposing party that the party manifested adoption or belief to be true is also not hearsay. Consequently, the Court will admit the 2010 examination of Woodruff (DX 569 and PX 232), with redactions consistent with the prior bad acts ruling set forth below. The County need not accept Plaintiff's redacted version, if it can show there are probative statements in the 2010 examination which are otherwise admissible in this matter.

Finally, Fed. R. Evid. 801(d)(2)(D) proves that a statement offered against an opposing party which was made by the party's agent or employee on a matter within the scope of that relationship and while it existed is not hearsay. The Second Circuit has interpreted this provision to allow statements of a party's attorney under this provision, provided that they are: (1) "assertions of fact that are the equivalent of a testimonial statement by the [client]"; and (2) "inconsistent with similar assertions in a subsequent trial." 5 Weinstein's Federal Evidence § 801.30 (quoting *United States v. McKeon*, 738 F.2d 26, 33 (2d Cir. 1984)). The Circuit also stated, however, that "[s]peculations of counsel, advocacy as to the credibility of witnesses, arguments as to weaknesses in the prosecution's case or invitations to a jury to draw certain inferences should not be admitted." *Martinez v. Port Auth. of N.Y. & N.J.*, No. 01 CIV. 721 (PKC), 2005 WL 2143333, at *11 (S.D.N.Y. Sept. 2, 2005), *aff'd sub nom. Martinez v. The Port Auth. of New York & New Jersey*, 445 F.3d 158 (2d Cir. 2006) (quoting McKeon, 738 F.3d at 33).

Accordingly, the Court finds that the McLeod affidavits (DX 513, 544), and the Cambria affidavit (DX 598) are admissible to the extent that that any statements involving legal argument or legal conclusions are redacted. *See, e.g., Martinez*, 2005 WL 2143333, at *11 (drawing the line between testimonial assertions and legal argument). In Mr. Cambria's affidavit, for instance, that will require the redaction of broad swathes of the "Argument" section of his affidavit. ECF No. 297-7 at 2–10. Similarly, Mr. McLeod's affidavits must be redacted to remove legal argument, as well as references to George Newton. In short, the County's motion, ECF No. 297, is

**GRANTED IN PART AND DENIED IN PART**.

## XIV. Excluding References to Decision Vacating Walker's Conviction (ECF No. 223)

The County seeks to preclude Walker from mischaracterizing the state court decision vacating his conviction and from introducing acts and comments of the ECDA subsequent to that decision—specifically statements that then-DA Flynn made about Boyd's and Walker's cases. The parties both agreed not to refer to the substance of Judge Burns' August 2021 decision itself, which vacated Walker's conviction. What they agreed is relevant is the procedural nature of the decision—that Walker's conviction was vacated in August 2021. Walker also does not oppose the County's motion regarding DA Flynn, except for two statements made during an August 2021 press conference, which Walker labeled the "Weak Case Statement" and the "All-White Jury Statement." To the extent the County's motion regarding Judge Burns' decision and subsequent acts and comments by the ECDA Office is unopposed, it is **GRANTED**. The parties will have the opportunity to review and object to the Court's preliminary jury instructions, outlining the relevant procedural history of Walker's case to include that his conviction was vacated.

The Court turns now to the two statements of DA Flynn remaining at issue. Walker argues that both of the statements he seeks to admit from the press conference are statements of a party opponent because DA Flynn was "authorized to speak on the subject," Fed. R. Evid. 801(d)(2)(C), or was an agent or employee acting with the scope of that relationship, Fed R. Evid. 801(d)(2)(D). ECF No. 265 at 4–5.

The County generally opposes the admission of any statements from the press conference, claiming that whatever DA Flynn had to say about the Boyd and Walker cases is irrelevant because the cases are fifty years old. ECF No. 223-1 at 4. The County also argues the statements are inadmissible hearsay, constitute improper opinion testimony because DA Flynn had no personal knowledge of the underlying facts, and that admitting his statements would "confuse the issues and/or the jury" and would be unfairly prejudicial. *Id.* at 4-5.

As applicable to both proffered statements, there is no question that statements spoken by DA Flynn himself during the 2021 press conference, <u>as</u> Erie County District Attorney, and as being offered against the County, are statements of a party opponent under both Fed. R. Evid. 801(d)(2)(C) and 801(d)(2)(D).[6] As such, DA Flynn's "lack of personal knowledge" does not bear on the admissibility of his statements. *See Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537–38 (2d Cir. 1992); *Pekelis v. Transcon & W. Air, Inc.*, 187 F.2d 122, 129 (2d Cir. 1951); Advisory Comm.'s Note to Fed. R. Evid. 801(d)(2) (admission are not subject to "the restrictive influences of the opinion rule and the rule requiring firsthand knowledge").

The "All-White Jury Statement" from the August 18, 2021 press conference consists of the following:

> DA FLYNN: Our diversity isn't great in our jury, still to this day. So, again, of the 48 people, I have no idea how many were Caucasian or African-American. I honestly don't know. Would I suspect that a lot of them would be? Perhaps, yeah. I'm not going to lie about that. Probably not.

---

[6] The Court notes that the County acknowledged at the final pretrial conference that DA Flynn "was the policymaker under the case law that guides *Monell.*"

JOURANLIST: So, this is a white jury handling the case of five black guys accused of killing a white guy.

DA FLYNN: Correct.

The primarily issue here is that the "All-White Jury Statement" contains a statement spoken by someone other than DA Flynn. Walker's opposition did not address this nuance.[7] Yet, the plain language of each of the five options under Rule 801(d)(2) requires a declarant-by-declarant analysis. *See, e.g., Mandengue v. ADT Sec. Sys., Inc.*, No. CIV.A. ELH-09-3103, 2012 WL 892621, at *21 (D. Md. Mar. 14, 2012) ("The other statements challenged by ADT all come within the exception to the rule against hearsay under Rule 801(d)(2)(D), because all of them are statements made by ADT employees, about matters within the scope of their employment. Notably, ADT asserts (without elaboration) that the employees who made the challenged statements were not 'manager[s] for ADT' at the time of the statements. But, Rule 801(d)(2)(D) does not require that the employee-declarant be a manager; it requires only that the statement be made during the declarant's employment, about matters within the scope of the declarant's employment."); *United States v. Gajo*, 290 F.3d 922, 929 (7th Cir. 2002) ("[T]he statements of a non-conspirator are not admissible under Rule 801(d)(2)(E)," which exempts statements made by the party's coconspirator during and in furtherance of the conspiracy). Walker has not asserted that the journalist was an employee or agent of the County, that the County

---

[7] The Court notes that Walker took issue with the County's attorneys' practice in depositions of reading extrinsic evidence into the record and then asking the deponent, among other things, if they read from the evidence correctly, arguing that the attorneys' statements are inadmissible hearsay. ECF No. 230-7.

authorized the journalist to speak on the subject or satisfied any other declarant classification in Rule 801(d)(2), nor could he likely succeed in doing so.

Therefore, to admit the journalist's statement for the truth of the matter asserted, the journalist's question must fall under a hearsay exception. Walker has not argued any exception applies. Furthermore, in order for the "All-White Jury Statement" to have real probative value, the journalist's statement would need to be admitted for the truth. *Cf. United States v. Brown*, 122 F.4th 290, 296 (8th Cir. 2024) (explaining "commands," such as "[b]ring me some heroin," are not offered for the truth because they do "not assert a proposition that could be true or false" (quotation omitted)). Without it, DA Flynn is simply stating that generally, diversity in jury pools for selection is "not great," and based on that generalization, he "suspect[s]" that "a lot" of the jury pool for selection in Boyd's and Walker's cases were Caucasian.

The Court finds that absent the journalist's question coming in for the truth, the "All-White Jury Statement" fails the balancing test under Rule 403—in fact, it is not a statement about an "All-White Jury" at all. The speculative racial make-up of the potential jurors in Walker's 1977 criminal trial is irrelevant. Fed. R. Evid. 402. What would be relevant—specifically with respect to Walker's claims that ADA Henry made improper, racially charged comments during summation—is the actual racial make-up of Walker's jury in his criminal trial. It is the journalist's question that asserts the relevant proposition that could be true or false, which then DA Flynn confirms is true.

"Context" does not save the journalist's question. When asked about the

admissibility of the journalist's question at the final pretrial conference, Plaintiff's counsel said, "the journalist's statement would come in to make sure that the district attorney's response is comprehensible." While "context" is a basis to admit statements made by other declarants, statements admissible for context are necessarily not being admitted for the truth. *See United States v. Lin*, 505 F. App'x 10, 13 (2d Cir. 2012) (explaining the district court admitted the statements made by Lin on the calls as party admissions, under Rule 801(d)(2)(A),4 "and the statements made by other parties on the calls as necessary context and not for their truth," and further that "Lin does not contest the District Court's conclusion on this issue—nor would he prevail on such a claim."); *see also Gajo*, 290 F.3d at 930 (explaining that the district court admitted a non-conspirator's statements "to provide context to a coconspirator's statements properly admitted under Rule 801. It is well settled that such an approach is appropriate because statements are not hearsay to the extent they are offered for context and not for the truth . . . of the matter asserted.").

Therefore, the Court **GRANTS** the County's motion with respect to the "All-White Jury Statement." Should Walker identify an applicable exception to the hearsay rule for the journalist's question, the Court will entertain that at trial.

Now turning to the "Weak Case Statement," DA Flynn also said the following during the August 2021 press conference:

> Even when I believe quite frankly, in my heart of hearts, that this was a weak case, frankly. This wasn't the strongest case 45 years ago. I'll concede that, alright. I'll concede it wasn't the greatest case. I'll concede he had a couple of jailhouse snitches. He had one of the five there flip who got off scot-free, and didn't get prosecuted at all, and testified against the other four. Listen here, not the greatest evidence in the

world. There's no DNA evidence. It wasn't the greatest case.

As Walker argues, this statement is plainly relevant to at least the issue of materiality and, there is little if any risk of a jury "confusing the issues" with respect to such an on-point statement. ECF No. 265 at 6–7; *see* Fed. R. Evid. 401, 403. Moreover, "[a]ll evidence introduced against a defendant, if material to an issue in the case, tends to prove [liability], but is not necessarily prejudicial in any sense that matters to the rules of evidence." *United States v. Figueroa*, 618 F.2d 934 (2d Cir. 1980). "Evidence is ['unfairly'] prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *Id.*

As contemplated at the final pretrial conference, the Court finds that DA Flynn's statements that directly comment on the strength of the prosecution's case—"this was a weak case, frankly. This wasn't the strongest case . . . it wasn't the greatest case. . . . not the greatest evidence in the world"—do not implicate Walker's, or Boyd's, factual guilt or innocence, which the Court ruled is generally inadmissible.

DA Flynn's remarks about the strength of ADA Henry's case also do not run afoul of the general prohibition that no witness may testify to legal conclusions. *Cameron v. City of New York*, 598 F.3d 50, 62 (2d Cir.2010) ("Witnesses may not present testimony in the form of legal conclusions." (quotation omitted)); *Hygh*, 961 F.2d at 364 (noting "[t]his rule applies to both expert and lay witnesses"). This rule "prohibits explicit legal conclusions and any testimony that implicitly communicates a legal standard to the jury." *Hygh*, 961 F.2d at 364. DA Flynn's statements do not

explicitly opine on "materiality" or any other legal conclusion that must remain within the province of the jury, nor do they implicitly communicate any legal standard. *See id.*; *Cameron*, 598 F.3d at 62 (testimony on legal conclusions "undertakes to tell the jury what result to reach, and thus attempts to substitute the witness's judgment for the jury's." (quotation and brackets omitted)). Assessing the strength of the ECDA's criminal case against Walker is certainly a factual determination that the jury will have to undergo to determine, for example, whether any withheld *Brady* materials undermines confidence in Walker's original guilty verdict, but DA Flynn's statements fall short of implicitly instructing the jury on how to assess materiality. *See Poventud v. City of New York*, 750 F.3d at 133 (discussing the materiality standard); *cf. Hygh*, 961 F.2d at 364 (holding expert impermissibly offered opinions on legal conclusions which "merely told the jury what result to reach"). Even if the jury adopted DA Flynn's assessment of the strength of the criminal prosecution's case, it could still find that any withheld *Brady* materials nonetheless do not undermine the confidence in the underlying verdict.

Further, the Court finds that DA Flynn's statement, "He had one of the five there flip who got off scot-free, and didn't get prosecuted at all, and testified against the other four," falls short of opining on Woodruff's credibility. *See Cameron*, 598 F.3d at 61–62 ("As a matter of law, the credibility of witnesses is exclusively for the determination by the jury, and witnesses may not opine as to the credibility of the testimony of other witnesses at the trial."); *United States v. Johnson*, 529 F.3d 493, 499 (2d Cir. 2008) ("It is . . . impermissible for a government agent to vouch for a

government witness or generally to opine on the credibility of witnesses." (citations omitted)). The statement is limited to facts that bear on how Walker's civil jury may assess Woodruff's credibility in the underlying criminal trial but does not step over the line to usurp the jurors' responsibility to come to their own conclusions. The remainder of DA Flynn's statements, such as the fact that "jailhouse snitches" testified and there was no DNA evidence are even farther removed from any legal conclusion.

Therefore, the Court **DENIES** the County's motion with respect to the "Weak Case Statement," finding it is a statement of a party opponent under Fed. R. Evid. 801(d)(2)(D) and ultimately admissible.

At the final pretrial conference, the County requested that, if the Court ruled any of DA Flynn's statements admissible, it be granted leave to submit additional briefing on other statements from the press conference for admission under to Fed. R. Evid. 106. That request is **GRANTED** given the Court's ruling on the "Weak Case Statement." The County shall file any briefing on the <u>specific</u> other statements it seeks to admit from the press conference under the rule of completeness **by EOD Tuesday, March 18, 2025**. Walker may respond by EOD Wednesday, March 19, 2025.

The Court notes that while the "Weak Case Statement" shorthand has been helpful in facilitating discussion amongst the parties and Court, such shorthand is inappropriate for use in front of the jury.

**XV.    Excluding Prior Bad Acts of Walker, Boyd, Gibson, Martin, and**

**Woodruff (ECF No. 230-1)**

In his motion *in limine* to exclude his prior bad acts and those of Boyd, Gibson, Martin, and Woodruff (collectively, "the Group"), Walker maintains that the alleged misconduct of each individual within the Group "does not qualify as 'similar act' evidence under Fed. R. Evid. 404(b), and it is too remote – occurring for the most part 40 or 50 years ago – to bear on general credibility under Fed. R. Evid. 608(b) and 609." ECF No. 230-1 at 1. Further, Plaintiff argues that even if the alleged prior bad acts of members of the Group were admissible under Fed. R. Evid. 404(b), 608(b), and 609, they should be excluded under Fed. R. Evid. 403 as unfairly prejudicial. *Id.*

To determine whether prior act evidence is admissible pursuant to Rule 404(b), the court must consider whether: (1) the prior act evidence was offered for a proper purpose; (2) the evidence was relevant to a disputed issue; (3) the probative value of the prior act evidence substantially outweighed the danger of its unfair prejudice; and (4) the court administered an appropriate limiting instruction. *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002). This is true in both the civil and criminal contexts. *See, e.g, Worthington v. Cnty. of Suffolk,* No. 02CV723(DLI)(ARL), 2007 WL 2115038, at *6 (E.D.N.Y. July 20, 2007), *abrogated on other grounds by Vega.*

The Court finds that the following prior bad acts identified by the County's opposition are wholly irrelevant with respect to Walker's trial and are thus inadmissible. Fed. R. Evid. 402:

- Any criminal history of non-witnesses Boyd, Gibson, or Martin that does not involve Walker, ECF No. 260 at 1–8;

- Boyd's "prison conduct," *id.* at 8;

- Walker's and Boyd's use of cough syrup and marijuana on the night of the Crawford murder to which they testified at their depositions,[8] *id.* at 9;

- Boyd's substance use, generally,[9] *id.*;

- Boyd's conduct on parole,[10] *id.*;

- Gibson's conviction while incarcerated at the Erie County Holding Center, *id.* at 10; and

- "Boyd's truancy," *id.*

Fed. R. Evid. 609 renders all of Walker's criminal history noticed by the County, whether committed independently or with one or more members of the Group or with Hough, inadmissible. The incidents noticed by the County all pre-date Walker's 1977 trial. ECF No. 260 at 1–2. They are all inadmissible under either Rule 609(d) or Rule 609(b).

To the extent the noticed incidents involved a juvenile adjudication, Rule 609(d) provides that evidence of a juvenile adjudication is admissible under this rule only if: (1) it is offered in a criminal case; (2) the adjudication was of a witness other than the defendant; (3) an adult's conviction for that offense would be admissible to attack the adult's credibility; and (4) admitting the evidence is necessary to fairly determine guilt or innocence. Fed. R. Evid. 609(d). The is no question that these prerequisites are not satisfied here.

---

[8] See the Court's ruling and cautionary instruction in this Decision and Order regarding opinions of guilt of those tried for the Crawford's murder.

[9] The County states it "does not anticipate asking Mr. Walker . . . questions about substance use." ECF No. 260 at 9.

[10] The County states it "does not intend to reference John Walker's parole violations." *Id.*

Additionally, Fed. R. Evid 609(b) provides that evidence of felony convictions is admissible only if (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

The almost fifty-year-old acts noticed by the County have virtually no probative value to any claim or defense in this *Monell* action, let alone has probative value, "supported by specific facts and circumstances, [that] substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1). The prejudicial effect of these incidents is great—mostly due to the danger of treading into assessments of Walker's factual guilt on the underlying murder.

The County's argument that Walker's prior bad acts are admissible as *modus operandi* evidence under Rule 404(b) is far-fetched. First, this is not a trial about who committed the Crawford murder. *Compare United States v. Carlton*, 534 F.3d 97, 102 (2d Cir. 2008) (concluding that the trial court in <u>defendant's criminal trial</u> did not err in admitting prior bank robberies with similarities to the charged bank robbery), *with Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2d Cir. 1991) (rejecting <u>plaintiff's</u> argument in a non-*Monell* section 1983 case that seven prior complaints against defendant-police officer were admissible under Rule 404(b) as *modus operandi* evidence). Second, such evidence would not be probative in proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident, and would only serve as impermissible propensity evidence. Fed. R. Evid. 404(b).

The County also argues that Walker's criminal history is needed to rebut his theory of damages, including his expert's testimony about the effect that prison violence had on Walker. The County contends that Walker's prior bad acts, "which include acts of extreme and brazen violence inflicted on strangers, are facially relevant to damages and relevant to the rebuttal of Plaintiff's far-reaching claim that" conviction for the Crawford murder is "the sole cause of every negative experience and feeling" of Walker's following his conviction. ECF No. 265 at 2. It is possible for Walker or his other witnesses to open the door to prior bad act evidence during trial. The examples cited by the County's opposition do not do so.

For the foregoing reasons, Walker's motion is **GRANTED**. The Court will entertain a motion during trial if the County believes that a door has been opened to admit specific prior bad acts.

On February 24, 2025, Walker separately filed a "memorandum in opposition" to the County's pretrial submission, seeking to bar the County from introducing prior bad acts of McLeod, which the County had noticed it intends to do. ECF No. 248. Motions *in limine* were due on February 10, 2025, pursuant to the Court's Pretrial Order. ECF No. 214, and Walker's memorandum does not explain the late request for, what essentially is *in limine* relief. The County has not filed an objection to or comment on Walker's opposition filing. At the March 17 pretrial conference, the Court will inquire into the parties' expected sequence of witnesses at trial and will set a deadline accordingly by which the County can be heard on the issue of the McLeod prior bad acts.

44

## XVI.  Barring Questions that Elicit Inadmissible Hearsay (ECF No. 230-7)

Walker's motion *in limine* to preclude the County from using questions posed to witnesses to introduce inadmissible hearsay targets, as Walker's counsel reiterated at the final pretrial conference, the County's attorneys' practice "at deposition of reading entire documents, police records, parole records, family court records into the record, and asking the witness questions about them, including the question, 'did I read that correctly.'" This motion is **DENIED** at this stage due to its abstract nature, and the Court will rule on any specific objection that may arise during trial. *See MF Glob. Holdings Ltd.*, 232 F. Supp. 3d at 566.

That said, and setting aside issues of relevance, the Court agrees with Walker that issues of, at least, double hearsay appear to be implicated. *See* Fed. R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."); *Rodriguez v. Mod. Handling Equip. of NJ, Inc.*, 604 F. Supp. 2d 612, 622 (S.D.N.Y. 2009). In such a case, the statement of the declarant captured in the deposition transcript itself would need to be excepted from the rule against hearsay, as would the contents of the underlying report or record that was being read into the deposition (which may themselves contain statements of third parties requiring a further exception). *See, e.g., id.* (explaining that a proffered OSHA report had been authenticated as a business record under Rule 803(6), that the "contents of the report, which reflect the personal knowledge of the OSHA investigator as he created the report on the day of the accident in the ordinary course of business are admissible," and that portions of the

45

report that "contain[ed] an interview with plaintiff" implicated double hearsay under Rule 805, but "[s]ince plaintiff is a party to the lawsuit, however, his statements in the OSHA report, if they are legible, may come in as a non-hearsay party admission under 801(d)(2)(B)."); *Finnegan v. Bd. of Educ. of Enlarged City Sch. Dist. of Troy*, 30 F.3d 273, 274 (2d Cir. 1994) ("We also reject Finnegan's contention that he adduced sufficient evidence to require a trial as to whether defendants publicly disseminated the October 1991 letter. His only proffer was his affidavit to the effect that Hamel had stated that a reporter told her Scalzi had shown a copy of the letter to the reporter. This double hearsay would not have been admissible at a trial and hence was insufficient to create a genuine issue to be tried.").

## XVII. Finding Expert Gagan's Deposition Constitutes Statements of a Party Opponent under Rule 801(d)(2) (ECF No. 230-4)

Kevin T. Gagan is currently identified as a testifying expert witness for the County in the trial set to begin on March 18, 2025. ECF Nos. 234 at 4–5; 290. Walker moved the Court to find that certain statements from the transcript of Gagan's deposition are statements of a party opponent under three theories: Rule 801(d)(2)(B), the statements being "one the party manifested that it adopted or believed to be true;" Rule 801(d)(2)(C), the statements being "made by a person whom the party authorized to make a statement on the subject;" and Rule 801(d)(2)(D), the statements being "made by the party's agent or employee on a matter within the scope of that relationship and while it existed." ECF No. 230-4 at 3–4. This motion is **GRANTED** because the Court concludes that Gagan's deposition transcript

constitutes statements made by a person whom the County authorized to make a statement on the subject. Fed. R. Evid. 801(d)(2)(C).

The parties have not directed the Court to any mandatory case law on this issue, nor has the Court uncovered any. The County primarily points to *Kirk v. Raymark Indus., Inc.*, 61 F.3d 147 (3d Cir. 1995), which held that prior testimony of a party's retained expert was not admissible under Fed. R. Evid. 801(d)(2)(C) or 801(d)(2)(D). The Court does not find *Kirk* persuasive. As other courts have recognized, *Kirk* "collapses the requirements of Rules 801(d)(2)(C) and (D), infusing a requirement of a showing of agency into subsection (C)." *Long v. Fairbank Farms, Inc.*, No. 1:09-CV-592-GZS, 2011 WL 2516378, at *10 (D. Me. May 31, 2011)[11] (citing *Kirk*, 61 F.3d at 163–64). Moreover, *Kirk* is distinguishable in that the expert testimony at issue there was derived from an unrelated litigation. *See id.*

The Court does find persuasive the Federal Court of Claims decision in *Glendale Fed. Bank, FSB v. United States*, 39 Fed. Cl. 422 (1997). It concluded that the deposition transcript of an expert witness is a statement of a party opponent under Fed. R. Evid. 801(d)(2)(C), under the following circumstances:

> When an expert witness is put forward as a testifying expert at the beginning of trial, the prior deposition testimony of that expert in the same case is an admission against the party that retained him. Where an expert witness is withdrawn prior to trial, however, the prior deposition testimony of that witness may not be used. That deposition testimony is hearsay.

*Id.* at 425. With trial days away here, Gagan is a testifying expert for the County and

---

[11] *amended*, No. 1:09-CV-592-GZS, 2011 WL 2490950 (D. Me. June 22, 2011), *and aff'd*, No. 1:09-CV-592-GZS, 2011 WL 2669199 (D. Me. July 7, 2011), *and aff'd sub nom. Smith v. Fairbank Farms, Inc.*, No. 2:10-CV-60-GZS, 2011 WL 2669205 (D. Me. July 7, 2011).

was retained as the County's expert at the time of his deposition. *Cf. Eastman Kodak Co. v. Agfa-Gevaert N.V.*, 560 F. Supp. 2d 227, 310–11 (W.D.N.Y. 2008), *aff'd*, 351 F. App'x 441 (Fed. Cir. 2009) (distinguishing *Glendale* because testifying expert witness was a fact witness when he was deposed). At the beginning of trial, Gagan becomes authorized to speak for the County, and his deposition taken in this litigation will not be hearsay under Rule 801(d)(2)(C).[12] Pursuant to the reasoning of *Glendale*:

> FRE 801(d)(2)(C) allows [the Court] to treat certain statements by another as if made by a party itself. Such treatment does not require that we find agency or control. The beginning of trial is a critical juncture. By the beginning of trial it is fair to tie the party to the statements of its experts. When admitting expert deposition testimony under FRE 801(d)(2)(C) [the Court] need not find that these experts are obligated to do the sponsoring party's bidding. [The Court] merely note[s] that they were selected as witnesses and retained through the start of the trial because the opinions they held all along, and still hold as the trial begins, are consistent with those of the sponsoring party. [The Court] [is] not retroactively finding agency or control at the time of a prior deposition. Rather, an expert witness who is listed as such when the trial begins has been authorized and his or her prior statements are fair game. This, of course only applies to those made in the context of the instant proceeding. All other such statements may only be used to cross-examine that expert or others connected with the statement.

*Id.*

Furthermore, the Court disagrees with the County that Fed. R. Civ. P. 32(a) precludes use of Gagan's deposition transcript because he is testifying in court and therefore is not "unavailable" under Rule 32(a)(4). Fed. R. Civ. P. 32(a) provides,

> [a]t a hearing or trial all or part of a deposition may be used against a party on these conditions: (A) the party was present or represented at the taking of the deposition or had reasonable notice of it; (B) it is used to the extent it would be admissible under the Federal Rules of Evidence

---

[12] The Court's ruling pursuant to *Glendale* does not foreclose Gagan's deposition testimony from qualifying under Rule 801(d)(2)(C) if the County withdrew Gagan as it's expert before the start of trial. That circumstance is not presently before the Court and so the Court declines to address it.

if the deponent were present and testifying; and (C) the use is allowed
by Rule 32(a)(2) through (8).

Fed. R. Civ. P. 32(a). "Rule 32(a)(2) broadly allows use of a deposition for cross-examination, impeachment, "or for any other purpose allowed by the Federal Rules of Evidence." *Stanphill v. Health Care Serv. Corp.*, No. CIV-06-985-BA, 2008 WL 3927468, at *3 (W.D. Okla. Aug. 20, 2008). Here, Fed. R. Evid. 801(d)(2)(C) provides an independent basis for admitting Gagan's deposition testimony. *See, e.g., id.*; *Carpenter v. Forest Meadows Owners Ass'n*, No. 1:09-CV-01918-JLT, 2011 WL 3207778, at *5 (E.D. Cal. July 27, 2011); *see also Globe Sav. Bank, F.S.B. v. United States*, 61 Fed. Cl. 91, 95 (2004) ("As courts and commentators have observed, the Federal Rules of Evidence . . . provide the general rules regarding the use at trial of depositions. Fed. R. Civ. P. 32 defines some circumstances in which a deposition is admissible, leaving most issues of admissibility to the Federal Rules of Evidence." (cleaned up) (quotation omitted) (collecting authority)); *cf. MF Glob. Holdings Ltd.*, 232 F. Supp. 3d at 566 (discussing Fed. R. Evid. 801(d)(2)(D) providing an independent basis from Fed. R. Civ. P. 32(a)(3)).

Gagan's deposition testimony would be admissible under Fed. R. Civ. P. 32(a)(2) regardless of whether he is "available." *Stanphill*, 2008 WL 3927468, at *3; *cf.* Fed. R. Civ. P. 32(a)(4) (requiring the deponent be "unavailable"). Nor does Fed. R. Evid. 801(d)(2) require the declarant be unavailable. *Cf.* Fed. R. Evid. 804 (hearsay exceptions that require unavailability of the declarant).

The Court also disagrees with the County that it will be unfairly prejudiced

should Walker be permitted to introduce Gagan's party opponent statements in his case-in-chief. *See Grotto v. Herbert*, 316 F.3d 198, 206 (2d Cir. 2003) ("[T]he trial judge has considerable discretion in matters of scheduling, and in seeing that the trial is conducted in a fair, efficient, and orderly manner." (citations omitted)); see also *Reynolds v. Giuliani*, 506 F.3d 183, 192–93 (2d Cir. 2007) (discussing plaintiff's burden of proof under "*Monell's* rigorous culpability and causation standards").

The Court assumes that Walker's pretrial designations of Gagan's deposition constitute the balance of statements he seeks to introduce pursuant to Rule 801(d)(2). The Court's ruling here should not be construed to mean that each of these statements are admissible—this ruling holds that Gagan's deposition testimony, as the County's testifying expert at trial, is not hearsay under Rule 801(d)(2)(C).

The County argued in the alternative that certain of Gagan's designated statements are inadmissible even if they are statements of a party opponent. ECF No. 277 at 7–8. The County also reserved its right to raise further objections. *Id.* at 8.

The County points to six designations[13] that it argues are inadmissible because Gagan "has no firsthand knowledge and/or [they] call for speculation," confoundingly because these passages "concern polices of the [ECDA] in 1976 and 1977" of which Gagan acknowledged he has no personal knowledge. *Id.* at 7, 8 n.5. That objection is **OVERRULED** to the extent of the County's specifically identified passages. Among other things, Gagan confirmed in his deposition that he has been asked to provide an

---

[13] ECF No. 165-1 at 88:18-91:16, 156:21–158:3, 159:15–160:3, 168:23–169:6, 225:23–226:13, 441:6–11.

opinion about practices, ethics, and protocols as they applied generally to prosecutors in New York State around 1977, as well as those of police officers. ECF No. 165-1 at 119:14–11:25. Establishing personal knowledge is a requirement of lay witnesses, not experts, *see* Fed. R. Evid. 701, 702, and the Court assumes that given the County's opposition to Walker's separate motion *in limine* to limit Gagan's testimony because of his qualifications, that the County is not attempting to argue here that its own expert, called in its defense to a *Monell* claim, is not qualified to offer an opinion on the polices, practices, and customs of the ECDA. For similar reasons, the County's objection that certain portions are outside the scope of Gagan's expertise is **OVERRULED** to the extent of the County's specifically identified passages.[14] ECF No. 277 at 8.

The County also identifies six designations[15] that include "reference to and colloquy concerning judicial decisions and sources such as the 1974 ABA Standards for the Prosecution and Defense Functions" as inadmissible due to their irrelevance, confusion of the issues and/or inadmissible double hearsay. *Id.* That objection is **SUSTAINED** to the extent that Walker's deposition designations run afoul of one of the Court's other *in limine* rulings. Otherwise, the Court **RESERVES** a ruling to give Walker the opportunity to respond.

The County's opposition to Walker's instant motion *in limine* states that "[t]o the extent that Mr. Gagan's deposition testimony constitutes admissions of the

---

[14] ECF No. 165-1 at 103:14–110:10, 130:21–15.

[15] ECF No. 165-1 at 85:10–86:19, 86:25–88:8, 88:18–91:16, 94:10–103:6, 209:23–212:5, 213:13–215:24.

County . . . the Court should hold that the entirety of his deposition transcript is admissible as evidence to avoid unequal and prejudicial application of the Federal Rules of Evidence." ECF No. 277 at 6 n.4. Setting aside that this statement arguably concedes the admissibility of all of Walker's designations, the County refined its position at the final pretrial conference, asking for leave to determine whether additional portions of Gagan's deposition transcript should accompany those identified by Walker. The Court **GRANTS** that request. *See* Fed. R. Evid. 106 ("If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part — or any other statement — that in fairness ought to be considered at the same time. The adverse party may do so over a hearsay objection."); *see also* Fed. R. Civ. P. 32(a)(6) ("If a party offers in evidence only part of a deposition, an adverse party may require the offeror to introduce other parts that in fairness should be considered with the part introduced, and any party may itself introduce any other parts.").

If the parties cannot come to a stipulation about the scope of Gagan's deposition transcript for admission, the County shall, **by EOD Monday, March 17, 2025**, file a motion of supplemental statements therefrom that it seeks to introduce as well as further argument to preclude the statements designated by Walker. Walker may respond to the County's supplemental designations and any pending objections to specific passages by EOD Tuesday, March 18, 2025. If Walker's counsel will not be addressing any of the challenged deposition testimony of Gagan in their opening statement or in their Day 1 case-in-chief, Walker may have until EOD Wednesday,

March 19, 2025, to respond.

## XVIII.    Reserved Rulings

Beyond any partial reservations made above, the Court RESERVES ruling on the following motions *in limine*:

- The County's motion *in limine* to preclude "certain *Monell* evidence," ECF No. 222;

- The County's motion *in limine* to preclude references to *People v. Ashley*, ECF No. 229;

- Walker's motion *in limine* to admit summaries of voluminous evidence, ECF No. 230-5;

- The County's motion *in limine* to preclude the testimony of Elliot Shields and Sam Davis, ECF No. 232.

- The County's motion *in limine* to preclude certain expert testimony, ECF No. 226;

- Walker's motion *in limine* to limit the expert testimony of Gagan, ECF No. 230-3; and

- Walker's motion *in limine* to admit the undisclosed documentary *Brady* material,[16] ECF No. 230-2

That said, the parties do not need a separate ruling on any of these motions to the extent that their subject matter is covered by the Court's rulings in this

---

[16] The Court acknowledges that the parties reached a stipulation to admit certain alleged *Brady* materials for non-hearsay purposes. ECF No. 295 at 2–3. The Court will have questions for the parties on this topic at the March 17 conference.

Decision and Order.

ORDER[17]

For the foregoing reasons,

IT IS HEREBY ORDERED that the County's motion for partial reconsideration and, alternatively for *in limine* relief on the issue of Walker's third alleged constitution violation is DENIED, ECF No. 227; and it is further

ORDERED that Walker's motion *in limine* to preclude references to taxpayer impact is GRANTED, ECF No. 230-14; and it is further

ORDERED that the County's motion *in limine* to preclude references to the "Central Park Five" is GRANTED, ECF No. 221; and it is further

ORDERED that Walker's motion *in limine* to preclude testimony of Jerry Solomon is DENIED, ECF No. 239; and it is further

ORDERED that Walker's motion *in limine* to instruct the jury on favorability and impropriety is DENIED, ECF No. 230-6; and it is further

ORDERED that Walker's motion *in limine* to preclude opinions of underlying guilt is GRANTED, ECF No. 230-9; and it is further

ORDERED that Walker's motion *in limine* to preclude Franco Kroese's testimony is GRANTED IN PART AND DENIED IN PART, ECF No. 230-10; and it is further

ORDERED that Walker's motion *in limine* to exclude BPD's reinvestigation is

---

[17] The Court's shorthand descriptions of the parties' motions in this section are simply for readability and concision, and are not meant to limit, expand, or otherwise alter the scope of the Court's rulings and reasoning provided in this Decision and Order.

54

GRANTED, ECF No. 230-15; and it is further

ORDERED that Walker's motion *in limine* to exclude admission of deposition transcripts of Regan, Paradowski, and Guadagno is GRANTED IN PART AND DENIED AS MOOT IN PART, ECF No. 230-12; and it is further

ORDERED that Walker's motion *in limine* to exclude City/BPD policies is DENIED, ECF No. 230-11; and it is further

ORDERED that Walker's motion *in limine* to preclude references to Drury's judicial career is GRANTED, ECF No. 230-13; and it is further

ORDERED that the County's motion *in limine* to preclude evidence of already litigated issues is DENIED, ECF No. 228; and it is further

ORDERED that Walker's motion *in limine* to preclude references to unsuccessful 440 motions is DENIED, ECF No. 230-8; and it is further

ORDERED that the County's motion *in limine* to admit documents supporting Walker's 440 motions is GRANTED IN PART AND DENIED IN PART, ECF No. 297; and it is further

ORDERED that the County's motion *in limine* to preclude references to the judicial decision vacation Walker's conviction is GRANTED IN PART AND DENIED IN PART, ECF No. 223; and it is further

ORDERED that Walker's motion *in limine* to preclude references to prior bad acts of Walker, Boyd, Gibson, Martin, and Woodruff is GRANTED, ECF No. 230-1; and it is further

ORDERED that Walker's motion *in limine* to bar the County from asking

questions that elicit inadmissible hearsay is DENIED, ECF No. 230-7; and it is further

ORDERED that Walker's motion *in limine* to find Gagan's deposition testimony constitutes statements of a party opponent is GRANTED, ECF No. 230-4.

SO ORDERED.

Dated:     March 17, 2025
           Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge