# EXHIBIT A

| From: | John Lyle |
|---|---|
| To: | Meredith Vacca; Hanft, Gideon A.; James P. Blenk; Jennifer C. Persico; Firsenbaum, Ross |
| Cc: | Brian C. Mahoney; Kirstie A. Means; David@rudinlaw.com; Spencer Durland; Perio, Ryanne; jbrudin@rudinlaw.com; buffalo_5_plaintiff_counsel@list.wilmerhale.com; Nicole Austin; Katelyn Popp |
| Subject: | RE: 22-cv-520: Walker v. County of Erie |
| Date: | Wednesday, March 19, 2025 2:55:44 AM |
| Attachments: | image001.png |
|  | image003.png |
|  | external.png |
|  | 22-cv-520 - Walker v Erie Cnty -MIL Order No. 2 - draft-3-19-25.pdf |



Counsel,

Despite the early hour, Judge Vacca asked me to forward you the attached draft of her decision regarding the County's motion to exclude certain *Monell* evidence, the County's Motion to exclude *People v. Ashley*, and Plaintiff's motion to admit summary evidence. The decision will be filed after a review in the morning, but she wanted you to have a copy of the draft as soon as could be.

Additionally, the Court is in receipt of the parties' emails regarding slides for the opening, Mr. Hanft's stipulated redaction of PX 26, and Mr. Firsenbaum's email regarding evidentiary ruling with respect to documents PX 219 and PX 221.

Thank you,

John



**John Lyle**
*Law Clerk to Judge Meredith A. Vacca*
*Western District of New York*
Kenneth B. Keating Federal Building
100 State Street, Rochester, NY 14614
O: 585-613-4372 | FAX: 716-613-4375
www.nywd.uscourts.gov

---

**From:** Meredith Vacca <Meredith_Vacca@nywd.uscourts.gov>
**Sent:** Monday, March 17, 2025 6:37 PM
**To:** Hanft, Gideon A. <Gideon.Hanft@wilmerhale.com>; James P. Blenk <jblenk@lippes.com>; John Lyle <John_Lyle@nywd.uscourts.gov>; Jennifer C. Persico <jpersico@lippes.com>; Firsenbaum, Ross

<Ross.Firsenbaum@wilmerhale.com>
**Cc:** Brian C. Mahoney <bmahoney@lippes.com>; Kirstie A. Means <kmeans@lippes.com>;
David@rudinlaw.com; Spencer Durland <sdurland@hooverdurland.com>; Perio, Ryanne
<Ryanne.Perio@wilmerhale.com>; jbrudin@rudinlaw.com;
buffalo_5_plaintiff_counsel@list.wilmerhale.com; Nicole Austin <Nicole_Austin@nywd.uscourts.gov>;
Katelyn Popp <Katelyn_Popp@nywd.uscourts.gov>
**Subject:** RE: 22-cv-520: Walker v. County of Erie

Counsel:

We are still diligently working on getting this decision out RE: Monell evidence/summary
chart. The decision is somewhat modified from the preview I gave earlier today. In fairness
to everyone and to give you enough time to go through the decision and adjust accordingly,
let's plan on picking the jury tomorrow morning and then recess until Wednesday morning
for preliminary instructions, openings, and proof.

Thank you and have a good night.

**Hon. Meredith A. Vacca**
*United States District Judge*
*Western District of New York*
Kenneth B. Keating Federal Building
100 State Street, Rochester, New York 14614
Telephone:  585-613-4370

---

**From:** Hanft, Gideon A. <Gideon.Hanft@wilmerhale.com>
**Sent:** Monday, March 17, 2025 3:25 PM
**To:** James P. Blenk <jblenk@lippes.com>; John Lyle <John_Lyle@nywd.uscourts.gov>; Jennifer C.
Persico <jpersico@lippes.com>; Firsenbaum, Ross <Ross.Firsenbaum@wilmerhale.com>; Meredith
Vacca <Meredith_Vacca@nywd.uscourts.gov>
**Cc:** Brian C. Mahoney <bmahoney@lippes.com>; Kirstie A. Means <kmeans@lippes.com>;
David@rudinlaw.com; Spencer Durland <sdurland@hooverdurland.com>; Perio, Ryanne
<Ryanne.Perio@wilmerhale.com>; jbrudin@rudinlaw.com;
buffalo_5_plaintiff_counsel@list.wilmerhale.com; Nicole Austin <Nicole_Austin@nywd.uscourts.gov>;
Katelyn Popp <Katelyn_Popp@nywd.uscourts.gov>
**Subject:** RE: 22-cv-520: Walker v. County of Erie

**CAUTION - EXTERNAL:**

Mr. Lyle and Mr. Blenk,

This change does not affect Plaintiff's anticipated witness order. Plaintiff will begin by reading portions of the documentary *Brady* (and other police) evidence already stipulated into evidence to be followed by Mr. Walker's testimony. As for the condition, we do not agree. The Court said it would not require Mr. Shields to read the entire document, nor would counsel be required to read entire documents with any other live witness. There is no reason to adopt a different standard because Plaintiff has the same evidence read by a different speaker.

To the extent the County's lawyers wish to read other portions of the document, as the Court indicated they could during today's conference, we have no objection.

Respectfully submitted,
Gideon

**Gideon A. Hanft | WilmerHale**
7 World Trade Center
250 Greenwich Street
New York, NY 10007 USA
+1 212 295 6430 (t)
+1 212 230 8888 (f)
gideon.hanft@wilmerhale.com

**Gideon A. Hanft | WilmerHale**
7 World Trade Center
250 Greenwich Street
New York, NY 10007 USA
+1 212 295 6430 (t)
+1 212 230 8888 (f)
gideon.hanft@wilmerhale.com

 **One Firm. One Legacy.**
WilmerHale celebrates the twentieth anniversary since the merger.

---

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

**From:** James P. Blenk <jblenk@lippes.com>
**Sent:** Monday, March 17, 2025 2:53 PM
**To:** Hanft, Gideon A. <Gideon.Hanft@wilmerhale.com>; John Lyle <John_Lyle@nywd.uscourts.gov>;

Jennifer C. Persico <jpersico@lippes.com>; Firsenbaum, Ross <Ross.Firsenbaum@wilmerhale.com>;
Meredith Vacca <Meredith_Vacca@nywd.uscourts.gov>
**Cc:** Brian C. Mahoney <bmahoney@lippes.com>; Kirstie A. Means <kmeans@lippes.com>;
David@rudinlaw.com; Spencer Durland <sdurland@hooverdurland.com>; Perio, Ryanne
<Ryanne.Perio@wilmerhale.com>; jbrudin@rudinlaw.com;
buffalo_5_plaintiff_counsel@list.wilmerhale.com; Nicole Austin <Nicole_Austin@nywd.uscourts.gov>;
Katelyn Popp <Katelyn_Popp@nywd.uscourts.gov>
**Subject:** RE: 22-cv-520: Walker v. County of Erie

**EXTERNAL SENDER**

Mr. Lyle and Gideon –

In the interest of moving these matters, we have no objection to the Plaintiff proceeding as
described below as to (1) so long as counsel reads the entire document. As to (2), we will reserve
until receipt of the ruling.

I would ask Plaintiff's counsel to advise whether this change of course will affect the sequence of
initial witnesses. We understood that Mr. Walker would be put on after Mr. Shields.

JP

**James P. Blenk**
Partner



50 Fountain Plaza, Suite 1700
Buffalo, NY 14202-2216

**ph:** 716.853.5100 ext. 1351 | **fx:** 716.853.5199
jblenk@lippes.com | lippes.com
LinkedIn // Facebook

This email message, including attachments, are confidential and may be protected by the attorney/client or
other applicable privileges. The information is intended to be conveyed only to the designated recipient(s)
of the email message. Unauthorized use, dissemination, distribution or reproduction of this message by
anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not an
intended recipient, please notify the sender immediately, delete the message from your email system, and
destroy any other copies in your possession.

**From:** Hanft, Gideon A. <Gideon.Hanft@wilmerhale.com>
**Sent:** Monday, March 17, 2025 2:08 PM
**To:** John Lyle <John_Lyle@nywd.uscourts.gov>; Hanft, Gideon A. <Gideon.Hanft@wilmerhale.com>;
James P. Blenk <jblenk@lippes.com>; Jennifer C. Persico <jpersico@lippes.com>; Firsenbaum, Ross

<Ross.Firsenbaum@wilmerhale.com>; Meredith Vacca <Meredith_Vacca@nywd.uscourts.gov>
**Cc:** Brian C. Mahoney <bmahoney@lippes.com>; Kirstie A. Means <kmeans@lippes.com>;
David@rudinlaw.com; Spencer Durland <sdurland@hooverdurland.com>; Perio, Ryanne
<Ryanne.Perio@wilmerhale.com>; jbrudin@rudinlaw.com;
buffalo_5_plaintiff_counsel@list.wilmerhale.com; Nicole Austin <Nicole_Austin@nywd.uscourts.gov>;
Katelyn Popp <Katelyn_Popp@nywd.uscourts.gov>
**Subject:** 22-cv-520: Walker v. County of Erie

Dear Mr. Lyle,

Based on the Court's rulings today, rather than call Mr. Shields to testify, Plaintiff will have
a member of Plaintiff's counsel trial team read portions of (1) the documentary *Brady* (and
other police) evidence already stipulated into evidence and (2) the *Monell* evidence that the
Court rules is admissible.  Accordingly, please consider Mr. Shields as not included on
Plaintiff's witness list, and jurors need not be questioned regarding their knowledge or
awareness of Mr. Shields.

In addition, Plaintiff's voir dire submission inadvertently omitted the names of certain
members of Plaintiff's counsel trial team.  Below please find additional members of the
team, all from WilmerHale unless otherwise noted:

Erin Hughes
Phoebe Silos
Trena Riley
Melissa Zubizarreta
Stan Maderich
Taryn McCarthy
Adrianna Rivas (Impact Trial)
John Gilleland (Magna Legal)

We have copied counsel for the County for their awareness.

Respectfully submitted,
Gideon

**Gideon A. Hanft | WilmerHale**
7 World Trade Center
250 Greenwich Street
New York, NY 10007 USA

+1 212 295 6430 (t)
+1 212 230 8888 (f)
gideon.hanft@wilmerhale.com

 **One Firm. One Legacy.**

WilmerHale celebrates the twentieth anniversary since the merger.

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOHN WALKER, JR.,

                   Plaintiff,

     v.

THE CITY OF BUFFALO, THE COUNTY
OF ERIE, MICHAEL G. GUADAGNO,
JOHN MONTONDO, LINDA J. FIAL AS
EXECUTOR FOR THE ESTATE OF ROBERT
GRABOWSKI, MARTIN BULLOCK AS
EXECUTOR FOR THE ESTATE OF JAMES E.
HUNTER, JENNIFER FLANNERY AS
ADMINISTRATOR FOR THE ESTATE OF
ROBERT F. ARNET, JENNIFER FLANNERY
AS ADMINISTRATOR FOR THE ESTATE OF
FRANK C. DEUBELL, JENNIFER FLANNERY AS
ADMINISTRATOR FOR THE ESTATE OF LEO J.
DONOVAN, JENNIFER FLANNERY AS
ADMINISTRATOR FOR THE ESTATE OF
FRANCIS M. MANISTA, AND DAWN
M. DIRIENZO AS EXECUTOR FOR THE
ESTATE OF PAUL R. DELANO,

                   Defendants.

_____

**DECISION & ORDER**

22-cv-00520-MAV

## INTRODUCTION

     Plaintiff John Walker, Jr. commenced the instant action on July 6, 2022. ECF No. 1. The only claim presently before the Court from Plaintiff's Amended Complaint, which is the operative pleading, is a *Monell* claim against Defendant County of Erie based on policies of the Erie County District Attorney Office ("ECDA" or the "DA's Office"). ECF No. 78. Trial began on March 18, 2025. This Decision and Order addresses the following three of the remaining motions *in limine,* rulings on which

1

the Court previewed during the pretrial conference on the morning of March 17.

- The County's motion *in limine* to preclude "certain *Monell* evidence," ECF No. 222;

- The County's motion *in limine* to preclude references to *People v. Ashley*, ECF No. 229; and

- Walker's motion *in limine* to admit summaries of voluminous evidence, ECF No. 230-5.

## BACKGROUND

The factual background of this matter is set forth in detail in the Court's Decisions and Orders dated January 14, 2025, ECF No. 213 ("SJ Order"), and March 17, 2025, ECF No. 307 ("First MIL Order"), familiarity with which is assumed for purposes of the instant Decision and Order. As was the case in the First MIL Order, this Decision and Order makes rulings with respect to Walker's case only.

## LEGAL STANDARD

As the Supreme Court has noted, "[a]lthough the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Indeed, "[t]he purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996).

When granted, motions *in limine* operate to exclude inadmissible or prejudicial evidence before it is actually offered at trial. *Griffith v. Goodyear Dunlop Tires N. Am.*

2

*Ltd.*, No. 11-CV-761S, 2018 WL 4658721, at *1 (W.D.N.Y. Sept. 28, 2018). The Court "should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *White v. CSX Transp., Inc.*, No. 19-CV-500SR, 2024 WL 3228158, at *1 (W.D.N.Y. June 28, 2024) (citing *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164 (S.D.N.Y. 2006)). Thus, "courts considering a motion *in limine* may reserve judgment until trial, so that the motion is placed in the appropriate factual context." *United States v. Van Putten*, No. 04 CR. 803 (PKL), 2005 WL 612723, at *3 (S.D.N.Y. Mar. 15, 2005). Either way, "the ruling is subject to change when the case unfolds . . . . [E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Luce*, 469 U.S. at 41–42.

## DISCUSSION

Unless otherwise specified, denials of motions are without prejudice. All rulings acknowledge that circumstances may evolve during trial, particularly given the abstract targets of many of the motions.

## I.    Excluding "Certain *Monell* Evidence" (ECF No. 222)

Walker seeks to offer many pieces of evidence, in the form of judicial decisions and appellate briefs in other criminal cases and newspaper articles, showing instances of misconduct or complaints of misconduct by prosecutors of the ECDA over the period between 1966 and 1988. *See* ECF 268 at 1. The County's motion to preclude certain alleged municipal policy evidence makes three principal arguments: (1) judicial decisions and newspaper articles are hearsay and should be precluded; (2)

Walker should be precluded from introducing factually dissimilar and temporally removed matters into evidence; and (3) that before Walker's case references a purported constitutionally deficient policy or prior policy or prior practice, that Plaintiff's counsel should make a tender of proof outside the presence of the jury. ECF No. 222-1.

The County's motion is **GRANTED IN PART AND DENIED IN PART**.

### A. *Walker's Theories of Causal Municipal Policies*

There are several theories by which a plaintiff can establish a municipal "policy" or "custom" under *Monell*:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Jones v. Westchester Cnty*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016) (quotations omitted); *see Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13 (2d Cir. 2015); *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012).

In opposition to the County's instant motion, Walker states that he will introduce evidence to support three theories of *Monell* liability:

> (i) the prosecutorial misconduct resulted from ECDA policy and/or widespread custom or practice; (ii) the prosecutorial misconduct resulted from ECDA's deliberate indifference to the fair-trial rights of criminal defendants and the 'anything-goes' attitude they likely engendered; and (iii) the *Brady* violations resulted from inadequate training.

ECF No. 268 at 2. Walker's opposition characterizes his second theory as the ECDA's "deliberate indifference based on a failure to discipline." *Id.* Walker's position implicates the ECDA having a widespread practice of ratifying unconstitutional conduct by its employees, the third listed theory reiterated above in *Jones v. Westchester Cnty*, and being deliberately indifferent to the constitutional rights of others as shown through failures to adequately train, or to supervise or discipline, the fourth listed theory reiterated above in *Jones*.

To show a policy or custom through a "widespread practice," a plaintiff must attribute a subordinate's conduct to the actions or omissions of higher-ranking officials with policymaking authority. *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) (quotation omitted). To do so, a plaintiff may show that (i) a "policymaker ordered or ratified the subordinate['s] actions," or (ii) "the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions." *Id.* at 126. A plaintiff may also show the existence of *de facto* customs or policies by citing decisions in other cases that contain similar allegations. *See Miller v. Cnty. of Monroe*, No. 23-CV-06649-FPG, 2024 WL 2804435, at *4 (W.D.N.Y. May 31, 2024) (citing *Gaston v. Ruiz*, No. 17-CV-1252, 2018 WL 3336448, at *6 (E.D.N.Y. July 6, 2018)); *see, e.g.*, *Isaac v. City of New York*, No. 16-CV-4729 (KAM), 2018 WL 5020173, at *17 (E.D.N.Y. Aug. 6, 2018) (finding that other court cases could not establish a *de facto* policy or custom because they involved dissimilar misconduct, were resolved by settlement, or the city prevailed).

5

A failure to train theory, and a failure to supervise or discipline theory, are cut from the same cloth of "deliberate indifference." *E.g.*, *Miller*, 2024 WL 2804435; *Buari v. City of New York*, 530 F. Supp. 3d 356, 402 (S.D.N.Y. 2021) ("Buari has also plausibly alleged a failure by the NYPD to train, supervise, and discipline. As a threshold matter, Buari plausibly has alleged deliberate indifference."). Deliberate indifference is a "stringent standard of fault," beyond mere negligence, and requires proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quotation omitted); *Amnesty Am.*, 361 F.3d at 128 (stating evidence must establish "that a policymaking official had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was "obvious," . . . and the policymaker's failure to investigate or rectify the situation evidences deliberate indifference, rather than mere negligence or bureaucratic inaction"). A municipality's "'policy of inaction'" in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the [municipality] itself to violate the Constitution.'" *Connick*, 563 U.S. 51 at 61–62 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (O'Connor, J., concurring in part and dissenting in part)).

Under the umbrella of "deliberate inference," theories of a failure to train on the one hand, and failure to supervise or discipline on the other, part ways to "emphasize different facts and require different showings to establish deliberate indifference." *Rodriguez v. City of New York*, 607 F. Supp. 3d 285, 293 (E.D.N.Y. 2022) (quotation omitted). "Under the failure to train theory, a municipality may be liable

'when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights . . . [but] the policymakers choose to retain that program.'" *Buari*, 530 F. Supp. 3d at 399 (alterations in original) (quoting *Connick*, 563 U.S. at 61). "Under the failure to supervise or discipline theory, a plaintiff must show that the municipality failed to adequately supervise or discipline its employees (thereby implicitly encouraging or ratifying their unlawful conduct) . . . [and] that such a failure of supervision or discipline was tantamount to deliberate indifference." *Id.* (alteration in original) (quotation omitted).

Regardless of the differences amongst a failure to train theory, a failure to discipline or supervise theory, and a theory of a widespread practice, "to prevail on a *Monell* claim, a plaintiff must also show 'a direct causal link between [the] municipal policy or custom and the alleged constitutional deprivation.'" *Miller*, 2024 WL 2804435, at *8 (quoting *City of Canton*, 489 U.S. at 385); *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("Governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights."). The municipal policy, whatever its type, must be the "moving force" of the constitutional violation. *Monell*, 436 U.S. at 694. '[T]he mere invocation of the 'pattern' or 'plan' [will] not suffice without this causal link.'" *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983). The Supreme Court has repeatedly emphasized the importance of proving direct causation, saying "<u>our first inquiry in any case</u> alleging municipal liability under § 1983 is the question whether there is a

direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton*, 489 U.S. at 385 (emphasis added).

### B. Factually Dissimilar Matters

The County first seeks to preclude municipal policy evidence that is factually dissimilar to the constitutional violations alleged. ECF No. 222-1 at 4–8. Walker responds that "[f]rom the ECDA's abject failure to discipline prosecutors for misconduct of any kind despite blistering criticism of its prosecutors for egregious misconduct, the jury may infer a policy of deliberate indifference and an anything-goes atmosphere that was a substantial cause of [Walker's] wrongful conviction[]." ECF No. 270 at 1. Walker's counsel has repeatedly described their failure to discipline theory as intending to show "an anything-goes" environment at the ECDA, and that the ECDA customs create the inference that prosecutors should "win by any means necessary," which in turn caused the constitutional violations at issue here. In an attempt to do so, Walker has proffered several specific instances of misconduct ranging widely in subject matter, and the subsequent failures of the ECDA to discipline the attorney at issue, to prove his "anything-goes," "atmosphere-of-lawlessness" theory.

At the outset, cases binding on this Court establish that a plaintiff is not limited to proving "deliberate indifference" through a pattern of specific failures to, for example, discipline its employees. *See Vann v. City of New York*, 72 F.3d, 1040 (2d Cr. 1995); *Gentile v. County of Suffolk*, 926 F.2d 142 (2d Cir. 1991); *see also Jones*, 691 F.3d at 82 ("There are a number of different ways in which, given sufficient

evidence, Plaintiff might have satisfied the burden of showing municipal liability under the standards of *Monell*."). As will be discussed further below, Walker has proffered other evidence in the form of, at least, witness testimony and statements of a party opponent intending to show the ECDA had essentially no protocols or policies on attorney discipline and that attorneys in the office during the relevant period could not recall any instances of anyone being disciplined.

However, when a plaintiff does seek to prove that a municipality was deliberately indifferent to the constitutional rights of others through a pattern of "bad acts" and/or that the municipality had a widespread practice of ratifying behavior that violated the constitution, the other acts considered must be sufficiently similar to the type of constitutional violations alleged. *E.g.*, *Iacovangelo*, 624 F. App'x at 14 (examining cases for evidence of a "custom of not providing adequate medical supervision for inmates going through drug or alcohol withdrawal").

*Jones v. Town of E. Haven*, a case cited by Walker, provides an instructive example. In *Jones*, the Second Circuit reversed a jury verdict in favor of plaintiff, finding that the evidence was insufficient as a matter of law to prove that a town policy had caused the alleged unconstitutional shooting of an African-American male by the police that resulted in his death. 691 F.3d. at 74, 85. The victim's mother was the plaintiff, and she argued that her son's shooting was caused by, among other claims, "the Town's custom, policy, or usage of deliberate indifference to the rights of black people." *Id.* at 74. The Second Circuit, viewing the evidence at trial in the light most favorable to the plaintiff contemplated several ways that she could have proved

her claim but that the evidence was not sufficient under any possibility. *See id.* at

82–85. As the Second Circuit described:

> One [way] would be to show a sufficiently widespread practice among police officers of abuse of the rights of black people to support reasonably the conclusion that such abuse was the custom of the officers of the Department and that supervisory personnel must have been aware of it but took no adequate corrective or preventive measures (or some combination of the two). Another might be that officers of the Department expressed among themselves an inclination to abuse the rights of black people with sufficient frequency or in such manner that the attitude would have been known to supervisory personnel, which then took no adequate corrective or preventive steps. A third might be a showing of deliberate indifference on the part of supervisory personnel to abuse of the rights of black people, which was communicated to line officers so as to give them the sense that they could engage in such abuse of rights without risking appropriate disciplinary consequences. The trial evidence was not sufficient to support a finding against the Town on any such theory.

*Id.* at 82. As plain from the face of the Second Circuit's reasoning, each reference to

possible proof through a pattern of specific instances of conduct is qualified by

evidence of "the abuse of the rights of black people"—matching what was alleged to

have occurred in the case of the plaintiff's son. *Id.*

> Notably, the Second Circuit went on to state,

> The evidence, construed (as it must be) in the manner most favorable to the Plaintiff, unquestionably showed instances of reprehensible and at times illegal and unconstitutional conduct by individual officers of the [police department]. <u>But such a showing is not a sufficient basis for imposing liability on the municipality.</u> To justify imposition of liability on the municipality, the Plaintiff needed to show that her loss was attributable to a custom, policy, or usage of the Town or its supervisory officials.

*Id.* (emphasis added). Because the trial evidence failed to make such a showing, the

Second Circuit reversed. *Id.* at 82, 85.

10

Walker attempts to broaden the scope of other specific acts by ECDA prosecutors to any and all types of misconduct to prove his deliberate indifference theory for failure to discipline. Yet, Walker has pointed the Court to no authority, nor has the Court discovered any, that permits a virtually indiscriminate universe of "other bad acts" of municipal employees to demonstrate the municipality's pattern in failing to act. Walker does cite to several cases that, he asserts, stand for the proposition that "the tolerated misconduct need not be the same as the misconduct in the plaintiff's case." ECF 268 at 10. The Court does not agree that these cases widen the scope of permissible municipal policy evidence beyond that articulated below.

In *Cash v. Cnty of Erie*, a failure-to-train case, the Second Circuit found that a single prior incident of invited sexual contact between a female prisoner and prison guards placed the municipality on notice that its training in this area was inadequate. 654 F.3d 324, 337–38 (2d Cir. 2011). "However, that holding was based on a state penal statute that 'pronounces prisoners categorically incapable of consenting to any sexual activity with guards and subjects guards to criminal liability for such conduct.'" *Castilla v. City of New York*, No. 09 CIV. 5446 SHS, 2012 WL 5510910, at *5 (S.D.N.Y. Nov. 14, 2012) (distinguishing *Cash*). "This statutory framework extinguished any distinction between types of sexual contact between guards and prisoners, allowing substantially different forms of sexual misconduct to constitute a pattern of similar constitutional violations." *Id*. Even *Cash*'s expansion of the universe of prior admissible conduct halted at the boundary of "sexual misconduct"— any and all types of misconduct by correctional officers were not contemplated.

Walker makes no attempt to argue that similar statutory conditions apply or why the universe of his municipal policy should extend to encompass all types of prosecutorial misconduct.

In *Vann v. City of New York*, a failure-to-supervise case, the plaintiff argued that an officer's use of excessive force violated his right to due process, and "that in light of [the officer's] history of abusive conduct, the [Police] Department's failure to monitor [him] constituted deliberate indifference to the public's due process rights." 72 F.3d at 1041. The district court granted summary judgment to the defendants, concluding "the existence of a departmental system for supervising policemen established as a matter of law that appellees had not been deliberately indifferent to the rights of individuals." *Id.* at 1048. The Second Circuit reversed, explaining that the mere existence of a "system" of supervision did not preclude a finding of deliberate indifference. *Id.* at 1051. Walker points to the phrase "[the] Department's general methods of dealing with problem policemen" to argue for the inclusion of all types of misconduct here. *Vann's* reasoning is not nearly as broad as Walker's out-of-context quote suggests.

The plaintiff in *Vann* argued that the officer who used excessive force on him had a history of abusive conduct, and that the police department was deliberately indifferent "to the need to monitor policemen who had a known history of abusive conduct and were returned to active duty." *Id.* at 1041. The plaintiff did "present[] evidence of the Department's general methods of dealing with problem policemen," as Walker quotes, but, notably, this evidence did <u>not</u> involve introducing instances of

12

other types of police misconduct that plaintiff then argued proved a general failure to supervise. In fact, the Second Circuit's description of the plaintiff's municipal policy evidence did not include any other specific example of a failure to supervise a police officer. *See id.* at 1049–51 (also noting, "[a] § 1983 plaintiff injured by a police officer may establish the pertinent custom or policy by showing that the municipality, alerted to the possible use of excessive force by its police officers, exhibited deliberate indifference." (emphasis added)).

Instead, the plaintiff's evidence involved a detailed description of the police department's policies on supervision, particularly its protocols related to monitoring and handling officers when a complaint is made against them. *Id.* at 1050. As the Second Circuit described, "[t]he deposition testimony indicated that, after a problem officer was restored to full-duty status, the Department's supervisory units paid virtually no attention to the filing of new complaints against such officers even though such filings should have been red-flag warnings of possibly renewed and future misconduct." *Id.* The Second Circuit held the following:

> In sum, a rational jury could find that, where an officer had been identified by the police department as a "violent-prone" individual who had a personality disorder manifested by frequent quick-tempered demands for "respect," escalating into physical confrontations for which he always disavowed responsibility, the need to be alert for new civilian complaints filed after his reinstatement to full-duty status was obvious. The jury could also rationally find that the Department's election to staff DAO with the equivalent of just 1¼ employees to monitor 200 problem officers, together with the systematic lack of communication to the supervisory divisions of information with regard to new civilian complaints, including PSU's routine failure, despite its expertise, to instruct commanders to relay that information reflected a deliberate indifference on the part of the municipal defendants to the dangers posed by problem policemen who had been restored to full-duty service.

13

*Id.* at 1050–51. The causal municipal policy in *Vann* was not established through a series of disparate, or even similar, instances of police misconduct as Walker is attempting to introduce here. The Court found that the police department had certain blanket systems and protocols for dealing with police misconduct and when that deficient system was applied to the officer at issue, there was an obvious need for a higher level of supervision with respect to that officer in particular.

The Second Circuit in *Vann* did not rule on, but discussed, the issue of causation. It stated:

> The issue of causation remains to be decided by the jury. Certainly the Department's retention of [the officer] as a police officer despite his abusive history empowered him to make arrests even while off duty. And it would be entirely permissible for the jury to find that the Department's restoration of [the officer] to full-duty status and its indifference to the postreinstatement civilian complaints against him caused him to feel entitled, whether on duty or off, to compel the "respect" he demanded through the use of violence.

*Id.* at 1051. The idea that the officer at issue may have "felt entitled" to continue past misconduct due to the manner in which he was supervised is at least reminiscent of Walker's "lawlessness" argument. The "lawlessness" arguably contemplated in *Vann*, however, is specific to the officer's type of misconduct—that the officer himself was prone to excessive force and then after the police department was put on notice of <u>the officer's</u> history, he was emboldened by its lack of supervision to continue doing the same thing again and again, ultimately violating the plaintiff's constitutional rights through the use of excessive force as his history made obvious would occur. There were no other police officers discussed, and there is no other form of misconduct discussed beyond excessive force, by the officer at issue or otherwise. *See id.* By

14

contrast, Walker's attempted catch-all policy theory of an "anything-goes attitude" or "atmosphere of lawlessness" at the ECDA is of a vastly different nature. To the Court's view, Walker's "lawlessness" theory, as a means of introducing an indiscriminate set of specific bad acts by prosecutors to establish deliberate indifference would seem to overrun the *Monell* doctrine if permitted.

That said, Walker will have the opportunity to show the ECDA's general policies, or lack thereof, regarding discipline and training. Walker has proffered evidence regarding ECDA's lack of attention or commitment to disciplining or training assistant district attorneys—such as witness testimony of the lack of formal training, failures to recall any instances of attorney discipline, and admissions of a party opponent during discovery. Like the plaintiffs in *Vann* and *Gentile*, as footnoted below, such evidence can support a jury's reasonable inference of a deliberate indifference theory.[1] But if he intends to offer evidence of deliberate indifference

---

[1] In *Gentile v. County of Suffolk*, a failure to discipline case, the Second Circuit rejected the County's argument that there was insufficient evidence to sustain a *Monell* claim against it because, as the district court noted:

> The appropriate inquiry in this *Monell*-type claim focuses on the actual or constructive knowledge of the municipality as well as upon the implied knowledge and reliance of municipal employees on that practice. Not only does the SIC report tend to establish the existence of a municipal policy or practice, but it also supports plaintiffs' allegation that the police and the District Attorney's Office were likely . . . to consistently ignore evidence of misconduct on the part of the defendant officers and to sanction and cover up any wrongdoing connected with the Gentile and Rydstrom investigation.

926 F.2d 142, 153 (2d Cir. 1991). The SIC report referenced was issued by a police commission after an audit of the County Police Department and District's Attorney's Office. *Id.* at 146. The report was heavily redacted, and the jury received excerpts stating, for example, that the commission found the County departments had "systematically failed over a period of years adequately to investigate and to discipline cases of employee misconduct that had been brought to their attention," and also that the police commission "was confident that the 'vast majority of police and prosecutorial personnel in Suffolk are persons of ability, industry and integrity.'" *Id.*

Other specific acts of different types of a misconduct were not contemplated and instead the focus, and apparently an exacting one, was opinion evidence about the County's policies as a general

based on the ECDA's response to specific acts of misconduct, those other specific acts must, at a minimum, be of the same type as the constitutional violations he alleged.

The Court reiterates that establishing a pattern of other failures to discipline or supervise is not always required to prove a policy of deliberate indifference. As discussed, the Second Circuit has upheld *Monell* claims where the specific circumstances of the constitutional violation alleged by plaintiff is deemed an obvious result of a municipality's established, general approach to training, supervision, or discipline without a showing of other similar instances where the municipality failed to train, supervise, or discipline. *See, e.g.*, *Vann v. City of New York*, 72 F.3d, 1040 (2d Cr. 1995); *Gentile v. County of Suffolk*, 926 F.2d 142 (2d Cir. 1991). Where establishing the municipality's "approach" in the first instance is attempted to be proved through other comparable circumstances, however, it is clear to the Court that a basic semblance of factual similarity to the plaintiff's alleged constitutional violation is required. *See Walker*, 974 F.2d at 299 ("While it is reasonable for city

matter. Contrary to Walker's arguments, the Court does not read *Gentile* to permit the introduction of other specific acts of ECDA prosecutors, which do not relate to one of his three constitutional violations alleged, and understands binding *Monell* authority to require a narrower focus to permit the introduction other specific acts of misconduct as a matter of law. *See also* Fed. R. Evid. 403, 404(b).

Walker also cites *Batista v. Rodriquez* for the proposition that "the persistent failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell*." ECF No. 268 at 11 (quoting 702 F.2d at 397). However, the "persistent" failures contemplated by *Batista* were of the same nature as the underlying violation alleged. *Batista*, 702 F.2d at 398 ("[A] causal connection between the City's policy of inaction and the arrests and assault might permissibly be implied" from "conduct" "such as inadequate training and supervision of prior instances of unusual brutality indicating deliberate indifference or gross negligence on the part of the municipal officials in charge." (emphases added)). As another example, the Second Circuit in *Walker v. City of New York*, the Second Circuit reversed a district court's grant of defendant's motion to dismiss plaintiff's *Monell* claim for failure supervise and failure to train, to allow plaintiff to pursue further discovery "to determine whether there was a practice of condoning perjury (evidenced perhaps by a failure to discipline for perjury) or a pattern of police misconduct sufficient to require the police department to train and supervise police officers to assure they tell the truth." 974 F.2d 293, 300 (2d Cir. 1992))).

16

policymakers to assume their employees possess common sense, where there is a history of conduct rendering this assumption untenable, city policymakers may display deliberate indifference by doing so.").

Moreover, as to proving deliberate indifference based on the obviousness that the specific violation of plaintiff's constitutional rights was likely to occur due to an established municipal policy, the Second Circuit has also cautioned that "[w]here the proper response—[for example,] to follow one's oath, not to commit the crime of perjury, and to avoid prosecuting the innocent—is obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by [ ] policymakers to the need to train or supervise." *Id.* at 299–300.

At the end of the day, even flagrant and obvious misconduct by a municipal employee must be directly caused a municipal policy to impose liability on the municipality under section 1983. *See Monell*, 436 U.S. at 691 (explicitly holding that municipalities are not vicariously liable for the torts of their employees under *respondeat superior*); *see also, e.g.*, *Jones*, 691 F.3d at 82 (acknowledging the trial evidence "unquestionably showed instances of reprehensible and at times illegal and unconstitutional conduct by individual officers of the [police department]. But such a showing is not a sufficient basis for imposing liability on the municipality."); *Collins v. City of New York*, 923 F. Supp. 2d 462, 478–79 (E.D.N.Y. 2013) ("[A]llegations of *Brady* violations are unhelpful [to plaintiff's pleaded failure-to-train theory]. Better training as to what *Brady* requires might increase officer awareness of what

17

information must be disclosed to prosecutors, but it could not plausibly have prevented the egregious conduct alleged here because Vecchione, according to the allegations, was well aware of what Gerecitano and Hernandez had done to secure Oliva's testimony."); *Gonzalez v. Waterbury Police Dep't*, No. 3:12-CV-478 (SRU), 2016 WL 953211, at *3 (D. Conn. Mar. 11, 2016) ("Though there was ample evidence of unconstitutional conduct by individual officers, there was no evidence that such conduct was attributable to a custom or policy of the department.").

For the reasons discussed, evidence of other specific acts of misconduct that Walker intends to admit to support <u>any</u> of his three identified theories of a municipal policy must be sufficiently similar to the underlying constitutional violations alleged.

Moreover, the Court notes that a failure to train theory—which Walker raises with respect to his alleged *Brady* violation—requires a more rigorous matching than the above to prove a municipal policy was the "moving force" behind the constitutional violation due to the requirement to point to a specific deficiency in a training program that the policymaker was on notice of and failed to correct. *See, e.g.*, *Connick*, 563 U.S. at 62–63 (disregarding evidence of four earlier reversals of convictions, concluding that they "could not have put [the district attorney's office] on notice that the office's *Brady* training was inadequate <u>with respect to the sort of *Brady* violation at issue here. None of those cases involved failure to disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind</u>." (emphasis added)); *O'Neal v. City of New York*, 196 F. Supp. 3d 421, 436 (S.D.N.Y. 2016), *aff'd sub nom. O'Neal v. Morales*, 679 F. App'x 16 (2d Cir. 2017) ("The cases O'Neal cites broadly deal with

18

*Brady* violations but would not have provided notice to the City of the need to train prosecutors in the NYCDA office to avoid *Brady* violations <u>based on a failure to make a written record of an allegedly exculpatory statement by an individual during an identification procedure that did not testify at trial or witness the crime and to give the full statement to the defense.</u>" (emphasis added)).

### C. *Temporally Removed Matters*

The County also argues that Walker must be precluded from introducing any municipal policy evidence that post-dates the June 1977 trial and that certain instances that pre-date the trial are inadmissible. The Court begins with the Supreme Court's decision in *Connick v. Thompson*, which states that a plaintiff cannot point to "contemporaneous or subsequent" violations to show that a municipal policy caused a particular violation. 563 U.S. at 63 n.7.

In *Connick*, the district attorney's office conceded that prosecutors violated *Brady* by failing to disclose a crime lab report when prosecuting Thompson for attempted armed robbery. *Id.* at 54. Thompson later sued the district attorney under a *Monell* failure-to-train theory, pointing to four instances of overturned convictions during the 10 years preceding his armed robbery trial due to the prosecutor's *Brady* violations, and asserting that "up to four prosecutors may have been responsible for the nondisclosure of the crime lab report [at issue], and . . . withheld additional evidence in his armed robbery" trial and in his subsequent murder trial. *Id.* at 62, 63 n.7. As discussed above, the Supreme Court disregarded the four prior *Brady*

19

violations because they were not sufficiently similar to the withholding of the crime lab report in plaintiff's robbery trial. *Id.* at 62.

The Supreme Court then concluded that, as a matter of law, the allegations that four separate prosecutors withheld *Brady* materials at the time of the robbery trial, and that the same four prosecutors all again committed *Brady* violations in plaintiff's subsequent trial "'cannot establish a pattern of violations that would provide "notice to the cit[y] and the opportunity to conform to constitutional dictates.'" *Id.* at 63 n.7 (quotation omitted).

The crux of this reasoning is *Monell's* requirement of direct causation. As Justice O'Connor stated in a partial concurrence, quoted by the majority in *Connick* for the oft-cited preclusion of "contemporaneous and subsequent" violations:

> Thus a § 1983 plaintiff seeking to attach liability to the city for the acts of one of its employees may not rest on the employment relationship alone; both fault and causation as to the acts or omissions of the city itself must be proved. The Court reaffirms these requirements today.
> Where, as here, a claim of municipal liability is predicated upon a failure to act, the requisite degree of fault must be shown by proof of a background of events and circumstances which establish that the "policy of inaction" is the functional equivalent of a decision by the city itself to violate the Constitution.

*City of Canton*, 489 U.S. at 394–95 (emphasis omitted). The Court is not persuaded by Walker's argument that limitations on contemporaneous and subsequent violations apply only to failure-to-train cases. As discussed, failure to train is but one theory under the umbrella of "deliberate indifference," all forms of which are "predicated upon a failure to act." *See id.* Justice O'Connor continued:

> Without some form of notice to the city, and the opportunity to conform to constitutional dictates both what it does and what it chooses

> not to do, the failure to train theory of liability could completely engulf *Monell,* imposing liability without regard to fault. Moreover, absent a requirement that the lack of training at issue bear a very close causal connection to the violation of constitutional rights, the failure to train theory of municipal liability could impose "prophylactic" duties on municipal governments only remotely connected to underlying constitutional requirements themselves.
>
> Such results would be directly contrary to the intent of the drafters of § 1983.

*Id. at* 395 (1989).

There are countless cases in the Second Circuit that exclude all instances of post-constitutional violations as a matter of course. *See, e.g.*, *Greene v. City of New York*, 742 F. App'x 532, 536–37 (2d Cir. 2018) (holding that only two of plaintiff's 36 cases, issued over a twenty-two-year span, could be considered in establishing a pattern of violations that provided notice to the city of deficient training or supervision polices because the other 34 cases were all decided after Greene's trial); *O'Neal*, 196 F. Supp. 3d at 435 (holding that only three of plaintiff's 26 court decisions allegedly showing that the district attorney's office had a policy or custom of deliberate indifference to constitutional violations, particularly to *Brady* violations by prosecutors could be considered at the motion to dismiss stage because the other 23 cases "were decided after the events affecting O'Neal"); *Rodriguez*, 607 F. Supp. 3d at 299–300, 299 n.1 (holding plaintiff did not state a *Monell* claim for failure to supervise or discipline because "all but three of the decisions the plaintiff cites post-date his May 1990 conviction," and excluding one such judicial decision that was issued 20 days after plaintiff was convicted); *McGrier v. City of New York*, 849 F. App'x 268, 273 (2d Cir. 2021) ("But the personal experiences that McGrier described

21

in his deposition post-dated his July 2013 assault, and thus cannot establish a pattern that the City was aware of in July 2013."); *Collins*, 923 F. Supp. 2d at 479 (granting motion to dismiss where "the litany of other police-misconduct cases are insufficient to make a plausible case for Monell liability" because, inter alia, they "post-date[d] [plaintiff's] conviction").

Walker's citations to cases within the Second Circuit in support of his proposition that instances of prosecutorial misconduct that post-date his 1977 trial are admissible fall short of doing so. For example, in *Collins*, the district court held that evidence of a policymaker's <u>response</u> to the circumstances that plaintiff alleged violated his constitutional rights—taking no disciplinary action against the offending prosecutor and in fact continued to praise him—was admissible to "support an inference that the violation conformed to a preexisting policy" of similar misconduct. *Collins*, 923 F. Supp. 2d at 477.

Relatedly, in *Gentile*, the Second Circuit found that the district court did not abuse its discretion by admitting the aforementioned "SIC Report," which was published a few years after the violation of plaintiff's constitutional rights occurred. *Gentile,* 926 F.2d at 151. The full almost-200-page report, dated after the plaintiff's conviction, covered about a decade of time and a variety of types of criminal cases, however, the district court's 85-page decision evaluating the admissibility of the report found that "[t]he report also contains material that tends to support plaintiffs' argument that published criticisms put the County on *actual* notice as far back as the mid–1970's." *Gentile v. Cnty. of Suffolk*, 129 F.R.D. 435, 447 (E.D.N.Y. 1990), *aff'd,*

926 F.2d 142 (2d Cir. 1991) (citing SIC Report at 20 ("Despite over a decade of warnings—in the form of court decisions and grand jury and bar association reports—both the Police Department and the District Attorney's Office continued to ignore or to inadequately investigate and punish employee misconduct.")).

These cases do not provide solid ground on which Walker can justify that instances of prosecutorial misconduct that post-date his conviction are admissible for the purpose of notice to the policymaker that there are risks to constitutional rights that he must address—particularly in light of the dearth of case law standing for the opposite principle.

The only case in this Circuit that the Court could find which expressly contemplates the admissibility of subsequent constitutional violations is *Jones v. Town of E. Haven*, 691 F.3d 72, 84 (2d Cir. 2012). As discussed, the Second Circuit in *Jones* found there was insufficient evidence of a causal municipal policy and reversed a jury verdict in plaintiff's favor. *Id.* at 85. In what is plainly *dicta*, the Second Circuit stepped through the six pieces of "policy" evidence introduced at trial by plaintiff, who was seeking relief for the April 1997 killing of her son. *Id.* at 74, 82–85. The plaintiff offered evidence of other acts from 1991, 1993, May 1997, 1998, and 2000—the sixth piece of evidence being her son's death itself. *See id.* at 80–85. The Circuit had this to say about the incident in 2000:

> Snowden's testimony (accepted as true) about her arrest in 2000 unquestionably depicted serious extreme hostility on the part of several officers to black people. Had there been evidence that superiors of the East Haven Police Department received a credible report of such conduct and made no investigation, <u>such evidence could perhaps have contributed to Plaintiff's case, even though the incident occurred some</u>

three years after the Jones shooting. It is not unreasonable to infer that
Town officials who were indifferent to such abuse in 2000 might have
held similar attitudes three years earlier. But we need not rule on
retroactive attribution of indifference in 2000 to events in 1997. A
showing of indifference to abuse of the rights of black people would
depend in part on a showing that, upon receipt of a credible report of
such abuse, superiors took no investigative or corrective action.

*Id.* at 84 (emphasis added).

However, in the 13 years since the *Jones* decision was issued, the Court has

found only one case that cites *Jones* for the above proposition. *See Kaether v. Armor*

*Corr. Health Servs.*, No. 16-62950-CIV, 2017 WL 6507793, at *2 (S.D. Fla. Dec. 11,

2017) (noting that although "[t]he Second Circuit did not rule on the 'retroactive

attribution of indifference'" its statements about the reasonableness of considering

the 2000 incident were consistent with Eleventh Circuit law).

Moreover, six years after *Jones* was issued, the Second Circuit found occasion

to cite *Jones* for the following proposition—that *Jones* "conclude[ed] that the plaintiff

"'fell far short of' establishing municipal liability where the 'evidence showed [only]

two instances, or at the most three, over a period of several years in which a small

number of' city employees committed violations." *Greene*, 742 F. App'x at 537 (quoting

*Jones*, 691 F.3d at 84.). The "two . . . or at most three" instances considered by the

holding of *Jones* constituted the two incidents pre-dating the April 1997 shooting,

and, "at most," the incident from May 1997. *See Jones*, 691 F.3d at 84.

Here, Walker has proffered a multitude of judicial decisions, appellate briefs

and case cards, as well as some newspapers articles, that span from 1966 to 1988.

Nearly two-thirds of this evidence involves conduct or notice that occurred after

Walker was convicted. He has made clear that all of this evidence can be offered for the non-hearsay purpose of showing notice to the ECDA, who then, Walker will work to prove, responded by ratifying these prior instances of misconduct or by being deliberately indifferent to the need to modify training or discipline practices in light of such prior misconduct.

Yet as *Connick* reasoned, evidence of contemporaneous and subsequent violations must be precluded because the plaintiff is required to show that a municipality had notice, or an awareness, of employee misconduct <u>and</u> persistently failed to address the misconduct, <u>and</u> that the municipality's failure in this regard caused the underlying constitutional violation in the case. *See Connick*, 563 U.S. at 62–63 n.7; *City of Canton*, 489 U.S. at 394–95 ("Where, as here, a claim of municipal liability is predicated upon a failure to act, the requisite degree of fault must be shown by proof of a background of events and circumstances which establish that the "policy of inaction" is the functional equivalent of a decision by the city itself to violate the Constitution.").

Direct causation is the gatekeeper preventing a common law doctrine held to be consistent with 42 U.S.C. § 1983 from devolving into vicarious liability. *See Monell*, 436 U.S. at 691 (explicitly holding that municipalities are not vicariously liable for the torts of their employees under *respondeat superior*); *see also, e.g., Gonzalez*, 2016 WL 953211, at *3 ("Though there was ample evidence of unconstitutional conduct by individual officers, there was no evidence that such conduct was attributable to a custom or policy of the department."); *Jones*, 691 F.3d at 82 (acknowledging the trial

evidence "unquestionably showed instances of reprehensible and at times illegal and unconstitutional conduct by individual officers of the [police department]. But such a showing is not a sufficient basis for imposing liability on the municipality."). Central to the concept of causation is the notion that a prior condition produces a subsequent effect. CAUSATION, Black's Law Dictionary (12th ed. 2024). Thus, it is axiomatic that incidents occurring and information available only contemporaneous with or subsequent to the underlying alleged constitutional violation in a plaintiff's *Monell* claim cannot serve as notice to the policymaker of conditions which caused that particular violation.

For all the reasons discussed, Walker has failed to demonstrate that the evidence of alleged prosecutorial misconduct that occurred after June 9, 1977—when Walker's trial ended—can serve the non-hearsay purpose of notice. It must therefore be excluded.

### D. Forms of Municipal Policy Evidence: Judicial Decisions, Newspaper Articles, and Appellate Briefs

Walker's proffered municipal policy evidence includes judicial decisions in other criminal cases involving ECDA prosecutors, appellate briefs filed in those cases, and newspaper articles reporting on misconduct at the ECDA. The County unsurprisingly raises issues of hearsay.

The Court first notes that "[s]tatements and conclusions in court rulings and documents are inadmissible hearsay absent a relevant exception." *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362 (S.D.N.Y. 2014); *see Blue Cross & Blue Shield of New*

26

*Jersey, Inc. v. Philip Morris, Inc.*, 141 F. Supp. 2d 320, 323–24 (E.D.N.Y. 2001) ("Judicial findings in other cases proffered as evidence are generally characterized as inadmissible hearsay . . . . [because n]o specific exceptions apply under the Federal Rules of Evidence." (citing, *inter alia*, McCormick on Evidence § 318, at p. 894 (3d ed.1984)); *Penree v. Watson*, No. 613CV01323MADATB, 2017 WL 3437680, at *3 (N.D.N.Y. Aug. 10, 2017). Courts routinely take judicial notice of documents filed in other courts, not for the truth of the matters asserted in the other litigation, but to establish the fact of such litigation and related filings. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

Accordingly, the Court will take judicial notice of the following facts from any relevant policy evidence in this case: type of *evidence* (newspaper, judicial decision, brief), date, type of constitutional violation (*Brady* or summation),[2] a short recitation of the Court's statement about the particular conduct, and the name of the ECDA prosecutor involved if mentioned. If the judicial decision is offered as evidence of the ECDA's failure to train on specific *Brady* violations, meaning, that case must, at a minimum, have been decided before June 1977, *see Connick*, 563 U.S. at 61, the Court will take judicial notice of the specific type of *Brady* violation found in the decision. Again, these facts taken on judicial notice are not being admitted for the truth of the matters asserted and the Court will issue a limiting instruction to the jury as such. To be clear, as contemplated in Walker's annotated summary chart, these elements

---

[2] Walker's counsel confirmed at the March 17 pretrial conference that they do not have specific instances of other Fourth Amendment violations similar to those alleged occurred at Walker's preliminary hearing.

for the non-purpose of notice to the County of prosecutorial misconduct.

Courts in this Circuit have tended to exclude judicial decisions based on Fed. R. of Evid. 403, finding that "the prejudice to defendants in admitting a prior judicial decision significantly outweighed the prior decision's probative force." *Haynes v. Acquino*, No. 10-CV-355F, 2018 WL 3126725, at *5 (W.D.N.Y. June 26, 2018), *aff'd*, 771 F. App'x 75 (2d Cir. 2019) (citing *Brundidge v. City of Buffalo*, 79 F. Supp. 2d 219, 223 n.2 (W.D.N.Y. 1999)). Specifically, courts have explained that "[t]he difficulty in assessing the probative force of comments by a judge . . . is especially great for a jury, which may give exaggerated weight to a judge's supposed expertise on such matters." *Blue Cross & Blue Shield of New Jersey, Inc.*, 141 F. Supp. 2d at 324 (addressing the danger with respect to a judge's credibility assessment of a witness). Thus, "[e]xcluding credibility-assessing-statements by judges in other cases avoids the practical difficulty of weighing judicial opinions against contrary evidence [in the case at bar]." *Id.* at 323–24 (citing Margaret A. Berger, et. al, Evidence, 803.28[6](2001)); *see also Greycas, Inc. v. Proud*, 826 F.2d 1560, 1566 (7th Cir.1987); *Zenith Radio Corp v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1125, 1185).

Walker may introduce such facts from the other cases as would be appropriate for judicial notice. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.); *see also Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) ("[a] court

may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings."). But Walker may not present judicial findings of fact or other prejudicial elements of the other decisions. *Haynes*, 2018 WL 3126725, at *5 (citing *Carter v. Burch*, 34 F.3d 257, 265 (4th Cir. 1994) (stating "judicial findings of fact present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice.") (internal quotation omitted))).

Walker maintains that in addition to the articles and judicial decisions, he may offer as evidence "appellate briefs and other court documents credibly alleging and describing misconduct and quoting trial courts' criticism of prosecutors." ECF No. 268 at 4. He argues that "[t]he appellate briefs, in particular, were a form of complaint that were reliable in that they were made by members of the Bar who had an ethical responsibility to accurately state the underlying facts and claims for which they had a good faith basis." *Id.*

While the Court has not found a Second Circuit case directly addressing the matter, the Court agrees with the Fifth Circuit that

> Because appellate briefs must of necessity refer to what the record reflects as distinguished from what the real world facts actually are, and because these two sets of facts are not necessarily identical (indeed, they may well diverge at crucial junctures), using statements about record facts as substantive evidence, *i.e.*, to establish the truth of the matter asserted in those statements, is bound to be uncertain in the best of circumstances and dangerously misleading in most others.

*Hardy v. Johns-Manville Sales Corp.*, 851 F.2d 742, 745 (5th Cir. 1988). Although the Court recognizes that *Monell* does not foreclose consideration of "complaints" of

misconduct against municipal employees, *see, e.g.*, *Vann*, 72 F.3d, at 1042 ("the record showed that [the officer] had been the subject of numerous complaints, lodged by both colleagues and civilians"),[3] beyond judicial decisions explicitly holding certain misconduct occurred, as *Hardy* notes, there are many reasons that an appellate trial lawyer may make certain arguments and the Court finds that it will unnecessarily confusing for the jury to follow the attorneys down a path to justify or refute why certain arguments were made. Fed. R. Evid. A defendant's appellate brief is fundamentally different from the sort of "colleague and civilian complaints" considered in *Vann*. Furthermore, even if the Court were inclined to classify a defendant's appellate brief as a "complaint," here, in most if not all instances, the corresponding judicial decision explicitly holding certain misconduct occurred is also offered for admission, which in essence amounts to double counting of the same violation.

Appellate briefs filed by an Assistant District Attorney with the ECDA, also raise issues discussed in *Hardy*, but there is the potential that statements of fact made therein are available for admission for the truth of certain matters asserted as

---

[3] *See also, e.g.*, *Jenkins v. City of New York*, 388 F. Supp. 3d 179, 187–88 (E.D.N.Y. 2019) ("While it is true that none of the allegations against Zambrano's use of force were considered substantiated, it is hard to appreciate how the City considers itself blameless given the impressive history of complaints against Zambrano and the "uninterested and superficial" investigations that followed."); *Fiacco v. City of Rensselaer*, 783 F.2d 319, 328 (2d Cir. 1986); *H.H. v. City of New York*, No. 11-CV-4905 (NG) (ST), 2017 WL 3396434, at *8 (E.D.N.Y. Aug. 7, 2017) (finding that unsubstantiated allegations could still demonstrate deliberate indifference where there was evidence that the investigator was not provided with the adequate resources, and leads and recommendations for additional investigation were ignored); *Sango v. City of New York*, 1989 WL 86995, at *2-3, *14 (E.D.N.Y. July 25, 1989) (holding that one partially substantiated and three unsubstantiated complaints were sufficient to defeat summary judgment where plaintiff presented evidence that the investigations were inadequate and predictable).

a statement of a party opponent. Rule 801(d)(2)(D) provides that a statement offered against an opposing party which was made by the party's agent or employee on a matter within the scope of that relationship and while it existed is not hearsay. The Second Circuit has interpreted this provision to allow statements of a party's attorney provided that they are: (1) "assertions of fact that are the equivalent of a testimonial statement by the [client]"; and (2) "inconsistent with similar assertions in a subsequent trial." 5 Weinstein's Federal Evidence § 801.30 (quoting *United States v. McKeon*, 738 F.2d 26, 33 (2d Cir. 1984)).

However, the Circuit has stated that "[s]peculations of counsel, advocacy as to the credibility of witnesses, arguments as to weaknesses in the prosecution's case or invitations to a jury to draw certain inferences should not be admitted." *Martinez v. Port Auth. of N.Y. & N.J.*, No. 01 CIV. 721 (PKC), 2005 WL 2143333, at *11 (S.D.N.Y. Sept. 2, 2005), *aff'd sub nom. Martinez v. The Port Auth. of New York & New Jersey*, 445 F.3d 158 (2d Cir. 2006) (quoting *McKeon*, 738 F.3d at 33). Further, as it pertains to several exhibits that Walker has proffered, the Court notes that legal arguments in briefs or memorandums of law do not constitute assertions of fact. *See Alleva v. N.Y.C. Dep't of Investigation*, 696 F. Supp. 2d 273, 278 (E.D.N.Y. 2010) ("As for the memorandum of law, legal argument is not evidence."), *aff'd*, 413 F. App'x 361 (2d Cir. 2011) ("We affirm for substantially the same reasons stated by the district court in its thorough opinion.").

Newspaper articles are hearsay excluded by Fed. R. Evid. 802 when offered for the truth of the matters asserted therein. *See, e.g., Jacobson v. Deutsche Bank, A.G.*,

206 F. Supp. 2d 590, 594 (S.D.N.Y. 2002), *aff'd*, 59 F. App'x 430 (2d Cir. 2003) ("Here, [the plaintiff] offers Article One, an out-of-court statement made by [the author] to prove the fact that [the CEO of defendant] made the statements attributed to him therein. As such, Article One is clearly hearsay."). Walker maintains that he will offer the newspaper articles on his exhibit list not for the truth of the matters asserted, but for the non-hearsay purpose that they put County policymakers on notice of apparent misconduct by prosecutors. ECF No. 268 at 3. Where a party can show that newspaper articles are not being offered for the truth of the matter, a Court may allow their admission as non-hearsay. *Jordonne v. Ole Bar & Grill, Inc.,* No. 13CIV1573VBJCM, 2016 WL 3409088, at *6 (S.D.N.Y. Apr. 26, 2016), *report and recommendation adopted sub nom. Jordan v. Ole Bar & Grill, Inc.*, No. 13 CV 1573 (VB), 2016 WL 3360524 (S.D.N.Y. June 16, 2016).

Walker will also proffer evidence that then-District Attorney Cosgrove read Buffalo newspapers daily, creating a reasonable inference that stories in Buffalo publications would in fact have put him on notice of reported misconduct. ECF No. 268 at 5. Accordingly, the Court finds that newspaper articles that otherwise satisfy the Court's rulings on municipal policy evidence are admissible for the limited purpose of showing notice of relevant misconduct to support Walker's relevant theories of *Monell* liability. *United States v. Briguet*, No. 2:17-CV-3482, 2020 WL 6945929, at *1 (E.D.N.Y. Nov. 25, 2020) (finding articles relevant where defendant testified he read the financial page each day, and article headlines were likely to catch his eye).

32

Lastly, in terms of the trial management requested by the County, given the guidance provided by these rulings, the Court **DENIES** the County's request for offers of proof outside the presence of the jury at this juncture. The County may renew its motion if concerns arise during trial and of course the County will be free to make a timely Rule 50 motion. *See* Fed. R. Civ. P. 50(a).

## II.     Excluding References to *People v. Ashley* (ECF No. 229)

At the final pretrial conference on March 3, 2025, the Court asked both parties if they had any argument to add to their positions on County's motion *in limine* to preclude reference to an incident relative to the matter of *People v. Ashley*. Both parties declined. The Court proceeded to explain why it was granting the County's motion pursuant to Fed. R. Evid. 403, and Plaintiff's counsel then asked to be heard, reiterating case law it cited in opposition to the County's related motion to exclude "certain *Monell* evidence." The Court said it would reconsider Plaintiff's papers and reserved ruling on the issue of *People v. Ashley*. Upon further consideration, the County's motion *in limine* to preclude reference to an incident relative to the matter of *People v. Ashley* is **GRANTED**.

In *People v. Ashley*, the New York Supreme Court in Erie County declared a mistrial in a murder case due to ADA Drury's actions. While McLeod, who was defense counsel, was in chambers with the judge and the lead prosecutor, ADA Drury spoke to the defendant, alone, and passed along information he learned from the defendant to the lead prosecutor, who then attempted to use that information in his cross examination of the defendant. Challenged evidence in this case regarding this

incident includes two published Buffalo news stories, the *People v. Ashley* judicial decision itself, as well as the testimony of then-District Attorney Cosgrove and ADA Drury describing the egregiousness of such an incident (if it had occurred) and the fact that ADA Drury was never disciplined.

The County argues, in part, that the timing of this incident relative to Walker's June 1977 trial and the dissimilarity of the violation involved to the disclosure and summation violations alleged here, when balanced against its significant prejudicial effect, renders evidence of this incident inadmissible. ECF No. 229-1 at 1–2. As Plaintiff's counsel reiterated at the final pretrial conference, Walker claims that evidence about this incident is "directly relevant to [his] *Monell* theory of a policy of deliberate indifference to misconduct by prosecutors in depriving criminal defendants of their constitutional fair trial rights and the creation of an anything-goes atmosphere where only winning mattered." ECF No. 268 at 1. At the final pretrial conference, Plaintiff's attorneys emphasized that this incident is "about the worst example in the record of misconduct that clearly violated the defendant's constitutional right to counsel," and that ADA Drury "did it flagrantly in a highly publicized murder trial because he knew that there would be no consequence even if he was caught," which goes to "this atmosphere of indifference that was created by the [ECDA]."

Pursuant to the Court's ruling on the County's motion to exclude "certain *Monell* evidence," *People v. Ashley* is inadmissible because the conduct at issue in that case it is not sufficiently similar to any of the three types of constitutional violations

alleged in Walker's case and post-dates Walker's 1976 preliminary hearing and 1977 trial. *See Monell*, 436 U.S. at 691 (even flagrant and obvious misconduct by a municipal employee must be directly caused a municipal policy to impose liability on the municipality under section 1983).

Even without the Court's prior ruling setting bounds around Walker's municipal policy evidence generally, and setting aside questions of hearsay, the Court finds that evidence pertaining to *People v. Ashley* is inadmissible under Fed. R. Evid. 403. That this incident occurred a year and a half after Walker's trial, almost two years after the preliminary hearing, and does not remotely involve any of the three types of constitutional violations alleged renders *Ashley's* probative value minimal. The Court finds its inflammatory nature cuts against its admissibility as being unfairly prejudicial given its diminished probative value. Fed. R. Evid. 403.

## III.    Admitting Summaries of Voluminous Evidence (ECF No. 230-5)

Walker seeks to introduce the following summaries: (i) evidence of misconduct by prosecutors in the ECDA in criminal cases other than his own; (ii) documents that Walker alleges were and were not disclosed to the defense before his criminal trial; and (iii) the transcript of Walker's criminal trial. ECF No. 230-5. The parties have stipulated to at least portions of Walker's criminal trial transcript for admission. The Court will address any remaining disputes regarding redactions separately thereto and thus **DENIES** the third request of Walker's motion **as MOOT**. The Court **RESERVES** on a summary as to Walker's second request because the Court has not been given an opportunity to review what may be contemplated.

In regards to Walker's request to summarize evidence of misconduct by prosecutors in the ECDA in criminal cases other than his own, the Court notes that after discussion at the March 3 final pretrial conference of the County's motion *in limine* to preclude certain alleged *Monell* evidence (ECF No. 222) and motion to preclude reference to an incident relative to the matter of *People v. Ashley* (ECF No. 229), Walker was asked to annotate his proposed summary chart to include the purposes for which he sought to include each of the items listed on the chart. Walker did so (ECF No. 291), and the County made specific objections (ECF No. 296).

Consistent with the foregoing discussion of the principles applicable to the County's motion to preclude certain alleged *Monell* evidence, the Court examined Walker's proposed summary chart to determine whether the "incidents" listed were properly admissible under the rules of evidence; were specific enough to the violations alleged in the present case; and were committed at a time that Walker may plausibly suggest gave the policymakers "notice" of conduct consistent with the theories of *Monell* liability he intends to demonstrate.

With respect to the admissibility of the documents, as Judge Wolford noted in *Ferrari Club of Am., Inc. v. Bourdage*, No. 6:12-CV-06530 EAW, 2017 WL 1498080, at \*6 (W.D.N.Y. Apr. 25, 2017), where a party introduces a summary chart under Fed. R. Evid. 1006, "the court must ascertain with certainty that they are based upon and fairly represent competent evidence already before the jury." *Id.* (quoting *United States v. Conlin*, 551 F.2d 534, 538 (2d Cir. 1977)). That is, "[s]ummary evidence is admissible as long as the underlying documents also constitute admissible evidence

and are made available to the adverse party." *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53 (2d Cir. 1993).

With respect to the similarity of the evidence to the misconduct alleged, as stated above, the incidents must relate to a violation of the "specific constitutional or statutory right[s]" alleged in Walker's Amended Complaint. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997); *see also Iacovangelo*, 624 F. App'x at 14 (examining cases for evidence of a "custom of not providing adequate medical supervision for inmates going through drug or alcohol withdrawal").

With respect to the time at which notice of the incidents occurred, as discussed above, the Supreme Court has stated that "contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice to the [policymaker] and the opportunity to conform to constitutional dictates . . . ." *Connick*, 563 U.S. at 63 n.7.

**<u>Incidents Which May Be Included</u>**

The County's objections are overruled, and – subject to the limitations outlined above regarding newspaper articles, judicial decisions, and appellate briefs – the following "incidents" may be admissible for the limited purpose of attempting to demonstrate that the County of Erie had notice of violations by County prosecutors of defendants' constitutional rights:

Incident No. 1

Incident No. 12

Incident No. 13

37

Incident No. 14

Incident No. 16

Incident No. 17

Incident No. 18

Incident No. 19

Incident No. 20

**Incidents Which May Not Be Included**

The County's objections are sustained, and the following incidents may not be admitted into evidence or included in the chart because the severity of the alleged misconduct is ambiguous, and the probative value of Walker's proffered evidence is thus far outweighed by the danger of unfair prejudice:

Incident No. 3 (*see People v. Clark*, 89 A.D.2d 820 (N.Y. App. Div. 1982) ("reject[ing] defendants' contention that the late disclosure of exculpatory material denied them a fair trial in violation of Brady . . . ."))

Incident No. 15 (*see People v. Freeland*, 45 A.D.2d 814, 915 (N.Y. App. Div. 1974) ("While we do not condone the excesses of the District Attorney's summation it was not . . . of such a nature as to deprive defendants of a fair trial."))

The County's objections are sustained, and the following incidents may not be admitted into evidence or included in the chart because the relevant evidence constitutes inadmissible legal argument:

Incident No. 2

Incident No. 7

Incident No. 8

The County's objections are sustained, and the following incidents may not be admitted into evidence or included in the chart because the alleged notice occurred subsequent to Walker's trial and could not plausibly be said to give notice to the policymaker, and because they are too dissimilar to the constitutional violations that Plaintiff alleges:

Incident No. 21

Incident No. 24

Incident No. 36

Incident No. 37

Incident No. 38

Incident No. 39

Incident No. 40

The County's objections are sustained, and the following incidents may not be admitted into evidence or included in the chart because they are too dissimilar to the constitutional violations that Plaintiff alleges:

Incident No. 28

Incident No. 29

Incident No. 30

Incident No. 31

Incident No. 32

Incident No. 33

Incident No. 34

Incident No. 35

The County's objections are sustained, and the following incidents may not be admitted into evidence or included in the chart because the alleged notice occurred subsequent to Walker's trial and could not plausibly be said to give notice to the policymaker of the constitutional violations that Plaintiff alleges:

Incident No. 4

Incident No. 5

Incident No. 6

Incident No. 9

Incident No. 10

Incident No. 11

Incident No. 22

Incident No. 23

Incident No. 25

Incident No. 26

Incident No. 27

Based on the foregoing rulings, Plaintiff's motion to admit its summary of voluminous *Monell* evidence, is **DENIED**. A summary chart is intended to summarize and organize voluminous evidence to aid the jury. The proposed chart is not concise, and includes argument and characterizations of the evidence inconsistent with a factual summary. Further, the universe of admissible municipal policy

evidence is less voluminous than originally proposed.

The Court leaves open the possibility, subject to the Court's reasoning and rulings *in limine*, that Walker revise his proposed chart for reevaluation, the parties stipulate to a concise summary chart, or that Walker pursue the use of charts as demonstratives without intending to admit them as full exhibits. The Court also notes that after the pretrial conference on March 17, 2025, Walker has withdrawn Elliot Shields as a witness, who was intended to introduce the chart to the jury.

Lastly, the Court takes seriously the potential for prejudice to the County in admitting a prior judicial decision due to the reality that "jurors are especially sensitive to judicial determinations . . . ." *Haynes v. Acquino*, No. 10-CV-355F, 2018 WL 3126725, at *5 (W.D.N.Y. June 26, 2018), *aff'd*, 771 F. App'x 75 (2d Cir. 2019) (citing *Brundidge v. City of Buffalo*, 79 F.Supp.2d 219, 223 n. 2 (W.D.N.Y. 1999); *Carter v. Burch*, 34 F.3d 257, 265 (4th Cir. 1994)). Accordingly, the Court will address issues with specific underlying exhibits as they are raised by counsel.

## ORDER

For the reasons stated, IT IS HEREBY ORDERED that the County's motion *in limine* to preclude certain *Monell* evidence is GRANTED IN PART AND DENIED IN PART, ECF No. 222; and it is further

ORDERED that the County's motion *in limine* to preclude references to *People v. Ashley* is GRANTED, ECF No. 229; and it is further

ORDERED that Walker's motion *in limine* to admit summaries of voluminous evidence is DENIED, ECF No. 230-5.

SO ORDERED.

Dated:         March _____, 2025
               Rochester, New York

_____
HON. MEREDITH A. VACCA
United States District Judge