# EXHIBIT D

| | |
|---|---|
| **From:** | Kirstie A. Means |
| **To:** | Nicole Austin; Spencer Durland; Meredith Vacca; Thomas R. Southard; John Lyle; Katelyn Popp |
| **Cc:** | Hanft, Gideon A.; Firsenbaum, Ross; Perio, Ryanne; jbrudin@rudinlaw.com; James P. Blenk; Brian C. Mahoney; buffalo_5_plaintiff_counsel@list.wilmerhale.com; Jennifer C. Persico |
| **Subject:** | RE: Final Jury Instructions and Special Verdict Form |
| **Date:** | Monday, April 7, 2025 6:22:53 AM |
| **Attachments:** | image002.png |
| | image003.png |
| | image888427.png |
| | County"s Redlines to Final Jury Charges.pdf |

Good morning, Judge Vacca and Ms. Austin:

In advance of the charge conference, the County respectfully submits a redlined draft of the Court's Final Jury Charges, incorporating the County's primary objections, in an effort to facilitate and streamline discussion.  Additionally, the County notes the following objections with respect to the Court's Special Verdict Sheet.

The County objects to **Section I (Liability)** on the grounds it: (i) fails to include a question relative to the issue of favorability and (ii) conflates the analysis required under Monell into a single question (at both questions 2 and 4).  The County maintains, as was set forth in its proposed Verdict Sheet, that distinct questions should be raised on each point, particularly since the Court's Proposed Final Jury Charges instruct the jury as to the issue of favorability and because the jury could find the existence of a custom, policy or practice, but not find that it was the moving force behind the constitutional violations alleged in this case.

As to **Section II (Damages)**, the County objects and requests to add "if any" or something similar so as to not instruct the jury that it must award compensatory damages.  The County further seeks to add an additional line relative to a potential award of nominal damages, consistent with the jury instructions and to avoid confusion on this issue.  The County proposes revising this section as follows:

5.  If you answered YES to either *or* both of Questions 2 and 4, please identify on the line below the total amount of compensatory damages that you find Mr. Walker is entitled to for the period beginning on June 13, 1977 (the date of Mr. Walker's conviction) until the present (if you decide not to make an award as to this item, insert the word "None"):

$ _____

If you awarded no damages in Question 5, proceed to Question 6. If you awarded damages in Question 5, skip Question 6.

6.  State the amount you award Mr. Walker in nominal damages:

$ _____

As to the damages questions pertaining to the Buffalo Police Department, the County objects and requests to: (i) add the names of the relevant employees of the Buffalo Police Department, (ii) reference both compensatory and nominal damages and (iii) revise "also contributed" to "caused or contributed to" as follows:

Do you find that the Defendant, the County of Erie, has demonstrated by a preponderance of the evidence that the Buffalo Police Department, including its employees, Michael E. Guadagno, John Montondo, James E. Hunter, Robert Grabowski, Robert F. Arnet, Frank C. Deubell, Leo J. Donovan, Francis M. Manista, Jr., Paul R. Delano (collectively, the Buffalo Police Department), caused or contributed to Mr. Walker's damages?

Respectfully submitted,
Kirstie Means

**Kirstie A. Means**
Partner



50 Fountain Plaza, Suite 1700
Buffalo, NY 14202-2216

ph: 716.853.5100 ext. 1305
kmeans@lippes.com | lippes.com
LinkedIn // Facebook

This email message, including attachments, are confidential and may be protected by the attorney/client or other applicable privileges. The information is intended to be conveyed only to the designated recipient(s) of the email message. Unauthorized use, dissemination, distribution or reproduction of this message by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not an intended recipient, please notify the sender immediately, delete the message from your email system, and destroy any other copies in your possession.

---

**From:** Nicole Austin <Nicole_Austin@nywd.uscourts.gov>
**Sent:** Sunday, April 6, 2025 6:21 PM
**To:** Kirstie A. Means <kmeans@lippes.com>; Spencer Durland <sdurland@hooverdurland.com>; Meredith Vacca <Meredith_Vacca@nywd.uscourts.gov>; Thomas R. Southard <tsouthard@lippes.com>; John Lyle <John_Lyle@nywd.uscourts.gov>; Katelyn Popp <Katelyn_Popp@nywd.uscourts.gov>
**Cc:** Hanft, Gideon A. <Gideon.Hanft@wilmerhale.com>; Firsenbaum, Ross <Ross.Firsenbaum@wilmerhale.com>; Perio, Ryanne <Ryanne.Perio@wilmerhale.com>; jbrudin@rudinlaw.com; James P. Blenk <jblenk@lippes.com>; Brian C. Mahoney <bmahoney@lippes.com>; buffalo_5_plaintiff_counsel@list.wilmerhale.com; Jennifer C. Persico <jpersico@lippes.com>
**Subject:** Final Jury Instructions and Special Verdict Form



Good evening, Counsel,

Attached are the Final Jury Instructions and Special Verdict Sheet that will be the subject of the charge conference tomorrow at 8:30am.

**Nicole W. Austin**
*Law Clerk to Judge Meredith A. Vacca*

*Western District of New York*

Kenneth B. Keating Federal Building

100 State Street, Rochester, NY 14614

O: 585-613-4374 | FAX: 716-613-4375

www.nywd.uscourts.gov

---

**From:** Kirstie A. Means <kmeans@lippes.com>
**Sent:** Sunday, April 6, 2025 5:58 PM
**To:** Spencer Durland <sdurland@hooverdurland.com>; Meredith Vacca <Meredith_Vacca@nywd.uscourts.gov>; Thomas R. Southard <tsouthard@lippes.com>; Nicole Austin <Nicole_Austin@nywd.uscourts.gov>; John Lyle <John_Lyle@nywd.uscourts.gov>; Katelyn Popp <Katelyn_Popp@nywd.uscourts.gov>
**Cc:** Hanft, Gideon A. <Gideon.Hanft@wilmerhale.com>; Firsenbaum, Ross <Ross.Firsenbaum@wilmerhale.com>; Perio, Ryanne <Ryanne.Perio@wilmerhale.com>; jbrudin@rudinlaw.com; James P. Blenk <jblenk@lippes.com>; Brian C. Mahoney <bmahoney@lippes.com>; buffalo_5_plaintiff_counsel@list.wilmerhale.com; Jennifer C. Persico <jpersico@lippes.com>
**Subject:** RE: DX 707 and DX 697

<mark>CAUTION - EXTERNAL:</mark>

Dear Judge Vacca:

Attached please find a copy of the County's response and objections to Plaintiff's Supplemental Requests to Charge, filed moments ago at Docket 357.

Respectfully submitted,
Kirstie Means

**Kirstie A. Means**
Partner



50 Fountain Plaza, Suite 1700
Buffalo, NY 14202-2216

ph: 716.853.5100 ext. 1305
kmeans@lippes.com | lippes.com
LinkedIn // Facebook

This email message, including attachments, are confidential and may be protected by the attorney/client or other applicable privileges. The information is intended to be conveyed only to the designated recipient(s) of the email message. Unauthorized use, dissemination, distribution or reproduction of this message by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If

you are not an intended recipient, please notify the sender immediately, delete the message from your email system, and destroy any other copies in your possession.

**From:** Spencer Durland <sdurland@hooverdurland.com>
**Sent:** Sunday, April 6, 2025 10:28 AM
**To:** Meredith Vacca <Meredith_Vacca@nywd.uscourts.gov>; Thomas R. Southard <tsouthard@lippes.com>; Nicole Austin <Nicole_Austin@nywd.uscourts.gov>; John Lyle <John_Lyle@nywd.uscourts.gov>; Katelyn Popp <Katelyn_Popp@nywd.uscourts.gov>
**Cc:** Hanft, Gideon A. <Gideon.Hanft@wilmerhale.com>; Kirstie A. Means <kmeans@lippes.com>; Firsenbaum, Ross <Ross.Firsenbaum@wilmerhale.com>; Perio, Ryanne <Ryanne.Perio@wilmerhale.com>; jbrudin@rudinlaw.com; James P. Blenk <jblenk@lippes.com>; Brian C. Mahoney <bmahoney@lippes.com>; buffalo_5_plaintiff_counsel@list.wilmerhale.com; Jennifer C. Persico <jpersico@lippes.com>
**Subject:** RE: DX 707 and DX 697


Dear Judge Vacca,

We have received your message and will confer with opposing counsel about a list of admitted exhibits. Attached please find Plaintiff's Supplemental Requests to Charge, filed on the docket just now.

Respectfully submitted,

Spencer L. Durland

**From:** Meredith Vacca <Meredith_Vacca@nywd.uscourts.gov>
**Sent:** Sunday, April 6, 2025 9:00 AM
**To:** Thomas R. Southard <tsouthard@lippes.com>; Nicole Austin <Nicole_Austin@nywd.uscourts.gov>; John Lyle <John_Lyle@nywd.uscourts.gov>; Katelyn Popp <Katelyn_Popp@nywd.uscourts.gov>
**Cc:** Hanft, Gideon A. <Gideon.Hanft@wilmerhale.com>; Kirstie A. Means <kmeans@lippes.com>; Spencer Durland <sdurland@hooverdurland.com>; Firsenbaum, Ross <Ross.Firsenbaum@wilmerhale.com>; Perio, Ryanne <Ryanne.Perio@wilmerhale.com>; jbrudin@rudinlaw.com; James P. Blenk <jblenk@lippes.com>; Brian C. Mahoney <bmahoney@lippes.com>; buffalo_5_plaintiff_counsel@list.wilmerhale.com; Jennifer C. Persico <jpersico@lippes.com>
**Subject:** Re: DX 707 and DX 697


Counsel:

I will get you the proposed verdict sheet and final instructions later today. A few things I wanted to bring up now.

If counsel can please come up with a mutually agreeable list of exhibits that can be sent back to the jury during deliberations when requested in a note. Please bring to court tomorrow morning. If such an exhibit is requested by the jury, we would send it back without reconvening and put it on the record the next time we meet in court.

I will not be allowing Plaintiff to recommend a certain dollar figure or range in their summation. We will put this on the record tomorrow morning.

Also, heads up for tomorrow morning. We have Grand Jury empanelment which means that there will be a lot of people going through the magnetometers starting at 8 am. I am told it will probably take an hour for everyone to go through.

Thank you!


Get Outlook for iOS

**From:** Thomas R. Southard <tsouthard@lippes.com>
**Sent:** Friday, April 4, 2025 9:51:48 AM
**To:** Nicole Austin <Nicole_Austin@nywd.uscourts.gov>; John Lyle <John_Lyle@nywd.uscourts.gov>; Katelyn Popp <Katelyn_Popp@nywd.uscourts.gov>; Meredith Vacca <Meredith_Vacca@nywd.uscourts.gov>
**Cc:** Hanft, Gideon A. <Gideon.Hanft@wilmerhale.com>; Kirstie A. Means <kmeans@lippes.com>; Spencer Durland <sdurland@hooverdurland.com>; Firsenbaum, Ross <Ross.Firsenbaum@wilmerhale.com>; Perio, Ryanne <Ryanne.Perio@wilmerhale.com>; jbrudin@rudinlaw.com <jbrudin@rudinlaw.com>; James P. Blenk <jblenk@lippes.com>; Brian C. Mahoney <bmahoney@lippes.com>; buffalo_5_plaintiff_counsel@list.wilmerhale.com <buffalo_5_plaintiff_counsel@list.wilmerhale.com>; Jennifer C. Persico <jpersico@lippes.com>
**Subject:** DX 707 and DX 697

**CAUTION - EXTERNAL:**

Dear Judge Vacca,

Please see the below link to a share drive that contains DX 707 (Guadagno Deposition Transcript) and DX 697 (Cosgrove Deposition Transcript) highlighted for the County's deposition designations and Plaintiff's counter designations that were received in evidence on April 3.

███████████████████████████████

██████████████████

Thank you,

Tom Southard

**Thomas R. Southard**
Associate



50 Fountain Plaza, Suite 1700
Buffalo, NY 14202-2216

ph: 716.853.5100 ext. 1258 | fx: 716.853.5199
tsouthard@lippes.com | lippes.com
LinkedIn // Facebook

This email message, including attachments, are confidential and may be protected by the attorney/client or other applicable privileges. The information is intended to be conveyed only to the designated recipient(s) of the email message. Unauthorized use, dissemination, distribution or reproduction of this message by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not an intended recipient, please notify the sender immediately, delete the message from your email system, and destroy any other copies in your possession.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

<u>**FINAL JURY INSTRUCTIONS**</u>

**I.**    <u>**General Instructions**</u>

Members of the jury, following summations, it now becomes my duty to instruct you as to the law applicable to this case. Before doing so, I would like to commend all of you for your patience and attention during the course of this trial. I would also like to commend the attorneys for the very able manner in which each has carried out their responsibility as an advocate. You have now received all the evidence that is to be presented in this case, and through the attorneys' closing arguments or summations, you have learned the conclusions which each side believes should be drawn from this evidence. It is now very important that you listen carefully to my final instructions to you.

A lawsuit is a civilized method of determining differences between parties. It is basic to the administration of any system of justice that the determination on both the law and facts be made fairly and honestly. You as the jury and I as the Judge, therefore, have a very important responsibility – to ensure that a just result is reached in the determination of the differences between the Plaintiff and the Defendant in this case.

We have now arrived at that phase of your work where you will be instructed on the law and then retire to the jury room for your final deliberations. You will find that my instructions are divided into two main parts: first, a general statement of the law applicable to all jury trials in civil cases; and then second, a statement of the law that is applicable to this particular case.

During their summations, the attorneys suggested to you certain inferences and conclusions that you might reasonably and logically draw from the evidence. The summations of the attorneys are, of course, not evidence. However, if the arguments of the parties strike you as reasonable and

- 1 -

logical and supported by the evidence, you may, if you so conclude, adopt them.   On the other hand, if you find such arguments to be unreasonable or illogical or unsupported by the evidence, you may, if you so conclude, reject them.  In the last analysis, it is your function as the jury to draw your own inferences and conclusions from the evidence, as you recollect the evidence, and as you find such evidence credible and believable.

Keep in mind that you, as the jury, are the sole and exclusive judge of the facts.  It is your duty to decide each and every issue of fact which has arisen during the course of the trial.   No one, not the attorneys, nor the Court, may presume to tell you how the issues of fact should be decided.  I repeat that you and you alone, are the sole and exclusive judge of the facts. I am the sole and exclusive judge of the law.  These responsibilities are separate and distinct, and each is of equal importance.  As the judge of the law, it has been my function to regulate the course of the trial and to determine what evidence, under the law, was admissible.  My rulings in each instance were based solely upon the law.  My other function is, of course, to instruct you on the law specifically applicable to this case.

As I have stated before, my instructions to you on the law must be accepted by you whether you agree with them or not.  If you have any ideas of your own of what the law is, or what you think it should be, it is now your duty, pursuant to the oath you took as jurors, to disregard your own ideas of the law, and to accept the law exactly as I give it to you.  Please remember that all of us are all bound by the laws of our Country exactly as those laws provide.

I may during these instructions by the level of my voice or by intonation seem to emphasize certain matters.  That is simply to help you understand the important principles of law.  It is not intended to communicate any opinion about the facts.

- 2 -

During these instructions, I will not review or summarize the evidence. If necessary, I may refer to particular evidence to explain the law that relates to that evidence. My reference to the evidence, or my failure to refer to evidence, expresses no opinion about the believability, accuracy, or importance of any particular evidence.

No matter how careful a judge may be to avoid it, there is always the possibility that a juror may get an impression that the judge has some opinion with reference to whether the plaintiff is liable or not liable, or that some particular witness is more believable than another, and so on.

If you have formed any such impression, you must put it out of your mind and utterly disregard it. Nothing I have said, or questions I may have asked of a witness, was intended to give any such impression, and nothing I am about to say or how I say it is intended to give any such impression.

Similarly, if in the interest of advocacy, the attorneys have done or said anything which you deem to be objectionable, you must not let such feeling interfere with your primary duty here, which is to judge the facts impartially and to be fair to both the Plaintiff and the Defendant.

It is the duty of the attorneys to offer evidence and press objections on behalf of their side. It is my function to cut off counsel from an improper line of argument or questioning, to strike offending remarks, and to admonish counsel when I think it is necessary. But you should draw no inference against the attorney or the attorney's client. It is irrelevant whether you like a lawyer or whether you believe I like a lawyer.

During the course of the trial, you may have heard some conversation between myself and the lawyers at the bench. Bear in mind that such exchanges between myself and the lawyers did not constitute evidence and, to the extent that you may have overheard anything, it must be

- 3 -

disregarded by you.

At times during the trial, I sustained objections to questions asked without permitting the witness to answer or, where an answer was made, instructed that it be stricken from the record and that you disregard the answer. You may not draw any inference from an unanswered question, nor may you consider testimony which has been stricken in reaching your decision. The law requires that your decision be made solely upon the competent evidence before you. The items I have excluded from your consideration were excluded because I determined that they were not admissible.

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence and you may not consider them in deciding what the facts are. I will list them for you:

1.    Arguments and unsworn statements by the lawyers are not evidence. What the lawyers may have said in their closing arguments, just like what they said in opening statements, and at other times during the trial, was intended to help you interpret the evidence but it is not evidence. If the facts as you remember them differ from the way they have been stated in closing arguments, your memory of the evidence controls.

2.    Questions and objections by the attorneys are not evidence. Evidence consists of a question and an answer, not just the question. As to objections, the attorneys have a duty to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the way I ruled on it.

3.    Testimony that has been excluded or stricken, or that you have been instructed to

- 4 -

disregard, is not evidence and must not be considered.  In addition, if testimony or exhibits have been received only for a limited purpose, you must follow the limiting instructions I have given.

4.      Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at this trial.  That means you may not consider or speculate on matters not in evidence or matters outside the case as it has been presented in this courtroom.

I would remind you now that any notes that you have taken during this trial are only aids to your memory.  If your memory differs from your notes, you should rely on your memory and not on the notes.  The notes are not in evidence.  If you have not taken notes, you should rely on your independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.  Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

Your verdict must be based solely upon the evidence developed at this trial, or the lack of evidence.  It would be improper for you to consider any personal feelings you may have about one of the parties' race, religion, national origin, gender, or age.  It would be equally improper for you to allow any feelings you might have about the nature of the claim against the Defendant to influence you in any way.  Sympathy must not play a role in any of your decision making. During your deliberations you must remember the oath you each took to be a fair and impartial juror. The system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

You also must completely disregard any report which you may have read in the press, watched on television, heard on the radio, or seen on the internet.  It would be unfair to consider

- 5 -

such reports, because they are not evidence, and the parties have no opportunity to contradict their accuracy or otherwise explain them away.  It would be a violation of your oath as jurors to allow yourselves to be influenced in any manner by such publicity.

I will now turn to the fundamental legal principles which are applicable to civil cases in general.  These basic principles are applicable to every civil trial conducted in all of the courts of our country.  I made reference to these principles in my preliminary instructions at the beginning of the trial, but because of the importance of these principles, I am going to repeat and amplify my instructions as to each of them.

In a civil case, a plaintiff has the burden of proving the material allegations of the complaint by a **preponderance of the evidence**.  If after considering all of the testimony you are satisfied that the Plaintiff has carried his burden on each essential point as to which he has the burden of proof, then you must find for the Plaintiff on the claim under consideration.

If after such consideration you find the testimony of both parties to be in balance or equally probable, then the Plaintiff has failed to sustain his burden, and you must find for the Defendant.

If upon consideration of all the facts, you find that the Plaintiff has failed to sustain the burden cast upon him, then you should proceed no further, and your verdict must be for the Defendant.

The Plaintiff has the burden of proving every disputed element of a claim to you by a preponderance of the evidence.  What does "preponderance of the evidence" mean?  To establish a fact by a preponderance of the evidence means to prove that a fact is more likely true than not true.  A preponderance of the evidence means the greater weight of the evidence.  It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.  In determining whether a claim has been proved by a preponderance of the evidence, you may

- 6 -

consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have introduced them.

If you find that the credible evidence on a given issue is evenly divided between the parties – that it is equally probable that one side is right as it is that the other side is right – then you must decide that issue against the Plaintiff. That is because the Plaintiff must prove more than simple equality of evidence—the Plaintiff must prove the element at issue by a preponderance of the evidence. On the other hand, the Plaintiff need prove no more than a preponderance. So long as you find that the scales tip, however slightly, in favor of the Plaintiff—that what he claims is more likely true than not true—then that element will have been proved by a preponderance of the evidence.

In that regard, you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this and you should put it out of your mind.

That concludes our discussion of the burden of proof applicable in civil cases. I will now turn to your estimate of the credibility of each witness's testimony and the weight to be accorded to such testimony.

As judges of the facts, you alone determine the truthfulness and accuracy of the testimony of each witness. You must decide whether a witness told the truth and was accurate, or instead, testified falsely or was mistaken. You must also decide what importance to give to the testimony you accept as truthful and accurate. It is the quality of the testimony that is controlling, not the number of witnesses who testify.

There is no particular formula for evaluating the truthfulness and accuracy of another person's statements or testimony. You bring to this process all of your varied experiences. In life,

- 7 -

you frequently decide the truthfulness and accuracy of statements made to you by other people. The same factors used to make those decisions, should be used in this case when evaluating the testimony.

Some of the factors that you may wish to consider in evaluating the testimony of a witness are as follows:

- Did the witness have an opportunity to see or hear the events about which he or she testified?

- Did the witness have the ability to recall those events accurately?

- Was the testimony of the witness plausible and likely to be true, or was it implausible and not likely to be true?

- Did the manner in which the witness testified reflect upon the truthfulness of that witness's testimony?

- To what extent, if any, did the witness's background, training, education, or experience affect the believability of that witness's testimony?

- What was the demeanor of the witness when testifying? Did the witness have a conscious bias, hostility or some other attitude that affected the truthfulness of the witness's testimony?

- Did the witness show an "unconscious bias," that is, a bias that the witness may have even unknowingly acquired from stereotypes and attitudes about people or groups of people, and if so, did that unconscious bias impact that witness's ability to be truthful and accurate.

- You may consider whether a witness had, or did not have, a motive to lie.

- 8 -

- If a witness had a motive to lie, you may consider whether and to what extent, if any, that motive affected the truthfulness of that witness's testimony.

- If a witness did not have a motive to lie, you may consider that as well in evaluating the witness's truthfulness.

- You may consider whether a witness has any interest in the outcome of the case, or instead, whether the witness has no such interest.

- You are not required to reject the testimony of an interested witness, or to accept the testimony of a witness who has no interest in the outcome of the case.

- You may, however, consider whether an interest in the outcome, or the lack of such interest, affected the truthfulness of the witness's testimony.

You may consider whether a witness made statements at this trial that are inconsistent with each other. You may also consider whether a witness made previous statements that are inconsistent with his or her testimony at trial. You may consider whether a witness testified to a fact here at trial that the witness omitted to state, at a prior time, when it would have been reasonable and logical for the witness to have stated the fact. In determining whether it would have been reasonable and logical for the witness to have stated the omitted fact, you may consider whether the witness' attention was called to the matter and whether the witness was specifically asked about it. If a witness has made such inconsistent statements or omissions, you may consider whether and to what extent they affect the truthfulness or accuracy of that witness's testimony here at this trial. The contents of a prior inconsistent statement are not proof of what happened. You may use evidence of a prior inconsistent statement only to evaluate the truthfulness or accuracy of the witness's testimony here at trial.

- 9 -

- You may consider whether a witness's testimony is consistent with the testimony of other witnesses or with other evidence in the case.
- If there were inconsistencies by or among witnesses, you may consider whether they were significant inconsistencies related to important facts, or instead were the kind of minor inconsistencies that one might expect given the circumstances of this case.

I permitted Mr. Hirsch, Mr. Zeidman, Dr. Drobb, and Mr. Gagan to express their opinions about matters that are in issue. A witness may be permitted to testify to an opinion on those matters about which they have special knowledge, skill, experience, and training. Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts. In weighing this opinion testimony, you may consider the witness's qualifications, their opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony. In addition, because they gave their opinions, you should consider the soundness of each opinion, the reasons for the opinion, and the witness's motive, if any, for testifying. You may give the testimony of this witness such weight, if any, that you think it deserves in light of all the evidence. You should not permit a witness's opinion testimony to be a substitute for your own reason, judgment, and common sense. You may reject the testimony of any opinion witness in whole or in part, if you conclude the reasons given in support of an opinion are unsound or, if you, for other reasons, do not believe the witness. The determination of the facts in this case rests solely with you.

In this case you also heard the testimony of police officers and/or former prosecutors. The testimony of a witness should not be believed solely and simply because the witness was a police officer or prosecutor. At the same time, a witness's testimony should not be disbelieved solely and

- 10 -

simply because the witness was a police officer or prosecutor. You must evaluate their testimony in the same way you would evaluate the testimony of any other witness.

As to the witnesses who testified, even if you find that the testimony given by any witness was not contradicted by any other evidence in the case, such finding does not relieve you of your duty and responsibility to evaluate the credibility of the witness and to make your own determination of what weight, if any, that you will give such testimony.

By the processes that I have just described, you as the sole and exclusive judge of the facts will determine which of the witnesses you believe, what portion of their testimony you accept, and what weight you will give it.

Now, of course, facts must be proven by evidence. The evidence from which you are to decide what the facts are consists of sworn testimony of witnesses, both on direct and cross-examination and any re-direct and re-cross examination, regardless of who called the witness, the exhibits that have been received into evidence, regardless of who introduced them, and any stipulations between the parties. Keep in mind that the law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

As to evidence, there are two kinds: direct and circumstantial. Direct evidence is when a witness testifies about something they know by virtue of their own senses – something they have seen, felt, touched, or heard. Direct evidence may also be in the form of an exhibit when the fact to be proved is its present existence or condition.

The other type of evidence is circumstantial evidence. This is evidence which tends to prove a disputed fact by proof of other facts. There is a simple example of circumstantial evidence which is often used in this courthouse.

Assume that when you came into the courthouse this morning the sun was shining, and it was a nice day. As you were sitting here, someone walked in with an umbrella which was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom, and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence, for it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict must be based on a preponderance of all the evidence presented.

II.     **Specific Instructions**

This completes my discussion of the general principles of law applicable to all civil trials. Let us turn our attention to the definitions and rules applicable to each of the specific causes of action that will be submitted to you for your final determination.

Mr. Walker brings his claim under a federal civil rights law: Title 42 U.S.C. § 1983. This law provides that any person or persons who, under the color of state law, deprives another of any rights, privileges, or immunities secured by the United States Constitution and federal statutes, shall be liable to the injured party.

- 12 -

~~This Section 1983 claim in this case is call[1]ed a "*Monell*" claim, which simply means that the "person" the Plaintiff is attempting to hold liable is a municipality—here, the County of Erie and not a specific individual.~~ The Plaintiff has the burden of proving each essential element of his claim by a preponderance of the evidence.  To prove an assertion by a preponderance of the evidence means proving that it is more likely true than not true.

To succeed on this claim, the Plaintiff must prove each of the following three elements by a preponderance of the evidence:

1.    *First*, that an official or officials of Erie County acted under the color of state law;

2.    *Second*, that an official or officials of Erie County, by their conduct, deprived Mr. Walker of rights, privileges, or immunities secured by the Constitution or laws of the United States—here, his right to a fair trial; and

3.    *Third*, that such conduct by an official or officials of Erie County, was caused by a widespread policy, practice, or custom of the County of Erie, the municipality at issue in this case, such that the County's policy was the "moving force" behind the violation of Mr. Walker's constitutional rights.

I will describe each of these elements in more detail.

---

[1] The County objects on the grounds this constitutes a misstatement of the law and that referencing the concept of *Monell* first may confuse the jury, as it must first find a constitutional violation before proceeding to an analysis concerning *Monell* liability.

On the first element, there is no dispute in this case that the Erie County Assistant District Attorneys handling Mr. Walker's criminal conviction were acting under the color of state law. Therefore, I instruct that this first element is met.

On the second, Mr. Walker alleges that two types of constitutional violations occurred—that Erie County Assistant District Attorneys failed to disclose exculpatory and impeachment evidence that was material to Plaintiff's defense in his criminal case (what you've heard referred to many times throughout trial as "*Brady* evidence"), and also that an Erie County Assistant District Attorney's conduct during their summation "caused substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process."

Before discussing the third element to Mr. Walker's ~~*Monell*~~ claim, I will explain the law on the two constitutional violations that Mr. Walker contends occurred, and only if you find a constitutional violation occurred, will you move onto the analysis required of that third element.

### *Brady* Violation

The first alleged constitutional violation alleged by Mr. Walker involves what has been referred to in the trial as a "*Brady* violation". To prove a *Brady* violation, Mr. Walker must prove the following by a preponderance of the evidence:

1.  First, that evidence allegedly withheld from his defense was "favorable" to his defense—meaning that the evidence was "exculpatory" and/or "impeaching";

2.  Second, that this favorable evidence was "suppressed"—meaning that the prosecutor, ~~either willfully or inadvertently,~~ intentionally[2] did not disclose information in a manner that allowed the accused to reasonably make beneficial use of the evidence; and

_____

[2] "To recover money damages for a *Brady* due process violation under Section 1983, the violation must have been intentional" *Valentin v City of Rochester*, 2018 WL 5281799, at *12 [WDNY Oct. 24, 2018], affd. 783 Fed Appx 97 [2d Cir 2019](emphasis in original); *see also Fappiano v. City of New York*, 640 F. App'x 115, 118 (2d Cir.) ("We have never held that anything less than an intentional *Brady* violation establishes a § 1983 due process claim for

Formatted: Font: (Default) Times New Roman

Formatted: Font: (Default) Times New Roman

Formatted: Font: (Default) Times New Roman

3.      Third, that the *cumulative* effect of the suppressed favorable evidence was "*material*" to Mr. Walker's criminal trial—meaning that the cumulative effect of the evidence suppressed undermines confidence in the outcome of the trial, based on the evidence that was actually presented at Mr. Walker's criminal trial.

Evidence is "exculpatory" if it tends to establish that the accused is not guilty of the crime or "casts serious doubt on their guilt." ~~Favorable evidence includes exculpatory evidence tending to show that someone other than the accused may have committed the crime.~~ Evidence is "impeaching" if it would have tended to make the jury at the 1977 criminal trial less likely to believe a witness who testified against the accused at the criminal trial. ~~Evidence may also be favorable to the defense if it would reasonably permit the defense to attack the reliability, carefulness, or good faith of the police investigation.[34]~~

~~The issue is not whether a document itself is entirely favorable to the defense—in other words that the document contains only favorable information—but whether a document contains some information that was favorable to the defense. In other words, the Plaintiff is not required to prove that every piece of information in a document is "favorable" to trigger a prosecutor's disclosure obligations.[5]~~

---

damages[ ]"), *cert. denied sub nom. Fappiano v. City of New York, N.Y.,* ⸺ U.S. ⸺, 137 S.Ct. 341, 196 L.Ed.2d 263 (2016).

[3] The County maintains its objection to including this language, as was set forth in the County's Response and Objections to Plaintiff's Supplemental Requests to Charge dated April 6, 2016, on the grounds Plaintiff's purported basis for including the same is limited to a citation to a case entirely inapposite and the reference to offering a witness devil's food cake cannot credibly "attack the reliability, carefulness, or good faith of the police investigation", at least as would have or should have been known to the Erie County District Attorney's Office.
[4] The County objects to using favorability and exculpatory interchangeably on the basis that it will confuse the jury.
[5] This paragraph is in conflict with the paragraph that follows below that begins with, "Further, the issue is not merely ___ ." The County objects on this basis and maintains the premise of this paragraph is sufficiently and more appropriately covered below.

> **Formatted:** Font: (Default) Times New Roman
> **Formatted:** Font: (Default) Times New Roman
> **Formatted:** Font: (Default) Times New Roman
> **Formatted:** Font: (Default) Times New Roman
> **Formatted:** Font: (Default) Times New Roman
> **Formatted:** Font: (Default) Times New Roman
> **Formatted:** Font: (Default) Times New Roman
> **Formatted:** Font: (Default) Times New Roman

~~When there is *any* interpretation of the evidence that could be deemed favorable to the~~ ~~defense, then it must be disclosed. A prosecutor's own assessment that certain evidence is not~~ ~~reliable does not negate the prosecutor's disclosure obligations.[6]~~ Furthermore, a defense attorney's knowledge of some impeachment information does not lessen the prosecutor's obligation to disclose other impeachment information not known to the defense.

"Suppression" of favorable evidence assesses whether the accused was reasonably able to make beneficial use of that information at trial. This may mean that information was not disclosed at all, or that the favorable information was disclosed too late for the accused to reasonably make beneficial use of that evidence at trial.

Further, the issue is not merely whether a document itself was disclosed to the defense, but whether favorable information contained therein was disclosed. For example, even if a specific document was not disclosed, if substantive information contained in that document was "in the purview" of Mr. Walker's defense by another means, such information would not be "suppressed." ~~Additionally, if a portion of the favorable information contained in a document is deemed~~ ~~disclosed, that, alone, would not permit you to find that all of the favorable information contained~~ ~~in that document was in fact disclosed.~~

If the evidence was merely speculative, cumulative or duplicative of other evidence available at trial, it does not qualify as *Brady* material.[7]

As of the time of Mr. Walker's 1977 criminal trial, the United States Supreme Court had ruled that prosecutors are obligated to turn over favorable evidence to the defense even without a specific request by the defense.

---

[6] The County objects to including this language on the grounds that no caselaw or authority has been provided to suggest this broad interpretation existed as of 1977.
[7] *Brady v. Maryland*, 373 U.S. 83, 87; *United States v. Agurs*, 427 U.S. 97 (1976).

In addition to proving evidence was favorable and suppressed, Plaintiff must also prove it was "material," meaning that the outcome of the trial in 1977 would have been different had the evidence been disclosed.[8]

You have heard some evidence about the criminal trials of Mr. Gibson, Mr. Boyd, and Mr. Martin—Mr. Walker's co-defendants. ~~As I mentioned though, materiality is assessed in light of the evidence adduced against Mr. Walker at his trial and is an objective test. Moreover, Mr. Walker does not have to prove that he would have been acquitted due to the cumulative effect of withheld favorable evidence, but rather must prove by a preponderance of the evidence that the cumulative effect of withheld favorable evidence undermines confidence in the outcome of his trial.[9]~~

## Summation Misconduct

To prove that Erie County Assistant District Attorney, David Henry, violated Mr. Walker's right to a fair trial through summation misconduct, Mr. Walker must prove that Mr. Henry's conduct during summation, also called closing argument, "caused substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process" by a preponderance of the evidence.

---

[8] Kyles v. Whitley, 514 U.S. 419, 434 (1995); United States v. Bagley, 473 U.S. 667, 682 (1985)

[9] The County objects to this proposed language on the grounds it is inconsistent with the authority cited in the preceding footnote, including *Kyles v. Whitley*, 514 U.S. 419, 433 (1995), which quoted *U.S. v. Bagley*, and reminded "favorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'") The proposed instruction constitutes a departure from this precedent and the County respectfully submits confuses the applicable standard.

In assessing whether summation misconduct caused 'substantial prejudice,' you must consider "the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct."

Prosecutors may fairly comment on the evidence introduced at trial and make argument in response to defense counsel's closing argument. However, prosecutors may not, for example, make false or misleading arguments, vouch for the credibility of witnesses, make inflammatory remarks, appeal to racial prejudice, or shift the burden of proof to the criminal defendant. If you find that Erie County Assistant District Attorney David Henry made one or more improper remarks during his summation in the Walker criminal trial, you must assess whether these remark(s) infected the trial with such unfairness to deprive Mr. Walker's due process right to a fair trial. ~~You may also consider whether any comments by the prosecutor in summation tended to exploit the withholding of favorable, withheld information.~~ [10] If you find that Mr. Henry made more than one improper remark during summation, you must consider the cumulative effect of these remarks on the fairness of the trial.

**Policy Evidence**

*If* you find that Mr. Walker's constitutional right or rights were violated, you must consider the cause of such violation or violations. Specifically, you must determine whether a municipal policy was the "moving force" behind the Erie County Assistant District Attorneys' violation or violations of Mr. Walker's constitutional rights.

A municipality such as the County of Erie may **not** be held liable for the actions of its employees simply because they are employed by the County. Rather, an official unconstitutional

---

[10] The County objects to including this language for the reasons set forth at Docket 357, including that proposes to charge the jury twice on an alleged *Brady* violation, impermissibly conflates a *Brady* violation with alleged summation misconduct and renders a *Monell* analysis untenable.

policy, practice, or custom of the Defendant must exist and be the moving force behind the Erie County Assistant District Attorneys' specific actions in this case to establish the County's liability to Mr. Walker.

To establish a claim against the County based on an unconstitutional policy, practice, or custom, Mr. Walker must prove that the County adopted such a policy through the deliberate choice or acquiescence of a policymaker on behalf of the municipality. A policymaker is an official or a body to whom the County has given final policymaking authority. The actions of that official of body represent a decision by the County itself, and the county is responsible for them.

I instruct you that the policymaker in this case is the Erie County District Attorney at the time of Mr. Walker's criminal investigation and prosecution – Mr. Edward Cosgrove.

Mr. Walker must prove by a preponderance of the evidence that each alleged violation of his constitutional rights was not an isolated incident but was part of a policy of the County of Erie specific to the type of violation. This means that you must analyze policies of the County of Erie separately with respect to <u>each</u> of the two types of Mr. Walker's alleged constitutional violations – *Brady* violation and summation misconduct.

A policy need not be in writing or be labeled a "policy." There need not be a formal statement of policy. A policy may be inferred from the informal acts or omissions of the District Attorney or his designees. This includes a situation where the District Attorney knew about the improper actions or failure to act by other prosecutors in the Ere County District Attorney's office by virtue of his position and allowed them to continue.

**Policies re. *Brady* Violation**

- 19 -

With respect to the Erie County Assistant District Attorneys' alleged *Brady* violation or violations, Mr. Walker ~~alleges there are~~advances three ~~kinds of municipal polic[11]ies~~theories that ~~caused such *Brady* violations~~he maintains supports municipal liability in his case. ~~If you find that the Erie County Assistant District Attorneys failed to disclose favorable, material evidence to Mr. Walker's defense, Mr. Walker need only prove one unconstitutional County policy caused such *Brady* violation by a preponderance of the evidence.[12]~~

First, Mr. Walker contends the Defendant had a persistent, widespread custom, or "pattern of conduct," of failing to disclose favorable, material evidence to criminal defendants. In order for conduct to be the result of a persistent, widespread custom or "pattern of conduct," Mr. Walker must establish that it involved a practice so persistent or widespread as to carry the force of law or that the misconduct of a subordinate agent or employee was so manifest as to imply the constructive acquiescence of senior policy-making officials that caused an alleged injury.[13]

In other words, Mr. Walker must prove that the violation of his federally protected rights was not an isolated incident but was part of a persistent, widespread practice of the County of Erie. Whether there was such a practice or custom is a question of fact for you, the jury, to determine. In making this determination, you may consider whether there is sufficient evidence to prove the existence of any alleged custom, the extent how long the alleged practice existed, the number and

---

[11] The County maintains Plaintiff has yet to identify a single policy, much less three, and objects to this language on that basis. To the extent the jury finds the existence of a custom, practice or policy in this case, the County reserves the right to seek special interrogatories in light of the various and vague theories pursued at trial, so as to determine under which theory or theories the jury reached its determination. Alternatively, the County would seek to revise the verdict sheet so as to ask the jury to reach a finding as to each alleged theory.

[12] The County objects to this language for the reasons set forth in the preceding footnote. The County additionally maintains its objection to the notion that Plaintiff can pursue a *Monell* claim grounded in a vague and general claim for a policy sounding in deliberate indifference to criminal defendant's rights to a fair trial under *Brady*, or to broad alleged *Brady* violations generally. The County maintains the arguments set forth in its Rule 50(a) motion, and particularly argues that the proof established at trial cannot establish notice to sustain a *Monell* claim generally.

[13] *Swinton v. Livingston Cnty.*, 2023 WL 2317838, *1 (2d Cir. 2023).

percentage of the County of Erie's officers engaged in the practice, and the similarity of the conduct engaged in by its employees.

You may infer that a custom existed in the Erie County District Attorney's Office even if Erie County did not formally approve such custom, so long as you conclude that the District Attorney knew of acts of misconduct and did not act to prevent them from continuing. This includes a situation where the District Attorney must have known about the actions or failure to act by other prosecutors in the Erie County District Attorney's Office by virtue of his position and allowed them to continue.

Alternately, Mr. Walker alleges that the Defendant had a policy of "deliberate indifference" towards criminal defendants' rights to a fair trial under *Brady* because, prior to June 1977, the policymaker was on sufficient notice of such repeated violations by Erie County Assistant District Attorneys and failed to discipline Erie County Assistant District Attorneys for these violations. Deliberate indifference is a mental state more blameworthy more than negligence - it is a state of mind that is the equivalent of criminal recklessness[14]. It is a conscious disregard on the part of the County for the known or obvious consequences of its actions in failing to discipline prosecutors when they violated the constitutional rights of criminal defendants by failing to disclose favorable, material evidence. The conduct must involve an act or a failure to act that shows a conscious disregard of a substantial risk of serious harm.[15]

As a third alternative, Mr. Walker alleges that the Defendant had a policy of "deliberate indifference" towards criminal defendants' rights to a fair trial under *Brady* because, prior to June 1977, the policymaker was on sufficient notice of such repeated violations Erie County Assistant District Attorneys and failed to train Erie County Assistant District Attorneys to prevent these

---

[14] *James v. County of Monroe*, 2022 WL 17155831 (W.D.N.Y. 2022).
[15] *Id.*

violations from continuing. Again, deliberate indifference is more than negligence. It is a conscious disregard on the part of the County for the known or obvious consequences of its actions in failing to <u>train</u> prosecutors when they violated the constitutional rights of criminal defendants by failing to disclose favorable, material evidence. <u>A failure to train theory requires that the plaintiff "identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation."[16]</u>

If you find that Mr. Walker has proven the existence of any of these ~~policies~~theories, you must determine whether such ~~policy or policies~~ directly caused a constitutional *Brady* violation or violations in Mr. Walker's case. Again, the Defendant's policy<u>, custom or practice</u> must be the "moving force" behind this specific type of violation of Mr. Walker's constitutional rights.

**~~Policies~~ Theories re. Summation Misconduct**

With respect to Mr. David Henry's alleged summation misconduct, Mr. Walker ~~alleges~~ <u>argues</u> there are <u>two</u> ~~types~~ <u>theories</u> of municipal ~~policies~~ <u>liability</u> that caused such summation misconduct. <u>If</u> you find that Mr. Henry violated Mr. Walker's constitutional rights through his summation, Mr. Walker need only prove that <u>one</u> ~~type of County policy~~<u>of the following</u> caused such summation violation by a preponderance of the evidence.

First, Mr. Walker contends the Defendant had a persistent, widespread custom, or "pattern of conduct," of engaging in summation misconduct that deprived criminal defendants of a right to a fair trial. <u>Again, in order for conduct to be the result of a persistent, widespread custom or "pattern of conduct," Mr. Walker must establish that it involved a practice so persistent or widespread as to carry the force of law or that the misconduct of a subordinate agent or employee</u>

---
[16] *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004) (internal citation and quotation marks omitted).

was so manifest as to imply the constructive acquiescence of senior policy-making officials that caused an alleged injury.[17]

In other words, Mr. Walker must prove that the violation of his federally protected rights was not an isolated incident but was part of a persistent, widespread practice of the County of Erie. Whether there was such a practice or custom is a question of fact for you, the jury, to determine. In making this determination, you may consider whether there is sufficient evidence to prove the existence of any alleged custom, the extent how long the alleged practice existed, the number and percentage of the County of Erie's officers engaged in the practice, and the similarity of the conduct engaged in by its employees.

You may infer that a custom existed in the Erie County District Attorney's Office even if Erie County did not formally approve such custom, so long as you conclude that the District Attorney knew of acts of misconduct and did not act to prevent them from continuing. This includes a situation where the District Attorney must have known about the actions or failure to act by other prosecutors in the Erie County District Attorney's Office by virtue of his position and allowed them to continue.

Alternately, Mr. Walker alleges that the Defendant had a policy of acted with "deliberate indifference" towards criminal defendants' rights to a fair trial because, prior to June 1977, the policymaker was on sufficient notice of repeated summation violations of Erie County Assistant District Attorneys and failed to discipline Erie County Assistant District Attorneys for these violations. Deliberate indifference is more than negligence. It is a mental state more blameworthy than negligence - it is a state of mind that is the equivalent of criminal recklessness. It is a conscious disregard on the part of the County for the known or obvious consequences of its actions in failing

---

[17] *Swinton v. Livingston Cnty.*, 2023 WL 2317838, *1 (2d Cir. 2023).

to discipline prosecutors when they violated the constitutional rights of criminal defendants by engaging in summation misconduct. ~~The conduct must involve an act or a failure to act that shows a conscious disregard of a substantial risk of serious harm.~~[18]

> **Formatted:** Font: 12 pt
>
> **Formatted:** Font: 12 pt
>
> **Formatted:** Font: 12 pt

If you find that Mr. Walker has proven the existence of either of these ~~policies~~theories, you must determine whether such ~~policy or policies~~ directly caused a constitutional summation violation in Mr. Walker's case. Again, the Defendant's policy, custom or practice must be the "moving force" behind this specific type of violation of Mr. Walker's constitutional rights.

III.    **Damages**

That concludes our discussion of the Plaintiff's causes of action. Now we will turn to the instruction on damages. Keep in mind, my charge to you on the law of damages must not be taken as a suggestion that you should find for the Plaintiff. It is for you to decide on the evidence presented and the rules of law I have given you whether the Plaintiff is entitled to recover from the Defendant. If you decide that the Plaintiff is not entitled to recover from the Defendant, you need not consider damages. Only if you decide that the Plaintiff is entitled to recover will you consider the measure of damages.

If you find that the Plaintiff is entitled to recover from the Defendant, you must render a verdict for a sum of money that will justly and fairly compensate the Plaintiff for all the losses resulting from any injury or injuries he sustained.

The purpose of the law of damages is to award, as far as possible, just and fair compensation for the loss, if any, which resulted from the Defendant's violation of Plaintiff's rights. If you find that the Defendant is liable, then you must award the Plaintiff sufficient damages

---

[18] *Id.*

to compensate him for any injury proximately caused by the Defendant's conduct.  Again, an injury is proximately caused by conduct when a reasonable person would regard it as a substantial factor in bringing about such injury.

Compensatory or actual damages seek to make a plaintiff whole – that is, to compensate him for the damage suffered.  Furthermore, compensatory damages are not limited merely to expenses that a plaintiff may have sustained.  A prevailing plaintiff is entitled to compensatory damages both for the physical injury and pain and suffering that he has suffered because of a defendant's conduct.

I remind you that you may award compensatory damages only for injuries that the Plaintiff proves were proximately caused by the Defendant's allegedly wrongful conduct.  The damages that you award must be fair and reasonable, neither inadequate nor excessive.  You should not award compensatory damages for speculative damages, but only for those injuries that the Plaintiff has actually suffered or which he is reasonably likely to suffer in the future.

In awarding compensatory damages, if you decide to award them, you must be guided by dispassionate common sense.  Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.  On the other hand, the law does not require a plaintiff to prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

With respect to Plaintiff's constitutional claim, if you return a verdict for the Plaintiff, but find that the Plaintiff has failed to prove by a preponderance of the evidence that he suffered any

- 25 -

compensatory damages, then you must return an award of damages in some nominal token amount, not to exceed the sum of one dollar.

Nominal damages must be awarded when a plaintiff has been deprived by a defendant of a constitutional right but has suffered no actual damage as a natural consequence of that deprivation. The mere fact that a constitutional deprivation occurred is an injury to the person entitled to enjoy that right, even when no actual damages flow from the deprivation. Therefore, if you find that the Plaintiff has suffered no injury as a result of the Defendant's conduct other than the fact of a constitutional deprivation, you must award nominal damages not to exceed one dollar.

You may also award nominal damages if, upon a finding that some injury resulted from a given unlawful act, you find that you are unable to compute monetary damages except by engaging in pure speculation and guessing. You may not award both nominal and compensatory damages to the Plaintiff; either he was measurably injured, in which case you must award compensatory damages, or else he was not, in which case you may award nominal damages. Nominal damages may not be awarded for more than a token sum.

I would note that if you do consider the last question in the Damages section of the Verdict Sheet that will be provided to you during your deliberations, you will be asked to assess whether the Buffalo Police Department, including its employees, Michael E. Guadagno, John Montondo, James E. Hunter, Robert Grabowski, Robert F. Arnet, Frank C. Deubell, Leo J. Donovan, Francis M. Manista, Jr., Paul R. Delano, caused or contributed to Mr. Walker's damages (collectively, the Buffalo Police Department) caused or contributed to Mr. Walker's alleged damages. Once you have considered all the facts and circumstances, you will be asked to apportion fault for the total damages that Mr. Walker suffered based on what you determine to be the relative culpable conduct fault, if any, of the County of Erie and the culpable conduct and of the Buffalo Police

Department.  In your verdict, you will state the percentage of fault, if any, of the County of Erie and the Buffalo Police Department, and the total of these percentages must add up to 100 percent.

## IV.    <u>Concluding Instructions</u>

I have now outlined for you the rules of law that apply to this case and the processes by which you weigh the evidence and decide the facts.  In a few minutes you will retire to the jury room for your deliberations.  In order for your deliberations to proceed in an orderly fashion, you must have a foreperson, but of course, their vote is entitled to no greater weight than that of any other juror.  Mr. Kugler, you are the foreperson.  Your responsibilities will be to make sure that everyone has an opportunity to participate during deliberations, to communicate with the Court if the jury has a question, to tell us when the jury has reached a verdict, and, of course, to announce the verdict.  If you need to communicate with me, that is, if you have a question or if you want to indicate that you have a verdict, you need to do so in writing and sign the note.

If, in the course of your deliberations, your recollection of any part of the testimony should fail, or you should have any question about my instructions to you on the law, you have the right to return to the courtroom for the purpose of having such testimony or instructions read to you.  A copy of my instructions is not sent back into the jury room.  However, with respect to reading back testimony, keep in mind that it takes just as long to read testimony back as it did for a witness to testify in the first instance.  For example, if it took a particular witness one hour to testify, then it will take approximately one hour to read that witness' testimony back.  Therefore, if you desire just a portion of the witness' testimony, please indicate that, or else the entire testimony, both direct and cross-examination, will be read.  Also, if you request testimony, certain things need to occur before it can be read back.  First, our court reporter, must find the requested testimony in her

- 27 -

notes.  Second, we must all reassemble here in court before the testimony can be read to you.  I'm telling you this not to discourage you from requesting that testimony be read back if you have a question, but rather to explain that it will take a period of time to comply with your request.

In deciding the case, you may consider only the exhibits which have been admitted into evidence, the testimony of the witnesses as you have heard such testimony in this courtroom, and any stipulations between the parties.  As to the exhibits that were received into evidence, they will be sent into the jury room.

Your verdict must represent the considered judgment of each juror.  In order to return a verdict, it is necessary that each juror agree.  Your verdict must be unanimous.

Additionally, to assist you during your final deliberations, I have prepared a "verdict sheet" which contains the list of questions that you will answer, after careful consideration of all the evidence in accordance with my instructions.  Each of the questions calls for a "yes or no" answer, or some numerical figure.  Please make sure you follow the directions indicated on the verdict sheet carefully and consistent with the instructions provided. And again, your verdict must be unanimous.

As I mentioned, this verdict sheet contains the list of questions that you will answer, after careful consideration of all the evidence in accordance with my instructions.  Do not assume from the questions or from their order what your answers should be.  That is, of course, for you to decide.  When you have all agreed upon an answer, there will be just one verdict sheet back with you in the jury deliberation room.  When you all agree on an answer, Mr. Kugler should record the answer in the space provided.  When you reach a verdict, merely indicate on a note that you have done so.  **<u>Do not include the verdict sheet with your note and do not indicate in any way what the verdict is</u>**.  Mr. Kugler should retain possession of the verdict sheet until the verdict has been

- 28 -

announced in court.

Ms. Popp will bring a copy of the verdict sheet to the jury room when you retire for your final deliberations.  If, at any time during your deliberations, you have any questions concerning your use of the verdict sheet and/or exhibit list, or any questions concerning any of my instructions, please feel free to send a note in writing, and we will respond as promptly as possible to your inquiry.  The note needs to be completed by Mr. Kugler, put in an envelope, sealed, and signed on the seal with the date and time of the note.

Members of the jury, please remember at all times that you are not advocates for one side or the other.  Rather, you are judges—judges of the facts.  Your sole interest is to seek the truth from the evidence in this case.  In reaching your verdict, you are not to be affected by sympathy, bias, or prejudice.  Nor must you let any personal feelings concerning the nature of the causes of action alleged interfere with your decision-making process.  Further, you must not be influenced by what you might believe the reaction to your verdict will be, whether it will please or displease anyone, be popular or unpopular, or indeed, any consideration outside the case as it has been presented to you in this courtroom.  You should consider only the evidence—both the testimony and exhibits, find the facts from what you consider to be the believable evidence, and apply the law as I have given it to you, to those facts.  Your verdict will be determined by the conclusions thus reached.

Also, keep in mind that your function to reach a decision based on the evidence and the law is a very important one.  When you are in the jury room, listen to each other, and discuss the evidence and issues in the case among yourselves.  It is the duty of each of you, as jurors, to consult with one another, and to deliberate with a view toward reaching agreement on a verdict, if you can do so without violating your individual judgment and your conscience.  While you should not

- 29 -

surrender honest convictions of what the truth is and of the weight and effect of the evidence, and while each of you must decide the case yourself and not merely consent to the decision of other members of the jury, you should examine the issues and the evidence before you with candor and frankness, and with proper respect and regard for the opinions of each other.

Additionally, if somebody needs to take a break during the deliberations—for instance, a bathroom break, that is fine, but deliberations must stop until the juror returns from the break. In other words, you may only deliberate when all jurors are present together.

Members of the jury, this case is obviously important to both the Plaintiff and to the Defendant. Therefore, they and I rely upon you to give full and conscientious attention and consideration to the issues and evidence before you. By doing so, you will carry out to the fullest your oaths as jurors to truly try the issues of this case and to render a true verdict.