UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
———————————————————

JOHN WALKER, JR.,

        Plaintiff,

   v.

CITY OF BUFFALO, et al.,

       Defendants.
———————————————————

Civil Action No. 22-cv-520

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT COUNTY OF ERIE'S  POST-TRIAL MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(a)

**LIPPES MATHIAS LLP**
Jennifer C. Persico, Esq.
Brian C. Mahoney, Esq.
James. P. Blenk, Esq.
Kirstie A. Means, Esq.
Thomas R. Southard, Esq.
*Attorneys for Defendant, County of Erie*
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
(716) 853-5100
jpersico@lippes.com
bmahoney@lippes.com
jblenk@lippes.com
kmeans@lippes.com
tsouthard@lippes.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

APPLICABLE STANDARD ........................................................................................... 1

POINT I:    THE JURY INSTRUCTIONS WERE ERRONEOUS AND DEPRIVED
             THE COUNTY OF A FAIR TRIAL .............................................................. 1

   A.    The *Monell* Charges were Erroneous .......................................................... 2

     a.    Plaintiff Conceded his Deliberate Indifference Claim Lacked Merit. ..................... 2

     b.    The Court Committed Error by Lessening the Burden to Establish *Monell* .............. 3

       1.    The Court's Characterization of a Monell Claim was Misleading and Incorrect. .. 4

   B.    The Court Erred in Charging the Jury on the issue of *Brady*. ......................... 6

   C.    The Court Erred in Charging the Jury with the Concept of a Tandem Violation. ........... 8

   D.    The Court Erred in Excluding an Instruction Relevant and Necessary to Plaintiff's
             Summation Misconduct Claim. ......................................................................... 9

   E.    The Court Erred in Charging the Jury as to the County's Apportionment Defense. .... 10

POINT II:    THE VERDICT SHEET WAS ERRONEOUS ...................................................... 13

   A.    The Liability Questions Failed to Resolve the Elements Under *Monell*. ................... 13

     a.    The Court Erred in Conflating the Elements to Establish *Monell* Liability. ............. 15

   B.    The Erroneous Jury Instructions on the County's Apportionment Defense were
             Compounded by the Verdict Sheet. ................................................................. 17

POINT III:  SIGNIFICANT EVIDENTIARY ERRORS WARRANT A NEW TRIAL ......... 17

   A.    The Court Erred in Admitting Certain *Monell* Evidence. ............................................ 18

     1.    Suppression. .............................................................................................. 21

     2.    Materiality. ................................................................................................. 24

     a.    The Gibson Transcript ................................................................................ 24

   B.    The Court's Rulings Relative to Party Admissions Were Inconsistent and Incorrect ... 28

   C.    The Court Erred in Rulings Central to Damages. .................................................. 30

     1.    Plaintiff's Pre-conviction Criminality ................................................................ 30

     2.    Plaintiff's Physical Injuries .......................................................................... 31

   D.    It was Error to Admit an Incomplete Record of the *Boyd* Summation. ...................... 33

   E.    The Court Erred in Permitting a Comparative Analysis from Mr. Hirsch. .................. 34

   F.    It was Error to Admit Misleading and Prejudicial Testimony of D.A. Cosgrove. ........ 35

POINT IV:  THE JURY'S FINDING OF *MONELL* LIABILITY WAS AGAINST THE WEIGHT OF THE EVIDENCE ......................................................................... 37

POINT V:  AT A MINIMUM, THE VERDICT SHOULD BE REDUCED .......................... 37

   A.  A Conditional Order of Remittitur Should Issue. ......................................... 37

   B.  The Award Should Be Offset by Walker's Settlement with the City Defendants. ........ 39

CONCLUSION ....................................................................................................................... 40

# TABLE OF AUTHORITIES

**CASES**                                                                Page(s)

*Ashley v. City of New York*,
    992 F.3d 128 (2d Cir. 2021) ................................................................ 2

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*,
    520 U.S. 397, 415 (1997) ................................................................ 16

*Bender v. City of New York*,
    78 F.3d 787 (2d Cir. 1996) ........................................11, 12, 13, 17, 40

*Bermudez v. City of New York*,
    790 F.3d 368 (2d Cir. 2015) ................................................................11

*Bernshtein v. City of New York*,
    496 F. App'x 140 (2d Cir. 2012) ....................................................... 15

*Bevevino v. Saydjari*,
    574 F.2d 676 (2d Cir. 1976) ................................................................ 1

*Brady v. Maryland*,
    373 U.S. 83 ([Year]) ........................................................................ 6

*Brinson v. Walker*,
    407 F. Supp. 2d 456 (W.D.N.Y. 2006) ............................................ 10

*Bromberg v. City of New York*,
    270 N.Y.S.2d 425 (1966) ................................................................ 32

*Burton v. City of New York*,
    630 F. Supp. 3d 586 (S.D.N.Y. 2022) ............................................. 31

*Carvel Corporation v. Diversified Management Group*,
    930 F.2d 228 (2d Cir. 1991) ............................................................. 2

*Cash v. Cnty. of Erie*,
    654 F.3d 324 (2d Cir. 2011) ...................................................... 13, 16

*City of Canton, Ohio v. Harris*,
    489 U.S. 378 (1989) .......................................................................... 5

*City of Oklahoma City v. Tuttle*,
    471 U.S. 808 (1985) ........................................................................ 16

*Darnell v. Pineiro*,
   849 F.3d 17 (2d Cir. 2017) ............................................................................ 7

*Fappiano v. City of New York*,
   640 F. App'x 115 (2d Cir. 2016) .................................................................... 8

*Farrior v. Waterford Bd. of Educ.*,
   277 F.3d 633 (2d Cir. 2002) ........................................................................ 37

*Graham v. City of New York*,
   128 F. Supp. 3d 681 (E.D.N.Y. 2015) .......................................................... 17

*Harris v. Kuba*,
   486 F.3d 1010 (7th Cir. 2007) ..................................................................... 24

*Helfrich v. Lakeside Park Police Dep't*,
   497 F. App'x 500 (6th Cir. 2012) ................................................................. 30

*Layton v. Phillips*,
   340 F. App'x 687 (2d Cir. 2009) .................................................................. 21

*Lee v. Bennett*,
   927 F. Supp. 97 (S.D.N.Y. 1996) ................................................................. 32

*Leka v. Portuondo*,
   257 F.3d 89 (2d Cir. 2001) .......................................................................... 27

*Limone v. United States*,
   579 F.3d 79 (1st Cir. 2009) .......................................................................... 38

*Moll v. Telesector Res. Grp., Inc.*,
   94 F.4th 218 (2d Cir. 2024) ......................................................................... 29

*Monell v. Department of Social Services*,
   436 U.S. 658 (1978) ................................................................................. 5, 13

*Newton v. City of New York*,
   171 F. Supp. 3d 156 (S.D.N.Y. 2016) ..................................................... 31, 38

*Nnodimele v. Derienzo*,
   2016 WL 3561708 (E.D.N.Y. June 27, 2016 2016) ...................................... 27

*Orena v. U.S.*,
   956 F. Supp. 1071 (E.D.N.Y. 1997) ............................................................. 22

*Parsons v. United States*,
    919 F. Supp. 86 (N.D.N.Y. 1996)...................................................................... 23

*Pembaur, 475 U.S. v. Williams*,
    529 F. Supp. 1085 (E.D.N.Y., 1981) ................................................................. 16

*People v. Boyd*,
    84 A.D.2d 689 (1981) ........................................................................................ 33

*Pike Co., Inc. v. Universal Concrete Products, Inc.*,
    665 F. Supp. 3d 365 (W.D.N.Y. 2023) .............................................................. 38

*Raedle v. Credit Agricole Indosuez*,
    670 F.3d 411 (2d Cir. 2012) ................................................................................ 1

*Restivo v. Hessemann*,
    846 F.3d 547 (2d Cir. 2017) ........................................................... 2, 10, 12, 39

*Reynolds v. Giuliani*,
    506 F.3d 183 (2d Cir. 2007) .............................................................................. 20

*Roe v. City of Waterbury*,
    542 F.3d 31 (2d Cir. 2008) ................................................................................ 13

*Saxon v. Ercole*,
    2008 WL 3446480 (S.D.N.Y. Aug. 12, 2008 2008) .......................................... 26

*Sepulveda v. City of Doral*,
    2022 WL 19406445 (S.D. Fla. Aug. 29, 2022 2022) ......................................... 31

*Singer v. Olympia Brewing Co.*,
    878 F.2d 596 (2d Cir. 1989) .............................................................................. 39

*Smith v. Lightning Bolt Prods., Inc.*,
    861 F.2d 363 (2d Cir. 1988) ................................................................................ 1

*Sorlucco v. New York City Police Dep't*,
    971 F.2d 864 (2d Cir. 1992) .............................................................................. 20

*Tangreti v. Bachmann*,
    983 F.3d 609 (2d Cir. 2020) ................................................................................ 5

*Tankleff v. Senkowski*,
    135 F.3d 235 (2d Cir. 1998) ................................................................................ 7

*Tesser v. Bd. of Educ. of City Sch. Dist. of City of New York*,
    190 F. Supp. 2d 430 (E.D.N.Y. 2002) ............................................................. 1

*United States v. Agurs*,
    427 U.S. 112 (emphasis added) ......................................................... 6, 24

*United States v. Barcelo*,
    628 F. App'x 36 (2d Cir. 2015) ................................................................ 22

*United States v. Brown*,
    2020 WL 2028538 (W.D.N.Y. Apr. 28, 2020 2020) ................................... 6

*United States v. Dukagjini*,
    326 F.3d 45 (2d Cir. 2003) ............................................................... 17, 18

*United States v. Helmsley*,
    985 F.2d 1202 (2d Cir. 1993) ................................................................... 7

*United States v. Larson*,
    567 F. Supp. 500 (S.D.N.Y. 1983) ......................................................... 21

*United States v. McKeon*,
    738 F.2d 26 (2d Cir. 1984) ..................................................................... 29

*United States v. Mejia*,
    545 F.3d 179 (2d Cir. 2008) ................................................................... 35

*United States v. Morales*,
    916 F. Supp. 336 (S.D.N.Y. 1996) ......................................................... 22

*United States v. Pelullo*,
    6 F. Supp. 2d 403 (E.D. Pa. 1998) ......................................................... 26

*United States v. Perez*,
    144 F.3d 204 (2d Cir. 1998) ..................................................................... 9

*United States v. Perry*,
    643 F.2d 38 (2d Cir. 1981) ....................................................................... 9

*United States v. Rivera*,
    971 F.2d 876 (2d Cir. 1992) ..................................................................... 9

*United States v. Robinson*,
    485 U.S. 25 (1988) ................................................................................... 9

*United States v. Rodriguez*,
    651 F. App'x 44 (2d Cir. 2016) ........................................................ 35

*United States v. Savoca*,
    151 Fed. Appx. 28 (2d Cir. 2005) .................................................... 30

*United States v. Sessa*,
    2011 WL 256330 (E.D.N.Y. Jan. 25, 2011 2011) ............................ 22

*United States v. Young*,
    470 U.S. 1 (1985) ............................................................................ 10

*Valentin v. City of Rochester*,
    783 F. App'x 97 (2d Cir. 2019) ........................................................ 7

*Vippolis v. Village of Haverstraw*,
    768 F.2d 40 (2d Cir. 1985) ........................................................ 15, 16

*Walker v. City of New York*,
    974 F.2d 293 (2d Cir. 1992) ............................................................. 5

*Welch v. UPS*,
    871 F. Supp. 2d 164 (E.D.N.Y. 2012) ........................................... 1, 17

*Williams v. United States*,
    503 F.2d 995 (2d Cir. 1974) ........................................................... 22

**FEDERAL RULES**

Fed. R. Civ. P. 50 ................................................................... 4, 18, 37, 40
Fed. R. Civ. P. 59 ........................................................................... 1, 37
Fed. R. Evid. 106 ........................................................................... 28, 29
Fed. R. Evid. 403 ........................................................................... 28, 32
Fed. R. Evid. 602 ............................................................................... 28
Fed. R. Evid. 701 ............................................................................... 32
Fed. R. Evid. 702 ........................................................................... 28, 32
Fed. R. Evid. 703 ............................................................................... 35
Fed. R. Evid. 802 ............................................................................... 28

Defendant County of Erie (the "County") respectfully submits this memorandum of law in support of its motion pursuant to Federal Rules of Civil Procedure 59(a) for a new trial, or in the alternative, a conditional order of remittitur.

## APPLICABLE STANDARD

"A motion for a new trial, pursuant to Rule 59, may be granted when the district court is 'convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" *Tesser v. Bd. of Educ. of City Sch. Dist. of City of New York*, 190 F. Supp. 2d 430, 440 (E.D.N.Y. 2002) (quoting *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 370 (2d Cir. 1988)).

"The general grounds for a new trial are that (1) the verdict is against the clear weight of the evidence; (2) the trial court was not fair; (3) substantial errors occurred in the admission or rejection of evidence or the giving or refusal of instructions to the jury; or (4) damages are excessive." *Welch v. UPS*, 871 F. Supp. 2d 164, 174 (E.D.N.Y. 2012). The Court "may weigh the evidence [itself] and need not view the evidence in the light most favorable to the verdict winner." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012). Further, the Court may grant a new trial "even if there is substantial evidence to support the verdict." *Bevevino v. Saydjari*, 574 F.2d 676, 683 (2d Cir. 1976).

The County respectfully argues that various substantial errors preceded and permeated the trial, requiring a new trial on independent grounds and certainly when considered collectively. These issues are each addressed below and include: (i) errors in the jury instructions and verdict sheet, (ii) evidentiary errors, (iii) unbalanced rulings, and (iv) excessive damages.

## POINT I:     THE JURY INSTRUCTIONS WERE ERRONEOUS AND DEPRIVED THE COUNTY OF A FAIR TRIAL

"[A] new trial is properly granted where taken as a whole, the jury instructions gave a misleading impression or inadequate understanding of the law, especially where the lack of

instruction undoubtedly left the jury confused about a potentially dispositive issue in the case." *Restivo v. Hessemann*, 846 F.3d 547, 572 (2d Cir. 2017) (citations and quotation marks omitted) (affirming grant of new trial); *see also Carvel Corporation v. Diversified Management Group*, 930 F.2d 228, 232 (2d Cir. 1991) (granting new trial where jury instructions were misleading).  Where the challenging party objects to the charge at trial, it is subject to review *de novo*.  *Ashley v. City of New York*, 992 F.3d 128, 142 (2d Cir. 2021).  In the absence of an objection at trial, it is reviewed for plain error, and a new trial warranted only where the charge "contravenes an established rule of law and goes to the very essence of the case." *Id.* (cleaned up and citations omitted).

Here, because the Court's final jury instructions (*see* Dkt. 363 at 2750:10-2792:14) ("Jury Instructions") were unreasonably favorable to Plaintiff and rife with errors unduly prejudicial to the County, a new trial is warranted.

### A.  The *Monell* Charges were Erroneous

The Jury Instructions regarding Plaintiff's *Monell* claim materially misstated the applicable law, lessened Plaintiff's burden, were generally confusing and inconsistent with the Court's final verdict sheet (Dkt. 366) ("Verdict Sheet").  Most significantly, they essentially *required* the jury to return a verdict in Plaintiff's favor.

#### a.  Plaintiff Conceded his Deliberate Indifference Claim Lacked Merit.

The Court's initial draft of its Jury Instructions included three (3) alleged *Monell* theories relative to Plaintiff's *Brady* claim, and two (2) relative to summation misconduct.  (*See* Ex.[1] C at 37-42).[2]  During the final charge conference, Plaintiff finally articulated the theory he believed the

---

[1] Exhibits referred to herein as "Ex." correspond with those attached to the accompanying attorney declaration filed in support of the County's post-trial motions.
[2] The Court sent its Final Jury Instructions and Special Verdict Sheet via email on April 6, 2025 at 6:21 p.m.  *See* Ex. C.  The charge conference went forward the following morning.  *See generally*

proof supported, *i.e.* a *de facto* or widespread custom or practice, and initially proposed abandoning a charge relative to deliberate indifference altogether. (*See* Dkt. 382 at 2605:4-2606:3). Ultimately, however, Plaintiff insisted to include a charge dependent on that theory, in support of an alleged failure to discipline claim. (*See* Dkt. 382 at 2609:12-21; 2611:20-23).

Plaintiff's concession to abandon a theory of liability dependent on deliberate indifference demonstrates the County's Rule 50(a) motion should have been granted on that theory, and short of that, permitting instructions on that theory to go to the jury in the face of that concession was erroneous, confusing and misleading. This is particularly so considering the instructions provided on the issue of deliberate indifference were deficient, and because the jury was not asked to make distinct findings relative to whether they found a *de facto* custom or practice, or a finding of deliberate indifference due to failure to discipline.

     b. <u>The Court Committed Error by Lessening the Burden to Establish *Monell*</u>

The Court supplied the jury little to no instruction on how to determine the existence of a "persistent or widespread practice or custom." (*See generally* Dkt. 363 at 2778-2779).

In effect, and particularly when viewed in conjunction with Questions 2 and 4 on the Verdict Sheet, which presumed the existence of such a policy, and the errors outlined below, the Jury Instructions failed to guide the jury on the showing required under *Monell* and supplied inadequate guidance to evaluate the existence of any persistent or widespread practice or custom.

The inadequacy of instruction on this concept was only further heightened by the fact Plaintiff relied on an entirely vague (and the County maintains insufficient (*see* Dkt. 382 at 2606:5-14)) alleged custom or practice characterized by the Court of "failing to disclose favorable,

---

Dkt. 382 at 2587-2633. In the lead up to that conference, the County emailed objections and requested edits to the Final Jury Instructions and Verdict Sheet. *See* Ex. D; *see also* Dkt. 359.

material evidence to criminal defendants." For the reasons set forth in the County's motion pursuant to Fed. R. Civ. P. 50(b), that contention is too vague to sustain a *Monell* claim, unsupported by Plaintiff's purported *Monell* evidence, and at best, amounts to an inadequate instruction on the relevant law, warranting a new trial.

The Court eschewed the County's request to include the following instruction on what constitutes a persistent, widespread custom or "pattern of conduct"

> Mr. Walker must establish that it involved a practice so persistent or widespread as to carry the force of law or that the misconduct of a subordinate agent or employee was so manifest as to imply the constructive acquiescence of senior policy-making officials that caused an alleged injury.

> In other words, Mr. Walker must prove that the violation of his federally protected rights was not an isolated incident but was part of a persistent, widespread practice of the County of Erie. Whether there was such a practice or custom is a question of fact for you, the jury, to determine. In making this determination, you may consider whether there is sufficient evidence to prove the existence of any alleged custom, the extent how long the alleged practice existed, the number and percentage of the County of Erie's officers engaged in the practice, and the similarity of the conduct engaged in by its employees.

(*See* Dkt. 359 at 19-20 (citing *Swinton v. Livingston Cnty.*, 2023 WL 2317838, *1 (2d Cir. 2023); *see also* Dkt. 382 at 2614:24-2616:23).

### 1. *The Court's Characterization of a Monell Claim was Misleading and Incorrect.*

From the outset, the Court's instructions on *Monell* were erroneous. The Court described a *Monell* claim as follows: "This Section 1983 claim in this case is called a *Monell* claim which simply means that the person the plaintiff is attempting to hold liable is a municipality." (*See* Tr. 2769). This is not only insufficient to describe the nature of a *Monell* claim (*see* Dkt. 359 at 13, n.1), but it is misleading and confusing. More specifically, by charging the jury with the idea that a *Monell* claim simply means the plaintiff is attempting to hold the County liable, the Court

impermissibly lessened the requisite standard by suggesting Walker could establish liability against the County simply by establishing an underlying constitutional violation.

In general, the Jury Instructions conflated the concepts of *Monell* with *respondent superior* liability, suggesting, if not explicitly instructing, *Monell* liability could be predicated on the latter:

> You may infer that a practice or custom existed in the Erie County District Attorney's Office even if Erie County did not formally approve such custom, so long as you conclude that the District Attorney knew of acts of misconduct and did not act to prevent them from continuing.
>
> This includes a situation where the District Attorney must have known about the actions or failure to act by other prosecutors in the Erie County District Attorney's Office **by virtue of his position** and allowed them to continue.

(*See* Dkt. 363 at 2779 (emphasis added)).

This language improperly allowed the jury to impose *Monell* liability based on *respondeat superior*—an approach explicitly rejected by the Supreme Court in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and reaffirmed by the Second Circuit in *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992) and *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). The instruction as given relieved Walker of his burden under *Monell*, improperly permitted the jury to presume that the policymaker (District Attorney) had the requisite knowledge despite the lack of evidentiary support which fatally infected the *Monell* verdict. Consequently, it constitutes plain error, warranting a new trial.

In *City of Canton, Ohio v. Harris*, 489 U.S. 378, 383 (1989), the Supreme Court granted certiorari, after the Sixth Circuit granted a new trial upon finding that "certain aspects of the District Court's jury instructions might have led the jury to believe that it could find against the city on a mere respondeat superior theory" and [b]ecause the jury's verdict did not state the basis on which it had ruled for [the respondent] on her § 1983 claim." *Id.* Because similar errors

permeate this trial, the County respectfully submits a new trial is likewise warranted.

**B.** **The Court Erred in Charging the Jury on the issue of *Brady*.**

The Jury Instructions provided misleading and inaccurate standards relative to establishing a *Brady* violation in the context of a §1983 claim.

The Court denied the County's request to correct the error made by conflating the terms exculpatory and favorability and instead instructed the jury as to a standard applicable in a motion to vacate a conviction in a criminal case.   (Dkt. 359 at 15, n.4; *see also* Dkt. 382 at 2597).  The Jury Instructions further err because they imposed upon ECDA prosecutors obligations that did not exist in 1977, and the County submits do not exist under present authority.

First, the Jury Instructions impermissibly broadened a prosecutor's disclosure obligations, imposing upon them, among other things, an obligation suggestive of retroactive analysis:

> When there is any interpretation of the evidence that could be deemed favorable to the defense, then it must be disclosed.  A prosecutor's own assessment that certain evidence is not reliable does not negate the prosecutor's disclosure obligations.

(*See* Dkt. 359 at 16, n. 6; *see also* Dkt. 382 at 2599).

Second, and somewhat relatedly, the Jury Instructions failed to account for the reality that certain information and documents, such as publicly filed documents and cumulative impeachment evidence, do not qualify as *Brady* material.  *See, e.g., United States v. Brown*, 2020 WL 2028538, at *7 (W.D.N.Y. Apr. 28, 2020) (recognizing publicly filed documents do not qualify as *Brady* material).  To this point, the Court erred in omitting language consistent with controlling precedent, that is, "if evidence was merely speculative, cumulative or duplicative of other evidence available at trial, it does not qualify as *Brady* material."  (*See* Dkt. 359 at 16, n. 7; Dkt. 382 at 2598).  The County maintains such language was and is appropriate and consistent with *Brady v. Maryland*, 373 U.S. 83, 87 ([Year]) and *United States v. Agurs*, 427 U.S. 97 (1976), as confirmed by various

6

other cases, including *Tankleff v. Senkowski*, 135 F.3d 235, 251 (2d Cir. 1998) ("When a witness's credibility has already been substantially called into question in the same respects by other evidence, additional impeachment evidence will generally be immaterial and will not provide the basis for a *Brady* claim."); *United States v. Helmsley*, 985 F.2d 1202, 1210 (2d Cir. 1993) (rejecting cumulative undisclosed impeachment evidence as immaterial under *Brady*).

Third, despite including supplemental information on the terms favorability and suppression at Plaintiff's request, the Court denied the County's request to include additional instruction on the issue of materiality.  (*See* Dkt. 382 at 2599:7-22).  It was error to omit further instruction on materiality as a general matter, and given the confusion and inaccuracies inherent in the Court's instructions on favorability and suppression, the import of that omission was significant. It was confusing and inconsistent to supply additional instructions on favorability and suppression, but nothing further on the issue of materiality.

Fourth, the Court erred in denying an instruction relative to the element of intentionally in order to sustain Plaintiff's *Brady* claim. (*See* Dkt. 382 at 2596:4-2597:4; *see also* Dkt. 359 at 14, n2).  In *Valentin v. City of Rochester*, 783 F. App'x 97, 99–100 (2d Cir. 2019), the Second Circuit, in addressing a similar argument advanced by Plaintiff at trial, stated as follows:

> As to Valentin's argument that a civil *Brady* claim does not require a showing of intentional misconduct, our precedent has suggested, if not conclusively decided, the contrary . . . Valentin cites no case law in this Circuit holding that defendants could be liable for money damages under § 1983 for violating *Brady*, absent intentional misconduct.

*Id.*  Just like *Valentin*, here, neither Plaintiff nor the Court cited anything to suggest a showing of intentionality is not required to sustain a civil *Brady* claim, and the County thus maintains the Court's refusal to charge the jury consistent with controlling Second Circuit precedent was error. *See Darnell v. Pineiro*, 849 F.3d 17, 36 (2d Cir. 2017) (holding § 1983 claims require proof of

"*mens rea* greater than mere negligence"); *see also Fappiano v. City of New York*, 640 F. App'x 115, 118 (2d Cir. 2016) ("We have never held that anything less than an intentional *Brady* violation establishes a § 1983 due process claim for damages.").

For all the foregoing reasons, the instructions relative to Plaintiff's alleged *Brady* violation were erroneous and departed from controlling precedent.

### C.  <u>The Court Erred in Charging the Jury with the Concept of a Tandem Violation.</u>

The Court materially erred in conflating the concepts of Plaintiff's alleged *Brady* and summation misconduct claims.  Conflating these alleged violations renders any *Monell* analysis untenable (Dkt. 359 at 18, n.10), which the Court and Plaintiff agreed to some degree insofar as the Verdict Sheet was concerned (*see* Dkt. 382 at 2601:9-13; *see also* Ex. B at April 4, 2025 Email from Joel Rudin acknowledging *Fraser* did not apply and proposing to supply new verdict sheet) but nevertheless proceeded to charge the jury to consider allegedly withheld *Brady* evidence in conjunction with its consideration of summation conduct, despite objection that doing so was inconsistent with that earlier ruling and the Verdict Sheet.  (*See id.* at 2603:3-9) ("You may also consider whether any comments by the prosecutor in summation tended to exploit the withholding of favorable withheld information.") (*See id.* at 2776:11-13).

Beyond that, assuming *arguendo*, Plaintiff's argument that *Brady* violations and summation violations could work hand-in-hand, there was indisputably <u>**no**</u> *Monell* evidence supporting that the County had undertaken this conduct in tandem at any point.  In the absence of such evidence, instructing the jury to nevertheless consider the violations poisoned both the jury's consideration of summation misconduct and the jury's determination of *Monell* liability.  There is no adequate remedy at this time short of a new trial.

**D.** **The Court Erred in Excluding an Instruction Relevant and Necessary to Plaintiff's Summation Misconduct Claim.**

The Court additionally erred in denying the County's request for a curative following remarks made in Plaintiff's summation. Specifically, when comparing the summations delivered by the prosecution and the defense in Walker's underlying trial, Mr. Firsenbaum argued: "There is no constitutional defense that two wrongs make a right." (*See* Dkt. 363 at 2718:19-20).

Contrary to Mr. Firsenbaum's suggestion, the Second Circuit has consistently recognized "the possibility that defense argument may, in a proper case, 'open the door' to otherwise inadmissible prosecution rebuttal." *See United States v. Rivera*, 971 F.2d 876, 883 (2d Cir. 1992) (recognizing that in in *United States v. Robinson*, 485 U.S. 25 (1988), "the Court deemed appropriate an otherwise impermissible prosecution comment upon the defendant's failure to testify in view of the defense's closing argument that the government had not allowed the defendant to explain his side of the case"); *see also United States v. Perez*, 144 F.3d 204, 210 (2d Cir. 1998) ("Prosecutors have greater leeway in commenting on the credibility of their witnesses when the defense has attacked that credibility.") (citing *United States v. Perry*, 643 F.2d 38, 51 (2d Cir. 1981) ("[I]n light of the fact that the defense lawyers attacked the credibility and honesty of the Government's case in their closings, the Government's statements vouching for witnesses were understandable if not laudable.").

Consistent with the foregoing, and given Plaintiff's counsel's departure therefrom, the County sought a curative to instruct the jury that prosecution arguments that are framed and responsive to defense counsel's arguments, even when those go somewhat outside the ordinary bounds, is an appropriate and necessary consideration when evaluating a prosecutor's conduct. (*See* Dkt. 363 at 2748-2749). The Court immediately denied the County's request, without any objection or argument even attempted by Plaintiff. (*See id.*).

9

The County respectfully submits the same was prejudicial error and deprived the jury of assessing the summation misconduct under applicable law. *See Brinson v. Walker*, 407 F. Supp. 2d 456, 472 (W.D.N.Y. 2006), *aff'd,* 547 F.3d 387 (2d Cir. 2008) ("The Supreme Court has recognized the so-called 'invited response' rule-that in properly assessing a claim of prosecutorial misconduct, 'the reviewing court **must** not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo.'") (quoting *United States v. Young*, 470 U.S. 1, 12–13 (1985) (emphasis added).

**E.** **The Court Erred in Charging the Jury as to the County's Apportionment Defense.**

The Court erred in adopting Plaintiff's belated and unfounded objection relative to the County's apportionment defense and corresponding proposed charges and verdict sheet questions, resulting in a flawed and improper charge to the jury.

On the morning of the charge conference, Plaintiff successfully derailed the County's apportionment defense. Pursuant to an email sent that morning, Plaintiff raised an objection citing *dicta* from *Restivo*, 846 F.3d at 586, a case previously addressed in the underlying briefing and the Court's decision relative to granting the County's cross-motion (*see* Dkt. 217) to suggest an additional charge was necessary on the issue of apportionment. (*See* Ex. E at Email dated April 7, 2025 from Spencer Durland, Esq.). While the County does not believe *Restivo* supported Plaintiff's ask, it nevertheless noted it would consider further clarifying language to address Plaintiff's concern. (*See* Dkt. 382 at 2589:21-23). Plaintiff's counsel responded they had no language in mind. (*See id.* at 2590:4).

Counsel and the Court thereafter discussed the relevant charge, and the County proposed language capturing the elements to sustain a claim for fabrication of evidence. (*See* Ex. E Email dated April 7, 2025 from Kirstie A. Means, Esq.; *see also* Dkt. 382 at 2626-2628). Plaintiff's

response to the County's proposal again shifted, with Plaintiff now proposing additional language stating that the fabrication defense would not apply if a prosecutor was aware of the fabrication and made an independent decision to use the fabricated evidence.  (*See* Dkt. 382 at 2627:19-26281).  Over the County's objection, the Court immediately granted Plaintiff's request to add additional language. (*See* Dkt. 382 at 2630:23-2631:2; *see also* Dkt. 363 at 2792:20-2793:1 (reiterating exception to the Court's ruling on the additional language and maintaining the County's objections to the Jury Instructions filed at Dkt. 359)).  As a consequence, the Court encouraged the jury to refrain from apportioning fault even if it found (consistent with Plaintiff's theory) that the police fabricated evidence based on the superseding cause doctrine.

As a preliminary matter, the superseding cause doctrine has a tenuous application to a prosecutor's use of fabricated evidence.  *Bermudez v. City of New York*, 790 F.3d 368, 375 (2d Cir. 2015) ("Even if it is undisputed that ADA Rodriguez independently decided to present the witness evidence at trial, Bermudez can still pursue a claim against the investigating officers for depriving him of due process rights if the ADA was not informed of constitutional errors in how the witness evidence was obtained.")

Further, there was no evidence that Henry – the prosecutor in Walker's trial – was aware of the circumstances surrounding the alleged fabrication.

Finally, the carveout adopted by the Court permitted Plaintiff to evade the double recovery rule,[3] suggesting to the jury it need not consider the City Defendants' potential fault, even if it found it rose to the level of fabrication of evidence, if it determined the prosecutor was aware.  *See Bender v. City of New York*, 78 F.3d 787, 794 (2d Cir. 1996) ("If two causes of action provide a

---

[3] Plaintiff referenced the idea of "pleading in the alternative," conflating or overlooking that that concept is distinct from ***recovering*** in the alternative, which he cannot do.  (*See* Dkt. 381 at 2401:19-22).

legal theory for compensating one injury, only one recovery may be obtained."); *see also Restivo*, 846 F.3d at 584 (analyzing the concept of double recovery but finding it inapplicable based on the specific facts of that case).

In general, the superseding cause concept had no applicability to the posture and context of this trial and no relevance to the County's affirmative defense seeking to offset a damages verdict for overlapping damages originally pursued against a settling defendant. Instead, it rendered the charge hollow and invited duplicative damages.

In the precise context of Section 1983 cases, the Second Circuit has made clear that "where, as here, the injuries from the various claims are substantially overlapping, the omission of any instruction to avoid totally or partially overlapping awards risked, if not invited, duplication." *See Bender*, 78 F.3d at 794. Here, the jury was precluded from discovering the City Defendants were ever a party, much less that Plaintiff already recovered for his injuries, and received no instruction whatsoever to even contemplate the concept of the potential for overlapping damages. Relatedly, the jury was precluded from reasonably apportioning the potential fault of the City Defendants, presented instead with a confusing and unfounded charge that suggested they bear no fault in the event the prosecution was "aware of the alleged fabrication of evidence or the circumstances that gave rise to the alleged fabrication of evidence." (*See* Dkt. 363 at 2786:4-10).

In this respect, the apportionment charge and verdict sheet questions were circular with no way of ever ascertaining whether the jury ascribed fault to the City Defendants. The lack of any such finding is generally against the weight of the evidence, including expert testimony proffered by Alan Hirsch concerning the alleged coercive tactics employed by the City Defendants. (*See* Dkt. 326 at 65:8-11; Dkt. 321 at 735:8-799:13; Dkt. 363 at 2691:11-20; Dkt. 363 at 2699:14-17).

More fundamentally, because the charge "risked, if not invited, duplication", it constitutes

clear error.  *See Bender*, 78 F.3d at 794–795 (deeming the award plain error, "especially since it so likely results from impermissible duplication").  As a result, the verdict cannot stand.

## POINT II:     THE VERDICT SHEET WAS ERRONEOUS

"The formulation of special verdict questions rests in the sound discretion of the trial judge, and will warrant reversal only if the questions mislead or confuse the jury, or inaccurately frame the issues to be resolved."  *Cash v. Cnty. of Erie*, 654 F.3d 324, 340–42 (2d Cir. 2011) (internal citations omitted).  In assessing the potential for error, the verdict sheet is to be read in conjunction with the relevant jury charges.  *Id.*

Plaintiff's lawsuit, though predicated on dual alleged constitutional violations, consisted of a single claim against the County pursuant to Section 1983, which required that Walker prove: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978)).

The Court's verdict sheet endeavored to resolve Plaintiff's claim, as well as the County's apportionment defense, through two sections: (i) liability and (ii) damages.  The County takes issue with and respectfully submits that questions in each section misled or confused the jury and/or inaccurately framed the issues to be resolved, rendering the verdict invalid.

### A.  **The Liability Questions Failed to Resolve the Elements Under *Monell*.**

The Verdict Sheet asked the jury to resolve the issue of liability with two questions relative to each of Plaintiff's alleged constitutional violations:

> *1.  Do you find that the Plaintiff has demonstrated by a preponderance of the evidence that prosecutors at the Erie County District Attorney's Office violated Mr. Walker's constitutional right to a fair criminal trial in 1977 due to the*

*failure to disclose material exculpatory and/or impeachment
(Brady) evidence?*

2. *Do you find that the Plaintiff has demonstrated by a
preponderance of the evidence that a policy, custom or practice
of the Erie County District Attorney's Office, as attributed to the
County of Erie, caused the violation of Mr. Walker's
constitutional right to a fair criminal trial in 1977 due to the
failure to disclose material exculpatory and/or impeachment
(Brady) evidence?*

(*See* Dkt. 366 at 1).

As reflected above, the first question asked whether Plaintiff proved a constitutional

violation, and the second, whether a policy of the ECDA caused the alleged *Brady* violation.  This

same format was repeated relative to Plaintiff's alleged *Monell* claim predicated on a constitutional

violation for alleged summation misconduct.  (*See id.* at 2).

Over the County's objections, the Court did not include jury questions necessary to resolve

the specific elements of *Monell* liability based upon a widespread custom or practice.[4]  The lack

of specific questions regarding the distinct elements of a *Monell* claim precludes any meaningful

analysis of whether the jury based its findings on a policy or a widespread custom or practice.  This

is significant because a finding based upon the former would automatically render the verdict

against the weight of the evidence (there was none), but that determination can never be made.

More fundamentally, the Verdict Sheet conflated distinct elements thus effectively

presuming the existence of a policy, custom or practice.  Because these errors constitute an

inadequate framing of controlling law a new trial is warranted.

---

[4] As an initial matter, because there was no evidence of an actual policy adduced at trial, the inclusion of
"policy" in the questions invited the jury to make a finding completely unsupported by any evidence.

a. <u>The Court Erred in Conflating the Elements to Establish *Monell* Liability.</u>

As a threshold matter, the jury was not tasked, over the County's request (*see* Dkt. 382 at 2587:16-2588:8), to answer questions specific to the elements to establish *Monell* liability. The jury first had to determine whether a policy, custom or practice actually existed before it could determine whether it caused the alleged constitutional violation. The failure to require these separate determinations resulted in a conflated, oversimplified and presumptive inquiry that fell short of resolving a question as basic as whether a custom, practice or policy existed at the time of Plaintiff's 1977 trial. Instead, Questions 2 and 4 imply the existence of such a policy, while simultaneously asking the jury to reach a determination as to causation, whether based on that presumed and speculative custom, practice or policy or based on the alleged constitutional violation. Under any view, Questions 2 and 4 are improper and fail to resolve central elements to liability in this action.

Second Circuit precedent makes clear that to prevail on a *Monell* claim, a plaintiff "must show **both** (1) 'the existence of a municipal policy or custom' and (2) a causal connection between that policy and the deprivation of her constitutional rights." *See Bernshtein v. City of New York*, 496 F. App'x 140, 144 (2d Cir. 2012) (quoting *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (emphasis added). Here, the jury did not, because it could not, reach either determination, precisely because it was not asked to deliberate upon the existence of a widespread custom or practice (as distinct from an actual policy – see fn. 6 *supra*), and thus could not conceivably reach the independent conclusion that such widespread custom or practice (or policy) was the moving force behind any alleged constitutional violation.

Further, the Verdict Sheet made no effort to inquire under which *Monell* theory it may have found the County liable. Over the County's objection (*see* Dkt. 382 at 2612:20-2613), the Court

denied the request to ask this question of the jury.  (*See id.* at 2613:8-10).

Equally problematic was the Court's failure to include a distinct question on the issue of causation.  The Supreme Court has long emphasized that the causation requirement under *Monell* is significant, reasoning that "[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability."    *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 415 (1997) ("As we recognized in *Monell* and have repeatedly reaffirmed, Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights."). *Id.*  Thus, to impose liability, a plaintiff must establish "that the unconstitutional act was taken *pursuant to* a municipal policy rather than simply resulting from such a policy in a 'but for' sense." *Pembaur,* 475 *U.S. v. Williams*, 529 F. Supp. 1085, 482 (E.D.N.Y., 1981) n. 11 (emphasis in original).  Stated differently, "there must be an affirmative link between the policy and the particular constitutional violation alleged." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

Consistent with the foregoing, the Second Circuit has instructed, "in cases where the existence of a municipal policy is in dispute, a special verdict form should ask the jury separately if the plaintiff has proved, first, the existence of a municipal policy and, second, that the policy caused his injury." *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 45 n.5 (2d Cir. 1985).  Here, the Court rejected the County's request for such distinct inquiries (*see* Tr. 2587:16-2588:8), and consequently, the jury made no such findings.

In sum, because the Verdict Sheet failed to resolve elements necessary to sustain the jury's verdict on Plaintiff's *Monell* claim, it "inaccurately frame[d] the issues to be resolved" and otherwise misled or confused the jury. *See Cash*, 654 F.3d at 340.

16

**B.  The Erroneous Jury Instructions on the County's Apportionment Defense were Compounded by the Verdict Sheet.**

In line with the errors underlying the Jury Instructions relative to the County's apportionment defense, the Verdict Sheet failed to adequately frame the issue of evaluating the fault of the City Defendants, and thus the County submits that the Verdict Sheet erred for the same reasons as those articulated above in Point I.E. *See Bender*, 78 F.3d at 794 (finding "[t]he wording of the verdict form maintained th[e] risk" of duplicative damages).

**POINT III:    SIGNIFICANT EVIDENTIARY ERRORS WARRANT A NEW TRIAL**

"A district court has broad discretion over the admission of evidence at trial." *Graham v. City of New York*, 128 F. Supp. 3d 681, 704 (E.D.N.Y. 2015).  "A new trial may be warranted if the district court made substantial errors in admitting or excluding evidence, provided that the errors caused the jury to reach a seriously erroneous result or its verdict is a miscarriage of justice." *Id.*; *see also Welch*, 871 F. Supp. 2d at 174.  "In order to uphold a verdict in the face of an evidentiary error, it must be 'highly probable' that the error did not affect the verdict.'" *United States v. Dukagnini*, 326 F.3d 45, 61 (2d Cir. 2003) (citation omitted).

Here, the Court committed various errors relative to the admission and exclusion of highly dispositive evidence on virtually every issue the jury was tasked to deliberate upon.  *First*, the Court erred in admitting irrelevant and inadmissible *Monell* evidence.  *Second*, the Court erred in excluding evidence relevant to materiality and suppression within the meaning of *Brady*.  *Third*, the Court erred in exercising an overly liberal approach to party admissions against the County, resulting in the admission of unduly prejudicial and irrelevant evidence, and compounded that error through an uneven application in barring party admissions the County sought to admit. *Fourth*, the Court erred in excluding evidence relevant to Plaintiff's alleged damages and

compounded that error through later rulings, resulting in a conflated and inflamed damages award.[5] *Fifth*, the Court erred in admitting and precluding certain evidence and argument relative to the *Boyd* trial.  *Sixth*, the Court erred in overruling an objection relative to unduly prejudicial, speculative and unfounded testimony elicited from Mr. Hirsch.  *Seventh*, the Court erred in admitting misleading and unduly prejudicial testimony from former District Attorney Cosgrove.

Accordingly, the Court cannot conclude it is "highly probable" that these erroneous rulings did not affect the verdict.  *See United States v. Dukagjini*, 326 F.3d 45, 61 (2d Cir. 2003) ("In order to uphold a verdict in the face of an evidentiary error, it must be 'highly probable' that the error did not affect the verdict.") (citation omitted).  As a result, a new trial is warranted.

## A. The Court Erred in Admitting Certain *Monell* Evidence.

As argued in the County's Fed. R. Civ. P. 50(b) motion, the body of *Monell* evidence introduced at trial was legally insufficient to sustain Plaintiff's claim against the County.  To the extent that reality does not render this argument moot, the County maintains the Court erred in admitting the balance of that evidence, and that the timing of the Court's rulings relative to the admission of such evidence, which shifted mid-trial, coupled with Plaintiff's shifting theories announced for the first time at the close of proof on the morning of the charge conference, resulted in a series of erroneous rulings, confusion and a generally unsustainable verdict.

### a. The Court's Delayed and Amended Ruling Mid-Trial, and Plaintiff's Shifting Attempts and Arguments to Introduce *Monell* Evidence were Improper and Unduly Prejudicial.

Leading up to, and throughout trial, various submissions and arguments were advanced relative to the body of *Monell* evidence to be introduced.  Critically, this evidence was dispositive

---

[5] Most notably, and as set forth in Point III.D.2, Plaintiff's summation referenced irrelevant and uncorroborated medical opinions, which the Court permitted over the County's objection.

to Plaintiff's sole claim against the County, and thus the significance of Plaintiff's shifting theories and arguments, and the Court's rulings, cannot be overstated.

The Court first issued a written decision addressing the scope of admissible *Monell* evidence in the early hours of the first day of trial, supplied to counsel by email.  (*See* Dkt. 326 at 3:9-10; *see also* Dkt. 340-1) (the "*Monell* Decision").   Prior to its receipt, the County objected to commencing trial in the absence of a ruling, reminding that Plaintiff's sole claim in this action is dependent on *Monell* liability.  (*See* Dkt. 326 at 82:8-87:16).  At that time, and this issue having been thoroughly briefed and argued, the Court summarized "I'm not inviting further argument about this, but my decision, essentially, is precluding any of the alleged *Monell* evidence for purposes of notice," and that "there was some *Monell* evidence proposed as admissions", which it characterized as "kind of the crux of [the] decision," to be further elaborated upon in the same. (*See* Dkt. 325 at 80:11).

In the midst of trial and over the County's opposition, the Court entertained and generally granted Plaintiff's request to entirely revisit the *Monell* Decision.  (*See* Dkt. 333, 340-3).  This resulted in revised rulings concerning the admissibility of Plaintiff's purported *Monell* evidence, and admitted previously excluded *Monell* evidence.  (*See* Dkt. 330 at 824-866).  The County maintains this was error and reiterates and incorporates herein the various arguments raised relative to Plaintiff's ever-evolving and shifting efforts to introduce (decidedly still insufficient) *Monell* evidence leading up to and during the trial of this matter.  (*See id.*; *see also* Dkts. 222, 230-5, 232, 261, 264, 268, 270, 291, 296).

In short, the County maintains Plaintiff's mid-trial submission was untimely, and that his belated reliance on the ancient document rule was misplaced because, among other things, that exception does not create relevance.  (*See* Dkt. 340-3).  Consistent with the arguments in favor of

the County's Rule 50(b) motion, the bulk of Plaintiff's purported *Monell* evidence *post-dated* Walker's June 1977 conviction, and thus was and is irrelevant, as was appropriately recognized in the *Monell* Decision.  (*See* Dkt. 340-1 at 17–18).

The Second Circuit has made clear, a *Monell* plaintiff must show "that the actions of subordinate officers are sufficiently widespread to constitute the constructive acquiescence of senior policymakers." *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992). In other words, a policy—formal or informal—cannot be inferred unless the municipality, when "faced with a pattern of misconduct[,] does nothing, compelling the conclusion that [it] has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007).

This is precisely why Plaintiff's proof fails as a matter of law, regardless of how many times or attempts he made to shift the theory underpinning purported *Monell* liability.  A municipality cannot be said to have authorized misconduct unless its policymakers were aware—or should have been aware—of a widespread and persistent pattern of unconstitutional conduct.  Because Plaintiff's *Monell* evidence failed to establish actual or constructive notice, it was necessarily irrelevant to Plaintiff's sole claim against the County and should have been excluded.  Beyond that, the Court erred in admitting factually dissimilar conduct and adopting Plaintiff's argument that statements made by ECDA prosecutors in appellate briefs and trial motions made *after* Mr. Walker's conviction constitute factual admissions of unconstitutional policies in existence at the time of Plaintiff's criminal trial in 1977.

In sum, the Court materially erred in entertaining Plaintiff's relentless effort to introduce purported *Monell* evidence having no relevance to any theory actually or potentially pursued by Plaintiff at trial.  Admitting such evidence in the face of authority confirming its lack of relevance

was fundamental error and/or necessarily misled or confused the jury, warranting a new trial.

**B. <u>The Court Erred in Precluding Evidence and Argument Central to *Brady*.</u>**

The County was improperly precluded from admitting evidence and advancing argument necessary to the jury's determination of a potential *Brady* violation. The relevant rulings on this issue were prejudicial, unbalanced, and rejected controlling precedent, constituting clear error.

In short, the balance, if not the entirety, of the alleged suppressed evidence was known to Walker and/or his defense counsel, was discoverable through reasonable diligence, and/or was not material. Through a series of erroneous rulings, the County was precluded from connecting these dots and advancing argument in line with Second Circuit precedent.

      *1. <u>Suppression.</u>*

The Court erred in precluding evidence and argument relevant to evaluating "suppression" of *Brady* within the context of a § 1983 claim. At Plaintiff's counsel's urging and over the County's objection,[6] the Court precluded argument to the jury consistent with applicable law under *Brady:* namely: "I'm definitely precluding [ ] any argument that . . . if Mr. Walker [ ] had the knowledge himself, then that's not suppression." (*See* Dkt. 330 at 892:9-18).

Contrary to the Court's ruling, "[e]vidence is not considered to have been suppressed within the meaning of the *Brady* doctrine if the defendant **<u>or</u>** his attorney either knew, or should have known, of the essential facts permitting him to take advantage of that evidence." *Layton v. Phillips*, 340 F. App'x 687, 689 (2d Cir. 2009) (emphasis added); *see, e.g.*, *United States v. Larson*, 567 F. Supp. 500, 503 (S.D.N.Y. 1983), aff'd, 742 F.2d 1443 (2d Cir. 1984) (no *Brady* violation where witness's identity and role were "well-known to defense counsel before trial", and counsel "had ample opportunity to interview [him]"); *U.S.*, 529 F. Supp. at 1104 (where defendants were

---

[6] The County incorporates by reference its written submission on this issue. (*See* Dkt. 340-1).

already aware of any material that would have been admissible and witnesses were equally available, they failed to show failure to fulfill *Brady* obligations).

Relatedly, "[i]f the defendant has information, but fails to use due diligence to make use of it, the defendant cannot later claim that the government 'suppressed' evidence." *United States v. Morales*, 916 F. Supp. 336, 339 (S.D.N.Y. 1996), aff'd, 107 F.3d 5 (2d Cir. 1997); *see e.g.*, *United States v. Barcelo*, 628 F. App'x 36, 39 (2d Cir. 2015) (no *Brady* violation where prosecution did not disclose cooperating witness's version of a traffic stop that differed from DEA agents' testimony, because defendant knew the witness was present at the stop and thus had reason and opportunity to investigate or call at trial); *Williams v. United States*, 503 F.2d 995, 998 (2d Cir. 1974) (Government was not required to let defendant know that narcotics wholesaler-retailer would have testified that no one besides himself was involved in narcotics transactions because defendant was on notice of essential facts which would have enabled him to call wholesaler-retailer as witness and take advantage of any exculpatory testimony).

Similarly, where the source of exculpatory information was reasonably available to the defense through familial or organizational channels, courts have found no suppression. *See United States v. Sessa*, 2011 WL 256330, at *28–29 (E.D.N.Y. Jan. 25, 2011), *aff'd*, 711 F.3d 316 (2d Cir. 2013) (no *Brady* violation where petitioner could have discovered evidence of FBI agent's unauthorized disclosures to informant through due diligence and familial and organizational channels); *see also Orena v. U.S.*, 956 F. Supp. 1071, 1095 (E.D.N.Y. 1997) (defendants either knew or should have known another member of organized crime family acted as informant, and thus failure to disclose such informant status did not constitute suppression).

At trial, the Court rejected this authority in part, by precluding argument suggestive of imputing Walker's actual knowledge and information within his possession, such as a potential

alibi defense, to his underlying criminal defense counsel, unless an explicit showing was made to suggest actual knowledge on the part of Walker's (now deceased[7]) defense counsel.  (*See* Dkt. 330 at 880:15-24, 883:3-10, 890:3-5, 892:9-18).  That ruling is inconsistent with controlling authority generally, but particularly prejudicial on account of the fact that prior to the Court's ruling on this issue, the Court sustained objections from Plaintiff's counsel to questions targeted toward discovering the extent of information supplied by Walker to his attorney.  (*See* Dkt. 330 at 892:19-22).  The Court further erred by relying on more restrictive readings of this doctrine that post-date the conduct at issue.  (*See* Dkt. 361 at 2363:21-2364:20).

The Court further erred in requiring a showing of "actual" knowledge, whether on the part of Walker or his defense counsel, which is likewise inconsistent with the foregoing authority, and erred in precluding the County from even making argument concerning whether Jay and/or Walker knew or should have known of certain evidence or information in the absence of such a showing. (*See* Dkt. 361 at 2355:14-2362:13).

In sum, it was error to restrict the County's ability to introduce evidence and argument necessary to advance a legally cognizable defense to an alleged *Brady* violation in a § 1983 action. There is simply no *Brady* suppression where information is known or reasonably available to defense counsel or his client.[8]  Because the Court's ruling held to the contrary, and imposed on the County a standard that did not exist in the 1970s and does not exist today, a new trial is warranted. *See Parsons v. United States*, 919 F. Supp. 86, 90 (N.D.N.Y. 1996) (holding that "government's

---

[7] That all defense counsel but McLeod are now deceased exacerbated the prejudice from this ruling, as the Court's interpretation was rendered impossible since Walker's underlying defense counsel, Jay, could not testify as to information and materials in his possession or knowledge at the time of Walker's underlying trial.  (*See* Dkt. 330 at 891:13-892:1; 893:18-23).

[8] The County maintains the jury instructions on this issue constituted error for the same reasons set forth here.  (*See also* Dkt. 363 at 2619-2622).

alleged failure to disclose the testimony of a witness as to facts that are within the personal knowledge of a defendant does not constitute a violation of *Brady*" and recognizing that "[i]n addition to reviewing the record in the instant case, [counsel] could have learned about the evidence from [his client], who was present at the detention hearing and had personal knowledge as to who owned the firearms."); *see also Harris v. Kuba*, 486 F.3d 1010, 1015 (7th Cir. 2007) ("Harris's own alibi was not concealed from him and is therefore not properly a claim under *Brady.*").

        2.  *Materiality.*

Pursuant to *United States v. Agurs*, the proper standard of materiality under *Brady* requires evaluating the alleged omission "in the context of the entire record." 427 U.S. at 112 (emphasis added). Setting aside that precluding evidence of Walker's prior bad acts prevented the jury from evaluating the alleged *Brady* violations in the context of the entire record, indeed – reference was permitted even at his underlying criminal trial – the Court otherwise committed prejudicial error in excluding various other aspects associated with the investigation and prosecution of Walker's underlying criminal trial, which together had the practical effect of presenting a skewed and inaccurate depiction as to materiality.

        a.  The Gibson Transcript.

The Court erred by only admitting a heavily redacted version of the Gibson trial transcript, as the entire transcript was relevant, admissible and duly authenticated.[9] The redactions hid testimony crucial to contextualizing and rebutting the *Brady* documents and information Walker claimed were not disclosed, thereby prejudicing the County's ability to properly defend the claim.

---

[9] The County incorporates by reference the submissions concerning redactions to the Gibson transcript, including Dkt. 335, 340-2, 340-5, 340-6, 340-8 and 340-9, as well as its response to Plaintiff's Memorandum Concerning Certain Evidentiary Issues, filed at Dkt. 303 at 9-12.

While the Court permitted certain reference to the Gibson transcript for purposes of notice (*see* Dkt. 376 at 1268:14-23), it precluded reference beyond that, including relative to favorability and materiality.  (*See id.* at 1270-1271).  The error in that ruling was compounded by its prejudicial timing, which materialized only after Plaintiff's counsel developed the groundwork to suggest to the jury a comparative analysis through McLeod's testimony concerning the Martin trial (*see* Dkt. 320 at 548:17-553:1), which the County could not rebut through similar comparative analysis by referencing the Gibson trial.  (*See* Dkt. 376 at 1272-1274).

Following that ruling, and in accordance with a subsequent directive from the Court on March 28, 2025 concerning the County's continued objections to the level of redactions applied by Plaintiff, the County made a supplemental submission again seeking to remove certain redactions (*see* Dkt. 340-8, 340-9), namely portions that provided notice of *Brady* material that was allegedly suppressed (*see* Dkt. 376 at 1268:14-18) and witness testimony concerning the subject matter of those allegedly withheld *Brady* documents (*see id.* at 1269:16-21, 1270:3-7) to demonstrate their practical application at trial.

The Gibson trial transcript demonstrated that certain allegedly suppressed materials were marked and used throughout the trial, including PX 21, PX 46, PX 47 and PX 48.  (*See* Dkt. 164-5 at 179, 513:13-19, 247, 771).  They demonstrate how a competent defense counsel could have, and did, utilize them at a trial concerning the same crime, and thus are directly relevant to matters concerning their favorability and/or materiality.   Beyond that, such evidence was otherwise responsive and constituted rebuttal to arguments and testimony from McLeod and from Plaintiff's expert, Mr. Zeidman.

For example, testimony of Nathaniel and Allison Zachery at the Gibson trial advanced a different alibi that contradicted the statement given by Cheryl Floyd and Nathanial Zachery as

documented in the January 8, 1976 P-73 (PX 21). (*See* Dkt. 164-5 at 656-605).  The narrative advanced by Floyd and Zachery also placed the five teenagers at the Glenny Drive apartments well beyond the dispatch of the taxis referenced in the same document. (*See* PX 21 at 1). The P-73 was also used by the prosecution to impeach Nathaniel Zachery's testimony at trial. (*See* Dkt. 164-5 at 593:16-599:10). Contrary to what Walker claimed, the practical application of this P-73 at the Gibson trial demonstrated that it would not have been so simple for his criminal defense counsel to an advance an alibi pieced together by information included in this document, casting serious doubt on its favorability and materiality.  *See Saxon v. Ercole*, 2008 WL 3446488, at *13 (S.D.N.Y. Aug. 12, 2008) ("the ability of the prosecution to effectively rebut defense evidence should also be taken into account in assessing the potential impact of withheld evidence on a jury's verdict"); *see also United States v. Pelullo*, 6 F. Supp. 2d 403, 413 (E.D. Pa. 1998), aff'd, 173 F.3d 131 (3d Cir. 1999) (considering hypothetical rebuttal witnesses in assessing material of withheld evidence).

Further, the Gibson trial transcript is devoid of any indication that defense counsel there advanced a "taxicab defense" that Walker claimed would have been available but for nondisclosure of this document, again speaking to its purported favorability and materiality.  In fact, redacted portions of the transcript included Gibson's testimony that Walker left the Glenny Drive Apartment at two o'clock in the morning, hours after the cabs had been dispatched as reflected in the January 8 P-73 (PX 21). (*See* Dkt. 164-5 at p. 740:2-5; *see also* PX 21 at 1).

Because the Court denied admitting portions of the Gibson trial transcript demonstrating the practical use and application of this and the other alleged undisclosed *Brady* documents, the County was directly and unfairly prejudiced in its ability to defend against Plaintiff's *Brady* claim.

a.  *The Court Erred in its Sua Sponte Preclusion of Evidence or Argument Concerning the Events Surrounding January 2, 1977.*

Though not requested by either party,[10] the Court precluded evidence or testimony suggestive of Plaintiff's guilt,[11] and apparently related to that ruling, severely restricted admission of evidence or testimony concerning the events surrounding the night of the Crawford murder, generally.  These limitations were severely prejudicial, particularly because Plaintiff's ability to introduce evidence or testimony concerning his subjective belief of innocence was permitted without limitation, as was his ability to argue and admit evidence as to allegedly withheld *Brady* evidence, including relative to its alleged materiality.

By arbitrarily drawing a line to exclude reference to relevant events and circumstances simply because they were not introduced at Walker's trial and/or suggestive of guilt, undermines the integrity and intent of a materiality analysis.  This concept was recognized in *Nnodimele v. Derienzo*, 2016 WL 3561708, at *11 (E.D.N.Y. June 27, 2016), wherein the Eastern District held "the jury in this [civil] trial is entitled to understand the nature and quality of that inculpatory evidence so it may properly assess the reasonably probable effect of the evidence allegedly withheld. *Id.* (citing *Leka v. Portuondo*, 257 F.3d 89, 104 (2d Cir. 2001).[12]

By contrast, here, the jury was generally precluded from discovering anything but evidence

---

[10] While Plaintiff moved to preclude *opinion testimony* relative to guilt (Dkt. 230-9), which the County opposed (Dkt. 250), and the Court granted, the Court's ultimate ruling precluded evidence or argument generally.  The County maintains the ruling on Plaintiff's motion was error, compounded by the fact Plaintiff stressed argument suggestive that Drury was aware of allegedly exculpatory evidence, with no reasonable way to rebut or explain how the same was resolved.  The errors associated with that ruling are necessarily enveloped in the County's broader objection.

[11] Even Plaintiff conceded "factual innocence or guilt is relevant to damages."  (Dkt. 324 at 66).

[12] Notably, the *Nnodimele* Court also found the evidence relevant to the defendant's state of mind, explaining "to the extent that he willfully and dramatically departed from standard lineup procedures, his defense that his challenged conduct was the product mistake, accident, negligence, or another innocent reason is less credible."  *Id.*

shown in a light to be exculpatory. The County respectfully argues the same was error, resulting in undue prejudice and an unsustainable verdict on any alleged *Brady* violation.

**B. <u>The Court's Rulings Relative to Party Admissions Were Inconsistent and Incorrect.</u>**

As summarized below, despite the Court taking a liberal approach in characterizing and admitting purported party admissions proffered by Plaintiff against the County, the County's efforts to introduce proof of the same evidentiary value were met with sustained objections. The County was unduly prejudiced by these disparate rulings, including as relates to its apportionment defense.

*1. <u>Admission of the Flynn Press Conference was Unduly Prejudicial.</u>*

For the reasons more fully set forth in opposition to Plaintiff's motion *in limine* (*see* Dkt. 223, *et. seq.*), and in support of the County's submission pursuant to Fed. R. Evid. 106 (*see* Dkt. 310), which submissions are expressly incorporated herein, the Court erred in admitting a limited, and unfairly prejudicial excerpt of a video recording of a press conference held by former District Attorney John Flynn's on August 18, 2021 as a statement of a party opponent. Consistent with the arguments advanced in the submissions cited above, the County maintains the excerpt constituted inadmissible hearsay, improper opinion testimony, was irrelevant, unduly prejudicial and risked confusing the issues and/or the jury. *See* Fed R. Evid. 403, 602, 702 and 802.

In short, Mr. Flynn's comments during the press release, which included referencing Walker's underlying case as a "weak case", related to trying the case criminally, not civilly, conflated the potential strength of trying the matter today versus several decades ago, and had no bearing on this civil lawsuit which was confined to analyzing Plaintiff's underlying prosecution and the policies and procedures of the Erie County's District Attorney's Office in the 1970s. The County thus maintains it was unduly prejudicial to permit presenting this excerpt to the jury, which

Plaintiff referenced at least four (4) times throughout trial (Dkt. 326 at 76:7-13; Dkt. 316 at 314:19-317:19; Dkt. 348 at 1374:1375:11; Dkt. 363 at 2700:5-18), played twice (Dkt. 316 at 317:16, Dkt. 363 at 2700:10), and used to bolster opinions from his expert Mr. Zeidman (Dkt. 363 at 2697:23-25; 1374:1375:11).  The prejudice inherent in its admission was further exacerbated by the ruling denying that excerpt to be played with relevant background and context, as was requested in the County's supplemental submission pursuant to Fed. R. Evid. 106, which was denied.  (*See* Dkt. 310; *see also* Dkt. 326 at 29:19-25).

> 2.  *The Court Erred in Issuing Disparate Rulings on Party Admissions.*

At Plaintiff's insistence, and over the County's objection (*see* Dkt. 325 at 56:3-59:25), the Court admitted the County's discovery responses as a party admission, declining to "preclude any testimony regarding that."  (*See id.* at 57:20-22).  Despite that ruling, the Court employed an opposite approach when evaluating Plaintiff's pleadings and filings on summary judgment,[13] requiring a paragraph-by-paragraph analysis and severely restricting the County's ability to introduce even excerpts.  (*See* Dkt. 380 at 2127-2137).  The unbalanced nature of these rulings constitutes error and was unreasonably prejudicial to the County, and Plaintiff's filings were otherwise admissible under controlling precedent.  *See United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984) (recognizing "pleadings constitute the admissions of a party-opponent and are admissible in the case in which they were originally filed"); *see also Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 250 (2d Cir. 2024) ("a party's assertion of fact in a pleading is a judicial admission by which she normally is bound throughout the course of the proceeding.").

---

[13] Despite objecting to their admission, Plaintiff took a contrary position when advancing argument aimed at introducing similar documents against the County (*see* Dkt. 230-4 p. 2) (suggesting "evidence offered by a party in support of summary judgment is admissible against that party at trial under Rule 801(d)(2)").

C. **<u>The Court Erred in Rulings Central to Damages.</u>**

1. *<u>Plaintiff's Pre-conviction Criminality</u>*

The Court erred in its wholesale preclusion of evidence of Walker's pre-conviction criminality. As argued in opposition to Plaintiff's motion *in limine* on this issue (*see* Dkts. 230-1, 260, which filings are expressly incorporated herein), such evidence was relevant and necessary, at a minimum, to contest Plaintiff's alleged damages, including opinions rendered by his damages expert, Sanford Drob. Plaintiff's case, particularly as related to the issue of damages, focused on presenting evidence and argument of Walker's suggested good character and of his hypothetical potential but for his alleged wrongful incarceration.

Walker's prior bad acts, which included acts of extreme and brazen violence inflicted on strangers, were facially relevant to damages and to rebuttal of Plaintiffs' far-reaching claim at trial that Plaintiffs' conviction constituted the sole cause of every negative feeling, experience and argued failure to or impediment to launch to his full or true potential. As but one example, Plaintiff's account, supported by additional expert analysis, of the effect of his exposure to violence experienced by third-parties during his incarceration, was objectively less extreme than the nature of the violent crimes in which he himself had historically been a participant.

By denying the County the opportunity to impeach Plaintiff's proof with evidence of his pre-conviction and post-conviction criminality, the Court committed substantial and prejudicial error, particularly since, and as consistent with the arguments in opposition to Plaintiff's motion *in limine*, Plaintiff would and did open the door to this evidence, and did so without fear of repercussion in light of the Court's premature (and incorrect) preclusion ruling. *See United States v. Savoca,* 151 Fed.Appx. 28, 30 (2d Cir. 2005) ("[A]ppellant's introduction of character testimony opened the door to the Government's evidence of prior bad acts."); *see also Helfrich v. Lakeside*

*Park Police Dep't*, 497 F. App'x 500 (6th Cir. 2012) (noting that § 1983 plaintiff "opened door" to examination of his prior arrests by testifying about his good character and how being arrested and tased by defendant officer was such an embarrassment to person of his character); *Sepulveda v. City of Doral*, 2022 WL 19406445, at *2 (S.D. Fla. Aug. 29, 2022) (denying motion *in limine* to preclude any evidence of plaintiff's arrest record upon recognizing the potential that plaintiff "opens the door" to such evidence and instead resolving motion to require objections at trial as necessary).

Evidence of Walker's prior bad acts constituted compelling evidence to rebut testimony of Plaintiff and his expert relative to his emotional state and overall potential but for his alleged wrongful incarceration.  Because the probative value of this evidence was not substantially outweighed by the risk of undue prejudice, and instead necessary to rebut Plaintiff's alleged damages and opinions rendered by his damages expert, the Court erred in its wholesale pretrial preclusion, resulting in substantial prejudice to the County and a generally unsustainable damages verdict.  *See Burton v. City of New York*, 630 F. Supp. 3d 586, 595 (S.D.N.Y. 2022) ("Among the many circumstances courts have considered [in reviewing jury awards] are whether the individual previously was incarcerated [and] the presence or absence of a significant criminal history prior to the unjust conviction."); *Newton v. City of New York*, 171 F. Supp. 3d 156, 175 (S.D.N.Y. 2016) (distinguishing prior verdicts based on the exonerated plaintiff's absence of prior criminal history). As a result, a new trial is warranted.

## 2.  *Plaintiff's Physical Injuries*

The Court erred in denying the County's motion and permitting Plaintiff's counsel to reference unrelated physical injuries on summation (Dkt. 353), which Plaintiff's counsel exploited to the County's prejudice.

As more fully set forth in the County's motion on this issue (*see* Dkt. 353), Plaintiff introduced no medical records, treating physician testimony, or expert opinions supporting his claimed physical injuries or conditions.  Instead, the record evidence was limited to speculative and wholly uncorroborated testimony from Walker himself.  Because Walker is not a qualified medical expert, he was not competent to offer causation opinions, and Plaintiff's counsel should have been precluded from parroting, much less further exploiting, that speculation on summation. *See Bromberg v. City of New York*, 270 N.Y.S.2d 425, 426 (1966) ("improper for counsel to make himself an unsworn witness and to indulge in argument founded on no proof"); *see also Lee v. Bennett*, 927 F. Supp. 97, 101 (S.D.N.Y. 1996) ("The purpose of the summations is for the attorneys to assist the jury in analyzing, evaluating, and applying the evidence. It is not for the purpose of permitting counsel to 'testify' as an 'expert witness.'") (citation omitted).

Permitting Plaintiff's counsel to nevertheless emphasize Walker's unrelated physical injuries and conditions right before charging the jury, was in derogation of Federal Rules of Evidence 403, 701 and 702 and resulted in unfair prejudice and jury confusion.  Plaintiff's counsel disingenuously and improperly exploited that error by advancing to the jury not only a recap of Walker's unrelated physical injuries, but drawing an alleged causal link to any physical injury or limitation he suffered to the mere fact of his incarceration:

> His body is a shell of what he could have been.  Just look at Tyrone Woodruff for comparison to see what 21 years of prison can do to a man.  John and Tyrone are only a year apart in age.  Tyrone is solid, strong, walks on his own, flew here from Atlanta, steady job, a family.  There's no reason that couldn't have been John too.

(*See* Dkt. 363 at 2745:5-11).

In reality, there are of course many reasons for disparate trajectories among individuals, and it was entirely improper for Plaintiff's counsel to suggest otherwise, particularly having

represented to the Court the previous morning "I don't anticipate any argument that says Mr. Walker's wrongful conviction directly caused his current mobility issues" (*see* Dkt. 381 at 2373), in response to the County's motion to limit Plaintiff's summation to avoid the very prejudice and misleading argument captured above.

Whether Plaintiff's argument resulted in inflaming the jury or conflating an award relative to pain and suffering associated with unrelated injuries, either consequence is prejudicial and improper. Because the jury returned a general compensatory award, no basis exists to distinguish any award associated with Plaintiff's alleged physical injuries, thus requiring a new trial.

**D. It was Error to Admit an Incomplete Record of the *Boyd* Summation.**

At trial, Plaintiff put at issue the substance of Boyd's 1977 trial, despite having previously opposed the Court's suggestion, and the County's request (*see* Dkt. 324 at 14 (reiterating exception to separate trials; Dkt. 237 at 22 (maintaining request for consolidation)), to proceed with a consolidated trial of these related matters.[14]

Plaintiff's introduction of evidence concerning Boyd's criminal trial, and questions posed to lay and expert witnesses to opine relative to the summation delivered by Mr. Drury, was error, particularly since the County was precluded - even after Plaintiff opened the door - to introduce post-trial evidence concerning Boyd's prior attempts to overturn his conviction, including on grounds relative to Mr. Drury's summation (*see* Dkt. 354-1 at 2-3; Dkt. 376 at 1277:18-1278-6). The County should have been permitted to reference the post-trial record relative to that issue, which included review by the Appellate Division, Fourth Department (*see People v. Boyd*, 84

---

[14] Plaintiff's opposition to consolidation, which stressed that confusion would result (*see* Ex. F at Emails dated October 18, 2024 and November 26, 2024 from Joel Rudin, Esq.)), is irreconcilable with the fact Plaintiff proceeded to essentially put on a consolidated trial. The County thus maintains that consolidation was demonstratively warranted and reserves the right to contest additional attorneys' fees arguably associated with the Boyd trial on this and other grounds.

A.D.2d 689 (1981); DX591)) and the Court of Appeals (*See* Dkt. 228-4).  That result is true whether the analysis considers the concept of collateral estoppel, as was argued in the County's pretrial motion *in limine* (*see* Dkt. 228), or pursuant to the analysis required under *Monell*, as argued in the County's motion filed during trial.  (*See* Dkt. 354-1 at 2-3).

It was thus error to permit Plaintiff to capitalize on an incomplete account of issues central to the Boyd trial, particularly given Plaintiff's earlier opposition and claims of confusion to the concept of a consolidated trial.  It was entirely misleading to impress upon the jury that the County should have found fault in a summation delivered in Boyd's trial when that very summation was reviewed by the highest court in this State without issue.[15]  Introduction of evidence from the Boyd trial was confusing according to Plaintiff's prior analysis,[16] and the fact it came in incomplete was purposefully misleading and unduly prejudicial to the County.

**E.  The Court Erred in Permitting a Comparative Analysis from Mr. Hirsch.**

At the end of Plaintiff's direct of his police interrogation expert, Alan Hirsch, Plaintiff elicited testimony that lacked foundation, inflamed the jury and was unduly prejudicial.  While the Court sustained the County's initial objection (*see* Dkt. 329 at 781:9-15), it overruled the latter (*see id.* at 781:17-23), despite the question remaining improper at its core:

> Q:    *How would you say this case compares with respect to – the*

---

[15] In this respect, the Court's ruling departs from a ruling made relative to Plaintiff's Incident No. 26, which the Court excluded from admission, citing "[t]he appellate division affirmed the conviction, and "[a]lthough they did note that there were instances of improper summation, they did not find those rose to the level of a constitutional violation."  (*See* Dkt. 330 at 866:1-5).

[16] *See, e.g.*, Ex. F at Email dated October 18, 2024 from Joel Rudin, Esq. stating "A consolidated trial also would make it difficult for the jury to apply the Court's legal instructions regarding Plaintiffs' summation-misconduct claims . . . Here, there were two different prosecutors who made different comments at the two trials, each prosecutor will have a different explanation of his comments in the context of the rest of the trial, and, in relation to the *Monell* claim, there must be an individualized evaluation of causation. Keeping the two trials separate when judging Plaintiffs' claims, the prosecutors' explanations, and the causation issue would be nearly an impossible task for a single civil jury.").

> interrogations of Woodruff and Hough compared to the other
> cases you have reviewed?
>
> [County's objection overruled]
>
> A:    This is certainly one of the most upsetting cases I have ever
> been involved with.

(*See id.*).  This colloquy lacked foundation and constituted hearsay, and Mr. Hirsch's response that he viewed this case as "one of the most upsetting" falls outside the bounds of permissible expert testimony, precisely because the question could not conceivably result in anything but a charged and improper response.

Pursuant to Fed. R. Evid. 703, "[a]n expert may base his opinions on facts that are otherwise inadmissible, such as hearsay that does not fall within a recognized exception, if 'experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject.'" *United States v. Rodriguez*, 651 F. App'x 44, 46 (2d Cir. 2016) (quoting Fed. R. Evid. 703).  Notably, an expert may only disclose the inadmissible facts or data "if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed R. Evid. 703; *see also United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) (an expert must "apply[ ] his extensive experience and a reliable methodology" to the inadmissible materials or he is simply "repeating hearsay evidence without applying any expertise whatsoever" (citation omitted).

The subject question and answer fail the foregoing criteria, and it was entirely improper to elicit Mr. Hirsch's personal feeling and permit a comparative analysis for which no reliable methodology could ever exist.  Even if there was, the blind comparison suggested to the jury was irrelevant to Plaintiff's claims and otherwise inflamed the jury and unduly prejudiced the County.

### F.  It was Error to Admit Misleading and Prejudicial Testimony of D.A. Cosgrove.

Finally, the County submits it was error to admit irrelevant, misleading and prejudicial

testimony of former District Attorney Edward Cosgrove relative to the idea that he supervised an entirely distinct entity, the Buffalo Police Department, while simultaneously serving as the acting District Attorney.  (*See generally* Dkt. 327 at 154:5-156:18).  Mr. Cosgrove served only as the policymaker for the Erie County District Attorney's Office (*see id.* at 154:155:4), and the Buffalo Police Department ("BPD") Organizational Chart, which the Court denied admission of (Dkt. 345 at 3-4; Dkt 380 at 2137:8-2139:1), established the elementary point that detectives of the BPD were not under Mr. Cosgrove's supervision.

Similar to Plaintiff's overuse of the Flynn "weak case statement", his counsel repeatedly referenced this testimony throughout trial, advancing baseless and misleading arguments.  (*See* Dkt. 363 at 2735:13-15 ("[w]hatever the police did wrong, they did wrong . . . at the direction of DA Cosgrove"); 2735:19-22 ("DA Cosgrove testified at deposition that it was he and the DA's Office that supervised and was responsible for the police – for the Buffalo Police Department."); 2736:1-6 ("so whatever police misconduct there was, not only was Drury right be side the police in directing them, but the DA Ed Cosgrove was responsible for all of it. No matter how you slice it, the County is responsible for 100% of the harm to John Walker, the city police officers zero.").

Plaintiff's counsel cannot credibly contend Mr. Cosgrove's use of the term "supervised" amounted to official or formal supervisory capacity, particularly in the face of the BPD Organizational Chart, and there was no evidence to support the unfounded accusations that he directed or was responsible for the actions of BPD detectives.  Plaintiff's counsel demonstratively exploited the erroneous ruling on this issue, resulting in undue prejudice to the County.

**POINT IV:    THE JURY'S FINDING OF *MONELL* LIABILITY WAS AGAINST THE WEIGHT OF THE EVIDENCE**

More generally, and setting the foregoing errors aside for the moment, the jury's findings were against the weight of the evidence, requiring a new trial.

For the reasons set forth in the County's motions for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50, which filings are expressly incorporated, the jury's *Monell* findings were against the weight of the evidence. Succinctly, Plaintiff failed to establish (i) an underlying constitutional violation relative to summation misconduct, (ii) a widespread custom or practice, (iii) deliberate indifference based on failure to discipline, or (iv) a direct causal link between any claimed violation and an official County policy.

The evidence at trial fell entirely short of sustaining Plaintiff's burden on these issues (and in some instances, the jury was not tasked with even reaching a determination, as set forth above in Point II), and thus a new trial is proper. *See Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 634–35 (2d Cir. 2002) ("A grant of a new trial on the ground that the verdict was against the weight of the evidence is appropriate if 'the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice.'").

**POINT V:    AT A MINIMUM, THE VERDICT SHOULD BE REDUCED**

Short of ordering a new trial, and at a minimum, a conditional order of remittitur should issue, and the verdict should be reduced to account for Walker's settlement with the City Defendants, resulting in a reduced verdict in the amount of $17,650,000.

**A.  <u>A Conditional Order of Remittitur Should Issue.</u>**

Pursuant to Fed. R. Civ. P. 59(e), the Court has authority to enter a conditional order of remittitur, compelling Walker to choose between reduction of the excessive verdict and a new trial. Remittitur is appropriate in two circumstances: "(1) where the court can identify an error that

caused the jury to include in the verdict a quantifiable amount that should be stricken, and (2) more generally, where the award is intrinsically excessive in the sense of being greater than the amount a reasonable jury could have awarded, although the surplus cannot be ascribed to a particular, quantifiable error." *Pike Co., Inc. v. Universal Concrete Products, Inc.*, 665 F. Supp. 3d 365, 374 (W.D.N.Y. 2023). "The Court's ability to enter a conditional order of remittitur derives from its discretion to order a new trial." *Id.*

Given the evidence at trial, the jury's award of $28,000,000 in compensatory damages, which amounts to nearly $1.5 million per year of incarceration, is intrinsically excessive, particularly because (i) Walker's testimony did not provide detailed information or accounts of any alleged trauma he sustained while in prison and (ii) Plaintiff's counsel conflated and improperly magnified unrelated physical injuries on summation.

While there have been cases holding that an award of $1,000,000 dollars per year spent in prison is a reasonable award in wrongful conviction cases, those cases recognize "the $1,000,000 per year baseline is extremely generous", and, where, as here, cases are limited to non-economic damages, courts "have counseled that special attention must be paid to the particular circumstances of each individual plaintiff." *See Limone v. United States*, 579 F.3d 79, 106 (1st Cir. 2009); *see also Newton*, 171 F. Supp. 3d at 172.

The circumstances of this case simply do not call for the compensatory damages awarded by the jury, and the Court should therefore exercise its discretion and reduce the award consistent with the general upper limit of $1,000,000 per year incarcerated.

**B.  <u>The Award Should Be Offset by Walker's Settlement[17] with the City Defendants.</u>**

As set forth above, the Court erred relative to the jury instruction and verdict sheet with respect to the County's apportionment defense.  While that error constitutes distinct grounds to support the County's request for a new trial, at a minimum, the County seeks a setoff of the amount received by Walker in his settlement with the City Defendants, *i.e.* to reduce the amount of the judgment by the sum of $4.35 million.

A non-settling defendant is generally entitled to an offset "as long as both the settlement and judgment represent common damages." *Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989); *see also Restivo*, 846 F.3d at 586 ("nonsettling party is entitled to a setoff only of a settling tortfeasor's proportionate fault.").  Here, any damages sustained by Walker necessarily amount to "common damages", as was all but conceded by Plaintiff insisting that the County knew of the allegedly improper coercive tactics of the City Defendants, and/or that DA Cosgrove was ultimately responsible for, which insistence ultimately resulted in the flawed and improper jury instruction, conflating the actions of the City Defendants with those of the County.

Relatedly, any argument that the jury did not apportion liability as to the City Defendants was a consequence of, among other errors, the improper jury instruction and verdict sheet inquiry on this issue, which should not serve to further prejudice the County by denying a setoff on that ground.  By design, and over the County's objection, the jury was precluded from reasonably assessing the City Defendants' relative apportionment of fault.  Thus, the fact no such finding was made should not be dispositive of this issue.  Further, the misleading nature of Mr. Cosgrove's

---

[17] The Court denied the County's request to move into evidence a copy of the Settlement Agreement (Dkt. 207-2). (*See* Dkt. 354-1 at 4-5; *see also* Dkt. 381 at 2391:13-2394:13).  The County maintains that ruling was error, as it was admissible as a party admission, authenticated by the parties, and relevant to the County's apportionment defense and to the disposition of Walker's claims against the City Defendants.

testimony, as set forth in Point III.G, prejudiced the County and prevented the jury from reasonably evaluating this issue.

Instead, and particularly because the settlement award and the judgment constitute common awards, at a minimum, the judgment should be offset by the amount of the settlement reached with the City Defendants consistent with the double recovery rule. *See Bender*, 78 F.3d at 793 ("A basic principle of compensatory damages is that an injury can be compensated only once . . . If two causes of action provide a legal theory for compensating one injury, only one recovery may be obtained.").

## CONCLUSION

In sum, and only to the extent the Court denies the County's motion simultaneously filed herewith pursuant to Federal Rule of Civil Procedure 50(b), the County respectfully seeks an Order: (i) granting a new trial, or in the alternative (ii) issuing a conditional order of remittitur, (iii) together with any such other and further relief the Court deems just and proper.

Dated: May 20, 2025

**LIPPES MATHIAS LLP**

*s/Kirstie A. Means*
Jennifer C. Persico, Esq.
Brian C. Mahoney, Esq.
James. P. Blenk, Esq.
Kirstie A. Means, Esq.
Thomas R. Southard, Esq.
*Attorneys for Defendant, County of Erie*
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
(716) 853-5100
jpersico@lippes.com
bmahoney@lippes.com
jblenk@lippes.com
kmeans@lippes.com
tsouthard@lippes.com