**UNITED STATES DISTRICT COURT FOR**
**THE WESTERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | |
| JOHN WALKER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | **Case No. 1:22-cv-520** |
| | ) | |
| - against - | ) | |
| | ) | |
| THE COUNTY OF ERIE., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF JOHN WALKER, JR.'S MEMORANDUM IN SUPPORT OF HIS**
**APPLICATION FOR ATTORNEYS' FEES AND COSTS**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................3

I.     The Amount of Attorneys' Fees Requested Is Reasonable ...............................................4

      A.     Mr. Walker's Attorneys' Hours Are Reasonable ...............................................4

      B.     The Requested Rates Are Reasonable. ............................................................11

           1.     WilmerHale and Rudin Law Are Entitled to Out-of-District Rates .........11

           2.     The *Johnson* Criteria Support the Requested Rates...................................15

      C.     Mr. Walker's Victory Merits a Fee Enhancement. .................................................22

II.    Mr. Walker Is Entitled to the Fees and Costs Incurred in Connection with this Motion and All Post-Trial Proceedings. ...............................................................................................23

III.   The Court Should Award $388,890.16 in Costs Through April 2025.............................23

CONCLUSION.....................................................................................................................25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*28th Highline Assocs., LLC v. Roache*,
  2019 WL 10632851 (S.D.N.Y. July 29, 2019) ..........................................................................5

*Allison v. Gallagher*,
  2012 WL 4760863 (N.D. Ill. Oct. 5, 2012)...............................................................................17

*Altvater Gessler-J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.*,
  2011 WL 2893087 (S.D.N.Y. July 14, 2011) ...........................................................................24

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*,
  522 F.3d 182 (2d Cir. 2008)...............................................................................................13, 15

*Bass v. Dellagicoma*,
  2013 WL 3336760 (D.N.J. June 28, 2013) ...............................................................................23

*BD v. DeBuono*,
  177 F. Supp. 2d 201 (S.D.N.Y. 2001)......................................................................................24

*Bhungalia Family, LLC v. Agarwal*,
  317 F. Supp. 3d 727 (S.D.N.Y. 2018)......................................................................................24

*Blanchard v. Bergeron*,
  489 U.S. 87 (1989)...................................................................................................................19

*Blum v. Stenson*,
  465 U.S. 886 (1984)...........................................................................................................15, 19

*Boyd v. City of Buffalo*,
  2025 WL 262152 (W.D.N.Y. Jan. 22, 2025) ..............................................................................6

*C.D. v. Minisink Valley Cent. Sch. Dist.*,
  2018 WL 3769972 (S.D.N.Y. Aug. 9, 2018) ............................................................................22

*Casaccia v. City of Rochester*,
  2021 WL 4189707 (W.D.N.Y. Sept. 15, 2021) ....................................................................5, 14

*Catanzano v. Doar*,
  378 F. Supp. 2d 309 (W.D.N.Y. 2005) ...................................................................................8, 9

*Central de La Comunidad Hispana de Locust Valley v. Town of Oyster Bay*,
  2019 WL 2870721 (E.D.N.Y. June 18, 2019) ..........................................................................16

*Cho v. Koam Med. Servs. P.C.*,
   524 F. Supp. 2d 202 (E.D.N.Y. 2007) ....................................................................25

*Clark v. Phillips*,
   965 F. Supp. 331 (N.D.N.Y. 1997) .......................................................................25

*DiSorbo v. City of Schenectady*,
   2004 WL 115009 (N.D.N.Y. Jan. 9, 2004) ...........................................................25

*Gonzalez v. Bratton*,
   247 F. Supp. 2d 432 (S.D.N.Y. 2003) ..................................................................23

*Guadagno v. Astrue*,
   2011 WL 3902749 (W.D.N.Y. Sept. 6, 2011) ......................................................10

*Harvey v. Home Savers Consulting Corp.*,
   2011 WL 4377839 (E.D.N.Y. Aug. 12, 2011) ......................................................14

*Heng Chan v. Sung Yue Tung Corp.*,
   2007 WL 1373118 (S.D.N.Y. May 8, 2007) ........................................................22

*Homeaway.com, Inc. v. City of New York*,
   523 F. Supp. 3d 573 (S.D.N.Y. 2021)..............................................................16, 24

*Houser v. Pritzker*,
   No. 10-cv-3105 (S.D.N.Y. Sept. 20, 2016)..........................................................21

*Johnson v. Georgia Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) ...............................................................................16

*Jones v. City of New York*,
   2021 WL 3773460 (S.D.N.Y. Aug. 24, 2021) .....................................................24

*Knox v. John Varvatos Enters., Inc.*,
   520 F. Supp. 3d 331 (S.D.N.Y. 2021)..................................................................16

*LeBlanc-Sternberg v. Fletcher*,
   143 F.3d 748 (2d Cir. 1998).............................................................................4, 24

*Lilly v. City of New York*,
   934 F.3d 222 (2d Cir. 2019).............................................................................4, 16

*Lipsett v. Blanco*,
   975 F.2d 934 (1st Cir. 1992) ..................................................................................7

*Lynch v. City of New York*,
   2021 WL 5140728 (S.D.N.Y. Nov. 4, 2021).......................................................17

*McGaffigan v. City of Rochester*,
    2023 WL 415098 (W.D.N.Y. Jan. 26, 2023) ........................................................5

*Moore v. City of Chicago*,
    2007 WL 3037121 (N.D. Ill. Oct. 15, 2007)........................................................17

*N.Y. State Ass'n for Retarded Children v. Carey*,
    711 F.2d 1136 (2d Cir. 1983)............................................................................8

*Parks v. Saltsman*,
    2024 WL 4440994 (W.D.N.Y. Oct. 8, 2024) ...............................................14, 22

*Payne v. Kirkland*,
    2017 WL 5952707 (S.D.N.Y. Nov. 30, 2017) ....................................................24

*Perdue v. Kenny A. ex rel. Winn*,
    559 U.S. 542 (2010)...............................................................................4, 15, 22

*Pino v. Locascio*,
    101 F.3d 235 (2d Cir. 1996)...............................................................................4

*Raja v. Burns*,
    43 F.4th 80 (2d Cir. 2022) ................................................................................4

*Ravina v. Columbia Univ.*,
    2020 WL 1080780 (S.D.N.Y. Mar. 6, 2020) ....................................................24

*Reed v. A.W. Lawrence & Co.*,
    95 F.3d 1170 (2d Cir. 1996)..............................................................................23

*Restivo v. Hessemann*,
    846 F.3d 547 (2d Cir. 2017)...............................................................13, 14, 15

*Robinson v. N.Y.C. Transit Auth.*,
    2024 WL 4150818 (S.D.N.Y. Aug. 16, 2024) ...................................................22

*Rosenfeld v. Lenich*,
    2022 WL 2093028 (E.D.N.Y. Jan. 19, 2022) ...................................................21

*Rothman v. City of New York*,
    2020 WL 7022502 (S.D.N.Y. Nov. 30, 2020) .............................................19, 20

*Simmons v. N.Y.C. Transit Auth.*,
    575 F.3d 170 (2d Cir. 2009)..............................................................................11

*Stoeckley v. Nassau Cnty.*,
    2015 WL 8484431 (E.D.N.Y. Dec. 9, 2015) ....................................................17

*Tolbert v. Queens College*,
    242 F.3d 58 (2d Cir. 2001) .................................................................................23

*Villegas v. Metro. Gov. of Davidson Cnty.*,
    2012 WL 4329235 (M.D. Tenn. Sept. 20, 2012) ..................................................23

*West Virginia University Hospitals, Inc. v. Casey*,
    499 U.S. 83 (1991) ............................................................................................13

*Williams v. Metro-North R.R. Co.*,
    2018 WL 3370678 (S.D.N.Y. June 28, 2018) ......................................................21

*Zahrey v. Ctiy of New York*,
    No. 98-cv-4546 (S.D.N.Y. June 8, 2010) ............................................................21

**Federal Statutes**

28 U.S.C. § 1988 ................................................................................... *passim*

42 U.S.C. § 1983 ................................................................................... *passim*

**Other Authorities**

FRCP 54(d)(1) ................................................................................. 1, 4, 23

Plaintiff John Walker, Jr., respectfully submits this memorandum in support of his application for attorneys' fees and costs incurred by Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale"), the Law Offices of Joel Rudin, P.C. ("Rudin Law"), and Hoover & Durland LLP ("Hoover & Durland") pursuant to 28 U.S.C. § 1988 and FRCP 54(d)(1).

## INTRODUCTION

On April 8, 2025, a unanimous jury, after needing only approximately four hours of deliberation, found that Defendant County of Erie (the "County") had unconstitutional *Brady* disclosure and summation policies, customs, and practices that caused the Erie County District Attorney's Office (the "ECDA") to violate Plaintiff John Walker's constitutional right to a fair trial in 1977, and that the County must pay Mr. Walker $28 million in compensatory damages for such violation. Mr. Walker spent 21 years in prison and another 17 years on parole after a criminal trial in 1977 due to his wrongful conviction. The verdict reflects acceptance of the evidence presented by Mr. Walker and his attorneys on both of his theories of liability (*Brady* and summation misconduct), the complete rejection of the County's apportionment and other defenses, and acknowledgement of Mr. Walker's unimaginable damages.

This outcome was the direct result of a collaboration of three law firms that collectively had the expertise and resources necessary to defeat the County, which was itself represented by one of the largest law firms in Buffalo (the venue where this case was filed).

As set forth in greater detail in the supporting declarations of Ross Firsenbaum ("Firsenbaum"); Joel B. Rudin ("Rudin"); Spencer Durland ( "Durland"); James Grable, a leading Buffalo, New York, civil litigator ( "Grable"); Nick Brustin, a partner of Neufeld Scheck Brustin Hoffman & Freudenberger LLP ("NSB") and a leading New York City civil rights lawyer ("Brustin"); and Retired U.S. Bankruptcy Judge for the Southern District of New York Shelley Chapman, now a Senior Counsel in the New York City offices of Willkie Farr & Gallagher

("Chapman"), Mr. Rudin is a leading civil rights litigator and a pioneer in the field of *Monell* claims. Mr. Firsenbaum has substantial experience litigating *Brady* and *Monell* claims and led a team of talented colleagues from a large law firm with the deep resources necessary to litigate a case of this complexity. Hoover & Durland is the home of two of Buffalo's premier criminal and civil federal court litigators, as demonstrated by Mr. Durland during this trial. The collaboration was necessary for a 50-year old *Monell* case that required extensive pre-lawsuit investigation and research into various complex factual and legal issues, the drafting of complicated pleadings, repeated motion practice caused by the County's persistent discovery (and other) delays, extensive document discovery, 23 depositions totaling 5,163 pages of transcripts, lengthy summary judgment motions, numerous *in limine* briefs, disputes regarding the admissibility of hundreds of exhibits and hundreds of pages of deposition testimony, and three weeks of trial.

In light of this effort, described more fully below and in our supporting papers, Mr. Walker's request for at least $5,461,176.56 in fees and $388,890.16 in costs from the three firms combined for a three and one-half year project between November 2021 and April 2025 is reasonable. That request is the product of substantial reductions in both the hours and rates submitted in this petition, including the following:

- Billing entries prior to March 4, 2025, that were applicable to both Mr. Walker's and Mr. Boyd's cases were reduced by 50% to account for Mr. Boyd's case (except for entries that were written off because they were allocated entirely to Mr. Boyd's case) even though most of these entries would have been necessary even if only Mr. Walker was a plaintiff;

- Every billing entry fairly considered as work only performed in furtherance of Mr. Walker's case against the City of Buffalo and the individual police defendants (Michael G. Guadagno; John Montondo; Linda J. Fial as Executor for the Estate of Robert Grabowski;

Martin Bullock as Executor for the Estate of James E. Hunter; Jennifer G. Flannery as Administrator for the Estate of Frank C. Deubell; Jennifer G. Flannery as Administrator for the Estate of Leo J. Donovan; Jennifer G. Flannery as Administrator for the Estate of Francis M. Manista, Jr.; and Dawn M. Dirienzo as Executor for the Estate of Paul R. Delano (collectively with the City of Buffalo, the "City Defendants")) was written off entirely;

- For every billing entry prior to Mr. Walker's December 5, 2024, settlement with the City Defendants that was not written off entirely, an additional 15% reduction per hour was applied to account for the settlement with the City defendants that constituted approximately 15% of the total damages recovered;

- WilmerHale wrote off many other categories of billing entries in their entirety, and reduced the hours of its submitted entries by another 10% to account for any block billing; and

- WilmerHale applied a rate of 56% of its standard hourly rates.

For the reasons described more fully below and in our supporting papers, Plaintiff respectfully requests that the Court grant this petition in full and allow him to submit supplemental fee petitions on a quarterly basis for fees and costs incurred after April 30, 2025.

## ARGUMENT[1]

The Civil Rights Act, 42 U.S.C. § 1983, was passed in 1871 to create a mechanism of relief for those harmed by state actors' constitutional violations. Section 1988 is integral to this rights-enforcing scheme. Through Section 1988, Congress acknowledged the statute's noble aims could only be truly achieved if the cost of litigating such cases is shifted to the losing party and attorneys are sufficiently encouraged to handle such cases.

In determining whether an award of attorney's fees is appropriate, the law requires a two-

---

[1] We refer to the Declarations for the factual background underlying this fee petition.

step inquiry. "First, the party must be a 'prevailing party' in order to recover. If []he is, then the requested fee must also be reasonable." *See Pino v. Locascio*, 101 F.3d 235, 237 (2d Cir. 1996) (citations omitted). The County cannot dispute that Mr. Walker is a prevailing party. As to fees (and costs pursuant to both Section 1988 and Fed. R. Civ. P. 54(d)(1)), Mr. Walker's request is reasonable.

**I.       The Amount of Attorneys' Fees Requested Is Reasonable**

Under Section 1988, "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). To calculate a "reasonable fee," courts use the "lodestar" method, which involves "determining a reasonable hourly rate by considering all pertinent factors … and then multiplying that rate by the number of hours reasonably expended." *Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019). In calculating a reasonable attorney's fee, "the most critical factor is the degree of success obtained." *Raja v. Burns*, 43 F.4th 80, 88 (2d Cir. 2022) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). The lodestar method produces a "presumptively reasonable fee." *Lilly*, 934 F.3d at 229. In certain circumstances, courts may award attorneys' fees in Section 1983 beyond the lodestar due to superior performance and results. *Lilly*, 934 F.3d at 232. In calculating the lodestar, the Second Circuit instructs courts to apply "current rates, rather than historical rates, … in order to compensate for the delay in payment." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998).

**A.       Mr. Walker's Attorneys' Hours Are Reasonable**

Mr. Walker seeks to recover for a total of 8,643.98 hours billed, over a 3.5 year period from November 2021 through April 2025. *See* Firsenbaum ¶¶ 251-268; Rudin ¶ 52. This number of hours is reasonable considering the size and complexity of the case as well as the extraordinary outcome. Chapman ¶¶ 11, 23, 37-47, 49-50. "[S]trongly favorable results obtained by [a

prevailing party] support a finding that the hours billed were reasonable." *28th Highline Assocs., LLC v. Roache*, 2019 WL 10632851, at *5 (S.D.N.Y. July 29, 2019). *See* Brustin ¶¶ 15, 21; Chapman ¶ 49-50.

As courts in this district have acknowledged, *Monell* cases are inherently complex and require significant investment. *See Casaccia v. City of Rochester*, 2021 WL 4189707, at *4 (W.D.N.Y. Sept. 15, 2021) (describing the "vigorous" discovery "necessary to mount a potentially successful *Monell* claim"); *see also McGaffigan v. City of Rochester*, 2023 WL 415098, at *4 (W.D.N.Y. Jan. 26, 2023) (noting "a Monell claim can arguably complicate even a straightforward excessive-force case"). Given the need to prove both a primary constitutional violation *and* that the violation was caused by a pattern, practice, or custom of a municipality, *Monell* cases frequently entail lengthy pleadings, extensive and complex discovery (including motion practice), and voluminous records to be litigated. *See* Grable ¶¶ 24, 26, 32, 36-40; Brustin ¶¶ 15, 16.

Beyond the inherent complexity of any *Monell* action, this case was particularly complicated to investigate and to prepare and present at trial. The underlying constitutional violations occurred in the 1970s, forcing Mr. Walker's attorneys to unearth other instances of *Brady* violations and summation misconduct by the ECDA during that era even though most case records were reportedly lost and lower court decisions were rarely published. *See* Firsenbaum ¶¶ 66-68, 74-75, 92, 117-118; Rudin ¶¶ 36-39. Mr. Walker's attorneys needed to track down witnesses, examine the crime scene and other pertinent locations, review and collect 50-year old files from various different sources, including microfiche from the County Clerk's office and years of newspaper records. Firsenbaum ¶¶ 66-68, 74-75, 117-118; Rudin ¶¶ 36-39. Fact discovery involved Plaintiff's taking and defending 18 depositions, several of which stretched across multiple days. Firsenbaum ¶¶ 120-147, 166; Rudin ¶¶ 44, 85. The parties collectively submitted

five expert reports and deposed all five experts.  Firsenbaum ¶¶ 153-166; Rudin ¶¶ 42-43, 47-48.
The County's summary judgment consisted of a 31-page brief, accompanied by a 23-page
statement of undisputed facts, and 24 exhibits consisting of hundreds of pages, and incorporation
by reference to the City Defendants' summary judgment papers, which consisted of a 47-page
brief, accompanied by a 28-page statement of undisputed fact and 35 exhibits consisting of
thousands of pages.  Firsenbaum ¶ 172; Rudin ¶¶ 45, 65, 69.  Mr. Walker's opposition contained
a 91-page opposition brief, supported by a 13-page declaration by Mr. Rudin attaching 126
exhibits, and a 330-page response to Defendants' 56.1 statements of purported "undisputed" facts.
Firsenbaum ¶ 174; Rudin ¶¶ 45, 65, 69.

Upon the conclusion of discovery, the Court noted the complexity of the record.  *Boyd v.
City of Buffalo*, 2025 WL 262152, at \*1 (W.D.N.Y. Jan. 22, 2025) (describing Messrs. Boyd and
Walker's litigation against the County as "a pair of complex cases").  Both the County and the
City Defendants acknowledged as much.  *See* Dkt. 141, County of Erie's Opposition to Motion to
Set Trial Dates at 2, 4 (noting "the volume of information exchanged" regarding "events that
occurred nearly 50 years ago" as well as "the need for complex dispositive motions"); Dkt. 156,
City of Buffalo's Letter Requesting to Extend Page Limits for Dispositive Motion at 1 (describing
the "complexity of the factual background involved in these cases").  As the Court is aware, the
intensity of the case continued unabated through a three-week trial, during which the Court
addressed numerous evidentiary disputes.

The length and cost of an already complex case was exacerbated by the County's tactics.
*See* Firsenbaum ¶¶ 88-111, 148-152, 182-193; Rudin ¶¶ 3, 44, 46, 85.  Although Judge McCarthy's
template scheduling order required that briefing on summary judgment be completed within one
year of the initial pretrial conference, the County sought more time, and its tactics forced still more

delays well beyond this timeframe. Firsenbaum ¶¶ 88-91. The County produced virtually no discovery voluntarily, requiring Mr. Walker to file a motion to compel. Firsenbaum ¶¶ 92-101. In response, the County filed a motion to bifurcate discovery and refused to produce documents or respond to interrogatories related to *Monell* while its motion was pending. Firsenbaum ¶¶ 102-103. That motion effectively required Mr. Walker to show in opposition why he was likely to defeat a summary judgment motion on the issue of constitutional violations. Firsenbaum ¶¶ 103-104. Ultimately, the County's strategy served only to delay the case and to increase costs, as Judge McCarthy denied the County's bifurcation motion and granted virtually all of Mr. Walker's requests. Firsenbaum ¶¶ 105-111.

As noted, the County chose to file voluminous summary judgment papers attacking virtually every component of every one of Plaintiff's claims. After this Court denied in substantial part the County's motion, the parties engaged in lengthy and costly evidentiary disputes prior to and during trial. Firsenbaum ¶¶ 195-214, 241-242; Rudin ¶¶ 49-50. The County raised every conceivable evidentiary and legal issue in opposition to Plaintiff's claims and in support of its defenses and repeatedly advanced theories of admissibility that were not supported by the law and that the Court rejected, only to file additional motions and briefs re-raising them. In all, not including issues that were briefed and argued during the trial, Mr. Walker filed 16 motions *in limine*, while the County filed 8 motions *in limine* along with 5 additional "objections" that resembled legal briefs. Firsenbaum ¶¶ 200-206; Rudin ¶¶ 49-50.

The County's tactics should weigh heavily in the Court's determination of reasonableness. *See Lipsett v. Blanco*, 975 F.2d 934, 939 (1st Cir. 1992) ("[Defendant] mounted a Stalingrad defense, resisting [Plaintiff] at every turn and forcing her to win her hard-earned victory from rock to rock and from tree to tree. Since a litigant's staffing needs often vary in direct proportion to the

ferocity of her adversaries' handling of the case, this factor weighs heavily in the balance."); *see also* Brustin ¶ 15, 21.  And while the reference to Stalingrad may be considered hyperbolic, in this case, the County advanced its delaying strategies while Messrs. Boyd and Walker suffered from rapidly deteriorating health, resulting in a trial date that came after Mr. Boyd's death.  *See* Firsenbaum ¶¶ 148-152, 182-193; Rudin ¶¶ 3, 44, 46, 85.  While Plaintiffs repeatedly raised their health concerns, the County's attorneys responded not with cooperation but by raising new and ever more baseless arguments for delay.  *See* Firsenbaum ¶¶ 88-118, 148-152, 182-193, 241-243; Rudin ¶ 46 (describing the County's ongoing refusal to engage in good faith efforts to resolve discovery and evidentiary disputes, efforts to block Plaintiffs' settlements with the City, and repeated filing of meritless motions up to the day of the jury verdict).

In such unusual legal and factual circumstances, where a case lasts several years and is litigated aggressively by the defendant, courts recognize the need for an expenditure of significant time.  *See N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1142, 1146 (2d Cir. 1983) (upholding an award of 11,034 hours expended on a multiyear civil rights case).  Indeed, Judge Larimer described a comparable situation in language that applies here:

> To say that the [the County] vigorously defended this case would be an understatement.  The [County] contested everything, usually unsuccessfully. … [T]he [County] should not now be heard to complain because its own tactics necessitated plaintiffs' use of multiple attorneys, or forced plaintiffs' counsel to expend additional time on the case.  As the First Circuit colorfully put it in another case, the State "mounted a Stalingrad defense ..., battling from rock to rock and tree to tree. After setting such a militant tone and forcing the plaintiffs to respond in kind, it seems disingenuous for the [County] to castigate the plaintiffs for putting too many troops into the field."

*Catanzano v. Doar*, 378 F. Supp. 2d 309, 322–23 (W.D.N.Y. 2005); *see also* Brustin ¶¶ 15-16, 20-21.

Finally, Mr. Walker's attorneys have implemented the following methodology and reductions with respect to the number of hours billed:[2]

*First*, because certain work performed through the March 3, 2025, pre-trial conference was performed for both Mr. Walker's and Mr. Boyd's cases, Plaintiff has reduced virtually every billing entry from inception through that date by 50%. Firsenbaum ¶ 254-256; Rudin ¶ 52; Durland ¶ 91 (additionally, certain work only performed to further Mr. Boyd's case was written off entirely).[3] These allocation decisions benefit the County, as Plaintiff could have identified additional work prior to March 4, 2025, that was only performed in furtherance of his case and allocated 100% of the time to such work. *See* Chapman ¶ 32 ("WilmerHale is seeking reimbursement of fewer hours of fees than what I believe would be reasonable and necessary in representing Mr. Walker, given that nearly all of the work would have been performed even if the firm had not also represented Mr. Boyd."). Plaintiff's attorneys would have had to do substantially all of the same work for Mr. Walker's case alone and thus could have reasonably allocated all (or nearly all) of their work to this case, but have taken a more conservative approach. *Id.*

*Second*, for work performed prior to Mr. Walker's December 5, 2024, settlement with the City Defendants, Plaintiff reduced further every entry from the case's inception through that date by an additional 15%. Firsenbaum ¶¶ 259, 270; Durland ¶ 92; Rudin ¶ 52. This reduction allocates time based on the ratio of the recovery from the County to the recovery from all Defendants as a

---

[2] While it has generally applied the same reductions as WilmerHale and Rudin Law, Hoover & Durland, having fewer entries to review, has analyzed its individual time entries and submitted items as 100 % attributable to Mr. Walker, the County, or both where it was able to determine certain entries were entirely applicable to a specific Plaintiff, Defendant, or both. *See* Durland ¶¶ 91-92.

[3] While it has reduced billing entries it considered to apply to both Mr. Walker and Mr. Boyd's cases, Rudin Law has submitted certain items as 100 % attributable to Mr. Walker, where such work was originally categorized that way in its billing system. *See* Rudin ¶¶ 52-53.

whole (approximately 13.4% of Plaintiff's recovery is from the City Defendants and 86.6% from the County). *See also* Firsenbaum ¶ 259; Chapman ¶ 33. In addition, certain work only performed against the City Defendants was written off entirely. Firsenbaum ¶ 258; Durland ¶ 92; Rudin ¶¶ 52-54. Again, this methodology "is the epitome of reasonableness," as confirmed by Former U.S. Bankruptcy Judge Chapman. *See* Chapman ¶ 36. Plaintiff's attorneys would have had to do a substantial amount of the discounted work to litigate this case against the County alone but have taken a more conservative approach. *Id.* ¶ 33. Further, as explained in the Rudin Declaration at ¶ 46, the County refused to enter into serious settlement negotiations and Mr. Walker, due to his health concerns and his loss of litigation funding, had no choice but to settle with the City for a fraction of his actual damages—the County should not benefit any further from this desperate situation which its discovery and other delays brought about. Finally, he also could have, but chose not to, identify entries that could be attributed only to claims against the County and allocate 100% of the time to the County. *Id.* ¶¶ 52-53, 79.

*Third*, Plaintiff has reduced all remaining WilmerHale time entries by an additional 10%, to account for any block billing, a practice that has been deemed reasonable for fee petitions. *See*, *e.g.*, *Guadagno v. Astrue*, 2011 WL 3902749, at *3 (W.D.N.Y. Sept. 6, 2011) (applying a 10% reduction for time entries containing block billing). WilmerHale has done so to spare the Court and opposing counsel the need to conduct a time-consuming review of thousands of individual entries and has applied the 10% reduction regardless of whether any individual entries actually demonstrate this defect.

*Fourth*, WilmerHale has written off all billing entries reasonably determined to reflect "teaching" and "observational learning" for junior lawyers; all travel time to and from New York City (unless substantive work was performed during travel); all time billed by project assistants,

litigation support professionals, librarian/research professionals, summer associates, and all attorneys who were not part of the core team (with two exceptions described in the Firsenbaum Declaration); all administrative time; and time spent during most team meetings. Firsenbaum ¶¶ 260-264; Chapman ¶ 34. Rudin Law billed travel time at 50%. Rudin Ex. 3-8.

After applying these reductions, Plaintiff is submitting a total of 8567.95 hours from inception in November 2021 through April 30, 2025, even though in actuality timekeepers billed 21,228.6 hours during that time period. Firsenbaum ¶ 251; Rudin ¶ 52, Ex. 1; Durland Exhibit A.

**B.    The Requested Rates Are Reasonable.**

**1.    WilmerHale and Rudin Law Are Entitled to Out-of-District Rates**

Courts "generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (cleaned up). To overcome the presumption of local rates, "a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Id.* at 175. "In determining whether a litigant has established such a likelihood, the district court must consider experience-based, objective factors [such as] . . . counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise." *Id.* at 175–76. "Among the ways an applicant may make such a showing is by establishing that local counsel possessing requisite experience were unwilling or unable to take the case, or by establishing, in a case requiring special expertise, that no in-district counsel possessed such expertise." *Id.* at 176 (internal citation omitted).

Plaintiff has overcome the presumption here. As the supporting declarations show, Plaintiff's legal team brought a combination of specific experience, expertise, and resources that no law firm in the Western District possessed. Rudin Law has special expertise litigating § 1983

11

wrongful conviction lawsuits, especially *Monell* claims involving prosecutorial misconduct.  *See* Grable ¶ 31; Rudin ¶¶ 5-30; Brustin ¶¶ 4-14.  Indeed, Joel Rudin developed much of the case law in this area in the Second Circuit and is one of the few attorneys in New York who regularly handles such litigation.  *See* Rudin ¶¶ 5-30; Brustin ¶¶ 5-14.  Mr. Firsenbaum litigated multiple *Brady* and *Monell* cases before this one, including the *Dewey Bozella* case against Dutchess County, which helped form the strategy for Mr. Walker's case.  *See* Firsenbaum ¶¶ 9-15; Rudin ¶¶ 35.  The other attorneys on the WilmerHale team brought a wealth of relevant experience and the firm itself provided the resources necessary to litigate a complex case with no certainty of recovery. *See* Firsenbaum ¶¶ 19-51; Chapman ¶ 48.  And Spencer Durland and Tim Hoover brought multiple decades of civil and criminal litigation experience along with their particular knowledge of federal practice in the Western District of New York.  *See* Durland ¶¶ 7, 13-15, 20-22, 27; Rudin ¶ 35.

As explained in the Grable Declaration, the following facts justify the need for these out-of-district attorneys:

- Few in-district attorneys have experience litigating *Monell* cases, *see* Grable ¶¶ 26-29.

- No in-district attorneys have the experience necessary for a *Monell* case of the size and complexity of Mr. Walker's case against Erie County, *see id.* ¶¶ 30-43;

- The largest law firms in Buffalo represented the City and the County in this action, and thus were conflicted out, *see id.* ¶¶ 27, 38;

- It is highly unlikely that any Western District firm would have possessed or been willing to invest the resources (between the Walker and Boyd cases, costs and expenses have totaled about $800,000) to take on such a case with the likely years

12

of delay between the commencement of work and ultimate compensation, *see id.* ¶¶ 26-43;

- In cases of this complexity, attorneys must employ the use of experts, whose fees and costs are not recoverable under Section 1988, *see West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 102 (1991), and the additional expense would further dissuade local counsel from taking on the representation, *see* Grable ¶¶ 42-43;

- The local law firm that represented Mr. Walker in connection with his successful Section 440 motion declined to take on his Monell claim, *see id.* ¶ 26;

- Other *Monell* cases in the Western District have been brought by out-of-district law firms, *see id.* ¶ 29; and

- Mr. Walker *did* retain two of the top federal court litigators in the Western District, Spencer Durland and Timothy Hoover, to supplement the core team of out-of-district attorneys and they acknowledge they could not have pursued this case alone, *see id.* ¶¶ 23, 40, 43; *see also* Durland ¶¶ 21.

Plaintiff thus meets the *Arbor Hill* test: "retention of an out-of-district attorney was reasonable under the circumstances as they would be reckoned by a client paying the attorney's bill." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 191 (2d Cir. 2008).

The Second Circuit's decision in *Restivo v. Hessemann*, 846 F.3d 547 (2d Cir. 2017), is instructive. The district court concluded that a firm specializing in wrongful conviction litigation, NSB, had overcome the presumption that forum district rates should apply because NSB had "particular experience litigating wrongful conviction suits and … successfully litigated dozens of these cases nationwide, and that this experience was necessary given that 'this case was

13

exceedingly arduous and complex, involving extensive expert analysis and presentation of DNA evidence, spanning eight years and two trials.'" *Id.* at 590. The court noted that no lawyers based in-district had obtained a successful jury verdict in a § 1983 wrongful conviction suit and that NSB had "achieved an excellent result in a particularly complicated case." *Id.* The Second Circuit affirmed, finding the district court properly considered the relevant factors, and approving the district court's reliance on "litigation results" ($18 million for each plaintiff) where "they [we]re a direct result of the quality of the attorney's performance." *Id.* at 591.

Many other cases in this district and others in the Second Circuit have found out-of-district rates appropriate for the same reasons. *See Parks v. Saltsman*, 2024 WL 4440994, at *3 (W.D.N.Y. Oct. 8, 2024) (Geraci, J.) (awarding out of district rates where "successful litigation of th[]e claims required Plaintiff to investigate and disentangle [a] complicated factual situation" and relying on "[Nick] Brustin's … claims that [the New York City law firm's] work product and results would have substantially exceeded that of any local firm willing to take the case."); *Harvey v. Home Savers Consulting Corp.*, 2011 WL 4377839, at *4 (E.D.N.Y. Aug. 12, 2011) (plaintiffs made a "sufficiently particularized showing that it was reasonable to select out-of-district counsel in this case" based in part on non-profit lead attorney's inability to find an in-district firm "with sufficient resources and experience" and "the results that [out-of-district counsel] helped attain"); *see also Casaccia v. City of Rochester*, 2021 WL 4189707, at *4 (W.D.N.Y. Sept. 15, 2021) (Pedersen, M.J.) (plaintiff sufficiently rebutted the presumption of in-district rates that apply in fee awards for Rule 37 motions, albeit to a lesser extent than under § 1988, where out-of-district counsel had expertise in "vigorously pursu[ing] the discovery necessary to mount a potentially successful *Monell* claim.").

14

The same analysis applies here. Out-of-district counsel with specific experience and expertise succeeded in obtaining a $28 million jury verdict for one plaintiff. And this case was even more complex than *Restivo*. *Restivo* involved police misconduct in obtaining an arrest and conviction in the 1980s and was brought against individual defendants, without any *Monell* claim advancing to trial. 846 F.3d at 552-68. Here, the *Monell* claim presented to the jury required proving not only prosecutorial misconduct in Mr. Walker's case, including involvement in manufacturing the case and then suppressing *Brady* material, but also unconstitutional policies, customs, and practices by the ECDA from nearly 50 years ago. *See* Firsenbaum ¶¶ 60, 175. And unlike *Restivo,* counsel here had to prove Mr. Walker's claims based upon a far more complex criminal case record that included transcripts of lengthy pretrial hearings and three criminal trials, and events at a fourth trial that had not been transcribed, which the County exploited to raise (unsuccessful) defenses of lack of materiality, lack of causation, and superseding cause.

### 2.    The *Johnson* Criteria Support the Requested Rates

The reasonable hourly rates to be applied under § 1988 are "the prevailing market rates in the relevant community." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)); *see also Arbor Hill*, 522 F.3d at 190 ("[t]he reasonable hourly rate is the rate a paying client would be willing to pay"). Congress "intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases." *Blum*, 465 U.S. at 893 (citation omitted). In determining the specific applicable market rate, "the district court, in exercising its considerable discretion, [should] bear in mind *all* the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Arbor Hill*, 522 F.3d at 190. The Second Circuit noted that courts should consider the traditional factors outlined originally in the Fifth Circuit's decision

in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Id.* The *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Lilly v. City of New York*, 934 F.3d 222, 228 (2d Cir. 2019) (quoting *Arbor Hill*, 522 F.3d at 186 n.3). Every one of these factors supports Mr. Walker's requested rates.

**Time and Labor Required.** Given the difficulty of proving a *Monell* claim arising from events from nearly 50 years ago, the time and labor required was enormous, as the time records show. This investment of time, on a contingency fee basis, for small firms such as Rudin Law and Hoover & Durland, was highly risky. *See* Rudin ¶¶ 36, 38, 57, 62; Durland ¶ 27; Grable ¶¶ 26, 28, 31-32, 39-42; Brustin ¶¶ 15-17, 20. Meanwhile, Rudin Law and WilmerHale collectively invested close to a million dollars in costs and expenses. *See* Rudin ¶ 77; Firsenbaum ¶ 269-277.

**Novelty and Difficulty of Questions and Level Of Skill Required.** "Complex cases of long duration litigated by well-experienced counsel warrant a court to consider a comparatively high hourly rate." *Central de La Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 2019 WL 2870721, at *6 (E.D.N.Y. June 18, 2019); *see also Knox v. John Varavatos Enters., Inc.*, 520 F. Supp. 3d 331, 342 (S.D.N.Y. 2021) ("[W]e put great emphasis on the fact that the performance of the plaintiffs' attorneys in the courtroom and the quality of the papers they filed with the Court was extraordinary . . . ."); *Homeaway.com, Inc. v. City of New York*, 523 F. Supp. 3d 573, 596 (S.D.N.Y. 2021) (approving "higher billing rates" where a matter involved "difficult constitutional

16

questions" because those types of cases require "impressive credentials and deep relevant experience" of counsel); *Lynch v. City of New York*, 2021 WL 5140728, at *1 (S.D.N.Y. Nov. 4, 2021) (discussing "[t]he expensive and time-consuming discovery on *Monell* claims"); *Stoeckley v. Nassau Cnty.*, 2015 WL 8484431, at *2 (E.D.N.Y. Dec. 9, 2015) ("Conducting discovery on a *Monell* claim is a time-consuming and expensive undertaking."); *Allison v. Gallagher*, 2012 WL 4760863, at *3 (N.D. Ill. Oct. 5, 2012) ("[L]itigation of *Monell* claims often is labor intensive for attorneys . . . ."); *Moore v. City of Chicago*, 2007 WL 3037121, at *9 (N.D. Ill. Oct. 15, 2007) ("[C]laims of municipal liability require an extensive amount of work on the part of plaintiff's attorneys and experts . . . .").

This case raised a significant number of difficult factual and legal issues before and during the three-week trial. *See* Rudin ¶¶ 33-39, 50; Firsenbaum ¶¶ 81, 117, 241; Durland ¶¶ 61, 62, 64, 72, 84; Grable ¶¶ 24-25, 37-38; Brustin ¶¶ 15-16, 20. Just as in *Rosario v. City of New York*, "Plaintiff's counsel in effect had to relitigate a decades-old murder trial while fitting Plaintiff's claim into the complex and evolving legal doctrines governing this area of civil rights litigation." 2023 WL 2523624, at *2 (S.D.N.Y. Mar. 15, 2023). Plaintiff's counsel had to argue novel questions involving the application of *Brady*; municipal liability under *Monell*; causation and superseding cause principles; admissibility of evidence under the hearsay rules, including the ancient records exception; inadmissibility of prior bad act evidence; admissibility of various forms of expert testimony; and many other issues that this Court no doubt well remembers having to decide. Plaintiff's counsel relied on intricate and detailed cross-examinations that were based upon meticulous preparation and a mastery of sophisticated former prosecutors' voluminous prior testimony and thousands of pages of documents. These cutting-edge civil rights issues were handled successfully because of counsels' experience and expertise in the specific subject matter

coupled with their trial experience more generally.  The supporting Rudin, Firsenbaum, Grable, Brustin and Chapman Declarations explain all of this in more detail.  Rudin ¶¶ 30-50; Firsenbaum ¶¶ 66-68, 74-75, 92, 117-118; Grable ¶¶ 30-47, 49; Brustin ¶¶ 4-14, 18; Chapman ¶¶ 37-49.

*Preclusion of Other Employment.*  The 10 lawyers from the three firms who were present in Rochester for nearly four weeks trying this case, working in many instances more than 15 hours per day, obviously could not handle any other work during that time.  That was especially difficult for the two smaller firms.  Both Rudin Law and Hoover & Durland were forced to expend a substantial proportion (and at times almost all) of their resources committed to this matter, especially as it headed towards trial, which precluded both firms from working on existing matters or accepting new ones.  Rudin ¶ 63; *see also* Brustin ¶ 21.  This is just one reason why WilmerHale was a critical part of the team, as it had the resources to devote more than 11,000 hours of attorney and paralegal time that it otherwise could have used for other work, but even their lawyers were limited in the work they could perform on other cases, especially during trial.  Firsenbaum ¶ 251, 265.  *See also* Chapman ¶ 38 ("WilmerHale was uniquely qualified to devote the necessary resources to analyzing and organizing [a] quantum of information.").

*Attorneys' Customary Hourly Rate*.  The rates that Plaintiff's counsel requests are equal to (or, in WilmerHale's case, substantially lower than) the rates that they typically charge their fee-paying clients.  *See* Rudin ¶¶ 59, 64, 69, 73; Firsenbaum ¶ 250, Durland ¶ 87; Brustin ¶ 18; Grable ¶¶ 45-47; Chapman ¶¶ 28-29.

*Whether the Fee is Fixed or Contingent.*  Payment for Rudin Law and Hoover & Durland was and is contingent upon success, including collection.  Thus, these firms took an enormous risk in handling this case, which a fee award should take into account.  While WilmerHale agreed that Mr. Walker would not need to compensate the firm, the Supreme Court has made clear that under

Section 1988, a plaintiff is entitled to fees for such attorney's work.  *See Blum*, 465 U.S. at 895 ("[Courts] must avoid ... decreasing reasonable fees because the attorneys conducted the litigation more as an act of pro bono publico than as an effort at securing a large monetary return." (quoting *Stanford Daily v. Zurcher*, 64 F.R.D. 680, 681 (N.D. Cal. 1974))); *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989) ("That a nonprofit legal services organization may contractually have agreed not to charge *any* fee of a civil rights plaintiff does not preclude the award of a reasonable fee to a prevailing party in a § 1983 action, calculated in the usual way.").

*Time Limitations Imposed by the Client or the Circumstances.*  Both clients suffered from serious illnesses that made their cases fraught.  Darryl Boyd developed pancreatic cancer and tragically passed weeks before his trial was scheduled to begin; Mr. Walker is suffering from lung cancer, has suffered a heart attack, suffers from a back injury that makes it impossible for him to walk unaided, and is painfully frail.  *See* Rudin ¶¶ 3, 44, 46, 85; Firsenbaum ¶¶ 148, 232.  Counsel felt constant pressure to litigate these cases as quickly as possible because of their clients' dire health, which added to the stress and the cost of the litigation.  *See* Rudin ¶¶ 44; Firsenbaum ¶¶ 89, 91, 120, 148-152, 184-193.

*Amount Involved in the Case and the Results Obtained*.  The "most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained by the plaintiff.'"  *Rothman v. City of New York*, 2020 WL 7022502, at *2 (S.D.N.Y. Nov. 30, 2020) (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008)).  Mr. Walker lost his entire adult life and so the amount of damages at stake was extremely high.  The $28 million verdict speaks for itself.

*Experience, Reputation, and Ability of Lawyers*.  As reflected in the supporting declarations, and as this Court could judge for itself from reviewing the firms' written work, legal

arguments, and trial performance, Mr. Walker's counsel had the expertise, ability, and resources necessary to achieve the result obtained and also are entitled to their requested rates based upon their high reputations generally and in this field.  *See* Rudin ¶¶ 5-30, 35-26, 43, 50; Firsenbaum ¶¶ 8-61, Durland ¶¶ 13-15, 18-22, 27; Brustin ¶¶ 4-14, 16; Grable ¶¶ 30-49; Chapman ¶ 48.

 ***The Undesirability of the Case.***  While Mr. Walker's case was sympathetic, the difficulty of his claim, the years it would take to litigate, including thousands of hours of attorney time and hundreds of thousands of dollars in expenses, and the uncertainty of the outcome, made his case undesirable to most law firms; neither the local lawyer who obtained the vacatur of his conviction and was most knowledgeable about the case, nor NSB, despite its expertise in the field, agreed to take the case.  *See* Rudin ¶¶ 31-32; Grable ¶¶ 26, 28-29, 32, 36-43; Brustin ¶ 16; Durland ¶ 27.

 ***Rates Awarded in Similar Cases.***  Mr. Walker's requested rates are in line with awards in similar contemporaneous civil rights cases.  A relevant example is in *Rosario*, where Mr. Rosario alleged that he was wrongfully convicted (and incarcerated for 20 years) due to three officers' fabrication of evidence and withholding of *Brady* information.  2023 WL 2523624, at * 1.  There was no *Monell* claim.  *See id.*  After four years of litigation and a ten-day trial, a jury returned a verdict against one of the officers but rejected claims against the others.  *See id.* at * 2, 4.  The jury awarded Mr. Rosario $5 million, or $250,000 per year of incarceration.  *See id.* at * 1.  The court awarded NSB's requested rates of $900/hour for the senior partner, Nick Brustin; $800/hour for two junior partners; $500/hour for an attorney who was promoted from associate to partner during the litigation; between $450-$325/hour for associates; and $200/hour for paralegals and law clerks. *See id.* at * 5; *see also* Brustin ¶ 19.

 Plaintiff's counsel achieved a comparatively higher level of success here, winning a *Monell* claim and a $28,000,000 jury verdict.  As the attached declarations show, Joel Rudin, who seeks

his current rate of $950/ hour, is 17 years senior to Mr. Brustin and, as Mr. Brustin recognizes, is a peer of Mr. Brustin, his partners Barry Scheck and Peter Neufeld, and other leading attorneys in the field. *See* Rudin ¶¶ 5, 59; Brustin ¶¶ 4-5, 18-19. While Mr. Firsenbaum graduated law school 10 years after Mr. Brustin, he has spent nearly 20 years litigating at a leading law firm with substantially greater overhead and costs and personally has significant experience litigating complex matters with large sums at stake, managing large teams, and trying cases. *See* Firsenbaum ¶¶ 9-18; Chapman ¶ 48. The fee requests for the senior associates who have worked on this case are comparable to the award for senior associates in *Rosario,* and Rudin Law is requesting the same rate of $200/hour, for paralegal time.

The *Rosario* court made the further point, applicable here too, that the "requested rates are also approximately half of the rates charged by lawyers in Manhattan at large law firms that typically represent corporate entities in complex commercial disputes," and that although those firms operate on a different model, "those differences are fully accounted for by the large gap between Plaintiff's requested rates and those larger firms' analogous rates." *Rosario*, 2023 WL 2523624, at *3.[4] While WilmerHale is one such law firm, it has substantially discounted its rates

---

[4] The rates approved in *Rosario* are consistent with other civil rights cases. *See, e.g.*, *Houser v. Pritzker*, No. 10-cv-3105 (S.D.N.Y. Sept. 20, 2016), Dkt. No. 377 ($875/hour for partners; $850/hour for senior counsel; $450 for senior associate); *Williams v. Metro-North R.R. Co.*, 2018 WL 3370678, at *8 (S.D.N.Y. June 28, 2018) ($800/hour for partner), *report and recommendation adopted*, 2018 WL 3368713 (S.D.N.Y. July 10, 2018); *see also Rosenfeld v. Lenich*, 2022 WL 2093028 (E.D.N.Y. Jan. 19, 2022) ($900/hour for senior partner even though rates in the Eastern District usually are lower).

In *Zahrey v. Ctiy of New York*, No. 98-cv-4546 (S.D.N.Y. June 8, 2010), Dkt. No. 264, Mr. Rudin was awarded $575 per hour by Magistrate Judge James Francis 15 years ago in a similarly complex wrongful prosecution case, and his firm was awarded $1.6 million for 4,268 hours of work. Rudin, Ex. 11 at 32, 46–47. The hourly award for Mr. Rudin, in today's dollars, would be approximately $846/hour. The fee award would be $2.4 million. At the time Mr. Rudin undertook the *Zahrey* case in the 1990s, his experience had been primarily as a criminal defense attorney, not a civil rights litigator, but that situation has drastically changed since then: he is now a leading

to 56% of its standard rates in accordance with caselaw from this Circuit and so that its senior partner's rate is roughly the same as Mr. Rudin's. *See* Firsenbaum ¶ 18, 250; Chapman ¶¶ 29-30; *Parks*, 2024 WL 4440994, at *3 (W.D.N.Y. 2024) (awarding lead partner from Emery Celli Brinckerhoff Abady Ward & Maazel LLP slightly over 72% of his standard rate); *Robinson v. N.Y.C. Transit Auth.*, 2024 WL 4150818, at *11 (S.D.N.Y. Aug. 16, 2024) (awarding a partner at Faegre Drinker Biddle & Reath, LLP approximately 56 % of his standard rate in a large civil rights litigation even though there was no evidence that the partner "had any experience" in the type of civil rights litigation at issue); *C.D. v. Minisink Valley Cent. Sch. Dist.*, 2018 WL 3769972, at *4 (S.D.N.Y. Aug. 9, 2018) (noting the "reputation, and ability of the attorneys" and the "customary fee" as important factors when determining the reasonableness of requested hourly rates); *Heng Chan v. Sung Yue Tung Corp.*, 2007 WL 1373118, at *3 (S.D.N.Y. May 8, 2007) (taking into account firm's relative overhead in determining hourly rate). Here, Mr. Firsenbaum's specific and extensive experience in *Brady* and *Monell* cases, along with the rest of the WilmerHale team's credentials and resources, more than justifies WilmerHale's request for 56% of its attorneys' standard rates. *See* Firsenbaum ¶¶ 8-61; Chapman ¶¶ 28-36; Grable ¶¶ 33-41, 48-49.

### C.    Mr. Walker's Victory Merits a Fee Enhancement.

Mr. Walker's victory represents the rare case where the Court should enhance his attorneys' fees under § 1983 beyond the lodestar "due to superior performance and results." *Perdue*, 559 U.S. at 546. The case law explains that enhancement is reserved for those "extraordinary circumstances … in which superior attorney performance is not adequately taken into account in the lodestar calculation." *Id.* at 546, 554. In this case, Plaintiff's counsel achieved

---

civil rights attorney, especially in the *Monell* area. Thus, as Mr. Brustin points out in his Declaration, Mr. Rudin's requested rate of $950/hour is if anything low. *See* Brustin ¶ 18.

a resounding victory exposing systemic injustice in a case where the County adopted a strategy of consistent delay and refused to engage in serious settlement negotiations.  *See* Rudin ¶¶ 2, 46, 58; Firsenbaum ¶¶ 88-118, 148-152, 167-171, 182-193, 228-233; Grable ¶¶ 24-25, 38.   These extraordinary circumstances directly mirror recent cases where courts have found an enhancement necessary to vindicate the interests of justice.  *See, e.g.*, *Bass v. Dellagicoma*, 2013 WL 3336760, at *11 (D.N.J. June 28, 2013) (awarding 15% enhancement); *Villegas v. Metro. Gov. of Davidson Cnty.*, 2012 WL 4329235, at *15-16 (M.D. Tenn. Sept. 20, 2012) (awarding 100% *Perdue* enhancement in part due to "the economic risks to Plaintiff's counsel in representing Plaintiff").  Consistent with the foregoing, a 15 % enhancement of attorneys' fees in this case is warranted.[5]

## II.     Mr. Walker Is Entitled to the Fees and Costs Incurred in Connection with this Motion and All Post-Trial Proceedings.

The time spent and costs preparing the fee application is compensable as part of the attorney's fees to be awarded, *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1183-84 (2d Cir. 1996), and Mr. Walker's counsel seeks such fees and costs.  This application accounts for attorney time and costs through April 30, 2025.  We will submit requests for payment of additional attorney time and costs reasonably incurred thereafter in post-judgment proceedings.  *See*, *e.g.*, *Tolbert v. Queens College*, 242 F.3d 58, 78 (2d Cir. 2001) (recognizing right to pursue attorney fees for any appellate proceedings); *Gonzalez v. Bratton*, 247 F. Supp. 2d 432, 434, 437 (S.D.N.Y. 2003) (awarding supplemental attorneys' fees and costs for post-judgment proceedings).

## III.    The Court Should Award $388,890.16 in Costs Through April 2025

The Federal Rules of Civil Procedure state that unless provided otherwise, "costs … should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1).  Permissible costs are "those

---

[5] Applying a 15% fee enhancement to the requested $5,519,103.06 based on the lodestar yields a total of $6,346,968.519 in attorney's fees.

reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (citations omitted). While "routine office overhead" must be absorbed within the attorney's hourly rate, reasonable out-of-pocket expenses include "photocopying, travel, and telephone costs." *Payne v. Kirkland*, 2017 WL 5952707, at *5 (S.D.N.Y. Nov. 30, 2017) (citations omitted). Filing fees, process server fees, deposition fees, deposition transcription fees, litigation support services, printing costs, travel expenses, and postage also are reasonable out-of-pocket expenses. *Jones v. City of New York*, 2021 WL 3773460, at *4, *22 (S.D.N.Y. Aug. 24, 2021); *Bhungalia Family, LLC v. Agarwal*, 317 F. Supp. 3d 727, 745 (S.D.N.Y. 2018).

Costs are also recoverable under Section 1988. "[A]n award of costs under § 1988 normally includes those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged to fee-paying clients." *Homeaway.com, Inc.*, 523 F. Supp.3d at 589. "Recoverable disbursements include such items as legal research, photocopying, postage, transportation, and filing fees." *Id.* They also include the cost of transcripts and for certain outside consultants. *See Rosario*, 2023 WL 2908655, at *15 (awarding $8,865.37 for transcripts and $44,415.50 for jury consultant fees); *Ravina v. Columbia Univ.*, 2020 WL 1080780, at *14-15 (S.D.N.Y. Mar. 6, 2020) (awarding $69,555.70 for transcripts, and $100,000 for trial support services (including jury consulting)); *Altvater Gessler-J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.*, 2011 WL 2893087, at *7 (S.D.N.Y. July 14, 2011) (awarding $50,000 for graphics services and trial technology assistance under Lanham Act cost shifting where "the visual aids presented at trial were helpful to the jury and the court by focusing attention on the salient documents and concepts"); *BD v. DeBuono*, 177 F. Supp. 2d 201, 204 (S.D.N.Y. 2001) (awarding $121,927.50 for trial preparation consultant fees (including jury consulting)). Likewise, the

"literal expenses of travel, such as airfare and hotel[s]" can be properly awarded to prevailing parties under Section 1988. *See DiSorbo v. City of Schenectady*, 2004 WL 115009, at *5 (N.D.N.Y. Jan. 9, 2004). Courts also award the cost of meal expenses for traveling attorneys. *See Clark v. Phillips*, 965 F. Supp. 331, 338 (N.D.N.Y. 1997) (awarding meal expenses in costs as "an attorney who is away from his office for the benefit of his client is entitled to be reimbursed for meal expenses").

Here, Exhibit D to the Firsenbaum Declaration and Exhibit 2 to the Rudin Declaration request $171,141.52 and $217,748.64 in costs, respectively. The Rudin Firm seeks reimbursement for travel-related expenses including airfare, hotel, and meals; deposition and trial transcript fees; private vendor copying charges; investigative expenses; local counsel fees; court filing fees; FedEx charges, and the fees of a jury consultant firm. WilmerHale seeks reimbursement of costs for travel and out-of-town lodging and meals, court filing fees, courier services to transport documents, equipment rentals for setting up an office in Rochester for trial, vendor fees, and data hosting, while writing off over $80,000 of additional expenses. Firsenbaum ¶¶ 269-277. Both firms have eliminated categories of costs that would otherwise be recoverable, such as Westlaw and in-house copying charges. Both firms' costs are normally billed to fee-paying clients in this district and were reasonably incurred during this litigation. Rudin ¶ 77-90; Firsenbaum ¶ 269. The expenses are the types routinely recoverable through fee awards. *See*, *e.g.*, *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 211 (E.D.N.Y. 2007).

## CONCLUSION

For these reasons, the Court should grant Plaintiff's motion for attorneys' fees and costs through April 30, 2025, plus award Plaintiff reasonable attorneys' fees and costs incurred during future periods as set forth in periodic supplemental fee applications.

Dated:        May 30, 2025                    Respectfully submitted,

                                             **WILMER CUTLER PICKERING**
                                             **HALE AND DORR LLP**
                                             By: /s/ Ross E. Firsenbaum
                                             Ross E. Firsenbaum
                                             Gideon A. Hanft
                                             Phoebe Silos
                                             Erin Hughes
                                             Trena Riley
                                             Melissa Zubizarreta
                                             7 World Trade Center
                                             250 Greenwich Street
                                             New York, New York 10007
                                             (212) 230-8800
                                             *ross.firsenbaum@wilmerhale.com*

                                             **LAW OFFICES OF JOEL B. RUDIN, P.C.**
                                             By: /s/ Joel B. Rudin
                                             Joel B. Rudin
                                             David E. Rudin
                                             Partha Sharma
                                             Carnegie Hall Tower
                                             152 West 57th Street, 8th Floor
                                             New York, New York 10019
                                             (212) 752-7600
                                             *jbrudin@rudinlaw.com*

                                             **HOOVER & DURLAND LLP**
                                             By:  /s/ Spencer L. Durland
                                             Timothy W. Hoover
                                             Spencer L. Durland
                                             561 Franklin Street
                                             Buffalo, New York 14202
                                             (716) 800-2600
                                             *sdurland@hooverdurland.com*

                                             *Attorneys for Plaintiff John Walker, Jr.*