**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| JOHN WALKER, JR. | ) | |
| | ) | |
| Plaintiff, | ) | **Docket No.: 1:22-cv-520** |
| | ) | |
| - against - | ) | |
| | ) | |
| THE COUNTY OF ERIE, | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF JAMES W. GRABLE, JR. IN SUPPORT OF PLAINTIFF'S**
**APPLICATION FOR ATTORNEYS' FEES AND COSTS**

1.      I, James W. Grable, Jr., submit this declaration in support of the petition by Plaintiff John Walker, Jr. for attorneys' fees incurred by the law firms of Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale"), the Law Offices of Joel B. Rudin P.C. (the "Rudin Firm"), and Hoover & Durland LLP ("Hoover & Durland") (collectively, "Plaintiff's counsel").  I have familiarized myself with this matter and reviewed the attorney hourly rates that Plaintiff has used to calculate the lodestar.  I believe those rates to be reasonable, fair, and appropriate as a basis upon which this Court may award attorneys' fees.

2.      I graduated *magna cum laude* and *Phi Beta Kappa* from the State University of New York at Buffalo in 1993.  In 1996, I graduated with honors from the State University of New York at Buffalo Law School, where I served as Editor-in-Chief of the Buffalo Law Review and was a mock trial champion.

3.      After graduating from law school, I served as a confidential law clerk to the Honorable William M. Skretny, United States District Court Judge for the Western District of New York from 1996 through 1998.  As law clerk to Judge Skretny, I worked on several trials in this

1

two-year period, including *Capton et al. v. City of Niagara Falls, et al.*, Docket No. 95-cv-149-WMS, which involved *Monell* claims against various defendants, including the Niagara Falls Police Department and various officers of that Department.  In that case, I assisted Judge Skretny, and he ultimately granted plaintiff's counsel's motion for attorneys' fees on March 2, 2000, awarding $249,522 in fees and $32,566.86 in costs to counsel.  The jury in that case awarded that plaintiff $1,000,000 in compensatory damages and $100,000 in punitive damages on February 7, 1997.

4.     Following my clerkship, I entered private practice in Buffalo with the law firm Connors & Vilardo, LLP.  I am admitted to practice in New York; the Western District of New York; the Southern District of New York; and the United States Court of Appeals for the Second Circuit.  My practice includes representing both plaintiffs and defendants in civil rights cases.  In 2006, for example, I tried a civil rights case under 42 U.S.C. § 1983 in the Western District of New York (*Womack v. Mackay, et al.*, Docket No. 02-cv-390).  Although the jury returned a verdict for the defense in that trial, the Court granted me reimbursement of my costs, and ultimately, the Western District awarded me the "Special Service Award" for that trial "in recognition of [my] outstanding pro bono counsel representation and dedication."  Since then, and throughout my practice, I have litigated federal and state civil rights cases for both plaintiffs and defendants.

5.     I became a partner in Connors & Vilardo in 2004.  In 2015, the firm became Connors LLP when my partner, the Honorable Lawrence J. Vilardo, ascended to the bench in the Western District of New York.  I have practiced and served as a partner at Connors LLP through the present.

6.     My practice focuses on complex federal criminal and civil litigation, and handling trial and appellate matters in federal and state courts, including civil rights cases.  I have

represented clients on matters nationwide and throughout New York State, including New York City and in the Southern District of New York, litigating both with and against large law firms. Through my 27 years of work in private practice, I became familiar with the experience (and in some instances, the lack thereof) of attorneys in this district pursuing *Monell* claims for plaintiffs and the rates charged by attorneys in this district.

7.      I remain licensed to practice law and a member of the bar in good standing in all of the jurisdictions in which I was admitted.  I also am a member of the American Bar Association, the New York State Bar Association, and the Bar Association of Erie County.

8.      Throughout my practice I also have served in Criminal Justice Act cases in the Western District of New York, first on the training panel, then as panel counsel, and now on the Emeritus Panel.  In that work, I represent indigent individuals facing criminal charges.  In 2019, the United States District Court for the Western District of New York presented me with the Criminal Justice Act Award "[i]n recognition of and appreciation for distinguished criminal defense work representing indigent defendants" in the district "and for consistently providing stellar and zealous advocacy to ensure that each criminal defendant receives a full and fair defense without regard to financial circumstances."

9.      For several years, I was an adjunct professor of trial technique at the State University of New York at Buffalo Law School, where I also helped coach the law school's National Trial Team.  I am currently the coach of the law school's National Trial Team.

10.      In 2019, I was elected a Fellow at the International Academy of Trial Lawyers.

11.      In many of the large matters on which I have worked over the years, I have been not only the lead partner in providing services to the client, but also the partner responsible for billing.  I have reviewed well over a thousand invoices and submitted them to clients, and I have

dealt with client questions about those billings. Further, over many years in my role as counsel for corporations in criminal investigations and civil litigation, I have reviewed invoices from counsel acting for individuals who are themselves subjects or targets of such investigations or of interest in civil litigation proceedings. Many of these individuals are represented by large firms like WilmerHale, as well as small to mid-size firms and solo practitioners. As a result, I have broad experience, spanning many years, with the market rates charged by counsel in the Western District of New York (the "Western District"). I have also been responsible for negotiating rates with clients on matters based in the Western District. I also have been involved in numerous "pitches" to prospective clients. Such presentations always include broad and detailed presentations concerning billing, estimates, and possible alternative fee arrangements.

12.     As a result of my experience gained through years of management and practice, including setting and charging clients our own hourly rates, I am quite familiar with the applicable rates lawyers charge in the Western District market for complex civil litigation undertaken by large law firms. Over the past 29 years dating back from my clerkship with Judge Skretny to the present, I also have become familiar with the rates and total amounts billed by firms—large international firms like WilmerHale; mid-size regional firms; small local firms; and solo practitioners—representing plaintiffs and defendants in civil rights cases.

13.     Moreover, as a result of the practice of law, bar association membership and other community involvement for decades in the Western District, I have become familiar with the local bar, the major civil rights claims that have (and have not) been brought against in-district municipalities, their outcomes, and the law firms in the District that practice in this area. I also know and understand the substantive legal framework for Section 1983 civil rights litigation,

4

*Monell* civil rights claims, as well as the availability of fee shifting pursuant to Section 1988 and other fee shifting statutes.

14.    In forming an opinion on what would constitute a reasonable fee for the attorney services in this case, I have reviewed, among other things, the docket sheet, the declaration of Ross E. Firsenbaum in support of Plaintiff's application for fees and costs (the "Firsenbaum Decl."), the declaration of Joel B. Rudin in support of Plaintiff's application for fees and costs (the "Rudin Decl."), the declaration of Spencer L. Durland in support of Plaintiff's application for fees and costs (the "Durland Decl."), the declaration of Nick Brustin in support of Plaintiff's application for fees and costs (the "Brustin Decl."), and the documents (or portions thereof) of the documents cited in this declaration. I was given the opportunity to review any documents associated with this case that I needed.

15.    I was also given the opportunity to discuss this fee request with any attorneys from the Plaintiffs' firms to whom I wished to speak. In particular, I have conferred with Ross Firsenbaum, Ryanne Perio, Timothy Hoover, Spencer Durland, Gideon Hanft, Erin Hughes, and David Rudin about the nature of this case, the Plaintiff's firms' work on it, and the work for which Plaintiff is seeking fees.

16.    I also had the opportunity to conduct whatever legal or other research I deemed appropriate concerning the issues raised in my opinion.

17.    In October 2024, I testified as an expert in a state court fee hearing dispute, *Broadway Warehouse Co. v. Buffalo Barn Board, LLC*, Index No. 2019-805890. My testimony was received by the referee and cited in her report recommending an award of fees in that case.

18.     I am being compensated for my time in this matter at the rate of $500 per hour, plus reimbursement of expenses.  None of this compensation is conditioned on or altered by the outcome of this matter.

19.     I may supplement this report and my opinions after receipt of additional documentation to respond to assertions made by the County or any expert retained thereby, and/or in connection with any supplemental fee application submitted by Plaintiff in this matter.

### OVERVIEW OF *WALKER V. COUNTY OF ERIE*

20.     This civil action stems from the Plaintiff's wrongful conviction.  Mr. Walker spent 22 years incarcerated and 17 years on parole for the 1976 murder of William Crawford in Buffalo, New York.  On August 18, 2021, the New York Supreme Court, County of Erie, vacated Mr. Walker's convictions for second-degree murder and first-degree robbery, on the basis that Erie County prosecutors had not disclosed to Mr. Walker's trial counsel certain photographs that contradicted the prosecution's theory of the crime and pointed to an alternate suspect.  Firsenbaum Decl. ¶ 59; Rudin Decl. ¶ 34.

21.     Following the vacatur of his convictions, Mr. Walker retained the Rudin Firm and WilmerHale to represent him in this instant action, a civil lawsuit under 42 U.S.C. § 1983 against the County of Erie (the "County"), the City of Buffalo (the "City"),  and individual Buffalo Police Department officers Michael G. Guadagno, John Montondo, Martin Bullock as Executor for the Estate of James E. Hunter, Linda J. Fial as Executor for the Estate of Robert Grabowski, Jennifer G. Flannery as Administrator for the Estate of Robert F. Arnet, Jennifer G. Flannery as Administrator for the Estate of Leo J. Donovan, Jennifer G. Flannery as Administrator for the Estate of Francis M. Manista, Jr., and Dawn M. Dirienzo as Executor for the Estate of Paul R. Delano)  for the constitutional violations that caused his wrongful conviction (together with the

City, the "<u>City Defendants</u>").[1]  Firsenbaum Decl. ¶¶ 60, 62; Rudin Decl. ¶¶ 31-35; Durland Decl. ¶¶ 26-27; *see also* ECF No. 78, Amended Complaint.

22.    Mr. Walker filed a Complaint on July 6, 2022.  ECF No. 1, Complaint.  His *Monell* claim against the County asserted that the Erie County District Attorney's Office had unconstitutional *Brady* disclosure and summation policies, customs, or practices that caused the violations of Mr. Walker's constitutional rights in connection with his 1977 criminal trial.  ECF No. 1, Complaint ¶¶ 486-655; ECF No. 78, Amended Complaint ¶¶ 495-694.

23.    Shortly after the County filed its Answer, Mr. Walker retained Tim Hoover and Spencer Durland of the Buffalo law firm, Hoover & Durland, as local counsel.  Firsenbaum Decl. ¶ 86; Rudin Decl. ¶ 35; Durland Decl. ¶ 28.

24.    Following the completion of fact discovery, which included depositions totaling 5,163 pages to preserve testimony from witnesses, Firsenbaum Decl. ¶ 166, and expert discovery, the County filed a motion for summary judgment.  Plaintiff's counsel responded with a 91-page opposition brief, 126 exhibits, and a 330-page response to the Defendants' statements of undisputed facts and statement of additional material undisputed facts.  Firsenbaum Decl. ¶ 174. This significant undertaking demonstrates not only the legal and factual complexity involved in this case, but the massive record developed by Plaintiff's counsel during their investigation and over the course of discovery.

25.    The fifteen-day jury trial began in March 2025.  Firsenbaum Decl. ¶ 2.  On April 8, 2025, a jury returned a verdict in Mr. Walker's favor on two theories of liability (Brady violations and summation misconduct), awarded Mr. Walker a historic $28 million in damages, and rejected the County's defense of apportionment.  ECF 366, Jury Verdict.

---

[1] Mr. Walker settled his claims against the City Defendants for $4.35 million on December 5, 2024. Firsenbaum Decl. ¶¶ 257, 259.

**STATEMENT OF OPINIONS**

### A.  There is a Lack of Western District Firms That Litigate *Monell* Cases

26.     *Monell* cases are complex and require significant output, involving many years of effort with uncertain prospects of recovery.  Like commercial litigation and white-collar criminal litigation matters, *Monell* cases involve significant and complex discovery obligations, substantial expert analysis, and an understanding of nuanced legal doctrines (both substantive and procedural). They are often litigated on a contingency basis and do not generate any revenue until the completion of the matter.  Because of this complexity and uncertainty, there are no law firms in the Western District that have traditionally litigated, or developed material expertise in, complex *Monell* litigation such as this action, even among firms with dedicated pro bono or public interest practices.  I understand that even the law firm Lipsitz Green Scime Cambria LLP, a large Buffalo firm with a dedicated pro bono practice that represented Mr. Walker in his successful N.Y. C.P.L. § 440 motion to overturn his conviction, declined to represent Mr. Walker (and Mr. Boyd) in civil litigation arising out of the wrongful conviction they helped overturn.  *See* Rudin Decl. ¶ 32.

27.     While some larger firms in the Western District, such as Hodgson Russ LLP, have robust pro bono practices and the resources to litigate complex *Monell* cases like this one, such firms have pre-existing relationships with the City of Buffalo and/or the County of Erie, and therefore would be conflicted from representing a plaintiff in a case like this.

28.     And even the Buffalo law firms that prevailed in the pursuit of the *Monell* claims in the case tried before Judge Skretny and a Western District jury in 1997 did not develop a civil rights or *Monell* practice at their firms despite Judge Skretny's award of what was, at the time, a relatively substantial award of attorneys' fees and costs.  It is my understanding that those Buffalo firms, and the lawyers involved who tried the case successfully, found the experience too daunting and the payoff not sufficient enough to justify developing that practice area and litigating

8

additional *Monell* claims. That 1997 trial, which spanned five trial days before it went to the jury, involved fewer complex issues, proof, defenses—and considerably less proof, witnesses, and legal issues than Mr. Walker's case.

29. I think it is almost certainly a result of the lack of local expertise that very few *Monell* cases have been brought in the Western District of New York, and even fewer with a successful outcome for the plaintiff. I am aware of just seven other cases, all filed in the last six years, in which a plaintiff brought a *Monell* case against a government entity in the Western District for a wrongful conviction stemming from *Brady* violations.[2] All of those cases are either still pending or were unsuccessful for the plaintiff, and the plaintiffs in all cases were represented by out-of-district counsel. For example, *Dixon v. City of Buffalo, et al*, filed in 2019, is a case in which the plaintiff sued the City of Buffalo and County of Erie for, among other things, *Brady* violations. That case was brought by an out-of-district law firm: Neufeld Scheck & Brustin LLP, based in New York City, and is still pending. I also understand that Mr. Walker approached Neufeld Scheck & Brustin LLP, a civil rights firm run by the founders of the Innocence Project, for possible representation in this case, but that Neufeld Scheck & Brustin LLP declined—demonstrating the lack of a market for Mr. Walker's case even among out-of-district firms. *See* Brustin Decl. ¶16. Elliot Shields, an attorney at Roth & Roth, LLP in New York City, frequently litigates civil rights cases in the Western District, particularly Rochester. However, his civil rights practice generally focuses not on complex *Monell* cases but on constitutional claims of false arrest, malicious prosecution, and/or excessive force by police officers, and representing individuals injured by law

---

[2] These cases are *Dixon v. City of Buffalo et al*, Docket No. 1:19-cv-01678 (W.D.N.Y. Dec 16, 2019); *Owens v. The County of Monroe*, Docket No. 6:21-cv-06445 (W.D.N.Y. Jun 13, 2021); *Singleton v. The City of Geneva et al*, Docket No. 6:23-cv-06359 (W.D.N.Y. Jun 26, 2023); *Howard v. City of Rochester et al*, Docket No. 6:23-cv-06561 (W.D.N.Y. Sep 28, 2023); *Miller v. The County of Monroe*, Docket No. 6:23-cv-06649 (W.D.N.Y. Nov 09, 2023); *Lynch v. Town of Amherst et al*, Docket No. 1:25-cv-00075 (W.D.N.Y. Jan 23, 2025); and *Rhynes v. City of Rochester et al*, Docket No. 6:25-cv-06174 (W.D.N.Y. Apr 01, 2025).

enforcement.[3]  To my knowledge, while he has litigated a couple of cases containing *Monell* claims, none approached Mr. Walker's in complexity, as Mr. Walker's case required developing evidence of prosecutorial practices from 50 years ago.  Mr. Shields, too, has offices in New York City and is thus an out-of-District practitioner when he appears in the Western District.  That Rochester-area plaintiffs regularly seek him out rather than retain local lawyers is additional evidence that local lawyers, either due to lack of experience, unwillingness to take on the local power structure, unwillingness to take the risk of an adverse outcome, or unwillingness to take on cases with statutory attorneys' fee provisions instead of more easily pursued and litigated personal injury cases with 1/3 contingent fee recoveries, cannot or will not handle *Monell* claims like Mr. Walker's.

**B. There are no Western District law firms that have the resources, experience and capabilities of WilmerHale and the Rudin Firm necessary to serve as lead counsel in a complex *Monell* case**

30.    Given my familiarity with Western District law firms, it is my opinion that there are no law firms in the Western District that possess the same resources, experience and capabilities as the Rudin Firm and WilmerHale that are necessary to litigate and obtain such a successful outcome in such a complex and difficult matter.

31.    Joel Rudin has a long history of successfully litigating wrongful conviction civil rights cases, including cases involving *Brady* violations by police and prosecutors under *Monell*. Rudin Decl. ¶ 2, 6-26.  He has achieved successful outcomes, including substantial wrongful conviction settlements, in several cases involving *Brady* violations or other prosecutorial misconduct, including *Ramos v. City of New York*, *Su v. City of New York*, *Zahrey v. Coffey*, and *Jabbar Collins v. City of New York, et al.*  Rudin Decl. ¶¶ 9-26.  In particular, as Nick Brustin, a

---

[3] Elliot Shields, ROTH & ROTH LLP, https://www.rothandrothlaw.com/attorneys/elliot-shields (last visited May 29, 2025).

renowned civil rights attorney at Neufeld Scheck & Brustin, states in his declaration, Mr. Rudin is a trailblazer in this area and has developed much of the case law that supported the claims he and WilmerHale made in this case on behalf of Mr. Walker.  Brustin Decl. ¶¶ 5, 8-14.  As I discussed above, there are no other firms in the Western District with remotely comparable experience litigating complex *Monell* cases, and none that have successfully litigated *Monell* claims based upon theories and proof of systemic prosecutorial misconduct.

32.    Despite Mr. Rudin's noted success in litigating *Monell* cases, including many centering on *Brady* violations, this litigation was too complex for the Rudin Firm to handle alone. Rudin Decl. ¶ 35.  Prior to this case, there were no reported cases and there was no body of readily available evidence establishing unlawful policies, customs or practices of the Buffalo Police Department or the ECDA during the relevant, 50-year-old time period (or, as to the ECDA, at all). Thus, a substantial amount of resources were necessary to find such evidence, to develop it through interviews and deposition testimony despite the usual defense resistance to discovery, to fend off dispositive motion practice, and to organize and present the evidence at trial.

33.    WilmerHale, a firm with a long and storied history of public interest representation, as well as notable trial success, was uniquely suited to work with Mr. Rudin for this case in ways that Western District firms are not.  As of May 29, 2025, WilmerHale is ranked 26th in the 2025 Vault Law 100 rankings[4], and 34th in the Am Law 100 rankings.[5]  *The American Lawyer* ranked WilmerHale third out of 20 elite law firms on its 2024 annual A-List, marking the firm's twenty-first year on the list and ninth consecutive year in the top ten.[6]  The firm was named Law Firm of

---

[4] *Vault Law 100*, VAULT, https://vault.com/best-companies-to-work-for/law/top-100-law-firms-rankings (last visited May 29, 2025).

[5] *The 2025 Am Law 100: Ranked by Gross Revenue*, THE AMERICAN LAWYER, (Apr. 15, 2025), https://www.law.com/americanlawyer/2025/04/15/the-2025-am-law-100-ranked-by-gross-revenue/.

[6] The American Lawyer *Ranks WilmerHale in Top 3 of 20 Firms on its 2024 A-List*, WILMERHALE (Aug. 7, 2024), https://www.wilmerhale.com/en/insights/news/20240807-the-american-lawyer-ranks-wilmerhale-in-top-3-of-20-firms-on-its-2024-a-list.

the Year by *The American Lawyer* in 2021.[7]  In 2024, WilmerHale was honored by *Law360* in the Trials and Appellate categories of its 2023 Practice Groups of the Year awards.[8,9]

34.     WilmerHale, a law firm with over 1100 lawyers worldwide, including 730 lawyers in the United States, and 184 lawyers in its New York City office, provided the necessary expertise and resources to litigate this complicated case.[10]

35.     *First*, WilmerHale's unique experience and expertise litigating this kind of case could not be found in the Western District.  Mr. Firsenbaum led a team in securing the vacatur of the criminal conviction of Dewey Bozella based on *Brady* violations.  Firsenbaum Decl. ¶ 10.  He then secured a $7.5 million settlement for Mr. Bozella in a § 1983 lawsuit asserting a *Monell* claim based on a district attorney's office's *Brady* disclosure policy.  Firsenbaum Decl. ¶ 12.  Indeed, the specific theories of wrongdoing in Mr. Bozella's case closely align with at least two of the theories here, as both involved an unconstitutional Brady disclosure policy based on a failure to consider impeachment evidence and evidence of third-party suspects as within the scope of *Brady*. Firsenbaum Decl. ¶ 12; *compare* ECF No. 1, Complaint ¶¶ 486-655; ECF No. 78, Amended Complaint ¶¶ 495-694.  Mr. Firsenbaum obtained another vacatur of a decades-old murder conviction based on, among other reasons, *Brady* violations, in the *Kendrick* case.  Firsenbaum Decl. ¶ 13.  And he has authored multiple amicus briefs in this area, including *Bellamy v. City of New York,* Firsenbaum Decl. ¶ 15, which was the most important *Monell* precedent for the *Brady* violation and summation misconduct theories relevant to Mr. Walker's case.  *See* Rudin Decl. ¶

---

[7] *WilmerHale Celebrates 20th Anniversary*, WILMERHALE (May 31, 2024), https://www.wilmerhale.com/en/insights/news/20240531-wilmerhale-celebrates-20th-anniversary.
[8] *Law360 Recognized WilmerHale as a Trials Practice Group of the Year*, WILMERHALE (March 12, 2024), https://www.wilmerhale.com/en/insights/news/20240312-law360-recognized-wilmerhale-as-a-trials-practice-group-of-the-year.
[9] *WilmerHale Recognized as an Appellate Practice Group of the Year by Law360*, WILMERHALE (February 16, 2024), https://www.wilmerhale.com/en/insights/news/20240216-wilmerhale-recognized-as-a-appellate-practice-group-of-the-year-by-law360.
[10] *People*, WILMERHALE, https://www.wilmerhale.com/en/people (last visited May 29, 2025).

21. Moreover, other members of the WilmerHale team had experience working alongside the Innocence Project and in other civil rights cases, bringing additional subject-matter experience to the legal team. Firsenbaum Decl. ¶¶ 19-50. No attorney team in Buffalo has the specific experience and expertise that Mr. Firsenbaum and his colleagues brought to this matter.

36. *Second*, *Monell* cases, particularly this one with its long history and procedural complexity, constitute complex civil litigation generally undertaken by large law firms in New York City, and required a firm with the bench and resources of a firm like WilmerHale.

37. As noted above, there was no precedent for similar *Monell* cases against the ECDA. Significant resources were therefore required before filing a complaint to develop a viable *Monell* claim. That required both finding evidence of violations of constitutional rights in Mr. Walker's criminal case, and finding evidence of ECDA policies, customs, and practices from 50 years earlier that caused such violations. Developing such a claim required interviewing numerous individuals to identify relevant witnesses who might have relevant information and documents. Firsenbaum Decl. ¶¶ 67-72; Rudin Decl. ¶ 37. It also included searching microfiche and hours in the clerk's office making photocopies, and that was after finding cases where there was reason to believe that misconduct occurred. Firsenbaum Decl. ¶¶ 74-75.

38. The amount of required resources did not diminish after the Complaint was filed. The case lasted 2 years and 9 months from Complaint until trial. Firsenbaum Decl. ¶¶ 78, 234. Discovery was expansive: there were over 75,000 pages of documents produced and 23 depositions. Firsenbaum Decl. ¶¶ 119, 166. Summary judgment briefing was enormous in scope. Firsenbaum Decl. ¶¶ 172-179. There were 29 motions *in limine* briefed and argued. Firsenbaum Decl. ¶ 215. There were over 600 exhibits proffered by the parties for trial and authenticity and other admissibility issues had to be sorted out for every one of them. Firsenbaum Decl. ¶¶ 211-

212; Rudin Decl. ¶¶ 65, 69. The parties fought over the admissibility of hundreds of pages of deposition testimony. Firsenbaum Decl. ¶ 213; Durland Decl. ¶¶ 69-70. Tens of thousands of pages of exhibits had to be prepared for the court and parties and kept continually updated as the parties and the court worked their way through discovery disputes. Firsenbaum Decl. ¶¶ 210-215, 236. The parties engaged in dozens of disputes, including regarding consolidation and an extraordinary number of evidentiary issues before and during trial. Firsenbaum Decl. ¶¶ 194, 210-215, 241; Rudin Decl. ¶¶ 45, 64-65, 69; Durland Decl. ¶¶ 64, 67-70, 72. The County also objected to providing discovery, unsuccessfully sought bifurcation, raised trial issues, and delayed Mr. Walker's trial date. Firsenbaum Decl. ¶¶ 101-116, 118, 149-151, 185-193, 241; Rudin Decl. ¶¶ 45, 64, 75; Durland Decl. ¶¶ 59, 67-70, 84. And the City Defendants and the County were represented by two of the biggest firms in Buffalo (Hodgson Russ LLP and Lippes Mathias LLP, respectively).

39.    Successfully pursuing a large case against a firm like Lippes Mathias required a firm like WilmerHale to assist the Rudin Firm. The WilmerHale team brought expertise and resources regarding large, complex litigation, including trial, that proved necessary to address the enormous scope of discovery, motions, and disputes, including trial.

40.    More generally, a large firm like WilmerHale was necessary to expend significant efforts prosecuting the case without concern of financial hardship that would likely result for the Rudin Firm and Hoover & Durland in having to litigate a case for many years without any guarantee of recovery. *Monell* litigation is often lengthy and can involve several years of expenditure without hope of compensation. Law firms such as WilmerHale are uniquely suited to devoting such an expenditure of resources with no expectation of compensation anticipated for several years (if ever). The contribution of WilmerHale's resources buoyed the Rudin Firm and

14

Hoover & Durland, as all three firms worked without immediate compensation for nearly three years before the ultimate jury verdict and are likely to work without compensation for at least another year (and possibly multiple years) if the County proceeds with post-judgment motions and appeals as it has indicated.[11] In 2024, the median interval from the filing of a notice of appeal to the last opinion or order in the Second Circuit was 13.3 months.[12] This suggests that the Second Circuit may not issue a ruling until the fall of 2026, extending the timeline until any Plaintiff's firm receives any payment from the $28 million judgment.

41.    It is highly unlikely that any Western District firm would have possessed the resources or capabilities to take on such a case with such delay between the commencement of work and ultimate compensation and reimbursement of costs—at least not without the assistance of out-of-district firms.

42.    That there are significant expenses that cannot be recovered also discourages Western District firms from taking on such a case. For example, § 1988 does not permit the recovery of expert fees, which can be substantial. *W. Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 102 (1991). As I mentioned above, *Monell* cases are complex and require substantial analysis. In this case, Professor Steven Zeidman testified that he charged $75,000 between September 2023 and January 2025. Trial Tr. 1515:3-10. That amount does not include any time Professor Zeidman spent preparing for and giving trial testimony. And Plaintiff hired three other experts, all of whom learned the relevant record, submitted written reports, prepared for and gave deposition testimony, and two of them also prepared for and gave trial testimony. Firsenbaum Decl. ¶ 154; Rudin Decl.

---

[11] Dan Higgins, *Wrongfully imprisoned Buffalo man awarded $28 million; Erie County vows appeal*, THE BUFFALO NEWS (Apr. 8, 2025), https://buffalonews.com/news/local/crime-courts/article_6875b979-24a3-4a45-8e15-27679dd9a162.html.

[12] *U.S. Courts of Appeals—Median Time Intervals in Months for Cases Terminated on the Merits, by Circuit, During the 12-Month Period Ending September 30, 2024*, U.S. COURTS, https://www.uscourts.gov/sites/default/files/2025-01/jb_b4_0930.2024.pdf (last visited May 29, 2025).

¶¶ 43, 47-48; Durland Decl. ¶¶ 39-40.  Retaining experts is a necessary and material expenditure, but the fact that such expenditures cannot be recovered under § 1988 makes these cases riskier and less attractive.

43.    Even Hoover & Durland—a very well-respected Buffalo law firm, with experience in civil rights cases, and extensive experience practicing in federal court in the Western District— would not have been capable of litigating this claim on its own.  Hoover & Durland is comprised of two practitioners, Timothy Hoover and Spencer Durland.  As discussed above, this was a complex civil litigation, requiring more manpower and hours than two lawyers—even lawyers with the extraordinary talent possessed by Messrs. Hoover and Durland—are capable of handling on their own.  Although attorneys Durland and Hoover are two of the finest, most skilled attorneys I have ever witnessed in practice, including in complex federal cases, it simply is not physically possible for two attorneys to have committed the volume of hours required for this matter, even if it were the only matter that the firm handled.  And as discussed above, the contingency payment structure means that the firm would not see any revenue after potentially five or six years dedicated to this litigation.  It would not be economically feasible for Hoover & Durland to commit to solo representation of Mr. Walker, exerting the hours necessary for a successful litigation, without any hope of revenue for years on end despite a resounding trial victory.  They could not have done it without the full team that ultimately tried the case successfully.

C.  **HOOVER & DURLAND'S RATES ARE REASONABLE**

44.    Mr. Hoover and Mr. Durland have extensive experience litigating complex criminal, regulatory, and commercial matters in federal district and circuit courts, and this experience includes civil-rights matters.  Most recently, Mr. Hoover and Mr. Durland successfully defeated the City of Buffalo's appeal from a plaintiff's verdict in a wrongful-conviction case tried before Chief Judge Wolford.  *See Ortiz v. Stambach*, No. 23-0352 (2d Cir. May 9, 2025).

16

45.     Mr. Hoover's standard billing rate in 2025 is $425 per hour.  Durland Decl. ¶ 24.

46.     Mr. Durland's standard billing rate in 2025 is $390 per hour. Durland Decl. ¶ 16.

47.     In my experience, given Hoover & Durland's role as co-counsel and Mr. Durland's role as one of the lead trial counsel, these rates are commensurate with the rates of other attorneys of Mr. Hoover's and Mr. Durland's experience and skill in the Western District of New York.  Mr. Durland and Mr. Hoover are two of the most skilled, dedicated, intelligent, hard-working, and talented attorneys in the Western District—indeed in all of New York.  Those rates for work of their quality and skill is a bargain.

## CONCLUSION

48.     Based on my experience and review of relevant records described herein, it is my opinion that Plaintiff should be awarded out-of-town rates for the services of the Rudin Firm and WilmerHale in this matter, and that Hoover & Durland's requested, in-District rates are reasonable and appropriate.

49.     I am aware that the Second Circuit's guidance in *Simmons v. New York City Trans. Auth.*, 575 F.3d 170 (2d Cir. 2009), instructs that the party seeking an award of attorneys' fees in this context "must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result."  575 F.3d at 175-76.  Here, the selection of the mix of counsel who represented Mr. Walker was predicated on experienced-based, objective factors, and in-district counsel would not have taken the case or would have obtained a substantially inferior result.  The *Simmons* case also states that the award of attorneys' fees must "respect what we described in *Arbor Hill* as the 'touchstone' of the doctrine, 'that district courts should award fees just high enough 'to attract competent counsel.'"  *Id.* (quoting 493 F.3d at 121).

If this Court wants to heed the *Simmons* guidance and attract competent counsel to take and prosecute *Monell* cases involving the breach of fundamental constitutional rights, any award less than the fees sought by the firms in this case for their representation of Mr. Walker will dissuade counsel—national or local—from taking on those cases and pursuing them. In my 28 years as an attorney here in the Western District, with all the experiences outlined above, I can state that local counsel possessing requisite experience were unwilling or unable to take Mr. Walker's case and obtain this result, and no in-district counsel possessed the expertise to do it. In my opinion, only these firms and these lawyers could have obtained this result and achieved this measure of justice for the serious breaches of Mr. Walker's constitutional rights that these lawyers proved through their diligence, perseverance, skill, talents, and tireless efforts.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 30, 2025.

/s/
James W. Grable, Jr.
Connors LLP
1000 Liberty Building
424 Main Street Buffalo, NY 14202
(716) 852-5533

**EXHIBIT A – JAMES W. GRABLE, JR. RESUME**



# James W. Grable, Jr.

Contact Me:

(716) 852-5533

**EMAIL ME**

Download vCard

Practice Areas:

- Complex Federal Criminal and Civil Litigation

# Biography

Jim Grable focuses his practice on complex federal criminal and civil litigation, handling trial and appellate matters in federal and state courts. He is included among the Top 10 lawyers in Upstate New York by Super Lawyers®, where he is listed for criminal defense, personal injury, and civil litigation. and Best Lawyers in America® has designated him "Lawyer of the Year in Criminal Defense: General Practice in Buffalo" in 2016, 2018, 2020, 2022, and 2024. Jim is also among the "Legal Elite of Western New York."

Jim's practice is diverse and wide-ranging. He has represented multi-national corporations in criminal investigations and civil disputes, and impoverished individuals in assigned criminal and civil matters. He has tried numerous cases to verdict in federal and state courts, including months-long complex federal trials. Examples of his diverse experience include:

- Winning a six-week jury trial in New York State Supreme Court defending a successful businessman against numerous claims and a demand for a seven-figure award.
- Obtaining numerous seven-figure damages resolutions for clients wrongfully injured by the acts or omissions of others.
- Conducting an internal investigation for a company concerned about potential environmental violations and drafting a compliance plan that the company adopted to avoid future environmental issues and protect its workers and its community.
- Winning an acquittal at trial of a medical professional criminally charged with harming his patient, obtaining a sealing order protecting the client from additional public disclosure of the accusations and his identity, and then obtaining a full dismissal of all state licensing charges against his client.
- Securing dismissal before a federal trial of discrimination allegations against a police commissioner, and obtaining appellate affirmation of the dismissal of all causes of action.
- Obtaining dismissal of all criminal charges against a teacher accused of sexual contact with several students, winning a sealing order barring additional public disclosure of the allegations, then obtaining a civil settlement to compensate the falsely accused teacher for damage to his reputation.
- Winning a commercial arbitration by proving that the party claiming a breach of contract had broken its promises, to prevail against breach of contract and defamation claims and to obtain a favorable monetary judgment on a counterclaim in favor of the business that had been sued.
- Preventing the imposition of federal or state criminal charges against an accountant and CFO and successfully representing the business professional before the Securities and Exchange Commission to avoid adverse SEC action by the agency.
- Obtaining acquittals in various criminal trials after successfully defending his clients against criminal charges.

Jim was elected a Fellow of the International Academy of Trial Lawyers for his trial work. That association limits its membership to less than 1/10 of 1% of the lawyers practicing in the United States, and Fellowship in

the Academy is by invitation only after an extremely rigorous vetting process that includes peer and judicial review.

Before practicing, Jim served a two-year term as confidential law clerk to the Hon. William M. Skretny, United States District Court Judge for the Western District of New York.

Jim has amassed extensive knowledge and experience in the area of sentencing, and in 2011 was appointed by the United States Sentencing Commission to serve as a voting member of the Sentencing Commission's Practitioners Advisory Group, where he served multiple terms.

Jim strongly believes in the responsibility of lawyers to serve those who cannot afford representation. He serves on the Criminal Justice Act Emeritus Panel in the United States District Court for the Western District of New York, where he represents impoverished individuals facing criminal charges. The Judges of the United States District Court for the Western District of New York awarded Jim the Criminal Justice Act Award in 2019 in recognition of and "appreciation for distinguished criminal defense work representing indigent defendants" before the court "and for consistently providing stellar and zealous advocacy to ensure that each criminal defendant receives a full and fair defense without regard to financial circumstances." Jim's work trying a federal civil case on behalf of a prison inmate resulted in the federal district court awarding him its Special Service Award for his "outstanding pro bono counsel representation and dedication" in 2006.

Jim previously served as an officer on the board of directors of the New York State Association of Criminal Defense Lawyers. He also taught as an adjunct professor of trial technique at the State University of New York at Buffalo Law School and helps coach the law school's National Trial Team. He served for several years as the Board Chair of the Board of Trustees of St. Joseph's Collegiate Institute, his alma mater.

Jim earned his J.D. with honors from the State University of New York at Buffalo Law School, where he served as Editor-in-Chief of the Buffalo Law Review and was a mock trial champion. Jim earned his B.A. magna cum laude from the State University of New York at Buffalo, where he was a University Honors Scholar and graduated Phi Beta Kappa. In 2023, the University at Buffalo Law Alumni Association honored Jim with its Distinguished Alumnus Award for his "leadership by example as a private practitioner."

**Did You Know?** Jim and his wife Laura are the proud parents of four children and two rescue dogs, and in his younger days Jim helped coach youth baseball, hockey, and basketball teams.

# Education

- State University of New York at Buffalo, B.A., *magna cum laude*, Phi Beta Kappa
- State University of New York at Buffalo Law School, J.D., with honors

# Community Involvement and Affiliations

- Fellow, International Academy of Trial Lawyers
- Life Member (and former Vice President), New York State Association of Criminal Defense Lawyers
- Board Chair (2021-2024), St. Joseph's Collegiate Institute Board of Trustees
- Former Voting Member, United States Sentencing Commission's Practitioners Advisory Group
- Fellow, Litigation Counsel of America
- Member, National Association of Criminal Defense Lawyers
- American Bar Association
- New York State Bar Association
- Bar Association of Erie County
- Former Adjunct Professor of Trial Technique, State University of New York at Buffalo Law School
- Former Director, State University of New York at Buffalo Law School Alumni Association
- Former Vice President, St. Gregory the Great School Athletic Association

# Honors

- State University of New York at Buffalo Law School Alumni Association 2023 Distinguished Alumnus Award for private practice
- Upstate New York Super Lawyers Top 10 (since 2022), listed as a Super Lawyer since 2009
- Best Lawyers in America (2011-present) (listed for Personal Injury Litigation – Plaintiffs; and Lawyer of the Year in Criminal Defense: General Practice in Buffalo 2016, 2018, 2020, 2022, 2024)
- Legal Elite of Western New York
- Buffalo Business First, Who's Who in the Law
- Special Service Award Winner, United States District Court, WDNY
- Criminal Justice Act Award Winner, United States District Court, WDNY
- Martindale-Hubbell, AV rated
- Editor-in-Chief, Buffalo Law Review
- Robert J. Connelly Award, State University of New York at Buffalo Law School
- Carlos C. Alden Award, Buffalo Law Review
- Signum Fidei Society, St. Joseph's Collegiate Institute (inducted 2024)