**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| JOHN WALKER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | **Case No. 1:22-cv-520** |
| | ) | |
| - against - | ) | |
| | ) | |
| COUNTY OF ERIE, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S POST-TRIAL
MOTION PURSUANT TO FRCP 59**

# TABLE OF CONTENTS

**Page**

I.     THE JURY WAS PROPERLY INSTRUCTED. ..........................................................1

    A.    The jury was properly instructed on *Monell* liability...............................................2

    B.    The jury was properly instructed on prosecutors' *Brady* obligations. ..................8

    C.    The jury was properly instructed that summation misconduct includes making false statements that exploit a prior *Brady* violation. ............................12

    D.    The Court properly declined to give a curative instruction on summation misconduct. ...........................................................................................................13

    E.    The jury was properly instructed on the question of apportionment ..................14

II.    THE COURT DID NOT ABUSE ITS DISCRETION IN FASHIONING A VERDICT FORM..............................................................................................................18

    A.    The verdict form fairly and accurately framed the *Monell* inquiry. ...................18

    B.    The verdict form correctly captured the issue of apportionment........................21

III.    THE COUNTY IS NOT ENTITLED TO A NEW TRIAL BASED ON ANY CLAIMED EVIDENTIARY ERROR.......................................................................21

    A.    The Court properly granted Walker's motion to admit other-case *Monell* evidence. ..............................................................................................................22

    B.    The Court properly excluded evidence purportedly "central to *Brady*."............24

    C.    The Court's rulings on party admissions were consistent and correct................28

    D.    The Court's rulings on issues purportedly "central to damages" were correct. .............................................................................................................30

    E.    The Court correctly allowed Walker's counsel to discuss the toll of imprisonment on his health and well-being.......................................................32

    F.    The Court correctly admitted a reference to Drury's summation in the *Boyd* trial.......................................................................................................33

    G.    The Court properly accepted Professor Hirsch's testimony. ..............................34

    H.    The Court properly admitted DA Cosgrove's statement as a party admission. ..........................................................................................................35

IV.    THE EVIDENCE SUPPORTS THE JURY'S VERDICT. .......................................36

V.    THE COUNTY IS NOT ENTITLED TO A REMITTITUR......................................36

    A.    Walker's damages award was not excessive ......................................................37

    B.    There is no basis to offset the damages award by the amount Walker received in his settlement with the City.............................................................39

CONCLUSION.................................................................................................................39

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Anderson v. Branen*,
17 F.3d 552 (2d Cir. 1994)................................................................................6

*Barber v. City of Chicago*,
725 F.3d 702 (7th Cir. 2013) ...........................................................................30

*Bausch & Lomb Inc. v. Vitamin Health, Inc.*,
2016 WL 3742156 (W.D.N.Y. July 7, 2016)....................................................39

*Bender v. City of New York*,
78 F.3d 787 (2d Cir. 1996)...............................................................................17

*Bermudez v. City of New York,*
790 F.3d 368 (2d Cir. 2015)..............................................................................16

*Burton v. City of New York*,
630 F. Supp. 3d 586 (S.D.N.Y. 2022).........................................................37, 38

*Carroll v. Trump*,
124 F.4th 140 (2d Cir. 2024) ............................................................................22

*Cash v. County of Erie*,
654 F.3d 324 (2d Cir. 2011).........................................................................18, 19

*City of Canton v. Harris*,
489 U.S. 378 (1989)..........................................................................................10

*Dancy v. McGinley*,
843 F.3d 93 (2d Cir. 2016)................................................................................36

*Daniels v. Loizzo*,
986 F. Supp. 245 (S.D.N.Y. 1997).....................................................................30

*DiSimone v. Phillips*,
461 F.3d 181 (2d Cir. 2006)..............................................................................25

*Dukes v. City of Albany*,
289 F. Supp. 3d 387 (N.D.N.Y. 2018)...............................................................34

*Estate of George v. Batista*,
2013 WL 104552 (D. Conn. Jan. 8, 2013)........................................................29

*Floyd v. City of New York*,
 813 F. Supp. 2d 417, 449 (S.D.N.Y. 2011)
 *on reconsideration*, 813 F. Supp. 2d 457 (S.D.N.Y. 2011) ...............................................23

*Fraser v. Wyeth, Inc.*,
 992 F. Supp. 2d 68 (D. Conn. 2014).....................................................................................3

*Giglio v. United States*,
 405 U.S. 150 (1972).............................................................................................................16

*Glossip v. Oklahoma*,
 145 S. Ct. 612 (2025).............................................................................................................9

*Hu v. City of New York*,
 927 F.3d 81 (2d Cir. 2019).....................................................................................................3

*Imbler v. Pachtman*,
 424 U.S. 409 (1976).............................................................................................................11

*In re Demetriades*,
 58 F.4th 37 (2d Cir. 2023) .....................................................................................................7

*Jarvis v. Ford Motor Co.*,
 283 F.3d 33 (2d Cir. 2002).......................................................................................1, 18, 21

*Jeffes v. Barnes*,
 208 F.3d 49 (2d Cir. 2000).....................................................................................................4

*Jenkins v. Artuz*,
 294 F.3d 284 (2d Cir. 2002).................................................................................................12

*Jimenez v. City of Chicago*,
 732 F.3d 710 (7th Cir. 2013) ...............................................................................................37

*Jones v. Town of East Haven*,
 493 F. Supp. 2d 302 (D. Conn. 2007),
 *reversed on other grounds*, 691 F.3d 72 (2d Cir. 2012) ....................................................23

*Keeling v. Hars*,
 809 F.3d 43 (2d Cir. 2015)..................................................................................................1, 2

*Kogut v. County of Nassau*,
 2009 WL 5033937 (E.D.N.Y. Dec. 11, 2009) ....................................................................34

*Leka v. Portuondo*,
 257 F.3d 89 (2d Cir. 2001)...................................................................................................25

*Lewis v. Connecticut Commissioner of Correction*,
     790 F.3d 109 (2d Cir. 2015)..................................................................................24

*Lore v. City of Syracuse*,
     670 F.3d 127 (2d Cir. 2012)....................................................................................5

*Los Angeles v. Humphries*,
     562 U.S. 29 (2010)................................................................................................19

*Luce v. United States*,
     469 U.S. 38 (1984)................................................................................................22

*Lucente v. County of Suffolk*,
     980 F.3d 284 (2d Cir. 2020)...............................................................................3, 19

*Matusick v. Erie County Water Authority*,
     757 F.3d 31 (2d Cir. 2014).................................................................................3, 8

*Moll v. Telesector Resources Group, Inc.*,
     94 F.4th 218 (2d Cir. 2024) ................................................................................29

*Monell v. Dep't of Social Services*,
     436 U.S. 658 (1978)..............................................................................................10

*Munafo v. Metropolitan Transportation Authority*,
     381 F.3d 99 (2d Cir. 2004)....................................................................................36

*Newton v. City of New York*,
     171 F. Supp. 3d 156 (S.D.N.Y. 2016)..................................................................30

*Nimely v. City of New York*,
     414 F.3d 381 (2d Cir. 2005)..................................................................................21

*Nnodimele v. Derienzo*,
     2016 WL 3561708 (E.D.N.Y. June 27, 2016) ..........................................24, 26, 27

*Ortiz v. Wagstaff*,
     523 F. Supp. 3d 347 (W.D.N.Y. 2021) .................................................................34

*Owen v. City of Independence*,
     445 U.S. 622 (1980)............................................................................................8, 11

*Owens v. Baltimore City State's Attorneys Office*,
     767 F.3d 379 (4th Cir. 2014) ................................................................................12

*Parkinson v. Desormeau*,
     2024 WL 4973490 (E.D.N.Y. Dec. 4, 2024) ........................................................23

*Parrett v. Taylor,*
    451 U.S. 527 (1981)...............................................................................................................10

*People v. Boyd,*
    84 A.D.2d 689 (1981) .........................................................................................................33

*People v. Keller,*
    67 A.D.2d 153 (4th Dep't 1979).........................................................................................14

*Pescatore v. Pan American World Airways, Inc.,*
    97 F.3d 1 (2d Cir. 1996)......................................................................................................32

*Poventud v. City of New York,*
    750 F.3d 121 (2d Cir. 2014) (en banc)....................................................................9, 10, 26

*Restivo v. Hessemann,*
    846 F.3d 547 (2d Cir. 2017)..................................................................................15, 17, 37

*Saint-Jean v. Emigrant Mortgage Co.,*
    129 F.4th 124 (2d Cir. 2025) ...........................................................................................1, 4

*Saxon v. Ercole,*
    2008 WL 3446488 (S.D.N.Y. Aug. 12, 2008)....................................................................26

*Sorlucco v. New York City Police Dep't,*
    971 F.2d 864 (2d Cir. 1992)..................................................................................................4

*Svege v. Mercedes-Benz Credit Corp.,*
    329 F. Supp. 2d 285 (D. Conn. 2004).................................................................................29

*Tankleff v. Senkowski,*
    135 F.3d 235 (2d Cir. 1998)..................................................................................................9

*Tesser v. Board of Education,*
    370 F.3d 314 (2d Cir. 2004)................................................................................................21

*Townes v. City of New York,*
    176 F.3d 138 (2d Cir. 1999)................................................................................................16

*Turley v. ISG Lackawanna, Inc.,*
    774 F.3d 140 (2d Cir. 2014)................................................................................................36

*United States v. Agurs,*
    427 U.S. 97 (1976)...............................................................................................................24

*United States v. Friedman,*
    909 F.2d 705 (2d Cir. 1990)................................................................................................14

*United States v. Han,*
    230 F.3d 560 (2d Cir. 2000)............................................................................4

*United States v. Helmsley,*
    985 F.2d 1202 (2d Cir. 1993)........................................................................9

*United States v. Pelullo,*
    6 F. Supp. 2d 403 (E.D. Pa. 1998) .............................................................26

*United States v. Sampson,*
    385 F.3d 183 (2d Cir. 2004).........................................................................30

*United States v. Wilke,*
    2010 WL 1573918 (W.D.N.Y. Apr. 15, 2010) ...........................................30

*United States v. Young,*
    470 U.S. 1 (1985)..........................................................................................14

*Valentin v. City of Rochester,*
    783 F. App'x 97 (2d Cir. 2019) ..................................................................10

*Vippolis v. Village of Haverstraw,*
    768 F.2d 40 (2d Cir. 1985)...........................................................................19

*Walker v. City of New York,*
    974 F.2d 293 (2d Cir. 1992)..........................................................................11

*White v. McKinley,*
    605 F.3d 525 (8th Cir. 2010) .......................................................................37

*Zahrey v. Coffey,*
    221 F.3d 342 (2d Cir. 2000)..........................................................................16

*Zsa Zsa Jewels, Inc. v. BMW of North America, LLC,*
    2023 WL 3455057 (E.D.N.Y. May 15, 2023) .................................................4

## STATUTES, RULES, AND REGULATIONS

Fed. R. Civ. P. 51..............................................................................................1, 18

Fed. R. Civ. P. 59.................................................................................................39

Fed. R. Evid. 401–403 .........................................................................................25

Fed. R. Evid. 408 ............................................................................................17, 39

Fed. R. Evid. 801 .................................................................................................35

**OTHER AUTHORITIES**

U.S. Bureau of Labor Statistics, CPI Inflation Calculator (last accessed June 20, 2025), https://www.bls.gov/data/ inflation_calculator.htm ...............................................38

Plaintiff John Walker, Jr. respectfully submits this memorandum in opposition to Defendant County of Erie's ("County") Post-Trial Motion Pursuant to Federal Rule of Civil Procedure 59 (the "Motion" or "Mem."). *See* Dkt. 383.[1]

## I.    THE JURY WAS PROPERLY INSTRUCTED.

Courts "will overturn a verdict on a [preserved] challenge to jury instructions only if (1) the instructions were erroneous, and (2) the error was prejudicial." *Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 147 (2d Cir. 2025). "Jury instructions are erroneous if they mislead the jury or do not adequately inform the jury of the law." *Id.* (cleaned up). "[A] jury instruction will be deemed adequate if the charge, taken as a whole, is correct and sufficiently covers the case so that a jury can intelligently determine the questions presented to it." *Keeling v. Hars*, 809 F.3d 43, 52 (2d Cir. 2015) (cleaned up). An erroneous jury instruction is prejudicial only where the movant "can show that the error, in light of the charge as a whole, improperly influenced the jury's verdict." *Saint-Jean*, 129 F.4th at 147 (cleaned up).

To preserve a challenge to jury instructions, the "party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection." FED. R. CIV. P. 51(c)(1). This rule requires an "explicit, precise, and reasoned objection," supported by "legal argument" and "authority." *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 55, 60–61 (2d Cir. 2002). Where an instructional challenge is not properly preserved, the instructions are reviewed only for plain error. *See* FED. R. CIV. P. 51(d)(2). The

---

[1] The notation "Dkt. __" refers to documents filed in *Walker v. County of Erie*, No. 22-CV-520 (W.D.N.Y.). Pinpoint citations generally refer to the cited document's internal page numbering, but where page numbers are not carried through the entire document, they refer to the page numbers contained in the CM-ECF banner at the top of the page. The notation "Trial Tr." refers to the transcript of Walker's civil-rights trial.

Second Circuit has long held that "the plain-error exception . . . should only be invoked with extreme caution in the civil context." *Keeling*, 809 F.3d at 52 (cleaned up).

### A.     The jury was properly instructed on *Monell* liability.

The County challenges aspects of the Court's instruction on widespread practice under *Monell*, objects to the Court giving any deliberate-indifference instructions, and claims that the *Monell* instructions that the Court gave confused *Monell* liability with *respondeat superior* liability. Mem. at 2–6. These arguments all fail. The Court's *Monell* instructions were legally correct and adequately covered the case, and the County cannot identify any prejudice.

> *1.    The Court properly instructed the jury on Walker's widespread practice theory.*

Walker alleged that the misconduct infecting his criminal trial was caused by the ECDAO's unlawful policies, customs and/or practices in 1976 and 1977. The Court accurately explained this legal theory to the jury.

The Court first explained that "Mr. Walker must prove by a preponderance of the evidence that each alleged violation of his constitutional rights was not an isolated incident but was part of a policy of the County of Erie specific to the type of constitutional violation." Trial Tr. 2777:21–25. Walker also had to "prove that the County adopted such a policy, practice or custom through the deliberate choice or acquiescence of a policymaker." *Id*. at 2777:9–12. For a practice or custom to trigger *Monell* liability, the Court continued, it had to be "persistent or widespread," constituting "a pattern of conduct." *Id*. at 2779:1–2. The jury could

> infer that a practice or custom existed in the Erie County District Attorney's Office even if Erie County did not formally approve such custom, so long as you conclude that the District Attorney knew of acts of misconduct and did not act to prevent them from continuing. This includes a situation where the District Attorney must have known about the actions or failure to act by other prosecutors in the Erie County District Attorney's Office by virtue of his position and allowed them to continue.

*Id.* at 2779:3–14; *accord id.* at 2780:23–2781:12.

These statements of law are all well-grounded in precedent. *See*, *e.g.*, *Lucente v. County of Suffolk*, 980 F.3d 284, 306 (2d Cir. 2020) (unlawful practice exists "where [the municipality] acquiesces in a pattern of illegal conduct"); *Hu v. City of New York*, 927 F.3d 81, 106 (2d Cir. 2019) (unlawful practice exists where misconduct is "widespread, persistent, or otherwise manifest"); *Matusick v. Erie County Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (unlawful practice exists where acts of misconduct are "sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisors must have been aware" (cleaned up)).

The County does not dispute that the foregoing instructions are correct. It contends, however, that these instructions "supplied inadequate guidance," Mem. at 3, because they did not include this supplemental instruction:

> Mr. Walker must establish that it involved a practice so persistent or widespread as to carry the force of law or that the misconduct of a subordinate agent or employee was so manifest as to imply the constructive acquiescence of senior policy-making officials that caused an alleged injury.
>
> In other words, Mr. Walker must prove that the violation of his federally protected rights was not an isolated incident but was part of a persistent, widespread practice of the County of Erie. Whether there was such a practice or custom is a question of fact for you, the jury, to determine. In making this determination, you may consider whether there is sufficient evidence to prove the existence of any alleged custom, the extent how long the alleged practice existed, the number and percentage of the County of Erie's officers engaged in the practice, and the similarity of the conduct engaged in by its employees.

*Id.* at 4. The Court's omission of these paragraphs was neither erroneous nor prejudicial.

As to the first paragraph, while some *Monell* decisions describe unconstitutional practices as those that are "so persistent as to carry the force of law" or "so manifest as to imply the constructive acquiescence of senior policy-making officials," the County is not entitled to "'dictate the precise language of the charge.'" *Fraser v. Wyeth, Inc.*, 992 F. Supp. 2d 68, 93 (D. Conn. 2014)

(quoting *United States v. Han*, 230 F.3d 560, 565 (2d Cir. 2000)). Rather, the Court "has discretion in the style and wording of jury instructions," *Saint-Jean*, 129 F.4th at 147 (cleaned up).

The "force of law" and "constructive acquiescence" clauses are legalistic ways of explaining that a practice must be persistent and widespread. *See*, *e.g.*, *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870–71 (2d Cir. 1992) (using "persistent and widespread" as a synonym for the "force of law" and "constructive acquiescence" clauses); *Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000) (using "longstanding practice" and "standard operating procedure" as synonyms for the "force of law" and "constructive acquiescence" clauses (cleaned up)). The Court's instructions conveyed the pervasiveness and acquiescence requirements in clearer and simpler terms by telling the jury that (i) a practice is only actionable if it is "persistent or widespread," constituting "a pattern of conduct"; (ii) a practice is only actionable if it reflects the "deliberate choice or acquiescence of a policymaker"; and (iii) to infer that the policymaker acquiesced in a practice, the jury must "conclude that the District Attorney knew" or "must have known" about the "acts of misconduct and did not act to prevent them from continuing." Trial Tr. 2777:7–12, 2779:1–9.

The Court was also right to reject the second paragraph of the County's proposed instruction. The Court's instructions already included the "persistent," "widespread," and "not an isolated incident" language this paragraph requests. *See id.* at 2777:21–25. And the various factors listed in this paragraph—how long the practice existed, what percentage of employees engaged in it, and so on—are not statements of law, but factual considerations. The County cites no case endorsing such factors. *Compare Zsa Zsa Jewels, Inc. v. BMW of N. Am., LLC*, 2023 WL 3455057, at \*20 (E.D.N.Y. May 15, 2023) ("Defendant did not submit a single sample pattern jury

instruction . . . nor supporting case law requiring that the instructions be given."). Plainly, omitting the County's factors did not render the jury instructions misleading or incomplete.

Furthermore, even if the widespread-practice instructions were somehow incomplete, the County does not even try to show that omitting the phrase "force of law," or saying "not an isolated incident" once rather than twice, improperly influenced the jury's verdict. *See Lore v. City of Syracuse*, 670 F.3d 127, 156 (2d Cir. 2012) ("An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." (citation omitted)). The Court's instructions enabled the County to argue that any constitutional violations in Walker's case were isolated errors, *see* Trial Tr. 2670:20–25, 2675:17–2676:3, and that the other reported cases of *Brady* violations and summation misconduct were too factually dissimilar and temporally distant to form patterns of conduct, *see id.* at 2672:11–2675:16. The jury rejected these arguments due to the overwhelming contrary evidence elicited from the County's own witnesses. *See* Plaintiff's Memorandum in Opposition to Defendant's Motion for Judgment as a Matter of Law under FRCP 50(b) ("Rule 50(b) Opp.") at 11–23.

Finally, incorporating an argument advanced in its Rule 50(b) motion, the County contends that the supposed errors in the instructions were "further heightened" by the overly broad framing of Walker's *Monell* theory. Mem. at 3–4. As explained in Walker's Rule 50(b) opposition, the County waived this argument by failing to include it in the Rule 50(a) motion. *See* Rule 50(b) Opp. at 23. The County also waived it for Rule 59 purposes by proposing jury instructions, Dkt. 273 at 15–16, approving jury instructions, Dkt. 383-5 at 27, 29, proposing a verdict form, Trial Tr. 2587:20–25; Dkt. 383-3 at 11–12, and approving a verdict form, Dkt. 383-4, 60–61; Dkt. 383-6 at 11–12, that framed the unlawful practices in the very terms the County now condemns as

overbroad.[2] In any event, the County's overbreadth argument is meritless for the reasons stated in the Rule 50(b) opposition. Rule 50(b) Opp. at 23–24, 39–40.

> 2. *The trial record supported an instruction on Walker's deliberate-indifference theory.*

The County errs again in contending that the Court should not have given the jury any instruction on Walker's deliberate-indifference theory of *Monell* liability. Mem. at 3. A plaintiff "is entitled to an instruction on a claim" as long as "there is some evidence supporting the theory behind the instruction so that a question of fact may be presented to the jury." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). For the reasons given in Walker's Rule 50(b) opposition, the trial record contains ample support for a deliberate-indifference theory. Rule 50(b) Opp. at 24–29, 38–39.

Rather than confront the trial proof, the County claims Walker "abandon[ed] a theory of liability dependent on deliberate indifference." Mem. at 3. This is untrue. During the charge conference, Walker proposed instructing the jury on a widespread-practice theory only, on the understanding that he could use DA Cosgrove's indifference to *Brady* violations and summation misconduct as evidence of the practice. Trial Tr. 2605:4–2607:23, 2608:13–2610:10. Walker made clear that this was simply "an effort to try to streamline the presentation and the instructions," not a concession that any proof was deficient. *Id*. at 2608:13–2609:24. The County objected to Walker arguing DA's Cosgrove's indifference without an instruction on deliberate-indifference liability, and the Court sustained the objection, so Walker proceeded on a widespread-practice theory and a deliberate-indifference (failure to discipline) theory. *Id.* at 2607:24–2608:12, 2610:11–2613:14.

---

[2] At the charge conference, the County said that "a policy of unconstitutional misconduct" would be overbroad, and insisted that the description of the alleged practice be "specific to the constitutional violations alleged." Trial Tr. 2606:9-14. The jury instructions did what the County asked, restricting the widespread-practice inquiry to the types of constitutional violations alleged—*Brady* violations and summation misconduct.

As to the deliberate-indifference instructions themselves, the County labels them "deficient," Mem. at 3, without identifying a deficiency. Accordingly, the County has forfeited any challenge to the content of the instructions. *See, e.g.*, *In re Demetriades*, 58 F.4th 37, 54 (2d Cir. 2023) (perfunctory points raised without any "effort at developed argumentation" are forfeited (cleaned up)).

### 3. The Court's *Monell* instruction did not invite respondeat superior liability.

For its final challenge to the *Monell* instructions, the County claims that the Court "conflated the concepts of *Monell* with *respondent superior* liability." Mem. at 5. This argument— which the County did not preserve, *see* Dkt. 383-5 at 20 & n.1, 26, 28, 30—is frivolous.

When the Court introduced the legal requirements of a *Monell* claim, it unequivocally rejected *respondeat superior* liability: "A municipality such as the County of Erie may not be held liable for the actions of its employees simply because they are employed by the County." Trial Tr. 2776:24–2777:2. The instructions that followed this pronouncement identified the findings the jury needed to make before imposing *Monell* liability. *Id.* at 2777:2–2781:19.

The two isolated passages the County cites, *see* Mem. at 5, did nothing to undermine the Court's rejection of *respondeat superior* liability, or to equate *Monell* liability with *respondeat superior* liability. The Court explained that the term "*Monell*" is shorthand for a § 1983 case where "the person the plaintiff is attempting to hold liable is a municipality," Trial Tr. 2769:9–12, but it never suggested *Monell* liability arises merely from employment of the wrongdoer—the Court said the *opposite*, and carefully instructed the jury on what *Monell* liability entails. As part of those instructions, the Court correctly stated that a policymaker's knowledge of misconduct can be inferred when he must have known about the misconduct "by virtue of his position." *Id.* at 2779:10–14. This language did not countermand the Court's rejection of *respondeat superior* liability. None of this is error, much less plain error.

**B.      The jury was properly instructed on prosecutors' *Brady* obligations.**

The County contends that the Court's *Brady* instructions (i) used a "retroactive analysis" to define a prosecutor's disclosure obligations; (ii) failed to explain that speculative, cumulative, or duplicative evidence cannot be "favorable" to Walker; (iii) failed to explain that suppressed evidence is "material" only if would have changed the outcome of Walker's criminal trial; and (iv) failed to explain that there is no *Monell* liability for a *Brady* violation unless the prosecutor's violation was intentional. These arguments are meritless. The Court's instructions were complete and correct, and the County does not even try to make a showing of prejudice.

> *1.      Retroactive analysis.*

In explaining "favorability" under *Brady*, the Court said the following:

> When there is any interpretation of the evidence that could be deemed favorable to the defense, then it must be disclosed. A prosecutor's own assessment that certain evidence is not reliable does not negate the prosecutor's disclosure obligations.

Trial Tr. 2772:23–2773:3. The County contends that this instruction "impermissibly broadened a prosecutor's disclosure obligations, imposing upon them, among other things, an obligation suggestive of retroactive analysis." Mem. at 6. It appears that, by "retroactive analysis," the County means that the legal principles reflected in the instructions were not clearly established in 1977. That argument fails. As Walker has noted multiple times, the clearly-established-law requirement that governs whether an individual defendant has qualified immunity, does not apply to municipalities held liable under *Monell*. *See Owen v. City of Independence*, 445 U.S. 622, 638–52 (1980); *see also Matusick*, 757 F.3d at 55. Moreover, the County has failed to point to any specific legal principles in the Court's instructions that were not clearly established in 1977, and makes no effort to establish prejudice.

- 8 -

2. *Speculative, cumulative, duplicative.*

The County argues that the Court erred by not stating, in its instructions on *Brady* "materiality," that "if evidence was merely speculative, cumulative, or duplicative of other evidence available at trial, it does not qualify as *Brady* material." Mem. at 6. This categorical statement is patently inaccurate. *See Glossip v. Oklahoma*, 145 S. Ct. 612, 628–29 (2025) (rejecting argument that additional impeachment was necessarily immaterial because an assumption that "the jury would have believed [the witness] no matter what . . . has no place in a materiality analysis"). The Court properly instructed the jury that a *Brady* violation occurs only when the withheld evidence was material, and it accurately recited the standard for materiality. The cases the County cites simply find the materiality standard unmet on the facts before them. *See Tankleff v. Senkowski*, 135 F.3d 235, 250–51 (2d Cir. 1998) (finding evidence would not have tipped the jury); *United States v. Helmsley*, 985 F.2d 1202, 1210 (2d Cir. 1993). The jury was entitled to reach a different conclusion here.

3. *Materiality*.

The County claims the Court should have instructed the jury that to prove materiality, Walker had to prove "*that the outcome of the trial in 1977 would have been different had the evidence been disclosed.*" Dkt. 382 at 2599:7–22 (cited by Mem. at 7). This is plainly incorrect, and it would have been error to give this instruction, for it is directly contrary to controlling precedent. *See Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014) (en banc) (holding that "a defendant's right to pre-trial disclosure under *Brady* is not conditioned on his ability to demonstrate that he would or even probably would prevail at trial if the evidence were disclosed" (cleaned up)). The County's related argument that it was "confusing and inconsistent" to elaborate on favorability and suppression but not on materiality, *see* Mem. at 7, is unpreserved and patently meritless.

### 4. *Suppression.*

The County argues that the Court erred in refusing to instruct the jury that *Brady* material is not suppressed unless the prosecutor *intentionally* withholds it from the defense. Mem. at 7 (citing Dkt. 359 at 14 & n.2). This too is an inaccurate statement. As the Second Circuit reiterated in its en banc decision in *Poventud,* a *Brady* violation may occur regardless of whether the favorable evidence is withheld "willfully or inadvertently." 750 F.3d at 133. The constitutional violation does not have a mens rea requirement. The Supreme Court has held that Section 1983 does not create a heightened mental blameworthiness requirement beyond what the underlying constitutional rule requires. *See Parrett v. Taylor,* 451 U.S. 527, 534–35 (1981). Whether, despite this rule, a civil claim against an *individual police officer* for withholding *Brady* material from a prosecutor requires intentionality is an open question in this Circuit, *see*, *e.g., Valentin v. City of Rochester*, 783 F. App'x 97, 100 (2d Cir. 2019), but that is a very different issue than is presented here.

While it may be argued, as a matter of policy, that monetary liability should not be imposed on an individual police officer who is unaware of his *Brady* obligation, Walker's claim is solely against a municipality. Under such a *Monell* claim, it is the *municipality's* fault, through its policymaker, that is the source of liability where the policymaker's intentional adoption or knowing toleration of an unlawful policy, custom or practice, or its deliberate indifference to violations of law, is the moving force behind an employee's infliction on an individual of a constitutional violation. *See, e.g.*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."); *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate

choice to follow a course of action is made from among various alternatives by city policymakers" (cleaned up)); *Walker v. City of New York*, 974 F.2d 293, 296–97 (2d Cir. 1992) (noting that Supreme Court precedent requires "plaintiffs to allege actual conduct by a municipal policymaker" and that "only actions by officials relatively high up in the municipal hierarchy will produce municipal liability"). Accordingly, this Court's instruction properly required the jury to find mens rea by the County policymaker, thereby satisfying any bad faith requirement under Section 1983.

Any rule that required the line prosecutor to have acted intentionally or in bad faith would be nonsensical. Prosecutors enjoy absolute immunity from liability for *Brady* violations, partially so that they need not be concerned with potential personal civil liability. *See Imbler v. Pachtman*, 424 U.S. 409, 427 (1976). However, the Supreme Court refused to let municipalities escape liability based on the individual immunities that state actors enjoy, so long as, under *Monell,* the municipality, through its deliberate actions, was the moving force behind the violation. *Owen*, 445 U.S. at 638–52. It would defeat this rule to adopt an intentionality requirement for prosecutors to make out a *Monell* claim. Such a requirement would let the municipality off the hook even where it is the moving force behind a *Brady* violation due to its failure to train or supervise employees to ensure they recognize *Brady* material or for adopting policies and practices that define evidence as outside the scope of *Brady.* This would negate *Monell* liability in most cases and leave criminal defendants harmed by such misconduct with no remedy despite the culpability of the municipality for causing the prosecutor to act unlawfully. Such a rule would defeat the plain language of Section 1983 to provide a damages remedy for "all" individuals harmed by State actors' constitutional violations. The cases the County cites, *see* Mem. at 7–8, have nothing to do with municipal liability under *Monell* and the appropriate mens rea instruction in such a case. None of them hold that a prosecutor's *Brady* violation must be intentional for there to be municipal civil liability under

- 11 -

§ 1983. Even circuits that have required bad faith before a police officer will be held liable for violating *Brady* have assumed that *prosecutors* are subject to *Brady*'s no-fault standard of care. *See Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 396 & n.6 (4th Cir. 2014) (summarizing case law).

### C.     The jury was properly instructed that summation misconduct includes making false statements that exploit a prior *Brady* violation.

The County argues that, when instructing the jurors on the law governing summations, the Court should not have told the jurors they could "consider whether any comments by the prosecutor in summation tended to exploit the withholding of favorable withheld information," reasoning that this instruction conflated the *Brady* and summation claims. Mem. at 8 (quoting Trial Tr. 2776:11–13). But the County does not dispute that summation misconduct includes making "false or misleading arguments," Trial. Tr. 2776:1, and it cannot identify any exception for false statements that exploit a prior *Brady* violation. The Second Circuit has explicitly held that exploiting a *Brady* violation is summation misconduct that by itself may violate due process. *Jenkins v. Artuz*, 294 F.3d 284, 294–95 (2d Cir. 2002); *see also* Rule 50(b) Opp. at 31–32. There is also no inconsistency with the verdict form, as the Court instructed the jury it had to separately find a *Brady* violation and summation misconduct. *See id.* at 2775:8–9.

The County also errs in arguing that this instruction lacked a factual basis because Walker did not identify any other reported Erie County cases showing a pattern of identical summation misconduct. However, there is no such requirement. Every summation follows a different trial record and there generally must be a combination of improprieties to rise to the level of a due process violation—no two cases are the same. *See* Rule 50(b) Opp. at 29–33. More importantly, Henry and Drury admitted that their summations were consistent with ECDAO practice, and the County's expert Gagan said the same. *See* Trial Tr. 1143:25–1144:12, 1153:20–1155:12, 2080:6–

2083:5, 2308:15–2309:3, 2309:12–16, 2318:10–18, 2319:7–2320:9. And, although numerous courts harshly criticized the ECDAO for summation misconduct, DA Cosgrove did not discipline or even investigate a single prosecutor. *See* Rule 50(b) Opp. at 33–39. There plainly was a factual basis for the Court's instruction.

### D. The Court properly declined to give a curative instruction on summation misconduct.

The Court's instructions on summation misconduct informed the jury that "[p]rosecutors may fairly comment on the evidence introduced at trial and make argument in response to defense counsel's closing argument." Trial Tr. 2775:22–24. The County invoked this principle to justify ADA Henry's appeal to racial prejudice, claiming that Henry's remark ("sixteen-year-old black kids' plan") was merely a "response to [defense counsel David] Jay's comments that suggest that some more formal or official planning was necessary." *Id.* at 2659:7–18. The County then argued that Jay had used racial language in his summation too, so it would be hypocritical to forgive Jay while condemning Henry. *Id.* at 2659:19–2660:9. Walker's counsel responded that Jay's use of race to explain why Joseph Tatar (who was white) might callously lie about Walker (who is Black) did not invite Henry's remark, and the fact that a defense attorney mentions race does not entitle a prosecutor to stoke racial prejudice, as "[t]here is no constitutional defense that two wrongs make a right." *Id.* at 2718:4–20. After summations were complete, the County objected and requested a curative instruction informing the jury that a prosecutor's "conduct can be viewed in light of the prior conduct of defense counsel in summation." *Id.* at 2748:21–2749:11.

The County now claims that by denying this request, *id.* at 2750:4–6, the Court "deprived the jury of assessing the summation misconduct under applicable law," Mem. at 10. But as noted, the instructions already explained the invited-response concept, Trial Tr. 2775:22–24, and this was a factual issue for the jury to resolve. Walker's counsel did not distort or misstate the invited-

- 13 -

response rule when he argued that a racial reference by defense counsel would not entitle the prosecutor to engage in tit-for-tat racial commentary of his own. Indeed, the very Supreme Court precedent the County cites, Mem. at 10, says just that, warning: "the idea of 'invited response' . . . should not be read as suggesting judicial approval or—encouragement—of response-in-kind," since "two apparent wrongs—do not make for a right result." *United States v. Young*, 470 U.S. 1, 11-12 (1985); *see also United States v. Friedman*, 909 F.2d 705, 709 (2d Cir. 1990) (defense counsel's "vigorous" attack on "the absence of the Government's 'cooperating witness'" did not entitle the prosecutor "to malign defense counsel"). This is exactly what the Appellate Division concluded in reversing an Erie County conviction, holding that "grossly improper remarks by a prosecutor may not be justified on the ground of improprieties in the summation of defense counsel." *People v. Keller,* 67 A.D.2d 153, 160 (4th Dep't 1979) (citing cases). There was no basis here for a "curative" instruction where there was nothing improper to cure.

### E.    The jury was properly instructed on the question of apportionment

The County's objection to the Court's instructions on its supposed apportionment defense, *see* Mem. at 10–13, is similarly meritless. Indeed, far from disadvantaging the County, the Court provided it with substantial leeway, allowing it at the charge conference to completely reframe an obviously invalid claim.[3] Up until the charge conference, the County said it was asserting an "apportionment defense" against the City of Buffalo. *See* 3/17/2025 Tr. 5:10–14. When Walker pointed out, at the charge conference, that the only basis for ascribing misconduct to a municipality is to establish that it was liable under *Monell*, the County argued for the first time that its defense was based on an "evidence fabrication" claim against individual detectives whom the County's counsel could not identify by name. *See id.* at 2632:3–9. While the Court could have dismissed the

---

[3] Walker maintains his prior objections to the County being permitted to maintain any apportionment defense.

County's defense, it instead allowed the County to amend its defense on the fly, after the evidence was closed, and allow the jury to decide it. *See id.* at 2590:8–2592:5, 2624:17–2627:15. Having been given this last-minute opportunity, the County complains that Walker's objection to the County's proposed fabrication instruction was untimely and the Court's amendment of that instruction was erroneous. Neither objection has merit.

*First*, Walker's objection to the County's proposed fabrication instruction was timely and proper. The County's original apportionment instruction rested on inapplicable state-law concepts, and did not define the tort for which it claimed the City was responsible. *See* Dkt. 273 at 25. As the Second Circuit made clear in *Restivo v. Hessemann,* a finding of proportionate fault requires a demonstration that an injury is the result of the actions of multiple *tortfeasors*. 846 F.3d 547, 586 (2d Cir. 2017)*.* Accordingly, in his objections to the County's instruction, Walker explained that no instruction would be adequate if it failed to define the tort for which the City or its detectives could be found liable. *See* Dkt. 273 at 25 ("Defendant's proposed instruction is wholly inadequate. The colloquial concept of 'fault' is unduly broad and does not capture the requirement that Buffalo detectives be joint tortfeasors."). Walker reiterated this point in response to the Court's proposed apportionment instruction. *See* Dkt. 383, Ex. E at 10–11. After the County belatedly identified evidence fabrication as the relevant tort, and proposed an evidence-fabrication instruction, *see* Trial Tr. 2626:23–2627:17, Walker proposed a modest revision, *see id.* at 2627:19–22 ("[W]e would be amenable to this charge with one addition, … if the prosecutor is aware of the fabrication or the circumstances establishing the fabrication, it's not a defense."). After considering the relevant case law, the Court agreed.

The Court's decision was correct. The law is clear that where a judge or a prosecutor makes a decision to go forward with a prosecution or to permit evidence with full awareness of whatever

police misconduct produced it, such decision may be an independent or superseding cause of harm which relieves the initial tortfeasor of liability. *See Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999). ("It is well settled that the chain of causation between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment."); *Zahrey v. Coffey*, 221 F.3d 342, 355 (2d Cir. 2000) (discussing case law); *compare Bermudez v. City of New York,* 790 F.3d 368, 375 (2d Cir. 2015) ("[I]f the ADA was simply *not informed* of the alleged problems with the evidence, *then he could not be a superseding cause* of the deprivation of Bermudez's due process rights"; liability only "*if the ADA was not informed of constitutional errors* in how the witness evidence was obtained." (emphasis added)). This Court's instruction properly asked the jury to decide the factual issue of whether there was superseding cause and it had a factual basis to find in Walker's favor.

Similarly unsupported is the County's assertion that Henry's purported ignorance of evidence fabrication requires a new trial. Mem. at 11. This challenge is not preserved, the jury did not *have* to find that the County proved Henry's ignorance, and there was ample evidence showing that ADA Drury knew and ratified everything the police had done to coerce statements from witnesses. *See* Trial Tr. 982:3–21, 996:10–997:3. This shifted responsibility to the County. Moreover, consistent with basic principles of agency law, the Supreme Court has long recognized a prosecutor's office is collectively responsible for compliance with its constitutional obligations. *Giglio v. United States*, 405 U.S. 150, 154 (1972) (rejecting argument that failure to disclose by trial prosecutor was not a violation of the defendant's *Brady* rights because the material was only known to the prosecutor handling the grand-jury process). There clearly was a factual basis for the court to direct the jury, as the factfinder, to determine this issue.

The Motion also incorrectly asserts that the Court's instruction somehow "permitted Plaintiff to evade the double recovery rule." Mem. at 12. The Court did no such thing; the jury made an explicit finding as to Walker's total damages and the proportionate fault (0%) of alleged joint tortfeasors. Dkt. 366. And while the County cites *Bender v. City of New York* for the principle that superseding cause is irrelevant where a defendant is "seeking to offset a damages verdict for overlapping damages originally pursued against a settling defendant," Mem. at 12, this case again undercuts rather than supports the County. *Bender* focuses on ensuring that the court instructs the jury to award a total damages figure: "The jury should be asked what amount of money reasonably compensates the plaintiff for the injury and which of the defendants are liable for causing that injury." 78 F.3d 787, 793 (2d Cir. 1996). The Court did exactly that. The County's request for "offset" for a prior settlement is squarely rejected by the Second Circuit. *See Restivo*, 846 F.3d at 586–87.

Finally, the County complains that there was no way of ascertaining whether the jury ascribed fault to the City Defendants. *See* Mem. at 12. The County once again misunderstands the law. The County was required to show that a joint tortfeasor was responsible for a share of Walker's damages. On this point, the verdict was clear. The jury found that Walker's post-conviction damages were entirely due to the County's denial of his due-process rights.[4] The County's complaint is ultimately with the outcome rather than the instruction.

---

[4] The County complains that it was unable to introduce the settlement and prior litigation between Plaintiff and the City, *see* Mem. at 12, but these items were irrelevant to the question of proportionate fault, and the settlement agreement was not admissible to prove the validity or amount of any disputed claim, *see* FED. R. EVID. 408. Furthermore, the settlement proves nothing, as the City admitted no fault in the settlement and Walker dismissed his claims. *See* Dkt. 194.

The County also argues that Walker's settlement with the City necessarily included a recovery for the damages covered by the jury's verdict, but this is unsupported by the record. The verdict form referenced Walker's damages for his post-conviction injuries, *see* Dkt. 366, while Walker sought

- 17 -

## II.    THE COURT DID NOT ABUSE ITS DISCRETION IN FASHIONING A VERDICT FORM.

As the County concedes, Mem. at 13, "[t]he formulation of special verdict questions rests in the sound discretion of the trial judge. *Cash v. County of Erie*, 654 F.3d 324, 340 (2d Cir. 2011). An abuse of discretion occurs only where the questions posed on the verdict form, when read "in conjunction with the judge's charge to the jury," "mislead or confuse the jury, or inaccurately frame the issues to be resolved." *Id.* (cleaned up). Objections to a verdict form are waived unless made "on the record, stating distinctly the matter objected to and the grounds for the objection." FED. R. CIV. P. 51(c)(1). As noted above, Rule 51 requires an "explicit, precise, and reasoned objection," supported by "legal argument" and "authority." *Jarvis*, 283 F.3d at 55, 60–61.

### A.    The verdict form fairly and accurately framed the *Monell* inquiry.

As noted above, a municipality is liable for a constitutional violation if the constitutional violation was caused by a municipal policy, custom, or practice. The verdict form asked the jury to decide, with respect to the alleged *Brady* violations and the alleged summation misconduct, whether ECDAO prosecutors violated Walker's constitutional rights, and, if so, whether "a policy, custom, or practice of the Erie County District Attorney's Office, as attributed to the County of Erie, caused the violation of Mr. Walker's constitutional right." Dkt. 366 at 1. The County raises three objections to the *Monell* questions. Mem. at 13–16. All are meritless.

---

recovery for his damages from the time of his arrest more than a year prior, *see* Am. Compl. ¶ 432. The settlement necessarily encompassed Walker's damages for a period in which recovery was not obtained from the County. *See* Dkt. 194.

- 18 -

The County's main complaint is that the verdict form presented the *Monell* inquiry in a single question rather than dividing the inquiry into two. Mem. at 13–16 (citing *Cash*, 654 F.3d at 340). But in the very case the County cites, the Second Circuit rejected this argument.

Like the verdict form here, the verdict form in *Cash* posed a single *Monell* question: "'Was the violation of [Cash's] constitutional rights proximately caused by a custom, policy, or practice of the County of Erie?'" 654 F.3d at 340 (brackets in original). As in this Motion, the County, citing *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 45 n.5 (2d Cir. 1985), argued that this question improperly combined *existence of* a policy with *causation by* the policy. *Cash*, 654 F.3d at 340-41. The Second Circuit disagreed, dismissing *Vippolis* as inapposite and observing that a district court has "discretion to frame the questions a jury must answer in terms that could be construed to combine elements, as long as the jury is properly instructed as to each fact that must be found." *Id.* at 341. "Because the district court satisfactorily instructed the jury as to the need to find both policy and causation," there was "no potential for juror confusion or abuse of discretion" in a single, streamlined *Monell* question. *Id.*

Here too, the Court's instructions repeatedly informed the jury that Walker needed to prove *both* that a policy, custom, or practice existed *and* that this policy, custom, or practice caused the underlying constitutional violation. *See* Trial Tr. 2776:24–2777:6; 2780:8–12; 2782:1–5. Accordingly, *Cash* forecloses the County's argument.

The County's two remaining complaints about the verdict form's *Monell* questions are easily rejected. *First*, the County contends that the verdict form's question about *Monell* liability should not have included the word "policy" at all, because there was no evidence of an "actual" policy. Mem. at 14 n.1, 15. This argument is waived as the County never objected to the word "policy," and its proposed verdict form included it. Dkt. 383-3 at 12. This argument is also

meritless. The word "policy" does not only refer to formal or written policies, but also informal or *de facto* policies. *E.g.*, *Cash*, 654 F.3d at 334 (deliberate indifference is a "municipal policy"); *Lucente*, 980 F.3d at 297 (a widespread practice is a "municipal policy" (citation omitted)). And the verdict form's reference to "custom, policy, or practice" accurately distills the relevant legal standard. *Los Angeles v. Humphries*, 562 U.S. 29, 36 (2010) (citation omitted).

*Second*, the County complains that the verdict form did not pose separate interrogatories specific to each *Monell* theory presented to the jury. Mem. at 15–16. But this point is again unpreserved. Over a month before the charge conference, the County announced that it had prepared a proposed verdict form. Dkt. 324, 3/3/2025 Tr. 21:24–22:12. On April 2 and April 4, the County and Walker submitted proposed verdict forms; neither posed interrogatories specific to each *Monell* theory. Dkt. 383-3 at 5, 11–12. After receiving the proposals, the Court said it would circulate a draft verdict form shortly and directed the parties to submit "any objections or requests." *See* Trial Tr. 2580:4–12. Like both parties' proposals, the Court's draft verdict form did not pose interrogatories specific to each *Monell* theory. Dkt. 383-4 at 60–61. A few hours before the charge conference, the County submitted several requests concerning the verdict form, but did not request such interrogatories, Dkt. 383-6 at 11–12, despite the Court's proposed instructions clearly identifying the *Monell* theories that would be submitted, Dkt. 383-4 at 42–47. At the charge conference itself, the Court directed the County to state any further objections to the verdict form. Trial Tr. 2587:16–18. Once again, the County did not request interrogatories specific to each *Monell* theory. *Id.* at 2587:19–2588:19.

Later in the charge conference, during a discussion of the jury instructions, the County objected to charging the jury on a deliberate-indifference theory, and added: "And then also the fact that if we are still pursuing more than one theory, they are distinct theories requiring different

- 20 -

showings of proof, and *somehow that needs to be accounted for*, whether that's on the verdict sheet or perhaps special interrogatories." *Id.* at 2612:20–24 (emphasis added). This vague comment— unaccompanied by a specific request, a revised verdict form, proposed interrogatories, legal argument, or legal authority, and slipped into a discussion of jury instructions after the County had repeatedly approved a verdict form that did *not* itemize *Monell* theories—is the epitome of sandbagging and miles away from Rule 51's requirements. *See Jarvis*, 283 F.3d at 60–61 (holding that objection to verdict form was not preserved by imprecise objection that contradicted counsel's other comments and was not supported by any "legal argument" or "authority" beyond a "passing reference to [a] footnote in [a Second Circuit] case").

Waiver aside, the County's complaint is meritless and hardly more developed than it was at the conference. The County says only that it requested interrogatories specific to each *Monell* theory and the Court denied the request. Mem. at 15–16. It still cannot cite any legal authority for itemizing *Monell* theories. Furthermore, the County identifies no prejudice from the question, as none exists. There was no error in the verdict form's *Monell* questions.

### B.      The verdict form correctly captured the issue of apportionment.

The County's objection to the verdict form's apportionment questions restates its objection to the apportionment instruction. Mem. at 17. As discussed above, the Court properly instructed the jury. The County identifies no language that confused the jury. As discussed, the instruction and verdict sheet properly addressed the County's affirmative defense.

### III.     THE COUNTY IS NOT ENTITLED TO A NEW TRIAL BASED ON ANY CLAIMED EVIDENTIARY ERROR.

To obtain a new trial based on evidentiary rulings, the County must demonstrate that the rulings were "a clear abuse of discretion *and* … so clearly prejudicial to the outcome of the trial that [the court] is convinced [of] … a seriously erroneous result or … miscarriage of justice."

*Nimely v. City of New York*, 414 F.3d 381, 399 (2d Cir. 2005) (cleaned up).[5] Under an abuse-of-discretion standard, evidentiary rulings should not be disturbed unless they are "manifestly erroneous" resulting from "arbitrary or irrational" decisions. *See Carroll v. Trump*, 124 F.4th 140, 157 (2d Cir. 2024) (citations omitted). The County fails to show manifest error or prejudice.

> **A.    The Court properly granted Walker's motion to admit other-case *Monell* evidence.**

The County contends that the Court should not have admitted evidence of *Brady* violations and summation misconduct committed by other ECDAO prosecutors. *See* Mem. at 18–21. But the Court was well within its discretion to do so, which should end the analysis.

The County initially objects to the Court's ruling as "untimely" because it came after the Court issued a draft ruling that granted in part the County's motion *in limine* to exclude some of this evidence. *Id.* at 19. But the Court's draft ruling stated it was without prejudice. *See* Dkt. 340-1 at 3. As the Court later noted, a district court is within its discretion to revisit *in limine* rulings as issues arise during trial. *See* Dkt. 307 at 4; 340-1 at 3; *see also Luce v. United States*, 469 U.S. 38, 41–42 (1984). The County itself recognized this discretion, as it sought admission of dozens of previously excluded documents at the tail end of trial on never-before articulated grounds. *See* Dkt. 354-1. The County has not identified any unfair prejudice it suffered due to the timing of the Court's ultimate ruling.

The County's alternative arguments, *see* Mem. at 20–21, fare no better. The Court properly admitted certain cases showing ECDAO misconduct that post-dated Walker's criminal trial. The County admitted that the ancient-documents exception applied and does not now argue the contrary. The Court had discretion to allow such evidence consistent with its ruling that "[a]

---

[5] The County's reliance on the standard applicable in criminal cases, *see* Mem. at 17, is erroneous, *see*, *e.g.*, *Tesser v. Bd. of Educ.*, 370 F.3d 314, 319 (2d Cir. 2004) ("We have altered the standard for civil cases, however, by requiring the appellant to show that the error was not harmless. . . .").

plaintiff may also show the existence of de facto customs or policies by citing decisions in other cases that contain similar allegations." Dkt. 340-1 at 5 (citing cases). The evidence may not have been dispositive of Walker's claim, but it certainly was relevant. The Court was entitled to rely upon the numerous cases allowing post-incident evidence to show widespread practice under *Monell*. *See* Rule 50(b) Opp. at 21–22 (citing *Parkinson v. Desormeau*, 2024 WL 4973490, at *5 (E.D.N.Y. Dec. 4, 2024); *Floyd v. City of New York*, 813 F. Supp. 2d 417, 449 (S.D.N.Y. 2011) *on reconsideration*, 813 F. Supp. 2d 457 (S.D.N.Y. 2011) *v. Jones Town of East Haven*, 493 F. Supp. 2d 302, 331–32 (D. Conn. 2007), *reversed on other grounds*, 691 F.3d 72 (2d Cir. 2012)).

The County also suggests, Mem. at 20, that the *Monell* evidence was too factually dissimilar to be allowed, but in fact there was sufficient evidence of overlap to support the Court's careful exercise of its discretion. *See, e.g.*, Trial Tr. 846:7–866:14. The County begins from the mistaken premise that the relevance of other-case evidence depends on the case having similar fact pattern, but the inquiry only looks to whether the evidence represents the same *category* of constitutional violation. *See* Rule 50(b) Opp. at 19–20 (explaining the County's mistaken analysis of the similarity requirement). Applying this analysis, the Court excluded 26 cases from evidence, showing its careful efforts to accept only those with similarity to Walker's. *See* Trial Tr. 846:7–866:14. The overlap of the admitted cases is clear. *See*, *e,g.*, PX 126, *People v. Ciccarelli* (overturning conviction where prosecutor withheld evidence based on his subjective determination that it was not favorable); PX 104, *People v. Ivey* (overturning conviction where prosecutor made repeated inflammatory summation comments); *see also* Rule 50(b) Opp. at 18, 21 34–35 (discussing the similarity of the *Brady* cases and summation misconduct cases).

- 23 -

**B.    The Court properly excluded evidence purportedly "central to *Brady*."**

1.    *The Court correctly excluded arguments based on the County's legally improper analysis of whether evidence is suppressed.*

The County next argues that it was improperly precluded from arguing that certain of the *Brady* evidence was not suppressed where Walker "should have known" of the existence of similar information. Mem. at 21–24. This is an issue that the Court gave thoughtful consideration to and resolved at trial against the County after considering written submissions and lengthy oral argument; the County provides no basis to conclude the Court's decision, under *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015), and other case law, was wrong. *See* Trial Tr. 2355:20–2362:12. The County offers no response to the Court's analysis except to cite decisions that predate *Lewis* or are distinguishable because the defendant knew about the favorable evidence or had equal access as the prosecutor to it, the evidence wasn't favorable, or the evidence was not material. *See* Mem. at 21–24 (cases cited therein). In this case, there was simply no factual basis for any legal instruction allowing the jury to shift to Plaintiff responsibility for the prosecution's failure to disclose the 21 pieces of evidence.

2.    *The Court properly limited the introduction of evidence irrelevant to the materiality inquiry.*

The County also misreads the law on materiality. The County argues that the Court erred in excluding certain evidence that it claims would tend to show that the alleged *Brady* evidence was not material. Mem. at 24–28. But, as this Court recognized in rejecting this argument multiple times throughout trial, the County's analysis is based entirely on a misreading of the phrase "entire record," from *United States v. Agurs*, 427 U.S. 97, 112 (1976). The County argues that this phrase requires the jury to assess the withheld material against the whole police file, underlying criminal records, and the trial transcripts of other defendants, *see* Mem. at 24, but, as the Court repeatedly explained, the phrase "entire record" refers to the evidence *actually admitted into evidence* at the

plaintiff's criminal trial. *See* Dkt. 307 at 19; *accord Nnodimele v. Derienzo*, 2016 WL 3561708, at *13 (E.D.N.Y. June 27, 2016) ("[T]he focus of the *Brady* analysis must remain on the nature and quality of the inculpatory evidence adduced at the criminal trial and the reasonably probable effect of the evidence withheld in the context of the inculpatory evidence adduced.").

> a.    *The Court properly excluded evidence from the Gibson trial with no relevance to claimed disclosure.*

The Court admitted any portion of the Gibson transcript that reflected disclosure of the allegedly undisclosed *Brady* evidence to Gibson's counsel. Trial Tr. 1268:14–18. This enabled the County to argue (even though contrary to fact) that Walker's defense counsel must have learned about the same evidence. The County now argues the Court should have admitted the entire Gibson transcript, on materiality grounds, arguing that Gibson's attorney's failure to put it to use was some evidence that Walker's counsel would not have either—arguments this Court was within its discretion to reject under FED. R. EVID. 401–403. *See* Trial Tr. 1266:10–1267:1.

*First*, the Gibson trial is an extraordinarily weak and highly prejudicial comparator. Gibson did not receive the undisclosed *Brady* material; at most, his counsel received 4 of the 21 pieces of undisclosed *Brady* material, and he received it far too late to make intelligent use of it. PX 74, Gibson Trial Tr. 194:6–20, 191:16–192:4. Indeed, the alibi defense that Gibson's counsel raised had nothing to do with the taxicab evidence and he made no use of the *Brady* material at all. What Gibson's counsel did with these late and grossly incomplete disclosures—themselves *Brady* violations, *see, e.g.*, *DiSimone v. Phillips*, 461 F.3d 181, 186 (2d Cir. 2006); *Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001)—says nothing about what Walker could have done with timely and fulsome disclosure of all the *Brady* evidence, and would unfairly prejudice Walker by allowing the County to exploit the consequences of its *Brady* violations in the Gibson trial.

*Second*, hypothesizing a rebuttal to the undisclosed *Brady* evidence has no place in a materiality inquiry. The materiality inquiry simply compares the inculpatory evidence introduced at Walker's trial against the undisclosed *Brady* material; what the County speculates prosecutors would have done to rebut the *Brady* material they suppressed is irrelevant. The County's contrary argument is based on a misreading of *Saxon v. Ercole*, which limits its materiality analysis to evidence actually presented *at the defendant's trial*, and does not conduct such a hypothetical-rebuttal exercise. 2008 WL 3446488, at *13 (S.D.N.Y. Aug. 12, 2008) (discussing the testimony of police officers at the trial rebutting undisclosed evidence).[6]

*Third*, the County complains that James McLeod's testimony allowed the jury to conduct a "comparative analysis" to the Martin trial, prejudicing the County because it was not able to do the same with the Gibson trial. Mem. at 25. But McLeod's testimony was limited to what was (and was not) disclosed to him, what that evidence showed, and what verdict the jury reached. Tr. 548:17–553.1. He was not allowed to speculate about the reason for the jury's verdict in his trial or what impact the undisclosed material would likely have had at the Walker trial. Trial Tr. 868:7–11. The County does not deny that Walker followed its directive to avoid comparison.

> b.     The Court properly limited evidence attempting to show "what really occurred" on the night of January 2, 1976.

The County argues incorrectly that it was error to limit evidence of the events of January 2, which it characterizes as "evidence or testimony suggestive of Plaintiff's guilt." Mem. at 27.

As this Court noted, *see* Dkt. 307 at 16, factual innocence or guilt is not relevant to proving a *Brady* claim. *See Poventud*, 750 F.3d at 133 ("While *Brady* ensures a fair trial, a defendant's

---

[6] The County also cites to *United States v. Pelullo*, 6 F. Supp. 2d 403 (E.D. Pa. 1998). *See* Mem. at 26. Beyond its status as a 30-year-old opinion from a district court outside the Second Circuit, *Pelullo* concerns a separate issue: whether Pellulo's testimony at one trial constituted fruit of the poisonous tree from a *Brady* violation and should have been excluded from a second trial. *Id.* at 413.

right to … disclosure under *Brady* is not conditioned on his ability to demonstrate … that he is in fact innocent.") (cleaned up)). A plaintiff's subjective belief in his innocence is relevant to damages, *see Nnodimele*, 2016 WL 3561708, at *10 n.7, and this Court correctly allowed only limited testimony on that subject, *see, e.g.*, Trial Tr. 216:12–13 (limiting Walker's counsel's examination of Walker regarding his recollection of January 2) and provided appropriate limiting instructions, *see id.* at 1586:4–11 ("Mr. Walker's own subjective believe that he was innocent of the Crawford murder should not be considered by you as any evidence of actual innocence."), *id*. at 705:2–4 (instructing jury to disregard testimony from Woodruff that "[t]he crime never happened").

The Court allowed the County to argue the strength of the evidence introduced at Walker's criminal trial, and the County spent a great deal of time and attention at our trial hoping to persuade the jury that Walker was factually guilty based on evidence from the criminal trial about the events of January 2. Trial Tr. 1653:13–1668:7, 1668:13–1693:2, 1759:8–1761:16, 1764:3–1772:5, 2421:25–2463:11, 2468:22–2508:15, 2511:12–2526:10, 2527:23–2571:17. The County's complaint here is that other claimed evidence of Walker's guilt, which was not introduced at Walker's criminal trial, was also relevant to a materiality analysis. But that is wrong as a matter of law. *See supra* at 23–24. The County cites this sentence from *Nnodimele*, 2016 WL 3561708, at *11: "The jury in this trial is entitled to understand the nature and quality of that inculpatory evidence so it may properly assess the reasonably probable effect of the evidence allegedly withheld." However, the County is evidently seeking to confuse—as it sought to do by misquoting case law throughout the trial—as the prior sentence reads: "Evidence regarding the lineup identifications was introduced at that trial as evidence supporting plaintiff's guilt." *Id.* By excluding the sentence explaining "that inculpatory evidence" refers to evidence introduced at the

criminal trial, the County advances a proposition that Judge Ross rejected: "The materiality and causation analyses under Brady *must* focus on the nature and quality of the inculpatory evidence *adduced at the criminal trial.*" *Id.* at *13 (emphasis added). The County has not, and cannot, identify any admissible evidence tending to show Walker's guilt that the Court precluded it from introducing.

### C.    The Court's rulings on party admissions were consistent and correct.

The County's objections to the Court's party-admission rulings, Mem. 28–29, have no merit either. The Court's ruling to admit portions of District Attorney John Flynn's statement in 2021, portions of the County's discovery responses, and portions of Waker's legal filings were consistent and correct.

*First*, the Court properly admitted a portion of DA Flynn's August 2021 press conference describing Walker's underlying criminal case as a "weak case" (the "Weak Case Statement"). As this Court properly held in its March 17 Decision and Order, "there is no question that statements spoken by DA Flynn himself during the 2021 press conference, as Erie County District Attorney, and as being offered against the County, are statements of a party opponent[.]" Dkt. 307 at 24. In fact, the County conceded this point during the March 3 final preconference. *See* Dkt. 324, 3/3/2025 Tr. 157:2–12, 19–20 ("He was at the time the district attorney. … [W]as he the policy maker under the case law … ? Yes, of course.").

The County offers no law or explanation showing how the County's ruling was erroneous or unduly prejudicial, and there is none: the admission squarely addressed one half of the materiality analysis under *Brady*, and, while damning, was not unfair to the County. And although the County suggests that the Court was not evenhanded in its rulings, the Court both denied part of Walker's motion *in limine* seeking to admit other portions of DA Flynn's remarks, Dkt. 307, and granted some of the County's requested counter designations, *see* Dkt 326 at 29:5–18. Federal

- 28 -

Rule of Evidence 106 did not require the admission of anything more, as the County failed to show that any additional statements corrected any purported misimpressions.

*Second*, the Court properly accepted into evidence limited portions of the County's discovery responses. Consistent with Federal Rule of Evidence 801(d)(2), the Second Circuit has held that "a party's assertion of fact in a pleading is a judicial admission by which she normally is bound throughout the course of the proceeding." *Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 250 (2d Cir. 2024). The three County interrogatory responses are exactly that. And they were obviously relevant, as the County stated that it had searched for and was not aware of any policy or training documents or disciplinary records relevant to the ECDAO prior to 1977. Dkt. 298 at 9–10.

*Third,* the Court's rulings regarding the County's attempt to introduce over 100 paragraphs from Walker's Amended Complaint and over 80 paragraphs from his Counter Statement of Facts were likewise appropriate. The Court determined that Walker's complaint was a legal document filed in advance of trial, asserting claims in the alternative and without discovery, and therefore inadmissible under FRE 403, *see, e.g.*, *Svege v. Mercedes-Benz Credit Corp.*, 329 F. Supp. 2d 285 (D. Conn. 2004), and that legal arguments in Walker's filings did not constitute party admissions, *see, e.g.*, *Est. of George v. Batista*, 2013 WL 104552, at *2 (D. Conn. Jan. 8, 2013) (limiting evidentiary use of statements in a motion to dismiss to "an assertion of fact inconsistent with similar assertions in a subsequent trial" where "the statements of counsel were such as to be the equivalent of testimonial statements by the defendant."). Finally, as noted, many of the statements offered were riddled with double- and triple-hearsay. Where the Court found that none of these issues applied, it admitted five paragraphs from the Counter Statement of Facts. *See* Trial Tr. 2577:18–2578:6.

The County's argument also overlooks its decision to ignore the Court's warning on legal filings from before trial began: "I need to know what parts you are seeking to introduce before I can really make a ruling." 3/17/2025 Tr. 70:19–20. The Court continued: "I'm not just going to say everything is going to be received" and ordered the County: "as soon as [it was] able to determine what specific portions of any of these filings [it was] offering, then [to] please let Plaintiff's counsel know, as well as the Court." *Id.* at 70:21–21, 71:17–20. The County ignored the Court's directive and instead waited 15 days, until after Walker rested his case, before moving to admit hundreds of paragraphs. Dkt. 345. The County ignores these issues and simply cries bias, unfairly and improperly blaming the Court for its own errors.

**D.     The Court's rulings on issues purportedly "central to damages" were correct.**

The County's argument that the Court "erred in its wholesale preclusion of evidence of Walker's pre-conviction criminality," Mem. at 30, is wrong for multiple reasons.

*First*, the Court correctly concluded that the alleged "prior bad acts" in the County's motion in limine were not admissible for liability or impeachment purposes. *See, e.g.*, *United States v. Sampson*, 385 F.3d 183, 192 n.7 (2d Cir. 2004); *United States v. Wilke*, 2010 WL 1573918, at *1 (W.D.N.Y. Apr. 15, 2010); *Daniels v. Loizzo*, 986 F. Supp. 245, 249 (S.D.N.Y. 1997). The County's Motion does not, and cannot, challenge that ruling.

*Second*, Walker's prior conduct is not relevant to damages, and any probative value it could have was substantially outweighed by the danger of unfair prejudice. Dkt. 307 at 41; *see also Barber v. City of Chicago*, 725 F.3d 702, 714 (7th Cir. 2013) ("Presenting a § 1983 plaintiff's criminal history to the jury presents a substantial risk that the jury will render a defense verdict based on … improper motives[.]"). As the Court explained, the prejudicial effect of the "almost fifty-year-old acts noticed by the County" is substantial. Dkt. 307 at 43.

That Walker spent about eight months in a juvenile facility at age 14 for an offense he readily admitted he had committed was hardly relevant to the damages he suffered when he was falsely convicted of murder at age 17 and sent for most of the next 21 years to serve time in maximum security state penitentiaries alongside hardened violent criminals. *See Newton v. City of New York*, 171 F. Supp. 3d 156, 177 (S.D.N.Y. 2016) (plaintiff previously had spent 10 years in prison as an adult). Finally, contrary to the County's assertion that the Court's *in limine* decision precluded this evidence "wholesale," Mem. at 31, the Court ruled that it was "possible for Mr. Walker or his other witnesses to open the door … during trial," and that it would "entertain a motion during trial if the County believes that a door has been opened[.]" Dkt. 307 at 44. The County cites nothing in the trial record that any of Plaintiff's witnesses or evidence did to open that door.[7]

Given the limited probative value the County's desired cross-examination would have had and the substantial likelihood that the jury would consider the evidence for the improper purposes

---

[7] During Walker's examination, the County did, in two instances, argue that his testimony opened the door to discussion of his conduct while incarcerated, but the Court correctly rejected these arguments. Walker's testimony that new inmates were called "fresh meat" in a sexually threatening manner at Elmira Correctional Facility did not open the door to cross examination regarding altercations at the Erie County Holding Center. Trial Tr. 322:5–323:13. Walker's testimony was not about his character, and the two incidents are plainly unrelated. Walker's testimony about discipline in the prisons also did not open the door to cross-examination about instances of prison misconduct. *Id.* at 324:7–325:17. Again, the testimony was not about Walker's character. And, as Plaintiff's counsel explained during that exchange, he deliberately did not ask Walker about punishments that he experienced himself, only asking him about the punishments that existed. *Id.* at 324:23–325:12.

The County has failed to make and thus waived any argument that these particular rulings were an abuse of discretion. Additionally, even if the Court's rulings as to the two instances in which the County argued Plaintiff opened the door to testimony about Walker's bad acts were incorrect (and they were not), the County has no basis to claim these two instances were clearly prejudicial to the outcome of the trial.

of propensity—which was obviously the County's real intention—the Court's rulings were well within its discretion. Trial Tr. 324:2–3, 326:2–4.

>   **E.     The Court correctly allowed Walker's counsel to discuss the toll of imprisonment on his health and well-being**

The County's objection to Walker's summation misstates the facts and the law and has no merit. *First*, contrary to the County's representation that the Court denied its motion to preclude references to Walker's physical injuries in summation, Dkt. 353, the Court declined to issue a ruling on references to physical injuries, noting "at this point I'm not going to give any specific ruling about that." Trial Tr. 2374:19–2375:12.

*Second*, the County waived its present objection. The County failed to object to counsel's remarks about Walker's physical state. *See id* at 2748:5–2749:11 (articulating three objections to Walker's summation, none concerning claimed references to Walker's physical injuries). Where there is "no contemporaneous objection" to a remark in summation, courts review for plain error. *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 18 (2d Cir. 1996). Here, counsel's remark in summation—a general statement comparing Walker to Woodruff, who was not incarcerated, and was physically strong with a steady job and family—in no way rises to the standard of plain error.

*Third*, there was no error. Counsel's comment was supported by the record, argued the obvious proposition that medical care in prison is worse than outside of it, and accorded with the representations counsel made to the Court: "In terms of Mr. Walker's physical injuries, we're certainly going to comment on the evidence that's been introduced at trial. Mr. Walker testified about the injuries that he suffered, the lack of medical care." Trial Tr. 2373:15–18. The Court agreed that for summation, "there is fair comment as far as what's in evidence, his lack of medical treatment while in prison." *Id.* at 2374:19–20. Walker did not claim actual causation and did not

ask for monetary damages linked to any specific untreated prison illness or injury. Indeed, Walker's counsel did not even respond to the County's argument in its summation that Walker's physical and dental injuries did not "appear to have any connection to this conviction or to his subsequent time in prison" and that "you did not hear any evidence from a physician testifying that the car accident was or even could have been related to the Attica injury that he experienced in a football game." Trial Tr. 2676:23–2677:8.

>    **F.    The Court correctly admitted a reference to Drury's summation in the *Boyd* trial.**

The Court redacted the entire Boyd summations of the opposing parties, but allowed examination of Boyd's prosecutor, former ADA Drury, from his deposition transcript, concerning his use during his summation of racially charged language similar to Henry's racial argument during the Walker trial. Trial Tr. 1152:17-1154:1. (The Court also allowed both parties experts to opine as to whether the summation comported with professional standards. *Id.* at 1480:5-1481:4; 2300:6-2309:3.) The court properly reasoned that Drury's summation was evidence of ECDAO policy, custom, and practice. *Id.* at 1486:4-25. The County's present argument that this limited reference to Drury's summation should not have been permitted in view of the Plaintiff's opposition to a consolidated trial of Boyd and Walker, *see* Mem. at 33–34, is a non-sequitur. Drury was not prevented from explaining why he made the arguments he did. The limited summation evidence was especially relevant in light of Drury's and Gagan's confirmation that Drury's arguments were consistent with Office practice. *Id.* at 1152:17-1154:19, 2300:6-2309:3.

Nor did the introduction of this limited excerpt open the door to admission of rulings in Boyd's direct appeal and post-judgment 440 motions. Boyd's post-conviction proceedings have no bearing on whether the prosecutor's conduct in the Boyd trial was relevant to *Walker's* civil claims. The County's motion does not explain at all how or what post-trial evidence somehow

- 33 -

became relevant as a result of the supposed door opening, other than that the conviction "was reviewed by the highest Court in this state without issue." Mem. at 34. The County's statement is misleading: the New York Court of Appeals affirmed the judgment without offering comment on any of the issues raised on appeal. *See* DX 591, *People v. Boyd*, 84 A.D.2d 689 (1981). To present an affirmation of judgment without any additional information or insight would only confuse the jury, especially when Boyd's counsel had no knowledge of all of the *Brady* evidence that had not been disclosed to him and therefore no knowledge that the prosecutor's summation improperly doubled down on the ECDA's *Brady* violations. Furthermore, once a conviction has been vacated, decisions addressing postconviction motions have no preclusive effect. *Ortiz v. Wagstaff*, 523 F. Supp. 3d 347, 366 (W.D.N.Y. 2021) ("[W]hen the judgment is subsequently vacated, collateral estoppel is inapplicable[.]" (emphasis omitted)); *Dukes v. City of Albany*, 289 F. Supp. 3d 387, 393 (N.D.N.Y. 2018) ("Furthermore, the judgment of any court tasked with a review of that now-vacated criminal conviction likewise has no preclusive effect."); *Kogut v. Cnty. of Nassau*, 2009 WL 5033937, at *9–10 (E.D.N.Y. Dec. 11, 2009) (holding appellate judgment had no preclusive effect where underlying trial court judgment had been vacated and plaintiff was acquitted on retrial). The Court was within its discretion to exclude this material.

## G.    The Court properly accepted Professor Hirsch's testimony.

The Court was well within its discretion to permit Professor Hirsch's testimony about the interrogations in this case. The County seemed largely content with such testimony in light of its planned apportionment defense and it makes no argument now that Hirsch's testimony should have been entirely excluded. The County's objection is to one answer: Hirsch's statement that this was "certainly one of the most upsetting cases I have ever been involved with." Mem. 35 (citing Trial Tr. 781:17–23). This was a fair comment based on Hirsch's extensive experience and expertise on the drastic extent to which the police practices in this case deviated from professional norms in

1976 and created the risk of causing false statements or confessions. Trial Tr. 736:20–25, 739:22–740:2, 740:21–741:6, 742:7–743:14, 746:9–781:8. It is odd for the County to complain, as it did not employ these detectives and its apportionment defense was based upon the very same argument: that the detectives engaged in coercion which produced the evidence that caused Walker's conviction and damages and that the City, not the County, was to blame. If the admission of this single answer was erroneous, it certainly was not so prejudicial to the County as to deny it a fair trial. Under the circumstances, one could hardly imagine a more harmless "error" than this.

### H.    The Court properly admitted DA Cosgrove's statement as a party admission.

The County's argument, without citation to a single case or rule of evidence, that the Court somehow erred in admitting DA Cosgrove's testimony that he supervised BPD officers with respect to interrogations, *see* Mem. at 35–36, is baseless as well. As the County conceded, DA Cosgrove was its policymaker, *see* Trial Tr. 154:16–18 ("Mr. Cosgrove is only the policy maker for the [ECDA]."), and his statements are plainly party admissions, *see* FED. R. EVID. 801(d)(2)(C). The County was free to argue that the jury could discount the weight of the testimony, but DA Cosgrove testified that not only did he supervise the BPD but he oversaw how the BPD conducted interrogations. *See* PX 274, Cosgrove Dep. Tr. 157:10–158:6.

The County's sole arguments for exclusion are that this testimony was irrelevant and prejudicial, but the County put the question of the City's interrogation practices at issue. *See* Trial Tr. 105:11–17 ("[Y]ou heard assertions. . . about coerced interrogations of witnesses. . . . Conduct of the [BPD] is distinct from conduct of the [ECDA]."). The County attempted to ascribe fault to the BPD for fabricating evidence through coercive interrogations. DA Cosgrove's admission was directly responsive to that argument, especially given the evidence establishing Drury's direct involvement in Woodruff's interrogations.

The County had ample opportunities to attack DA Cosgrove's testimony. It could have questioned DA Cosgrove about his statements regarding interrogation practices at his deposition, or cross-designated deposition testimony. It did neither. The County complains about the Court's exclusion of a BPD organizational chart, *see* Mem. at 36, but the County has only itself to blame. The document, which was not listed as an exhibit before trial, was untimely, not authenticated, and hearsay from an unknown declarant. Trial Tr. 2137:8–2139:1. And the Court did allow the County to introduce five paragraphs in Plaintiff's Rule 56.1 statement regarding the role of BPD Chief of Homicide Leo J. Donovan and the structure of the BPD. *See* Trial Tr. 2577:18–2578:6. The jury was free to consider the weight of DA Cosgrove's testimony and credit his admission that he sat above the BPD's leadership in setting interrogation policies. There was no error.

## IV.     THE EVIDENCE SUPPORTS THE JURY'S VERDICT.

As an alternative to its Rule 50(b) motion, the County asks for the Court to grant a new trial, pursuant to Rule 59(a), due to insufficient evidence. *See* Mem. at 37. "[A] motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) (citation omitted). No erroneous result or miscarriage of justice occurred here, rather, the jury appropriately righted a miscarriage of justice.

The County makes no arguments for insufficiency or the grant of a new trial beyond those articulated in its Rule 50(b) motion. For the reasons explained in Plaintiff's opposition to that motion, the County fails to show that it is entitled to upset the verdict on any of those points. *See* Rule 50(b) Opp. at 6–40.

## V.     THE COUNTY IS NOT ENTITLED TO A REMITTITUR.

The County's request that the Court issue a remittitur reducing Walker's damages award to $17,650,000 is baseless. The question of remittitur is within the discretion of this Court. *See*

- 36 -

*Dancy v. McGinley*, 843 F.3d 93, 113 (2d Cir. 2016). An award should not be vacated absent a determination that the award was "so high as to shock the judicial conscience and constitute a denial of justice." *Id.* (citation omitted); *see also Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 162 (2d Cir. 2014). Far from shocking the conscience, Walker's award is a fair reflection of the unimaginable suffering of his decades of lost freedom which continues to this day and will never end so long as he lives.

### A.        Walker's damages award was not excessive

The County argues halfheartedly that the jury's award of $28,000,000 is excessive because (1) Walker's testimony did not provide enough detail in recounting the trauma he sustained while in prison and (2) Plaintiff's counsel improperly inflated Walker's physical injuries during summation. Mem. at 38. Neither theory has merit.

John Walker spent 21 years in state prison, most of it in the most violent, maximum security prisons in the State. Trial Tr. 238:1–239:5, 246:16–249:13, 254:12–256:14. He made work release and then was arbitrarily returned to prison until he was paroled. *Id.* at 266:14–270:11. He then spent 17 years under highly restrictive conditions of parole that he described as almost as bad as prison. *Id.* at 298:1–307:4. He lived in constant fear of being violated and sent back to prison, which would have resulted in his young son, John Walker III, or "Trey," having to go into foster care. *Id.* at 299:14–16.

The County argues that the $28 million award equals $1.5 million per year in prison, but this is not so. It equals $1 million for each of 21 years in prison and approximately $400,000 for each year on parole. This would be consistent with awards in other cases. *See*, *e.g.*, *Restivo*, 846 F.3d at 588 (holding that "$1 million per year of wrongful incarceration … neither shocks the conscience nor materially deviates from reasonable compensation."); *Jimenez v. City of Chicago*, 732 F.3d 710, 720 (7th Cir. 2013) ($25 million for 16 years' wrongful incarceration); *White v.*

*McKinley*, 605 F.3d 525 (8th Cir. 2010) ($16 million for 5.5 years' wrongful incarceration); *Burton v. City of New York*, 630 F. Supp. 3d 586, 596 (S.D.N.Y. 2022) ("An award of one million dollars … for each year … is fully supported…. Indeed, it is a conservative figure given the particulars of [the] case.").

The Second Circuit's decision in *Restivo* was handed down in January 2017, more than eight years ago, upholding a jury award from April 2014. *See Restivo*, 846 F.3d at 568. In present dollars that award would be considerably higher.[8] Additionally, *Restivo* in no way suggested $1 million per year in prison was a ceiling, *see id.* at 588, and it appeared to be based upon loss of liberty without the exacerbating circumstances described by John Walker in his testimony: his daily exposure to physical and sexual violence, Trial Tr. 242:10–18, 246:16–247:16, 228:13–20, his dehumanizing loss of privacy, his separation from his family at age 17 and loss of the best and formative years of his life, his mental and emotional suffering, testified to as well by Dr. Sanford Drob, during and after his incarceration and continuing to this day, *see id.* at 1604:10–1606:6,1 608:8–12. Indeed, Walker was tormented by his conviction from age 17 until it finally was vacated in 2021, when he was an emaciated, chronically ill, enfeebled man unable to enjoy the limited time he has left to his life. The County's reasons for reducing his award are as insensitive and blind as their attitude has been this entire case. It is offensive. It ignores the detailed testimony Walker did give about his prison trauma. And it cites a summation comment by Walker's counsel that we already have shown was completely appropriate and was so general and non-inflammatory that the jury's verdict cannot possibly be attributed to it. Remittitur must be denied.

---

[8] Indeed, the value of the *Restivo* award in present dollars (applying the Bureau of Labor Statistics' CPI Inflation Calculator from the date of that jury verdict to today) would be over $1.35 million per year incarcerated, a slightly higher figure than Walker's award ($1.33 million per year incarcerated). *See* U.S. Bureau of Lab. Stat., CPI Inflation Calculator (last accessed June 20, 2025.) https://www.bls.gov/data/ inflation_calculator.htm.

**B.    There is no basis to offset the damages award by the amount Walker received in his settlement with the City.**

The County's final argument—that the Court should offset Walker's award by the settlement amount between him and the City Defendants—fares no better. *See* Mem. at 39–40. The Court already correctly held that controlling Second Circuit precedent does not allow an offset of damages in a Section 1983 case. *See* Dkt. 217 at 14 ("While *Restivo* authorizes setting off a defendant's damages owed by other responsible parties' proportional share of fault, as analyzed further below, it clearly holds that there is no lawful basis entitling a defendant in a § 1983 action to a dollar-for-dollar setoff of the amount of a settling defendant's settlement agreement."). Once again, the County simply ignores this controlling authority.[9]

## CONCLUSION

For these reasons, the Court should deny the County's Rule 59(a) motion in its entirety.

Dated:        June 20, 2025                Respectfully submitted,

                                           **WILMER CUTLER PICKERING**
                                           **HALE AND DORR LLP**
                                           By: /s/ Ross E. Firsenbaum
                                           Ross E. Firsenbaum
                                           Gideon A. Hanft
                                           Phoebe Silos
                                           Erin Hughes
                                           Trena Riley
                                           Melissa Zubizarreta
                                           7 World Trade Center
                                           250 Greenwich Street
                                           New York, New York 10007
                                           (212) 230-8800

---

[9] The County argues in a footnote that it should have been permitted introduce the settlement agreement between Plaintiff and the City Defendants. Mem. at 39 n.17. Settlement agreements are inadmissible to dispute damages. *See* FED. R. EVID. 408. *see also Bausch & Lomb Inc. v. Vitamin Health, Inc.*, 2016 WL 3742156, at *1 (W.D.N.Y. July 7, 2016).

*ross.firsenbaum@wilmerhale.com*

**LAW OFFICES OF JOEL B. RUDIN, P.C.**
By: /s/ Joel B. Rudin
Joel B. Rudin
David E. Rudin
Partha Sharma
Carnegie Hall Tower
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 752–7600
*jbrudin@rudinlaw.com*

**HOOVER & DURLAND LLP**
By: /s/ Spencer L. Durland
Timothy W. Hoover
Spencer L. Durland
561 Franklin Street
Buffalo, New York 14202
(716) 800-2600
*thoover@hooverdurland.com*

*Attorneys for Plaintiff John Walker, Jr.*

- 40 -